**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MII Aviation Services LLC, *et al.*, | Case No. 26-10123 (LSS) |
| Debtors.[1] | *(Jointly Administered)* |

# REVISED FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (DE Bar No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Email: desgross@chipmanbrown.com

*Counsel for the Debtors and Debtors in Possession*

**MCGUIREWOODS LLP**
Dion W. Hayes (admitted *pro hac vice*)
Morgan E. Mumford (admitted *pro hac vice*)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1061
Email: dhayes@mcguirewoods.com
mmumford@mcguirewoods.com

-and-

Aaron G. McCollough (admitted *pro hac vice*)
Jory Berg (admitted *pro hac vice*)
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Email: amccollough@mcguirewoods.com
jberg@mcguirewoods.com

-and-

**FAEGRE DRINKER BIDDLE & REATH LLP**
Brett D. Fallon (DE Bar No. 2480)
Ryan M. Messina (DE Bar No. 6875)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
brett.fallon@faegredrinker.com
ryan.messina@faegredrinker.com

*Counsel for the Official Committee of Unsecured Creditors*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: MII Aviation Services LLC (8667); and Michal International Investment LLC (2440). The Debtors' service address is c/o Arbel Capital Advisors, Attn: Daniel Sasson, 4 Waverly Place, Lawrence, NY 11559.

**TABLE OF CONTENTS**


I. Introduction ........ 1

II. Important Dates ........ 2

III. Definitions and Construction of Terms ........ 3

A. Definitions ........ 3

B. Interpretation; Application of Definitions and Rules of Construction ........ 15

IV. Disclosures ........ 16

A. General Background ........ 16

1. Overview of Business Operations ........ 16

2. Debtors' Prepetition Capital Structure and Scintilla Debt ........ 16

3. Prepetition Defaults, Management Transition, and Related Litigation ........ 17

4. Events Precipitating the Chapter 11 Filing ........ 17

B. The Chapter 11 Cases ........ 18

1. First Day Orders ........ 18

2. Retention of Professionals ........ 18

3. Appointment of the Committee ........ 19

4. The DIP Facility/Cash Collateral ........ 19

5. The Committee's Complaint ........ 20

6. Motion for Bidding Procedures and Asset Sale ........ 21

7. Other Motion Practice ........ 21

8. Monthly Reporting, Schedules, and Meeting of Creditors ........ 23

9. Claims Reconciliation Process and Bar Date ........ 23

10. Settlements ........ 24

11. The Hangar Leases ........ 29

C. Summary of Assets ....29

D. Summary of Treatment of Claims and Equity Interests Under the Combined Disclosure Statement and Plan....30

1. Summary of Treatment of Unclassified Claims....30

2. Summary of Treatment of Classified Claims....31

E. Potential Claims and Causes of Action....33

F. Certain Risk Factors to Be Considered....34

G. Feasibility....39

H. Best Interests Test and Alternatives to the Combined Disclosure Statement and Plan ....39

I. Releases....40

V. Treatment of Claims Under Combined Disclosure Statement and Plan....41

A. Unclassified Claims ....41

1. Administrative Expense Claims....41

2. Priority Tax Claims....42

3. Statutory Fees....43

B. Classified Claims and Equity Interests ....43

1. Class 1A – Secured Claims (MII)....43

2. Class 2A – Priority Non-Tax Claims (MII) ....43

3. Class 3A – General Unsecured Claims (MII) ....44

4. Class 4A – Equity Interests (MII)....44

5. Class 1B – Secured Claims (MII Aviation) ....44

6. Class 2B – Priority Non-Tax Claims (MII Aviation) ....45

7. Class 3B – General Unsecured Claims (MII Aviation) ....45

8. Class 4B – Equity Interests (MII Aviation) ....46

C. Impaired Claims and Equity Interests....46

D. Cramdown and No Unfair Discrimination ..... 46

E. Reservation of Rights ..... 46

VI. Confirmation Procedures ..... 47

A. Confirmation Procedures ..... 47

1. Hearing on Final Approval of Combined Disclosure Statement and Plan and Confirmation ..... 47

2. Procedure for Objections ..... 47

3. Requirements for Confirmation ..... 47

B. Solicitation and Voting Procedures ..... 47

1. No Substantive Consolidation ..... 47

2. Eligibility to Vote on the Combined Disclosure Statement and Plan ..... 48

3. Solicitation Package ..... 48

4. Voting Procedures and Voting Deadline ..... 48

5. Deemed Acceptance or Rejection ..... 49

6. Acceptance By Impaired Classes ..... 50

7. Elimination of Vacant Classes ..... 50

VII. Implementation and Execution of the Combined Disclosure Statement and Plan ..... 50

A. Effective Date ..... 50

B. Closing of the Chapter 11 Cases ..... 50

C. Records ..... 51

D. Liquidating Trustee ..... 51

1. Establishment of the Liquidating Trust ..... 51

2. Transfer of Liquidating Trust Assets to Liquidating Trust ..... 52

3. Purpose of the Liquidating Trust ..... 52

4. Preservation of Rights ..... 52

5. Continued Cooperation ..... 53

6. Liquidating Trustee ....53

7. Liquidating Trust Expenses ....58

8. Privileges ....58

9. Termination of Liquidating Trust ....58

E. Provisions Governing Distributions Under the Combined Disclosure Statement and Plan ....59

1. Distribution Record Date ....59

2. Method of Payment ....59

3. Surrender of Instruments ....60

4. Delivery of Distributions ....60

5. Objection to and Resolution of Claims ....60

6. Preservation of Rights to Settle Claims ....61

7. Miscellaneous Distribution Provisions ....61

VIII. Executory Contracts ....62

A. Executory Contracts ....62

B. Rejection Claims ....62

C. Rejection Bar Date ....63

D. Assignment ....63

IX. Conditions Precedent to Confirmation and the Effective Date ....64

A. Conditions Precedent to Confirmation ....64

B. Conditions Precedent to the Effective Date ....64

C. Waiver of Conditions ....64

D. Effect of Nonoccurrence of Conditions ....64

X. Exculpation, Releases, and Injunctions ....65

A. Injunction ....65

B. Exculpation ....65

C. Releases ........ 66

D. Arbitration Rights ........ 67

XI. Retention of Jurisdiction ........ 67

XII. Miscellaneous Provisions ........ 69

A. Amendment or Modification of the Combined Disclosure Statement and Plan ........ 69

B. Exhibits/Schedules ........ 69

C. Plan Supplement ........ 69

D. Filing of Additional Documents ........ 69

E. Binding Effect of Combined Disclosure Statement and Plan ........ 70

F. Governing Law ........ 70

G. Time ........ 70

H. Severability ........ 70

I. Revocation ........ 70

J. Dissolution of the Committee ........ 70

K. Section 1146 Exemption ........ 71

L. Section 1125(e) Good Faith Compliance ........ 71

M. No Stay of Confirmation Order ........ 71

N. Further Assurances ........ 71

O. Inconsistency ........ 71

P. No Admissions ........ 71

Q. Reservation of Rights ........ 72

XIII. Recommendation ........ 72

## COMBINED DISCLOSURE STATEMENT AND PLAN EXHIBITS

Exhibit A: Liquidation Analysis

Exhibit B: Form of Liquidating Trust Agreement

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN EXCEPT AS EXPRESSLY INDICATED HEREIN. THE COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE PLAN PROPONENTS' KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS, WHICH ARE INCOMPLETE DUE TO NONCOOPERATION BY THE DEBTORS' FORMER MANAGEMENT AND CERTAIN CURRENT MANAGEMENT OF NON-DEBTOR AFFILIATES OF THE DEBTORS. ALTHOUGH THE PLAN PROPONENTS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS BASED ON AVAILABLE INFORMATION, THE PLAN PROPONENTS ARE UNABLE TO REPRESENT OR WARRANT THAT ALL OF THE INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN IS WITHOUT ERROR. THE STATEMENTS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016, 3017, AND 3018 AND NOT NECESSARILY IN COMPLIANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.

NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. THE PLAN PROPONENTS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION, OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE,

WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.

YOU ARE ENCOURAGED TO CONSULT WITH YOUR FINANCIAL, LEGAL, AND TAX ADVISORS TO UNDERSTAND FULLY THE COMBINED DISCLOSURE STATEMENT AND PLAN. THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN AFTER SUCH DATE. THIS COMBINED DISCLOSURE STATEMENT AND PLAN MUST BE READ IN CONJUNCTION WITH ANY EXHIBITS. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE.

THIS COMBINED DISCLOSURE STATEMENT AND PLAN SETS FORTH THE PLAN SETTLEMENT AS AGREED IN PRINCIPLE AMONG THE DEBTORS, THE COMMITTEE, AND SCINTILLA FOLLOWING MEDIATION. THE DEBTORS AND THE COMMITTEE RESERVE ALL RIGHTS TO FURTHER AMEND OR MODIFY THE COMBINED DISCLOSURE STATEMENT AND PLAN CONSISTENT WITH SUCH PLAN SETTLEMENT AND APPLICABLE LAW.

THE DEBTORS SUPPORT CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN AND RECOMMEND ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN VOTE TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

THE COMMITTEE HAS ALSO INDEPENDENTLY CONCLUDED THAT THE COMBINED DISCLOSURE STATEMENT AND PLAN IS IN THE BEST INTERESTS OF GENERAL UNSECURED CREDITORS AND URGES SUCH CREDITORS TO VOTE IN FAVOR OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.

# I. INTRODUCTION[1]

Pursuant to title 11 of the Bankruptcy Code, the Debtors and the Committee propose this Combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code and Local Rule 3017-2. The Debtors and the Committee are the "proponents" of the Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code.

The Combined Disclosure Statement and Plan is a liquidating chapter 11 plan. The Combined Disclosure Statement and Plan is premised upon maximizing the liquidation value of the Assets for the benefit of creditors. Specifically, the Combined Disclosure Statement and Plan provides for the creation of a liquidating trust for the benefit of creditors (i.e., the Liquidating Trust). The Liquidating Trustee for the Liquidating Trust will be selected upon agreement of the Debtors, the Committee, and Scintilla.

If the Combined Disclosure Statement and Plan is confirmed by the Bankruptcy Court, then upon the Effective Date, the Liquidating Trustee will assume responsibility for liquidating the Estates' Assets, pursuing Estate claims that are not otherwise released, objecting to unresolved Claims, and making Distributions to Holders of Allowed Claims in accordance with the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan memorializes and effectuates a settlement among the Debtors, the Committee, and Scintilla. In accordance with such settlement, this Combined Disclosure Statement and Plan generally contemplates that the Scintilla Liens and security interests on and in MII's assets will be avoided and preserved for the benefit of the MII Estate. The Scintilla Liens and security interests on and in MII Aviation's assets will not be avoided or transferred, provided that as to MII Aviation's ownership of BEH, Scintilla will be entitled to recover from proceeds of any sale or other monetization of BEH (including any sale or disposition of MII Aviation's equity interest in BEH) only after payment of BEH creditor Claims and reimbursement for MII Aviation's Administrative Expense Claims, including any Intercompany Administrative Expense Claim. The Debtors' Allowed Administrative and Priority Non-Tax Claims will be paid from available Cash at either Debtor at the Effective Date or when allowed, with any Allowed Administrative and Priority Non-Tax Claims paid by the MII Estate in excess of fifty percent (50%) of the Debtors' total Allowed Administrative and Priority Non-Tax Claims subject to an Intercompany Administrative Expense Claim recoverable from the MII Aviation Estate, including BEH proceeds.

Copies of this Combined Disclosure Statement and Plan, associated exhibits, and all other documents related to these Chapter 11 Cases are available (i) at http://www.pacer.gov, or (ii) by contacting the Debtors by written request at the following address: Chipman Brown Cicero & Cole, LLP, Attn: Mark L. Desgrosseilliers, 1313 N. Market Street, Suite 5400, Wilmington, Delaware 19801, desgross@chipmanbrown.com.

The Plan Proponents believe that the Combined Disclosure Statement and Plan maximizes the value of the Estates and Distributions to be received by Creditors on account of Allowed

---

[1] All capitalized terms used but not defined in the Introduction shall have the meanings ascribed to such terms in Article III of the Combined Disclosure Statement and Plan.

Claims. **The Plan Proponents, therefore, strongly encourage all eligible Creditors to vote to accept the Combined Disclosure Statement and Plan.**

**ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY AND TO CONSULT WITH AN ATTORNEY BEFORE VOTING TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## II. IMPORTANT DATES

| EVENT | PROPOSED DATE AND TIME |
|---|---|
| Voting Procedures Hearing Objection Deadline | September 10, 2026, at 4:00 p.m. (ET) |
| Voting Procedures and Interim Disclosure Statement Hearing | September 17, 2026, at 10:00 a.m. (ET) |
| Voting Record Date | September 17, 2026 |
| Deadline to Object to Claims for Voting Purposes Only | September 17, 2026, at 4:00 p.m. (ET) |
| Deadline to Mail Solicitation Packages and All Notices | September 22, 2026 |
| Deadline for Creditors to File Rule 3018(a) Motions | October 7, 2026, at 4:00 p.m. (ET) |
| Deadline to File Any Plan Supplement | October 9, 2026, at 4:00 p.m. (ET) |
| Voting Deadline for the Combined Disclosure Statement and Plan | October 20, 2026, at 4:00 p.m. (ET) |
| Deadline for Objectors to Respond to Rule 3018(a) Motions | October 21, 2026, at 4:00 p.m. (ET) |
| Combined Disclosure Statement and Plan Objection Deadline | October 21, 2026, at 4:00 p.m. (ET) |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Disclosure Statement and Plan | October 27, 2026, at 11:00 a.m. (ET) |
| Deadline for Reply to Objections to Combined Disclosure Statement and Plan | October 27, 2026, at 11:00 a.m. (ET) |
| Deadline to File Voting Tabulation Affidavit | October 27, 2026, at 11:00 a.m. (ET) |

| EVENT | PROPOSED DATE AND TIME |
|---|---|
| Combined Hearing on Final Approval of Combined Disclosure Statement and Plan and Confirmation | October 29, 2026, at 10:00 a.m. (ET) (or such other date and time as scheduled by the Court) |

## III. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

"**Administrative Expense Bar Date**" means the deadline established under the Combined Disclosure Statement and Plan, the Confirmation Order, or any other order of the Bankruptcy Court for filing requests for payment of Administrative Expense Claims.

"**Administrative Expense Claim**" means any Claim for the costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors, and including Professional Fee Claims.

"**Advisory Committee**" means the advisory committee established under the Liquidating Trust Agreement, consisting of (a) representatives of each of the members of the Committee, so long as such members' Claim has not been Disallowed, and (b) a representative of Scintilla, in each case to provide consultation to the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

"**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than "disputed, contingent or unliquidated" (as such terms are defined in the Schedules) and as to which the Liquidating Trustee has not Filed an objection by the applicable Claims Objection Deadline; (b) a Proof of Claim that has been Filed and as to which no objection has been Filed by the applicable Claims Objection Deadline; (c) a Proof of Claim that is neither Disputed nor has been disallowed by a Final Order; (d) a Claim that is allowed pursuant to the terms of this Combined Disclosure Statement and Plan; (e) a Claim that has been allowed by a Final Order of the Bankruptcy Court; (f) a Claim that is estimated pursuant to section 502(c) of the Bankruptcy Code, unless otherwise and explicitly provided by order of the Bankruptcy Court; (g) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by a Final Order of the Bankruptcy Court; or (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date.

"**Allowed Claim**" means a Claim that has been Allowed.

"**Allowed Administrative and Priority Non-Tax Claims**" means Administrative Expense Claims and Priority Non-Tax Claims that have been Allowed.

"**Assets**" means any and all right, title, and interest of each of the Debtors in and to property of whatever type or nature, real or personal, tangible or intangible, including, without limitation, Cash, books and records, equity and governance rights in subsidiaries and portfolio companies, Causes of Action, Claims, contract rights, investment interests, insurance rights, and any other property of the Estates.

"**Avoidance Actions**" means any and all actual or potential avoidance, recovery, or subordination actions, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors, their Estates, or the Liquidating Trustee under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code, and, solely to the extent applicable, section 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

"**Ballot**" means the voting form distributed to each Holder of an Impaired Claim entitled to vote on the Combined Disclosure Statement and Plan, on which the Holder is to indicate acceptance or rejection of the Combined Disclosure Statement and Plan in accordance with the voting instructions and make any other elections or representations required pursuant to the Combined Disclosure Statement and Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"**Bar Date**" means, as applicable, the General Bar Date, the Governmental Bar Date, the Rejection Bar Date, the Administrative Expense Bar Date, the Professional Fee Claims Bar Date, and any other deadline established by the Bankruptcy Court for filing or asserting Claims against the Debtors or their Estates.

"**Bar Date Motion**" means the *Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 3003(c)(3) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 30].

"**Bar Date Order**" means the *Order Pursuant to Bankruptcy Rule 3003(c)(3) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 95].

"**BEH**" means Boston Executive Helicopters LLC, a Delaware limited liability company the membership interests in which are one hundred percent (100%) owned by MII Aviation.

"**Business Day**" means any day other than a Saturday, Sunday, or any "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are required or authorized to close as a result of a federal, state, or local holiday or executive order.

"**Cash**" means legal tender of the United States of America or equivalents thereof, including, without limitation, bank deposits, checks, wire transfers, readily marketable securities, instruments, or any other customary payment method, provided that Cash shall not include eToro stock.

"**Causes of Action**" means any Claim, action, cause of action, Avoidance Action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"**Chapter 11 Cases**" means the chapter 11 cases initiated by the Debtors' filing on the Petition Date of voluntary petitions for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered by the Bankruptcy Court under Case No. 26-10123 (LSS).

"**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

**"Claims Objection Deadline"** means the last date by which the Liquidating Trustee only is authorized to file and serve any objections to Claims, which date shall be the later of (i) 90 days after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

"**Class**" means any group of substantially similar Claims or Equity Interests classified by the Combined Disclosure Statement and Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

"**Combined Disclosure Statement and Plan**" means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code. The Committee is comprised of Amos & Daughters Investments & Partners, Abraham Jacob Neyman, and Shaked Partners II Fund, LP, with Eri Steimatzky of Amos & Daughters Investments & Partners serving as chairperson.

"**Committee Adversary Proceeding**" means the adversary proceeding commenced by the Committee against Scintilla in the Bankruptcy Court, Adversary Proceeding No. 26-50412 (LSS).

"**Committee Parties**" means, individually and collectively, the Committee, each member of the Committee, each member's designated employee or officer who serves on the Committee on behalf of such member (solely in their respective capacities as such), and the Committee's Retained Professionals.

**"Committee's Retained Professionals"** means McGuireWoods LLP, Faegre Drinker Biddle & Reath LLP, and Alvarez & Marsal North America, LLC.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Bankruptcy Court's Docket.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider (a) approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code, and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation**" means confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.

"**Creditor**" means any Entity that is the Holder of a Claim against the Debtors.

"**Cure Amount**" means all amounts, if any, required to be paid under sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code in connection with the assumption of an Executory Contract, or such other amount as may be agreed by the applicable counterparty and the Debtors or Liquidating Trustee or determined by Final Order of the Bankruptcy Court.

**"D&O Insurance Coverage"** means any insurance coverage under which any of the Debtors or their respective current or former managers, officers, directors, professionals, or other insured Persons may be entitled to coverage for actions taken in their capacity as such, whether such policy was issued to the Debtors or any third party, including any proceeds available for claims or recoveries preserved under the Combined Disclosure Statement and Plan.

"**Debtors**" means, collectively, MII Aviation Services LLC and Michal International Investment LLC, as debtors and debtors in possession in the Chapter 11 Cases.

**"Debtors' Retained Professionals**" means Chipman Brown Cicero & Cole, LLP, Silver Birch Group, Inc., and BA Securities, LLC.

**"DIP Motion**" means the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 70], as supplemented or modified from time to time.

"**Disallowed**" means, when used in reference to a Claim, all or that portion, as applicable, of any Claim that has been disallowed under the Combined Disclosure Statement and Plan, the Bankruptcy Code, applicable law, or by Final Order.

"**Disputed**" means any Claim or Equity Interest, or any portion thereof, that is (a) listed on the Schedules as unliquidated, disputed, and/or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been Filed, (b) not listed on the Schedules as unliquidated, disputed, and/or contingent and as to which the Claims Objection Deadline for such Claim has not passed, (c) the subject of an objection or request for estimation Filed by the Debtors or the Liquidating Trustee or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order, or (d) filed after any applicable Bar Date.

"**Distribution**" means any distribution to a Holder of an Allowed Claim pursuant to the terms of the Combined Disclosure Statement and Plan.

**"Distribution Record Date"** means the date the Bankruptcy Court enters the Interim Approval and Procedures Order.

"**Docket**" means the docket in the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court.

"**Effective Date**" means the date on which the conditions specified in Section IX.B of the Combined Disclosure Statement and Plan have been satisfied or waived in accordance with Article IX of this Combined Disclosure Statement and Plan and no stay of the Confirmation Order is in effect.

"**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means all equity interests in either of the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**"Exculpated Parties"** means, individually and collectively, in each case solely in their capacities as such and to the fullest extent provided in the Combined Disclosure Statement and Plan: (a) the Debtors' Retained Professionals; (b) Boaz Toshav in his capacity only as post-petition manager of the Debtors; (c) Daniel Sasson, in his capacity as post-petition Chief Restructuring Officer of the Debtors; and (d) the Committee Parties.

"**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date between either of the Debtors and any other Entity or Entities, specifically excluding contracts and agreements entered into pursuant to this Combined Disclosure Statement and Plan.

"**File, Filed, or Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

"**Final Decree**" means the order entered pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Cases.

"**Final Order**" means an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter: (a) which has not been reversed, stayed, modified, amended, or vacated as to which the time to appeal, petition for certiorari or move for a new trial, stay, reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for a new trial, stay, reargument, reconsideration or rehearing that has been or may timely be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; provided, however, that, any motion for relief from an order, ruling or judgment shall not affect the finality or suspend the operation of such order, ruling or judgment.

"**First Day Declaration**" means the declaration Filed in support of the Debtors' Chapter 11 petitions and First Day Motions as executed by Boaz Toshav [Docket No. 25].

"**First Day Motions**" means the Debtors' motions and applications Filed upon or shortly after the commencement of the Chapter 11 Cases, including the joint administration motion, cash management motion, motion to enforce Bankruptcy Code protections, and professional retention applications.

**"General Bar Date"** means May 15, 2026, at 11:59 p.m. (prevailing Eastern Time), as established under the Bar Date Order.

"**General Unsecured Claims**" means any unsecured Claim against the Debtors that is not an Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Subordinated Claim, or any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

"**Governmental Bar Date**" means July 31, 2026, at 11:59 p.m. (*prevailing* Eastern Time), as established by the Bar Date Order.

"**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

"**Holder**" means the legal or beneficial holder of any Claim or Equity Interest.

**"Impaired"** means, with respect to any Class, a Class that is impaired within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"**Insurance Policies**" means any and all insurance policies of the Debtors, including any primary director and officer liability, employment practices liability, fiduciary liability, errors and omissions, general liability, property, casualty, or other insurance policies, and any agreements, documents, instruments, rights, proceeds, or recoveries related thereto.

"**Intercompany Administrative Expense Claim**" means a Claim in favor of MII against MII Aviation arising from MII's payment of more than fifty percent (50%) of the total Allowed Administrative and Priority Non-Tax Claims of the Debtors.

"**Interim Approval and Procedures Order**" means the order of the Bankruptcy Court conditionally approving the Combined Disclosure Statement and Plan for solicitation purposes only and authorizing the Debtors to solicit the Combined Disclosure Statement and Plan.

**"Interim Cash Collateral Order"** means the interim order entered by the Bankruptcy Court authorizing the Debtors' use of Cash Collateral [Docket No. 262].

"**IRS**" means the United States Internal Revenue Service.

"**Kohlberg Action**" means that certain adversary proceeding filed by Elon Kohlberg against the Debtors and Scintilla on June 1, 2026 in the Bankruptcy Court, Adv. Pro. No. 26-50411, asserting Mr. Kohlberg's purported trust beneficiary rights in the proceeds of certain of the Infinidat shares held by MII.

"**Liquidating Trust**" means the trust (which may include sub-trusts) to be established on the Effective Date pursuant to the Combined Disclosure Statement and Plan and Liquidating Trust Agreement for the purpose of, without limitation, administering and liquidating the Liquidating Trust Assets, pursuing Retained Causes of Action, objecting and administering unresolved Claims, and making Distributions in accordance with the Combined Disclosure Statement and Plan, as more fully described in the Liquidating Trust Agreement and Section VII herein.

"**Liquidating Trust Agreement**" means the trust agreement that documents the powers, duties, responsibilities, compensation, and replacement mechanics for the Liquidating Trustee and the administration of the Liquidating Trust, the form of which is attached hereto as **Exhibit B**, which remains subject to review and approval by the proposed Liquidating Trustee.

"**Liquidating Trust Assets**" means all Assets of the Debtors on the Effective Date, including Cash, the Retained Causes of Action and proceeds thereof, and the Debtors' interests in each Portfolio Company, as more fully described in the Liquidating Trust Agreement.

"**Liquidating Trust Beneficiaries**" means Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trust under the Combined Disclosure Statement and Plan.

"**Liquidating Trust Expenses**" means all actual and necessary fees, costs, expenses and obligations incurred or owed by the Liquidating Trustee or his or her agents, employees, attorneys, advisors, or other professionals in administering the Combined Disclosure Statement and Plan and the Liquidating Trust (including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Liquidating Trustee and his or her agents, employees and professionals) arising after the Effective Date through and including the date upon which the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases, which expenses shall be payable from the Liquidating Trust Assets.

"**Liquidating Trustee"** means the disinterested Person selected to serve as Liquidating Trustee under the Combined Disclosure Statement and Plan and Liquidating Trust Agreement. The proposed initial Liquidating Trustee is Mr. Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP. A summary of Mr. Stevens' background and experience is attached to the Liquidating Trust Agreement.

"**Liquidation Analysis"** means the liquidation analysis attached to the Combined Disclosure Statement and Plan as Exhibit A, as may be amended, modified, or supplemented from time to time.

"**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"**MII**" means Michal International Investment LLC, a Massachusetts limited liability company, formerly known as Yanai International Investment, LLC, and one of the Debtors in the Chapter 11 Cases.

"**MII Aviation**" means MII Aviation Services LLC, a Delaware limited liability company, wholly owned by MII and one of the Debtors in the Chapter 11 Cases.

"**Motion to Extend Exclusivity**" means the *Debtors' Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 258].

"**Out-of-the-Ordinary-Course Action**" means any action by the Debtors prior to the Effective Date outside the ordinary course of the Debtors' business or operations, including any transfer, disposition, or sale of any material Asset, including eToro stock.

"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means February 1, 2026, the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"**Plan Proponents**" means, collectively, the Debtors and the Committee.

"**Plan Settlement**" means the settlement embodied in the Combined Disclosure Statement and Plan among the Debtors, the Committee, and Scintilla, including the agreement to pursue a joint, non-substantively consolidated liquidating plan, the avoidance and transfer to the MII Estate of the Scintilla Liens against MII, the allowance of the Scintilla Claim, the requirement to satisfy BEH creditors and Administrative Expense Claims from proceeds or upon disposition of BEH, the establishment and governance of the Liquidating Trust, and the releases, exculpations, and dismissal of the Committee Adversary Proceeding contemplated in this Combined Disclosure Statement and Plan.

"**Plan Supplement**" means the appendix of schedules and exhibits, if any, to be Filed with the Bankruptcy Court.

"**Portfolio Company**" means any company or other Entity in which MII directly or indirectly holds or has held equity, debt, governance, investment, or other ownership interests, including, without limitation, MII Aviation, Infinidat Ltd., SGP Koolspan, Koolspan, ETR 1, eToro Group Ltd., Maradin Ltd., Arineta, BEH, Tel Aviv Executive Helicopters Ltd., Vimodo Ltd., ION Crossover Partners II LP, MoreTech Ventures II (Cayman), L.P., Quris AI Technologies Ltd., Bubble Workplace, Keddem Bioscience Ltd., and Laminate Medical Technologies Ltd.

"**Portfolio Company Organizational Documents**" means any operating agreements, limited liability company agreements, partnership agreements, charters, bylaws, and any other organizational or governing documents of any Portfolio Company.

**"Prepetition Credit Agreements"** means, collectively, (i) those certain Facility Agreements dated December 5, 2019, February 16, 2023, and August 23, 2023, (ii) that certain Side-Letter dated June 28, 2023, (iii) that certain Waiver Agreement dated July 17, 2024, (iv) that certain Omnibus Amendment and Waiver dated December 31, 2024, (v) that certain Loan Agreement dated April 10, 2025, (vi) that certain Asset Sale and Paydown Agreement, dated as of August 1, 2025; and (vii) any other prepetition facility agreements, loan agreements, amendments, paydown agreements and related agreements between or among MII, MII Aviation, Scintilla, and any related parties, as applicable, all as amended, modified, supplemented, or restated.

**"Prepetition Loan Documents"** means the Prepetition Credit Agreements and all notes, guarantees, security agreements, pledge agreements, side letters, amendments, forbearance agreements, financing statements, and other agreements or documents executed or delivered in connection therewith.

**"Prepetition Security Documents"** means the security agreements, pledge agreements, financing statements, and related documents executed or delivered in connection with the Prepetition Credit Agreements or Prepetition Loan Documents, including documents granting or purporting to grant Scintilla Liens on Assets of the Debtors.

"**Priority Non-Tax Claim**" means a Claim entitled to priority in payment pursuant to sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

"**Professional**" means any professional Person employed in the Chapter 11 Cases in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court who is to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code, including, without limitation, the Debtors' Retained Professionals and the Committee's Retained Professionals.

"**Professional Fee Claims Bar Date**" means the date that is thirty (30) days after the Effective Date, which date shall be the deadline for all Professional Fee Claims to be Filed.

"**Professional Fee Claims**" means all Claims for compensation and reimbursement of expenses by Professionals to the extent Allowed by the Bankruptcy Court.

"**Proof of Claim**" means a proof of Claim Filed against any Debtor.

"**Rejection Bar Date**" means the later of (a) the General Bar Date and (b) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days following the date on which the applicable Executory Contract is rejected, whether pursuant to the Confirmation Order, the Combined Disclosure Statement and Plan, or any other order of the Bankruptcy Court.

"**Rejection Claims**" means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code by any of the Debtors, as limited, in the case of a rejected unexpired lease, by section 502(b)(6) of the Bankruptcy Code.

"**Release**" means the release given by the Releasing Parties to the Released Parties as set forth in Article X.C.

"**Released Parties**" means, individually and collectively, in each case in their capacities as such and only to the extent expressly released under the Combined Disclosure Statement and Plan or Confirmation Order: (a) Scintilla and its principals, agents, representatives, employees, advisors, members, managers, partners, directors, officers, and other professionals, (b) Scintilla Holdings and its principals, agents, representatives employees, advisors, members, managers, partners, directors, officers, and other professionals, (c) Chapman and Cutler, LLP, in its capacity as legal counsel to Scintilla and Mr. Zack Keinan, both in his personal capacity and as principal of Scintilla and Scintilla Holdings; (d) Gornitzy & Co., in its capacity as legal counsel to Scintilla and Mr. Zack Keinan, both in his personal capacity and as principal of Scintilla and Scintilla Holdings; and (e) Gordon Rees Scully Mansukhani, LLP, in its capacity as legal counsel to Scintilla and Mr. Zack Keinan, both in his personal capacity and as principal of Scintilla and Scintilla Holdings.

"**Releasing Parties**" means, individually and collectively, the Debtors and their Estates, including, to the extent derivative standing for any Claim or Cause of Action was vested in the Committee, the Committee on behalf of the Debtors and their Estates.

**"Retained Causes of Action"** means all Claims, Causes of Action, Avoidance Actions, rights, remedies, claims for relief, suits, proceedings, defenses, counterclaims, crossclaims, setoff rights, recoupment rights, turnover rights, avoidance rights, and other rights of the Debtors or their Estates, whether known or unknown, asserted or unasserted, scheduled or unscheduled, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, arising before, on, or after the Petition Date, that are not expressly released, waived, transferred, settled, compromised, or otherwise disposed of pursuant to the Combined Disclosure Statement and Plan, the Confirmation Order, or another Final Order, including Claims and Causes of Action arising under Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 724 and applicable non-bankruptcy law. Retained Causes of Action include, without limitation, (i) claims against the Infinidat board of directors, preferred shareholders, TPG, TPG Growth, Lenovo, or any other Entity relating to the sale of Infinidat to Lenovo, (ii) claims relating

to transfers to, equity or loan investments in, management of, and any other disposition relating to any Portfolio Company, (iii) claims against Moshe Yanai, his Israel insolvency estate, the estate of the late Rachel Yanai, or any of their heirs or successors, (iv) claims against Boaz Toshav, subject to the limitations set forth in Section X.C. of this Combined Disclosure Statement and Plan, (v) any Avoidance Actions including, without limitation, claims against any party identified as a transferee in the Statements of Financial Affairs of either Debtor, including, without limitation, any Portfolio Company, Bank Leumi, Ampa Capital Ltd., Alan Rubenstein, and NY 24 Holdings LLC, as well as any other Person that received a transfer of cash or other assets in which either Debtor had an interest within four (4) years prior to the Petition Date, (vi) claims against any prepetition professionals retained by either of the Debtors or any prepetition employees, directors, or officers of either of the Debtors, (vii) claims against Christopher Donovan or BEH, (viii) claims against any Portfolio Company, (ix) claims to recover books, records, or Estate property from Persons or Entities required to provide them to the Liquidating Trustee, (x) claims against any insurers of the Debtors, and (xi) claims against any indemnitors, insurers, subsequent transferees, or successors of any of the foregoing. For the avoidance of doubt, the Retained Causes of Action shall not include any Claim, Cause of Action, Avoidance Action, subordination, recharacterization, or lender-liability claim against any Released Party.

"**Rule 3018 Motion**" means a motion for temporary allowance of a claim for the purpose of voting on the Combined Disclosure Statement and Plan.

"**Scintilla**" means Scintilla Fund LP, a Cayman Islands limited partnership, in its capacity as a creditor of the Debtors and defendant in the Committee Adversary Proceeding, as applicable.

**"Scintilla Claim"** means any Claim held or asserted by Scintilla against either Debtor or either Estate, including Claims arising under or related to the Prepetition Credit Agreements or Prepetition Loan Documents, which claim shall be deemed Allowed in the amount of $46,491,605.00, subject to reduction only by the Scintilla Claim Mitigation Amount (if any).

"**Scintilla Claim Mitigation Amount**" means the aggregate amount of Cash actually received by Scintilla after the Petition Date directly or indirectly from any source (including either of the Debtors' Estates) pursuant to or on account of the Prepetition Loan Documents, including, without limitation, the Yanai Real Estate Proceeds, Cash received in connection with any disposition of BEH or its assets, and Cash received upon the realization, monetization, conversion, or other reduction to Cash of any other asset received by Scintilla from any source pursuant to or on account of the Prepetition Loan Documents, all of which Cash shall reduce the Scintilla Claim against each Debtor, including Scintilla's Class 1B Claim and Class 3A Claim, to the extent provided in the Combined Disclosure Statement and Plan or the Confirmation Order.

"**Scintilla Holdings**" means Scintilla Holdings Ltd., a company incorporated under the laws of the State of Israel.

**"Scintilla Liens"** means any Liens asserted by Scintilla against Assets of either Debtor or any related property, including Liens granted or purportedly granted under the Prepetition Security Documents which Liens shall be treated in accordance with the Combined Disclosure Statement and Plan.

"**Schedules**" means the schedules of assets and liabilities, the list of Holders of Equity Interests, and the statements of financial affairs Filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto [Docket Nos. 8–11].

"**Secured Claims**" means Claims that are: (a) secured by a valid and perfected lien in collateral which is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (i) as set forth in this Combined Disclosure Statement and Plan, (ii) as agreed to by the Holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff under section 553 of the Bankruptcy Code.

"**Solicitation Package**" means the packages to be distributed to creditors for solicitation of votes on the Combined Disclosure Statement and Plan.

"**Subordinated Claims**" means any Claims against the Debtors that are subordinated to General Unsecured Claims pursuant to section 510 of the Bankruptcy Code, a Final Order, the Combined Disclosure Statement and Plan, or the Confirmation Order.

"**Statutory Fees**" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended.

**"Toshav-Related Insurance Recovery"** means any recovery from D&O Insurance Coverage or any other available insurance proceeds based on Mr. Toshav's actions or omissions in connection with any prepetition transactions involving Scintilla or its agents.

"**Treasury Regulations**" means the regulations, including temporary regulations or any successor regulations, promulgated under the Tax Code, as amended from time to time.

"**Unimpaired**" means, with respect to any Class, a Class that is not Impaired.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**Voting Classes**" means each Impaired Class of Claims entitled to vote to accept or reject the Combined Disclosure Statement and Plan pursuant to the Combined Disclosure Statement and Plan, the Interim Approval and Procedures Order, or any other order approving solicitation and voting procedures.

"**Voting Deadline**" means the deadline established by the Bankruptcy Court pursuant to the Interim Approval and Procedures Order or any other order approving solicitation and voting procedures for receipt of Ballots accepting or rejecting the Combined Disclosure Statement and Plan.

"**Voting Record Date**" means the date established by the Bankruptcy Court pursuant to the Interim Approval and Procedures Order.

"**Yanai Real Estate Proceeds**" means the net proceeds, if any, received by Scintilla from the sale of any real estate owned directly or indirectly by Moshe Yanai, his Israel insolvency estate, or Rachel Yanai or her estate or any of her heirs or successors, including, without limitation, that certain real estate located at 55 Leicester Street in Brookline, Massachusetts or that certain real estate located at 120 West 72nd Street (Unit 15A) in New York, New York.

**B. Interpretation; Application of Definitions and Rules of Construction**

The following rules of construction, interpretation, and application shall apply:

(1) Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2) Unless otherwise specified, each section, article, schedule, or exhibit reference in the Combined Disclosure Statement and Plan is to the respective section in, article of, schedule to, or exhibit to the Combined Disclosure Statement and Plan.

(3) The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Disclosure Statement and Plan as a whole and not to any particular section, subsection, or clause contained in the Combined Disclosure Statement and Plan.

(4) The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Disclosure Statement and Plan.

(5) A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6) All capitalized terms not defined elsewhere in this Combined Disclosure Statement and Plan shall have the meanings assigned to them as set forth in Article III.

(7) The headings in the Combined Disclosure Statement and Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Disclosure Statement and Plan.

(8) Unless otherwise provided, any reference in the Combined Disclosure Statement and Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(9) In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(10) References to "include," "includes," "including," or similar terms shall be deemed to be followed by the phrase "without limitation," whether or not expressly stated.

# IV. DISCLOSURES

## A. General Background

### 1. Overview of Business Operations

MII, formerly known as Yanai International Investment, LLC, was established in 1999 as a Massachusetts limited liability company by Moshe Yanai. MII is essentially a holding company and, directly or indirectly, held or currently holds equity interests in a portfolio of operating and investment companies.

The Debtors' assets consist primarily of debt, equity, and other investment interests in the Portfolio Companies, including interests in Infinidat Ltd. ("Infinidat"), SGP Koolspan, Koolspan, ETR 1, eToro Group Ltd. ("eToro"), Maradin Ltd., Arineta, BEH, Tel Aviv Executive Helicopters Ltd., Vimodo Ltd., ION Crossover Partners II LP, MoreTech Ventures II (Cayman), L.P., Quris AI Technologies Ltd., Bubble Workplace, Keddem Bioscience Ltd., and Laminate Medical Technologies Ltd.

### 2. Debtors' Prepetition Capital Structure and Scintilla Debt

On December 5, 2019, MII entered into a facility agreement with Scintilla, under which MII borrowed $7.5 million; MII later borrowed additional principal amounts of $2.5 million and $5.0 million under amendments to that facility, for a total principal amount of $15.0 million under the 2019 facility.

On February 16, 2023, MII entered into an additional facility agreement with Scintilla under which MII borrowed another $5.0 million. Moshe Yanai and Rachel Yanai executed pledge agreements pledging their membership interests in MII to secure MII's obligations to Scintilla, and a June 28, 2023, side letter required MII to apply proceeds of any disposition of eToro shares toward prepayment of Scintilla's loans.

On August 23, 2023, MII entered into a third loan facility agreement under which MII borrowed an additional principal amount of $18,208,316.00 from Scintilla.

In 2025, after additional defaults and liquidity issues, MII obtained additional financing from Scintilla under an April 10, 2025 loan agreement and, on August 1, 2025, MII and Scintilla entered into the Asset Sale and Paydown Agreement. In connection with the August 1, 2025 transactions, MII granted Scintilla first-priority security interests in substantially all of MII's assets, and MII Aviation granted Scintilla a first-priority pledge in substantially all of MII Aviation's assets.

As of the Petition Date, the Debtors' schedules reflected $48,634,881.00 due to Scintilla. As part of the Plan Settlement, the Scintilla Claim is to be Allowed in the amount of $46,491,605.00 subject to reduction only by the Scintilla Claim Mitigation Amount (if any).

In addition to the Scintilla debt, various parties have asserted substantial unsecured Claims against MII and MII Aviation arising from purported prepetition loans, advances, or related arrangements. The Debtors scheduled all of those asserted unsecured obligations as disputed,

including approximately $72.7 million in unsecured debt asserted against MII and approximately $2.07 million in unsecured debt asserted against MII Aviation.

### 3. Prepetition Defaults, Management Transition, and Related Litigation

On September 24, 2024, Scintilla declared MII to be in default under the prepetition credit agreements, alleging various breaches by MII, including allegations that MII sold shares of a portfolio company but failed to apply sale proceeds to prepay the Scintilla debt. MII failed to make a regularly scheduled payment on October 1, 2024, and MII and Scintilla later entered into an omnibus amendment and waiver, effective December 31, 2024, extending the maturity date to June 30, 2025.

On January 27, 2025, Scintilla served another notice of default in connection with the Prepetition Credit Agreements. On January 28, 2025, Scintilla exercised voting and consent rights under the pledge agreements to remove Moshe Yanai as manager of MII and appoint Mr. Toshav as the new manager, and on January 30, 2025, Scintilla accelerated all loans. The Committee has alleged that Mr. Zack Keinan, the principal at Scintilla, and Mr. Toshav have had a longstanding personal and professional relationship dating back to at least 2016.

Subsequently, Mr. and Mrs. Yanai filed the action captioned *Moshe Yanai, Rachel Yanai, and Michal International Investment LLC v. Zack Keinan, Individually and as General Partner of Scintilla Holdings Ltd., Scintilla Holdings Ltd., as General Partner of Scintilla Fund LP, and Boaz Toshav*, Case No. 2584CV00565, in the Massachusetts Superior Court. Among other things, the Yanais, purporting to act on behalf of MII, challenged Scintilla's efforts to foreclose on the Yanais' membership interests in MII and Mr. Toshav's appointment as manager of MII. As of the Petition Date, the Massachusetts Superior Court had rejected Mr. Yanai's efforts to remove Mr. Toshav as manager and dismissed most of the Yanais' claims against Scintilla, though the litigation remained pending.

Related proceedings also were pending in Israel. On March 27, 2025, Scintilla commenced an involuntary insolvency proceeding against Mr. Yanai in the Magistrate's Court in Tel-Aviv-Jaffe, Israel, and a trustee was appointed to administer Mr. Yanai's assets and liabilities. Insolvency proceedings also were pending as of the Petition Date in Israel with respect to certain MII Affiliates, including Tel Aviv Executive Helicopters Israel Corp. and Maradin Ltd.

In addition, Shaked Partners II Fund, LP filed litigation against, among others, MII and Mr. Yanai in October 2025 in the action captioned *Shaked Partners II Fund LP v. Moshe Yanai, et al.*, Case No. 850469/2025 filed in the Supreme Court of the State of New York. MII denied liability, and Shaked voluntarily dismissed MII from the action without prejudice on February 4, 2026.

### 4. Events Precipitating the Chapter 11 Filing

The Debtors commenced the Chapter 11 Cases against the backdrop of liquidity constraints, defaults under the Scintilla financing arrangements, disputes over control of MII, pending litigation in multiple forums, and the need to preserve and maximize the value of the Debtors' portfolio assets. Moreover, in the First Day Declaration, the Debtors asserted that Mr. Yanai engaged in years of misconduct and questionable business practices at the Debtors,

including alleged misrepresentations to contractual counterparties, breaches of credit agreements, commingling of personal and the Debtors' assets, use of the Debtors' assets to pay personal expenses, and actions taken without corporate authority.

The Plan Proponents believe that the Combined Disclosure Statement and Plan provides a path to preserve estate value, avoid further litigation, transfer liquidation and Claims administration to an independent Liquidating Trustee, and provide creditors with distributions consistent with the priorities of the Bankruptcy Code.

## B. The Chapter 11 Cases

### 1. First Day Orders

On the Petition Date, each Debtor commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors requested joint administration for administrative purposes only and continued to operate their businesses and manage their properties as debtors in possession.

The Debtors' First Day Motions included: (i) the Debtors' motion for joint administration [Docket No. 26]; (ii) the Debtors' motion to file a consolidated creditor matrix and consolidated list of the top twenty unsecured creditors [Docket No. 27]; (iii) the Debtors' cash management motion [Docket No. 28]; and (iv) the Debtors' motion restating and enforcing the protections of sections 362, 365, 525, and 541(c) of the Bankruptcy Code [Docket No. 29]. The Debtors presented those First Day Motions at a hearing held on March 3, 2026, at 2:00 p.m. before the Honorable Laurie S. Silverstein.

On March 3, 2026, the Bankruptcy Court entered: (i) the order directing joint administration of the Chapter 11 Cases for procedural purposes only [Docket No. 50]; (ii) the order authorizing the Debtors to file a consolidated creditor matrix and consolidated top-twenty list [Docket No. 51]; and (iii) the interim order authorizing the Debtors to continue operating their cash management system, honor certain related prepetition obligations, and maintain existing business forms [Docket No. 52]. On March 6, 2026, the Bankruptcy Court entered an order restating and enforcing the automatic stay, anti-discrimination provisions, and ipso facto protections under sections 362, 365, 525, and 541(c) of the Bankruptcy Code [Docket No. 61], and the Debtors filed a related notice of that order [Docket No. 63]. The Bankruptcy Court later entered a final cash management order on April 14, 2026 [Docket No. 151].

### 2. Retention of Professionals

The Debtors and the Committee have retained professionals in these Chapter 11 Cases to assist with administration, asset preservation, litigation, Claims analysis, and plan formulation. In particular, the Debtors sought authority to retain Arbel Capital Advisors LLC as restructuring and financial advisor and to designate Daniel Sasson as Chief Restructuring Officer [Docket No. 31], to retain Chipman Brown Cicero & Cole, LLP ("Chipman Brown") as counsel [Docket No. 32], and to retain Silver Birch Group, Inc. and BA Securities, LLC as investment banker [Docket No. 33]. The Bankruptcy Court entered orders authorizing: (i) Arbel Capital Advisors LLC's retention and Daniel Sasson's designation as Chief Restructuring Officer, effective as of February 2, 2026 [Docket No. 152]; (ii) Chipman Brown's retention as counsel to the Debtors, effective as

of the Petition Date [Docket No. 153]; and (iii) Silver Birch Group, Inc. and BA Securities, LLC's retention as investment banker, effective as of the Petition Date [Docket No. 156]. The Bankruptcy Court also entered an order establishing procedures for interim compensation and reimbursement of professionals [Docket No. 150] and an order approving ordinary course professional retention and compensation procedures [Docket No. 155].

### 3. Appointment of the Committee

On February 16, 2026, the U.S. Trustee appointed the Committee comprised of: (i) Amos & Daughters Investments & Partners; (ii) Abraham Jacob Neyman; and (iii) Shaked Partners II Fund, LP.

The Committee retained McGuireWoods LLP as lead counsel and Faegre Drinker Biddle & Reath LLP as Delaware co-counsel. The Committee filed its application to retain McGuireWoods LLP on March 9, 2026 [Docket No. 67], and the Bankruptcy Court entered the order approving that retention on April 10, 2026 [Docket No. 133], effective as of February 17, 2026. The Committee filed its application to retain Faegre Drinker Biddle & Reath LLP on April 1, 2026 [Docket No. 122], and the Bankruptcy Court entered the order approving that retention on April 21, 2026 [Docket No. 170], effective as of February 26, 2026. The Committee also filed an application to retain Alvarez & Marsal North America, LLC as financial advisor and potential expert, as needed, on April 2, 2026 [Docket No. 127], filed a supplemental declaration in support of that retention on April 21, 2026 [Docket No. 169], and obtained an order approving Alvarez & Marsal North America, LLC's retention on April 22, 2026 [Docket No. 174], effective as of March 18, 2026.

### 4. The DIP Facility/Cash Collateral

On March 10, 2026, the Debtors filed the DIP Motion, seeking authority to obtain postpetition financing from Scintilla as DIP lender, to grant liens and superpriority administrative expense status, to use cash collateral, to grant adequate protection, and to modify the automatic stay [Docket No. 70]. The proposed DIP facility contemplated a senior secured superpriority delayed-draw facility in the aggregate principal amount of $4.95 million, consisting of $1.65 million of new-money loans and a $3.3 million roll-up or rollover of Scintilla's asserted prepetition secured obligations.

The Committee expressed its intent to object to the DIP Motion, and the proposed DIP financing generated various other objections and scheduling disputes. During an April 22, 2026 status conference regarding the financing disputes, the Debtors represented to the Court that the Debtors would no longer seek to incur postpetition debt under the DIP Motion and would instead seek authority only to use asserted cash collateral in light of the Debtors' expected receipt of proceeds from the disposition of MII's investment in Infinidat and the Debtors' expected receipt of certain shares in eToro, which the Debtors believed provided sufficient funds to meet anticipated administrative expenses expected to be incurred in the course of the Chapter 11 Cases.

On April 29, 2026, the Debtors filed a supplement to the DIP Motion [Docket No. 189] to modify the requested relief from incurrence of DIP financing to use of cash collateral, including

requesting entry of an interim cash collateral order. The Committee expressed its intent to object to the supplement and the proposed interim cash collateral order.

On May 7, 2026, the Bankruptcy Court entered an agreed scheduling order regarding cash collateral matters [Docket No. 204], which set deadlines for interim cash collateral objections, final cash collateral objections, replies, discovery, and any related lien challenge. The scheduling order also granted standing to the Committee to pursue causes of action against Scintilla on behalf of the Estates. The scheduling order required any Committee challenge to the Scintilla Liens to be commenced by June 1, 2026 and contemplated coordinated discovery and hearing procedures for cash collateral and any lien challenge.

On June 1, 2026, after the Debtors submitted a narrower proposed interim cash collateral order that resolved the Committee's objections to the requested interim relief, the Bankruptcy Court, after requiring certain additional changes, entered the Interim Cash Collateral Order authorizing the Debtors' limited use of cash collateral. Specifically, the Interim Cash Collateral Order authorized cash collateral use solely to pay certain mediator fees, directors and officers insurance premiums, and certain Statutory Fees. The Interim Cash Collateral Order scheduled the final hearing on the Debtors' cash collateral request for July 8-10, 2026, with objections due June 25, 2026.

**5. The Committee's Complaint**

On June 1, 2026, the Committee commenced Adversary Proceeding No. 26-50412 (LSS) against Scintilla by filing a complaint [Adv. Docket No. 1] (along with any amendments or replacement pleadings, the "Complaint") on behalf of the Debtors' Estates. The Complaint, which will be resolved pursuant to confirmation of this Combined Disclosure Statement and Plan, sought, among other relief, to avoid and recover alleged preferential and fraudulent transfers under sections 547 and 548 of the Bankruptcy Code, avoid any unattached or unperfected liens, equitably subordinate Scintilla's asserted Claims, reduce Scintilla's asserted Claims to the extent they include usurious or other unauthorized, improper, or avoidable charges, fees, interest, amounts, or obligations, and obtain a declaration that cause exists to deny Scintilla any right to credit bid its disputed Claims in any sale of the Debtors' Assets under section 363 of the Bankruptcy Code.

In its Answer and Affirmative Defenses [Adv. Docket No. 7], Scintilla asserted that it disputes all of the allegations set forth in the Complaint and intended to vigorously defend the Scintilla Claim and Scintilla Liens.

Under the agreed scheduling order, the Bankruptcy Court scheduled a consolidated evidentiary hearing and bench trial on the DIP Motion, as supplemented, and any lien-challenge claims asserted in the Committee's adversary proceeding for July 8-10, 2026. The scheduling order further provided that any order or judgment entered in connection with that consolidated hearing will not bar, waive, estop, enjoin, or release any additional Causes of Action that the Debtors' Estates may have against Scintilla, which additional Causes of Action would be tried at a later date.

On June 1, 2026, the Bankruptcy Court also entered an order approving a stipulation extending, solely with respect to the Committee and any successor to the Debtors' Estates, the

deadline to obtain standing and commence prosecution of claims or causes of action against certain Scintilla-related parties other than the lien challenge claims through December 1, 2026. The extension preserved, among other things, claims and causes of action against Scintilla other than the lien challenge claims and claims against other Scintilla-related parties that otherwise could have been subject to proposed releases in the proposed final cash collateral order. As set forth herein, this Combined Disclosure Statement and Plan resolves all matters raised in the Complaint and releases all potential claims that the Debtors have, or may have, against Scintilla, including those that might be asserted derivatively by the Committee.

#### 6. Motion for Bidding Procedures and Asset Sale

On May 29, 2026, the Debtors filed their *Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (A)(I) Approving the Bidding Procedures for the Sale of Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases, (VI) Authorizing and Approving the Debtors Entry into the Stalking Horse APA, (VII) Authorizing and Approving Bid Protections, and (VIII) Granting Related Relief and (B)(I) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief, filed May 29, 2026* [Docket No. 256] (the "Sale Motion"). Through the Sale Motion, the Debtors sought approval of bidding procedures, sale-related deadlines, assumption and assignment procedures, entry into a stalking horse asset purchase agreement, bid protections, and authority to sell substantially all of the Debtors' assets free and clear of liens, claims, interests, and encumbrances. The Sale Motion proposed a hearing on the bidding procedures for June 23, 2026, at 10:00 a.m., with objections due June 16, 2026, at 4:00 p.m. The Debtors' proposed sale timeline contemplated non-binding bids in July 2026, a binding bid deadline of August 7, 2026, an auction on August 11, 2026, if necessary, and a sale hearing on August 19, 2026. Scintilla agreed to serve as stalking horse bidder for the Debtors' assets, proposing an approximately $5 million credit bid for the Assets of MII Aviation and an additional $5 million credit bid for the Assets of MII. Both Mr. Donovan and Mr. Yanai objected to the proposed sale process and bidding procedures. The Committee expressed its intent to object to the Sale Motion, but its deadline to object was extended indefinitely in connection with the Plan Settlement.

#### 7. Other Motion Practice

On April 17, 2026, Mr. Yanai filed a motion seeking removal of Mr. Toshav as the Debtors' manager and appointment of an independent chapter 11 trustee [Docket No. 162]. On May 15, 2026, the Debtors filed their objection to such motion [Docket No. 229]. On June 16, 2026, Mr. Yanai withdrew the motion [Docket No. 289].

On April 24, 2026, Scintilla filed a motion seeking leave to conduct discovery pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 against virtually all of the Debtors' unsecured creditors [Docket No. 180]. The Committee objected to the Rule 2004 motion on May 1, 2026 [Docket No. 194], and Scintilla filed a reply in support of the Rule 2004 motion on May 12, 2026

[Docket No. 215]. Following a hearing on May 13, 2026, the Bankruptcy Court denied the Rule 2004 motion by order entered on May 22, 2026 [Docket No. 245].

In connection with the sale process, the Debtors filed on April 1, 2026, their *Motion (I) For Leave to Conduct Discovery Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 Against Christopher R. Donovan, Sr., Co-Manager of Boston Executive Helicopters LLC, (II) Turnover of Documents and Information Pursuant to Section 542(e) of the Bankruptcy Code, and (III) Granting Related Relief, filed April 1, 2026* [Docket No. 121] (the "Donovan 2004 Motion"). Thereafter, on April 14, 2026, the Bankruptcy Court entered its Order Granting the Donovan 2004 Motion [Docket No. 154] (the "Donovan 2004 Order"). Mr. Donovan responded to the Donovan 2004 Motion after the entry of such order on May 5, 2026 [Docket No. 198]. In light of Mr. Donovan's failure to comply with the Donovan 2004 Order, on May 8, 2026, the Debtors filed a motion to compel requesting that the Bankruptcy Court find Mr. Donovan in contempt of such order [Docket No. 212]. Mr. Donovan responded on May 21, 2026, with the *Emergency Motion to Vacate, Modify, or Reconsider D.I. 154, Integrated Declaration, and Proposed Order*, filed May 21, 2026 [Docket No. 239]. The various matters relating to the Donovan 2004 Order were heard on July 8, 2026, by the Bankruptcy Court, which granted in part and denied in part the Donovan 2004 Motion.

On May 5, 2026, Mr. Donovan filed an "Omnibus Filing Package" consisting of, among other things, a motion seeking allowance of alleged unpaid wages as a priority Claim under section 507(a)(2) of the Bankruptcy Code [Docket No. 199]. Mr. Donovan's "Omnibus Filing Package" requested expedited consideration based on, among other things, alleged ongoing financial harm and alleged conditioning of wage payments on a potential BEH sale transaction. On June 30, 2026, the Debtors filed their *Objection to Claim Filed by Christopher R. Donovan, Sr., and Motion of Christopher R. Donovan Sr. for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2)* [Docket No. 308].

On May 29, 2026, the Debtors filed the Motion to Extend Exclusivity. The Motion to Extend Exclusivity sought to extend the exclusive plan-filing period through August 31, 2026 and the exclusive solicitation period through October 29, 2026, with a hearing scheduled for June 23, 2026 and objections due June 16, 2026.

On July 2, 2026, the Debtors and Scintilla filed *Debtors' and Scintilla Fund L.P.'s Joint Motion to Strike Unauthorized and Prohibited Filings of Moshe Yanai* [Docket No. 316] (the "Motion to Strike") asserting that Mr. Yanai lacks standing and is enjoined by the Israeli bankruptcy court, where he is subject to insolvency proceedings, from making further filings or otherwise engaging in legal proceedings relating to assets under the Israeli trustee's control without prior leave of the Bankruptcy Court. The Court conducted an evidentiary hearing on the Motion to Strike on September 17, 2026, and took the matter under advisement.

On July 7, 2026, Mr. Donovan filed his *Emergency Motion for Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a), or, in the Alternative, an Examiner Pursuant to 11 U.S.C. § 1104(c), for the Removal of Boaz Toshav as Manager, to Stay Any Proposed Global Settlement, Chapter 11 Plan, and Professional Fee Payments Pending Appointment and Independent Review, and for Related Relief* [Docket No. 321] (the "Donovan Trustee Motion"). The Debtors, Scintilla, and the Committee, each filed objections to the Donovan Trustee Motion

[Docket Nos. 398, 406, and 408]. The objecting parties have requested that any hearing on the Donovan Trustee Motion be conducted only in the event that confirmation of the Combined Disclosure Statement and Plan is denied. As of the date of this Combined Disclosure Statement and Plan, the Court has not scheduled a hearing on the Donovan Trustee Motion.

Following mediation, the Debtors, the Committee, and Scintilla agreed to pursue a joint plan, and the agreed terms contemplate that all current motion practice and related litigation, including the Sale Motion and Motion to Extend Exclusivity, will be adjourned without setting a new date while the parties focus on drafting and obtaining confirmation of the Combined Disclosure Statement and Plan.

By agreement reached at mediation, the Debtors are prohibited from taking any Out-of-the-Ordinary-Course Action without first obtaining the Committee's consent, not to be unreasonably withheld.

Pursuant to the Confirmation Order, the DIP Motion and Sale Motion shall be deemed to have been withdrawn on the Effective Date.

### 8. Monthly Reporting, Schedules, and Meeting of Creditors

The Debtors have filed monthly operating reports, including the monthly operating reports for the reporting periods ending February 28, 2026 [Docket Nos. 78 and 79], March 31, 2026 [Docket Nos. 146 and 147], April 30, 2026 [Docket Nos. 216 and 217], May 31, 2026 [Docket Nos. 291 and 292], June 30, 2026 [Docket Nos. 333 and 334], and July 31, 2026 [Docket Nos. 372 and 373]. On March 3, 2026, the Debtors filed their reports required under Bankruptcy Rule 2015.3 [Docket No. 57 and MII Docket No. 19]. The Debtors filed their Schedules and Statements of Financial Affairs on February 10, 2026 [Docket Nos. 8, 9, 10, and 11]. The Debtors subsequently amended Schedule G for MII Aviation on June 18, 2026, to add two leases under which MII Aviation is a lessee [Docket No. 297]. The section 341 meeting of creditors was held and concluded on March 9, 2026.

### 9. Claims Reconciliation Process and Bar Date

On February 25, 2026, the Debtors filed the Bar Date Motion. On March 23, 2026, the Bankruptcy Court entered the Bar Date Order, which, among other things, established May 15, 2026, at 11:59 p.m. (prevailing Eastern Time) as the General Bar Date and initial Administrative Expense Bar Date, and July 31, 2026, at 11:59 p.m. (prevailing Eastern Time) as the Governmental Bar Date.

Thus, pursuant to the Bar Date Order, as further described therein:

(a) Any Person or Entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and Governmental Unit), that holds, or seeks to assert, a Claim against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date including, without limitation, secured claims, unsecured priority claims (including, without limitation, claims entitled to priority under sections 507(a)(4) through 507(a)(10) and 503(b)(9) of the Bankruptcy Code) and

unsecured non-priority Claims, must properly file a Proof of Claim on or before the applicable Bar Date in order to share in the Debtors' Estates.

(b) Governmental Units must submit Proofs of Claim by the Governmental Bar Date.

Following the entry of the Bar Date Order, the Debtors filed objections to certain Claims, including those Filed by certain members of the Committee. In addition, one of the Debtors' alleged creditors, Mr. Elon Kohlberg, initiated an adversary proceeding by Filing a complaint seeking, among other things, allowance of his alleged Claim and a declaratory judgment with respect to purported liens against or trust rights in the proceeds of certain of the Infinidat shares held by MII. On June 9, 2026, MII answered Mr. Kohlberg's complaint and asserted certain cross-claims, including a request for a declaratory judgment that Mr. Kohlberg's asserted Claim is equity, or a personal obligation of Mr. Yanai, or otherwise invalid and subject to disallowance in whole or in part and that the alleged liens and trust rights were invalid or otherwise unenforceable. Mr. Kohlberg has asserted that the Debtors and, upon the Effective Date, the Liquidating Trustee, must maintain a segregated bank account holding $744,250 representing the purported value of Mr. Kohlberg's asserted trust beneficiary interests in certain Infinidat shares, pending resolution of the Kohlberg Action. The Plan Proponents and Scintilla dispute that any reserve is required and dispute that Mr. Kohlberg has established or can establish the existence of any trust beneficiary rights in the Debtors' proceeds of Infinidat stock. In the event Mr. Kohlberg is successful in establishing the validity of his trust beneficiary interests, the Cash Assets available for distribution under the Plan may be reduced by an amount up to $744,250. Mr. Kohlberg reserves all rights to object to confirmation of the Combined Disclosure Statement and Plan on any grounds, including on the grounds that a reserve is required. The Plan Proponents and Scintilla reserve all rights, defenses, objections, and claims relating to Mr. Kohlberg's asserted trust beneficiary interests and his proof of claim asserted against MII.

On June 12, 2026, Mr. Yanai filed an objection to the Proof of Claim filed by Scintilla [Docket No. 286]. On July 10, 2026, Scintilla filed its response to Mr. Yanai's objection [Docket No. 329].

The Debtors' and the Committee's Claims review is ongoing, and all estimates remain subject to change based on Filed Proofs of Claim, Claim objections, any stipulated Bankruptcy Rule 3018(a) voting orders, and any Claims resolved or Allowed under the Combined Disclosure Statement and Plan or otherwise.

### 10. Settlements

Section 1123(b)(3) of the Bankruptcy Code permits a plan to provide for the settlement or adjustment of any claim or interest belonging to the Debtors or their Estates. The Combined Disclosure Statement and Plan implements the settlement reached at mediation among the Debtors, the Committee, and Scintilla, and confirmation of the Combined Disclosure Statement and Plan shall constitute Bankruptcy Court approval of such settlement. The Plan Proponents reserve all rights to amend or modify the Combined Disclosure Statement and Plan in accordance with such settlement and applicable law.

Following mediation before retired Bankruptcy Judge Robert Drain (Bankr. S.D.N.Y.), the Debtors, the Committee, and Scintilla reached an agreement on the principal terms of a global settlement, including terms of a proposed joint combined disclosure statement and plan of liquidation. The material terms are as follows:

(a) The Combined Disclosure Statement and Plan will be proposed by the Debtors and the Committee, subject to Scintilla's approval. The Combined Disclosure Statement and Plan will not provide for substantive consolidation of the Debtors.

(b) Motion practice and related litigation, including the Sale Motion and the Motion to Extend Exclusivity, will be adjourned without setting a new date, and related discovery will cease while the parties focus on confirmation of the Combined Disclosure Statement and Plan.

(c) To the extent necessary, the parties will enter stipulated orders under Bankruptcy Rule 3018(a) permitting voting by creditors whose Claims are subject to pending Claim objections or adversary proceedings, including procedures establishing the amount and classification of such Claims solely for voting purposes.

(d) The Debtors will not take any Out-of-the-Ordinary-Course Action without Committee consent, not to be unreasonably withheld, including any transfer or sale of any material asset, including eToro stock. Scintilla and the Committee will not file substantive motions, claim objections, or other material requests for relief except as agreed, provided that the Debtors and the Committee's professionals may file fee applications.

(e) The Combined Disclosure Statement and Plan will appoint a Liquidating Trustee with responsibility for liquidating estate assets, pursuing estate claims that are not released, making Distributions, and objecting to Claims not otherwise resolved under the Combined Disclosure Statement and Plan. The Liquidating Trustee will have the exclusive right to object to Claims.

(f) The Liquidating Trustee's compensation arrangement shall be set forth in the Liquidating Trust Agreement and shall be subject to reasonable approval of the Debtors, the Committee, and Scintilla. The Liquidating Trustee shall be compensated from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement.

(g) The Combined Disclosure Statement and Plan will establish an Advisory Committee consisting of Committee members and a Scintilla representative; the Advisory Committee will not have authority to direct the Liquidating Trustee.

(h) The Liquidating Trustee may be replaced only for cause or upon resignation, death, or incapacity, with consent of (i) the Committee-side Advisory Committee members and (ii) the Scintilla Advisory Committee member, subject to certain additional fallback processes if they cannot agree.

(i) No professionals currently employed by the Debtors, the Committee, or Scintilla may be engaged by the Liquidating Trustee; provided, however, the Liquidating Trustee, subject to unanimous approval of the Advisory Committee, may engage the Debtors' investment banker, Silver Birch Group, Inc., and BA Securities, LLC.

(j) The Scintilla Liens over MII's assets will be avoided and transferred to the MII Estate, including any governance rights pledged by MII in subsidiaries or portfolio companies in connection with such liens.

(k) The Scintilla Liens against MII Aviation's assets shall be deemed valid and properly perfected, and will not be avoided or transferred to either Estate; Scintilla may recover from proceeds of any sale or other monetization of BEH (including any sale or disposition of MII Aviation's equity interest in BEH) only after payment of BEH's creditors and reimbursement of MII Aviation Allowed Administrative and Priority Non-Tax Claims, including any Intercompany Administrative Expense Claim.

(l) The Debtors' total Allowed Administrative and Priority Non-Tax Claims will be paid from the Debtors' Cash at the Effective Date or when such expenses are Allowed, and any Allowed Administrative Expense Claims paid by MII in excess of fifty percent (50%) of the Debtors' total Allowed Administrative Expense Claims and any Allowed MII Aviation Priority Non-Tax Claims paid by MII will be subject to an Intercompany Administrative Expense Claim recoverable from BEH proceeds.

(m) The Scintilla Claim will be Allowed in the amount of $46,491,605.00, subject only to reduction by the Scintilla Claim Mitigation Amount (if any).

(n) The Combined Disclosure Statement and Plan will include exculpation for the Committee Parties in their capacity as such and exculpation for the Debtors' Retained Professionals and postpetition officers and management solely in their capacities as such.

(o) The Combined Disclosure Statement and Plan will provide Estate releases of (i) Scintilla, its principals, agents, and professionals, and (ii) Scintilla Holdings, its principals, agents, and professionals, but no other releases for other parties except as expressly stated, provided that recovery on claims against Mr. Boaz Toshav shall be limited to available insurance proceeds.

(p) The Committee's Complaint against Scintilla shall be dismissed with prejudice on the Effective Date.

(q) The Debtors shall preserve all of their books and records in their possession, custody, or control and the Liquidating Trustee shall, upon appointment, have full control and ownership of them.

Before agreeing to the Plan Settlement that formed the basis for this Combined Disclosure Statement and Plan, the Committee carefully evaluated (i) the strength of the claims in the

Complaint and probability of success on the merits, (ii) the prior non-bankruptcy court rulings relevant to the Committee's applicable claims, (iii) the availability and admissibility of relevant evidence to establish the Committee's claims in the context of the Debtors' Bankruptcy Cases, (iv) the cost to pursue litigation through trial and appeals, including legal and expert costs (potentially in multiple foreign jurisdictions), (v) the availability of resources of the Debtors to fund the further litigated pursuit of such causes of action (or the potential availability of alternative fee structures to continue litigation), (vi) the time that would be required to conclude litigation and appeals of such claims and how such delay would affect the disposition of the Debtors' Bankruptcy Cases, (vii) the challenges of enforcing or collecting any award on the Committee's claims, which involve numerous foreign parties, and (viii) the broader interests of creditors concerning the outcome of the litigation.

The Committee determined that the Plan Settlement—by preserving Causes of Action (including claims relating to the Infinidat transaction), avoiding the Scintilla Liens on all MII Assets, reducing the Scintilla Claim to the amount determined by the Committee to be appropriate (subject to further reductions from recovery on certain property dispositions), and facilitating a confirmable chapter 11 plan that would result in appointment of an independent liquidating trustee to administer the Debtors' Assets and pursue Retained Causes of Action—represented a highly favorable outcome given the risk and expense associated with the Committee's claims and the likely costs and delays associated with further litigation. The Committee determined that, while the Committee's claims against Scintilla were meritorious, the Debtors' Estates did not necessarily have the resources or time necessary to pursue these claims through trial and appeals. Absent the Plan Settlement, the Debtors' Chapter 11 Cases would likely have been converted to chapter 7, as the Debtors had no access to indisputably unencumbered cash, no prospect of near-term cash inflows that could be utilized as cash collateral, and no prospect of a confirmable plan. In chapter 7, a trustee would have limited ability to dispute the Scintilla Liens or the Scintilla Claim given the absence of unencumbered cash to fund any disputes and the difficulty of retaining contingency counsel to pursue claims that are generally defensive in nature (avoidance of the Scintilla Liens and reduction of the Scintilla Claim), which would result in a less favorable outcome for creditors. Accordingly, the Committee determined that it was in the interests of the Debtors' Estates and creditors to enter into the Plan Settlement.

In reaching the Plan Settlement, the Committee and its professionals also considered the nature and strength of the defenses available to Scintilla in the Committee Adversary Proceeding, including with respect to the various challenges to the validity and amount of the Scintilla Claim and the Scintilla Liens. Among other things, the Committee considered that MII Aviation was not entitled to assert preference claims against Scintilla given the absence of any antecedent debt of MII Aviation, and MII Aviation may not have been rendered insolvent by granting the Scintilla Liens because MII Aviation's obligations to Scintilla were non-recourse. These challenges may have presented obstacles to the Committee's avoidance claims against Scintilla at MII Aviation. The Committee further considered that Scintilla asserted various other defenses to the claims asserted in the Complaint. The outcome of those challenges involved meaningful litigation risk for all parties.

The agreed amount of the Scintilla Claim to be Allowed under the Combined Disclosure Statement and Plan was the product of a careful investigation by the Committee in close coordination with its professionals, including detailed review of all interest calculations and potential offsets. The agreed amount of $46,491,605.00, which remains subject to further reduction by the Scintilla Claim Mitigation Amount, if any, represents a meaningful reduction from the amount asserted by Scintilla and reflects the Committee's assessment of the likelihood of success on the various challenges available to objectors and the Committee, including the claims asserted in the Complaint. As part of this analysis, the Committee and its advisors evaluated whether Massachusetts state usury law would operate to reduce or eliminate the Scintilla Claim, as had been alleged by the Committee and certain other parties in interest. That analysis took into account, among other things, that each of the Prepetition Credit Agreements contains a governing law provision specifying Israeli law, that Israeli law does not impose usury limitations on commercial loans of the type at issue, and that a state court in Massachusetts had already enforced the contractual provisions requiring disputes arising under the loan documents to be resolved under Israeli law and in Israeli courts. Although the usury argument presented colorable theories, the Committee determined that there were potential defenses and litigation risks associated with that challenge and factored those risks into the negotiated reduction of the Scintilla Claim as part of the broader settlement agreement reflected in the Plan Settlement, which should be considered in its totality.

The Combined Disclosure Statement and Plan also contains a mechanism—the Scintilla Claim Mitigation Amount—by which, should Scintilla receive any proceeds from non-Debtor real estate assets pledged in support of its loans, including the Yanai Real Estate Proceeds, the Scintilla Claim will be correspondingly reduced. This mechanism addresses concerns regarding the potential for Scintilla to receive a double recovery on account of collateral securing its loans outside of the Debtors' Estates.

As to MII Aviation in particular, the Committee determined that MII Aviation had no cash or reasonable prospect of obtaining cash to fund litigation, and that, to the extent MII Aviation had any valid unsecured creditors at all, such unsecured creditors were likely to also have claims against BEH, a non-Debtor whose assets are not subject to the Scintilla Liens, that would be entitled to payment from BEH before any distribution from BEH could be made to MII Aviation on account of its ownership interest. Accordingly, the Committee determined that the reduction of the Scintilla Claim, the commitment by the Debtors to cease all non-ordinary-course actions without the consent of the Committee until the Liquidating Trustee could be appointed on the Effective Date, and the agreement regarding treatment of the Intercompany Administrative Expense Claim were collectively evaluated to be favorable terms under the circumstances.

The Plan Proponents determined that the Plan Settlement reflects a highly favorable resolution of the Complaint and therefore strongly recommend that creditors vote in favor of the Combined Disclosure Statement and Plan.

### 11. The Hangar Leases

MII Aviation is the assignee under two Hangar Storage Space Agreements with Eastern Air Center, Inc., as Trustee of EAC Realty Trust II ("FlightLevel"), for Hangar Units 7 and 8 at Norwood Memorial Airport (collectively, the "Hangar Leases"). The Hangar Leases were not included on the Debtors' initial Schedules of Assets and Liabilities [Docket No. 8], but on June 18, 2026, after the Debtors' current management learned of the existence of the Hangar Leases as potential executory contracts of the Debtors, the Debtors amended Schedule G to include the Hangar Leases [Docket No. 297].

The Debtors did not assume or reject the Hangar Leases within the time period prescribed by section 365(d)(4) of the Bankruptcy Code, and no written holdover agreement currently exists between FlightLevel and MII Aviation. FlightLevel asserts that the Hangar Leases are deemed rejected, that MII Aviation has no right to remain on the premises absent FlightLevel's consent to a holdover tenancy, and that FlightLevel is under no obligation to enter into any such agreement. FlightLevel has reserved all rights with respect to the Hangar Leases, including the right to seek immediate surrender of the premises, and has indicated that it intends to object to confirmation of the Combined Disclosure Statement and Plan to the extent the Combined Disclosure Statement and Plan provides for continued occupancy of the premises without FlightLevel's agreement.

The Plan Proponents dispute FlightLevel's characterization of the status of the Hangar Leases. The Plan Proponents contend, among other things, that (a) there are bona fide disputes as to (i) the identity of the lessee or lessees, (ii) the party or parties obligated under the Hangar Leases, (iii) the party currently in possession of the Hangar Leases' premises, and (iv) the application of section 365(d)(4) to the Hangar Leases under the circumstances of these cases, (b) the course of dealing among the parties and the landlord's conduct over an extended period (in accepting payment under the leases from a non-debtor party, permitting that non-debtor party to occupy the premises, and treating that non-debtor party as the tenant) may bear on the treatment and status of the Hangar Leases, and (c) the Combined Disclosure Statement and Plan does not provide for continued occupancy of the premises by the Debtors (who do not occupy the premises currently in any event) and thus is not objectionable. The Plan Proponents reserve all rights, claims, and defenses with respect to the Hangar Leases, including without limitation any rights arising under sections 362 and 365 of the Bankruptcy Code and any defenses to FlightLevel's asserted claims.

The parties are in discussions regarding the treatment of the Hangar Leases. Nothing in this Section IV.B.11. or elsewhere in the Combined Disclosure Statement and Plan shall be deemed an admission by the Plan Proponents or FlightLevel regarding the status, treatment, assumption, rejection, or deemed rejection of the Hangar Leases, or regarding any party's rights or obligations thereunder, and all parties expressly reserve all rights with respect thereto.

## C. Summary of Assets

The Debtors' Assets consist primarily of investment holdings and minimal operating cash. As of the Petition Date, the Debtors had approximately $62,135.00 on hand. After the Petition Date, the sale of Infinidat resulted in a cash recovery by MII of approximately $3.6 million. Additionally, MII holds approximately 94,000 shares of publicly traded eToro. As of the initial filing date of this Combined Disclosure Statement and Plan, the total of all such eToro shares has

a notional trading value of approximately $3.6 million. Additional investment holdings include interests in various Portfolio Companies, the value of which remains highly uncertain. MII Aviation owns all of the membership interests in BEH. The Liquidation Analysis attached as Exhibit A includes potential values for certain of these Assets.

Under the Plan Settlement, MII Aviation's interests in BEH and substantially all of MII Aviation's other Assets owned as of the Petition Date remain subject to the Scintilla Liens, which are deemed valid and enforceable against such MII Aviation collateral. The Plan Settlement, however, does not expand the scope of Scintilla Liens on any asset that was not encumbered on the Petition Date (or any asset arising on or after the Petition Date). MII Aviation's Avoidance Actions that arose upon the Petition Date (unless released under this Combined Disclosure Statement and Plan) are not encumbered by the Scintilla Liens. Certain potential commercial tort claims not specifically identified in Scintilla's lien perfection documents (unless released under this Combined Disclosure Statement and Plan) may not be encumbered by the Scintilla Liens, but, as of the filing of this Combined Disclosure Statement and Plan, no such claims have been asserted. Any unencumbered Assets of MII Aviation will vest in the Liquidating Trust on the Effective Date. The value of these unencumbered Assets remains highly uncertain and contingent upon litigation recoveries, but any net proceeds of these unencumbered Assets would be subject to distribution to unsecured creditors of MII Aviation, which does not include Scintilla. Scintilla has reserved all of its rights regarding any determination of whether such assets are encumbered or unencumbered.

Causes of Action and recoveries under D&O Insurance Coverage arising from, among other things, alleged prepetition management misconduct and breaches of fiduciary duties, represent a potential source of recovery for unsecured creditors, separate from the Debtors' investment holdings.

### D. Summary of Treatment of Claims and Equity Interests Under the Combined Disclosure Statement and Plan

#### 1. Summary of Treatment of Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan Proponents have not classified Administrative Expense Claims and Priority Tax Claims, as described in Section V.A. Accordingly, except for Administrative Expense Claims and Priority Tax Claims, all Claims against and Equity Interests in the Debtors are placed in Classes as set forth below.

The following tables classify Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Combined Disclosure Statement and Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### 2. Summary of Treatment of Classified Claims

#### a. Summary of Treatment of Classified Claims and Equity Interests Under the Combined Disclosure Statement and Plan Regarding Michal International Investment, LLC

The following chart summarizes the classification and treatment of the Michal International Investment, LLC Classes:

| Class | Estimates of Allowed Claims in Class | Impairment | Entitled to Vote | Estimated Recovery to Holders of Allowed Claims or Equity Interests | Treatment |
|---|---|---|---|---|---|
| Class 1A – Secured Claims | N/A | N/A | N/A | N/A | Scintilla Liens avoided and transferred to MII Estate |
| Class 2A – Priority Non-Tax Claims | $17,150.00 | No | No (deemed to accept) | 100% | Paid in full in Cash or otherwise rendered Unimpaired |
| Class 3A – General Unsecured Claims | $199,689,237.78 | Yes | Yes | 2%–3% | Pro Rata share of Liquidating Trust Assets available for MII General Unsecured Claims; Scintilla not entitled to Pro Rata share of Toshav-Related Insurance Recovery proceeds |
| Class 4A – Equity Interests | N/A | Yes | No (deemed to reject) | N/A | Equity interests to be cancelled, released, and extinguished as of the Effective Date |

#### b. Summary of Treatment of Classified Claims and Equity Interests Under the Combined Disclosure Statement and Plan Regarding MII Aviation Services, LLC

The following chart summarizes the classification and treatment of the MII Aviation Services, LLC Classes:

| Class | Estimates of Allowed Claims in Class | Impairment | Entitled to Vote | Estimated Recovery to Holders of Allowed Claims or Equity Interests | Treatment |
|---|---|---|---|---|---|
| Class 1B – Secured Claims | $46,491,605.00 | Yes | Yes | Up to available encumbered MII Aviation Asset proceeds after payment of MII Aviation's 50% share of both Estates' Allowed Administrative Expense Claims and MII Aviation's Priority Non-Tax Claims (it being understood that all legitimate claims against BEH would need to be paid in full, assumed or reserved). | As described in Article V.B.5. |
| Class 2B – Priority Non-Tax Claims | $17,150.00 | No | No (deemed to accept) | 100% | Paid in full in Cash or otherwise rendered Unimpaired |
| Class 3B – General Unsecured Claims | $2,658,482.34 | Yes | Yes | 0% | No Distribution from encumbered MII Aviation assets until Scintilla is paid in full on account of the Class 1B Claim; Pro Rata share, if any, of proceeds of unencumbered MII Aviation Assets |
| Class 4B – Equity Interests | N/A | No | No (deemed to accept) | 0% | On the Effective Date, all Equity Interests in MII Aviation shall remain in place and effective |

**E. Potential Claims and Causes of Action**

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action that exist outside of bankruptcy and empowers the Debtors to prosecute certain claims that arise under the Bankruptcy Code, including claims to avoid and recover certain preferential transfers and fraudulent conveyances. Pursuant to the Plan Settlement and section 1123(b)(3)(B) of the Bankruptcy Code, the Combined Disclosure Statement and Plan provides that the Debtors' rights with respect to the Retained Causes of Action will be transferred to the Liquidating Trust, and the Liquidating Trustee will have the authority to investigate, prosecute, collect, abandon, or settle the Retained Causes of Action as the Liquidating Trustee deems appropriate for the benefit of the Liquidating Trust Beneficiaries. The retention and preservation of known and unknown Retained Causes of Action, and their prosecution and liquidation by the Liquidating Trustee, are integral parts of the Combined Disclosure Statement and Plan and the Plan Settlement.

Retained Causes of Action include, without limitation, Avoidance Actions, potential claims under D&O Insurance Coverage and other claims, including, without limitation, claims against prepetition directors, officers, managers, fiduciaries, employees, and other agents of the Debtors, including, without limitation, Boaz Toshav (subject to the limitations set forth in Section X.C.), Moshe Yanai, his Israel insolvency estate, and the estate of the late Rachel Yanai and their respective administrators, estates, assigns, and employers; claims relating to the Infinidat transaction and Portfolio Company matters, including claims against TPG, TPG Growth, Infinidat, preferred shareholders of Infinidat, directors and officers of Infinidat, other beneficiaries of Portfolio Company value, and other Entities in connection with such transactions; claims against potential recipients or beneficiaries of Portfolio Company value; and any claims to recover books, records, or Estate property from Persons or Entities required to provide them to the Liquidating Trustee. The Plan Proponents offer no view on the merits, value, or complete universe of defendants in relation to the Retained Causes of Action, and all such claims, causes of action, and rights are preserved except to the extent expressly released under the Combined Disclosure Statement and Plan. For the avoidance of doubt, the Liquidating Trustee expressly retains the right to seek discovery, including examinations and production of documents pursuant to Bankruptcy Rule 2004 or any other applicable Bankruptcy Rule, Federal Rule of Civil Procedure, Local Rule, or order of the Bankruptcy Court, from any Entity in connection with investigating, prosecuting, evaluating, settling, or otherwise administering any Retained Causes of Action or other Liquidating Trust Assets. The omission of any specific reference to a potential defendant in any Retained Cause of Action is not intended to reflect that such Cause of Action is waived or abandoned.

As described in further detail herein, from and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust and subject to the terms of the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, shall be the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and shall have the exclusive right, authority, standing, and discretion to investigate, institute, prosecute, abandon, settle, or compromise any and all Retained Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise expressly provided in the Combined Disclosure Statement and Plan or the Liquidating Trust Agreement.

### F. Certain Risk Factors to Be Considered

THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING THE RISK FACTORS SET FORTH HEREIN. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION.

Effect of Failure to Confirm the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is not confirmed by the requisite majorities in number and amount as required by section 1126 of the Bankruptcy Code, or if any of the other Confirmation requirements imposed by the Bankruptcy Code are not met, the Chapter 11 Cases may not have sufficient funding to proceed, which may result in conversion to a case under chapter 7 of the Bankruptcy Code or dismissal.

The Combined Disclosure Statement and Plan May Not Be Confirmed. Even if the Plan Proponents receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Disclosure Statement and Plan. Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Disclosure Statement and Plan if it finds that any statutory requirement for confirmation had not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes. If the Combined Disclosure Statement and Plan is not confirmed, it is unclear what Distributions Holders of Claims or Holders of Equity Interests ultimately would receive with respect to their Claims or Equity Interests in a different chapter 11 plan.

Distributions Under the Combined Disclosure Statement and Plan May Be Inconsistent with Projections. Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Disclosure Statement and Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors, including the amount of proceeds from any Causes of Action brought by the Liquidating Trust or the net recovery that may be achieved. Additionally, both the actual amount of Allowed Claims in a particular Class and the funds available for Distribution to such Class may differ from the Plan Proponents' estimates. If the total amount of Allowed Claims in a Class is higher than the Plan Proponents' estimates, or the funds available for Distribution to such Class are

lower than the Plan Proponents' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

"Cramdown." Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; provided, that the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan. If any Impaired Class rejects the Combined Disclosure Statement and Plan, the Plan Proponents reserve the right to seek to confirm the Combined Disclosure Statement and Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Combined Disclosure Statement and Plan or is deemed to have rejected the Combined Disclosure Statement and Plan, the Plan Proponents may request Confirmation of the Combined Disclosure Statement and Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. To the extent the Plan Proponents are unable to confirm the Combined Disclosure Statement and Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code, the Chapter 11 Cases may not have sufficient funding to proceed, which may result in conversion to a case under chapter 7 of the Bankruptcy Code or dismissal.

Claims Estimation. While the Plan Proponents have undertaken their best efforts to estimate the amount of Claims in each Class accurately, the actual amount of Allowed Claims may differ materially from the Plan Proponents' estimates.

Objections to Classification of Claims. To the extent that the Bankruptcy Court finds that a different classification of Claims and Equity Interests is required for the Combined Disclosure Statement and Plan to be confirmed, the Plan Proponents would seek to (a) modify the Combined Disclosure Statement and Plan to provide for whatever classification might be required for confirmation and (b) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Combined Disclosure Statement and Plan, by changing the composition of such Class and the vote required for approval of the Combined Disclosure Statement and Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Disclosure Statement and Plan based upon such reclassification. Except to the extent that modification of classification in the Combined Disclosure Statement and Plan requires resolicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Disclosure Statement and Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Combined Disclosure Statement and Plan's treatment of such Holder, regardless of the Class as to which such Holder ultimately is deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Disclosure Statement and Plan only when a modification materially and adversely affects the treatment of the Claim or Equity Interest of any Holder. To the extent that the

Bankruptcy Court finds that the Combined Disclosure Statement and Plan does not satisfy the requirement that the Combined Disclosure Statement and Plan provide the same treatment for each Claim or Equity Interest of a particular Class unless the Holder of a particular Claim or Equity Interest agrees to a less favorable treatment of its Claim or Equity Interest, the Bankruptcy Court could deny confirmation of the Combined Disclosure Statement and Plan. Disputes relating to classification and/or treatment could result in a delay in the confirmation of the Combined Disclosure Statement and Plan and could increase the risk that the Combined Disclosure Statement and Plan will not be consummated.

Failure to Consummate the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to the Confirmation Date and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Combined Disclosure Statement and Plan, there can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Combined Disclosure Statement and Plan will be confirmed by the Bankruptcy Court. Further, if the Combined Disclosure Statement and Plan is confirmed, there can be no assurance that the Combined Disclosure Statement and Plan will be consummated.

Allowance of Claims May Substantially Dilute Recoveries to Holders of Claims. There can be no assurance that the estimated Claim amounts set forth in the Combined Disclosure Statement and Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors, including with respect to any Administrative Expense Claims, and Disputed General Unsecured Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Allowed General Unsecured Claims under the Combined Disclosure Statement and Plan.

Failure to Identify Litigation Claims or Projected Objections. No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Combined Disclosure Statement and Plan. The Liquidating Trustee may seek to investigate, file, and prosecute Retained Causes of Action and may object to Claims after the Effective Date, irrespective of whether this Combined Disclosure Statement and Plan identifies such Claims or objections to Claims, except if such Claim or Cause of Action was released or exculpated under the Combined Disclosure Statement and Plan or otherwise.

Retained Causes of Action. Pursuant to the Combined Disclosure Statement and Plan, the Liquidating Trust Assets, including the Retained Causes of Action, will be transferred to the Liquidating Trust upon the establishment of the Liquidating Trust on the Effective Date. The Retained Causes of Action include Causes of Action that are not released, waived, or transferred pursuant to the Combined Disclosure Statement and Plan or otherwise. There is no assurance that the Liquidating Trust will be successful in prosecuting any Retained Causes of Action or that such prosecution will generate sufficient proceeds from the Retained Causes of Action for Distribution. To the extent Distributions are possible from the Retained Causes of Action, the timing of any such Distribution is uncertain.

Delays. Any delay in Confirmation of the Combined Disclosure Statement and Plan or delay to the Effective Date could result in additional or increased Administrative Expense Claims. This may result in there being insufficient funds to meet the requirements to confirm the Combined Disclosure Statement and Plan or for the Combined Disclosure Statement and Plan to go effective or result in less or no recovery for Holders of General Unsecured Claims. The Plan Proponents are seeking preliminary approval of the Combined Disclosure Statement and Plan for solicitation of votes on the Combined Disclosure Statement and Plan. In the event that such preliminary approval is delayed or not obtained at all, the Plan Proponents may withdraw the Combined Disclosure Statement and Plan or it may not be confirmed. Any of the foregoing could alternatively result in a possible dismissal of the Debtors' Chapter 11 Cases or conversion to a chapter 7 liquidation.

Plan Settlements. In the event that the Plan Settlement is not approved by the Bankruptcy Court, the Plan Proponents may proceed to seek to confirm the Combined Disclosure Statement and Plan, or to withdraw or modify the Combined Disclosure Statement and Plan.

Sufficient Cash to Pay Claims. The Combined Disclosure Statement and Plan and the process for confirming the same is subject to the Debtors' and Estates' performance under and use of the Assets. To the extent that the Debtors or the Estates incur costs beyond the value of the Assets held by the Debtors, the Holders of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims may not be paid in full, which may result in a default under the Combined Disclosure Statement and Plan entitling parties in interest to seek relief from the Bankruptcy Court.

Sufficient Cash for Liquidating Trust Distributions. There is no assurance that the Liquidating Trust Assets will be sufficient to fund the liquidation of the Liquidating Trust Assets as envisioned under the Combined Disclosure Statement and Plan. Accordingly, there is no assurance as to whether the Liquidating Trust will make any Distributions, the amount, if any, or the timing of such Distributions.

Portfolio Asset and Litigation Recovery Uncertainty. There is no assurance that the Liquidating Trustee will realize meaningful value from the Debtors' portfolio interests, insurance rights, or Retained Causes of Action. Recoveries may depend on disputed valuations, third-party sale processes, litigation outcomes, foreign proceedings, and the timing and cost of administering and enforcing Estate rights.

Certain Tax Considerations. Substantial uncertainty exists with respect to many of the tax issues discussed herein. Therefore, each Holder of a Claim is urged to consult its own tax advisor regarding the federal, state, and other tax consequences of this Combined Disclosure Statement and Plan. No rulings have been or are expected to be requested from the IRS with respect to any tax aspects of this Combined Disclosure Statement and Plan.

A summary description of certain United States federal income tax consequences of the Combined Disclosure Statement and Plan is provided herein. The description of tax consequences herein is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Combined Disclosure Statement and Plan as discussed herein. Only the potential material U.S. federal income tax consequences to the Debtors and to hypothetical

Holders of Claims who are entitled to vote to confirm or reject the Combined Disclosure Statement and Plan are described herein. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Combined Disclosure Statement and Plan, and no tax opinion is being given in the Combined Disclosure Statement and Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to any tax consequences of the Combined Disclosure Statement and Plan, and the discussion below is not binding upon the IRS or any other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Combined Disclosure Statement and Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences herein is based on the U.S. Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed herein.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE, OR LOCAL TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, NOR DOES IT PURPORT TO ADDRESS** THE **U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASSTHROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS, AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN, AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN TO ANY SPECIFIC HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN.**

### G. Feasibility

The Bankruptcy Code requires that for a plan to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the debtor unless contemplated by the plan.

Here, the Combined Disclosure Statement and Plan provides for the liquidation and distribution of all of the Debtors' remaining assets. The Combined Disclosure Statement and Plan provides for the Liquidating Trust to be funded by the transfer of all Liquidating Trust Assets, including all Assets of the Debtors, which the Liquidating Trustee may use, in consultation with the Advisory Committee as provided herein, administer the Liquidating Trust, and make distributions to creditors or to pursue the Retained Causes of Action. Accordingly, the Debtors believe that all obligations under the Combined Disclosure Statement and Plan will be satisfied without the need for further reorganization of the Debtors.

### H. Best Interests Test and Alternatives to the Combined Disclosure Statement and Plan

The Bankruptcy Code requires that the Bankruptcy Court determine that a plan accepted by the requisite number of creditors in an impaired class provides each such member of each impaired class of claims and interests a recovery that has value, on the effective date, at least equal to the value of the recovery that each such creditor would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Code further requires that the Bankruptcy Court determine that a plan is in the best interests of each holder of a claim or interest in any such impaired class which has not voted to accept the plan. Thus, if an impaired class does not vote unanimously to confirm the plan, the best interests test requires that the Bankruptcy Court find that the plan provides to each member of such impaired class a recovery on account of the class member's Allowed Claim or interest that has a value, on the effective date, at least equal to the value of the recovery that each such class member would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

Here, the Debtors believe the Combined Disclosure Statement and Plan satisfies the best interests test as the Liquidation Analysis, attached hereto as Exhibit A, demonstrates that the recoveries expected to be available to Holders of Allowed Claims and Equity Interests under the Combined Disclosure Statement and Plan will be at least equal to or greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets remain in the Estates after satisfaction of secured creditors' claims from their collateral, administrative expenses (including those incurred by a chapter 7 trustee) are next to receive payment. Unsecured creditors are paid from any remaining proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their Allowed Claims in relationship to the total amount of Allowed Claims held by all

unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

The Combined Disclosure Statement and Plan provides the best source of recovery for several reasons. First, liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely distribution. Second, Distributions would likely be smaller because of the fees and expenses incurred by a chapter 7 trustee in a liquidation under chapter 7 of the Bankruptcy Code. Third, a chapter 7 trustee in MII's case would likely not obtain the avoidance and preservation of the Scintilla Liens.

The Liquidation Analysis uses the Debtors' scheduled asset values and does not assign value to Retained Causes of Action. For MII, the Liquidation Analysis assumes the benefit of lien avoidance and transfer to the MII Estate contemplated by the Plan Settlement, which may not be achievable in chapter 7. For MII Aviation, the Liquidation Analysis reflects Scintilla's non-recourse collateral position, and the agreed payment of BEH creditor claims and reimbursement for MII Aviation Allowed Administrative and Priority Non-Tax Claims, including any Intercompany Administrative Expense Claim, before any recovery by Scintilla or any Distribution to other MII Aviation creditors from BEH proceeds.

The Plan Proponents believe that the Combined Disclosure Statement and Plan provides the greatest possible value for creditors under the circumstances and has the greatest chance of being confirmed and consummated.

### I. Releases

Article X of this Combined Disclosure Statement and Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Combined Disclosure Statement and Plan will affect any claim, interest, right, or action with regard to the Debtors and certain third parties.

Pursuant to the Combined Disclosure Statement and Plan, the Debtors and their Estates are releasing only those parties expressly identified in the Combined Disclosure Statement and Plan and Confirmation Order. The releases include full Estate releases for the Released Parties, including Scintilla and Scintilla Holdings and their principals, agents, and professionals. Recovery on any Claim that the Liquidating Trustee may bring against Mr. Toshav shall be limited to available insurance proceeds, and if a recovery from insurance is based on Mr. Toshav's actions in connection with a transaction with Scintilla or its agents, Scintilla will not share in those recoveries.

**IF THE TRANSACTIONS DESCRIBED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE CONSUMMATED, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS SHALL BE BOUND TO THE TERMS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS THEREOF, TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

# V. TREATMENT OF CLAIMS UNDER COMBINED DISCLOSURE STATEMENT AND PLAN

## A. Unclassified Claims

### 1. Administrative Expense Claims

Unless otherwise agreed to by (i) the Debtors or the Liquidating Trust, as applicable, and (ii) the Holder of an Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim on account of and in full and complete settlement and release of such Claim within thirty (30) days after the latest of (a) the Effective Date, (b) the date such Claim is Allowed, and (c) such other date as is mutually agreed upon by (x) the Debtors or the Liquidating Trust, as applicable, and (y) the Holder of such Claim.

Requests for payment of Administrative Expense Claims must be Filed no later than the applicable Administrative Expense Bar Date. Holders of Administrative Expense Claims that do not File requests for the allowance and payment thereof on or before the applicable Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Liquidating Trust.

The aggregate of all Allowed Administrative Expense Claims of the Debtors, including Professional Fee Claims, shall be allocated fifty percent (50%) to MII and fifty percent (50%) to MII Aviation. All Allowed Administrative and Priority Non-Tax Claims of the Debtors shall be paid from available Cash of whichever Debtor has sufficient funds at the time such expense is Allowed, without regard to which Debtor's estate incurred the obligation, and shall be paid promptly upon allowance (or, if Allowed as of the Effective Date, on the Effective Date or as soon thereafter as reasonably practicable). The fifty percent (50%) allocation described herein is an intercompany reimbursement mechanism and shall not delay or condition payment of any Allowed Administrative and Priority Non-Tax Claims. To the extent that MII pays more than fifty percent (50%) of the total Allowed Administrative Expense Claims of the Debtors or pays any Allowed MII Aviation Priority Non-Tax Claims, MII shall hold an Intercompany Administrative Expense Claim against the MII Aviation Estate in the amount of such excess. This Intercompany Administrative Expense Claim shall be afforded superpriority status within the MII Aviation Estate and shall be a charge against MII Aviation's assets, such that it must be satisfied in full before any recovery by Scintilla on account of Secured Claims at MII Aviation, whether on or after the Effective Date.

Upon the Effective Date, the Liquidating Trustee shall establish and maintain a reserve of Cash in an amount determined by the Plan Proponents immediately prior to the Effective Date (after consultation with and approval of Scintilla) to be sufficient to pay all anticipated Administrative Expense Claims and Professional Fee Claims asserted or estimated by the applicable Professional as of the Effective Date, which reserved Cash shall be used by the Liquidating Trustee solely to pay any such Claim promptly when such Claim is Allowed or otherwise awarded by entry of an order of the Bankruptcy Court. The Liquidating Trustee shall not use such reserved amounts for any purpose other than payment of Administrative Expense Claims, provided that if such reserve contains any surplus after entry of Final Orders resolving all

Administrative Expense Claims and payment of all Allowed Administrative Expense Claims, including Professional Fee Claims, such surplus amounts shall be treated as general Liquidating Trust Assets in accordance with the Combined Disclosure Statement and Plan. The Liquidating Trustee shall promptly liquidate eToro stock to fund the reserve if sufficient Cash is not available as of the Effective Date.

Professional Fee Claims will be treated as follows:

(a) Final Fee Application and Payment of Professional Fee Claims

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered between the Petition Date and the Effective Date (including compensation requested by any Professional or other Entity for making a substantial contribution in the Chapter 11 Cases) shall File an application for final allowance of compensation and reimbursement of expenses no later than the Professional Fee Claims Bar Date.

The final hearing to determine the allowance of Professional Fee Claims shall be held as soon as practicable after the Professional Fee Claims Bar Date. Debtors' counsel shall File a notice of such hearing, which shall be served upon counsel for the Committee, all Professionals, the U.S. Trustee, and all parties on the Debtors' Bankruptcy Rule 2002 service list.

The Liquidating Trustee shall pay Professional Fee Claims promptly when such Professional Fee Claims are Allowed or awarded by entry of an order of the Bankruptcy Court.

(b) Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Combined Disclosure Statement and Plan, from and after the Effective Date, the Liquidating Trust shall, in the ordinary course of business and without any further notice to, fee application, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Combined Disclosure Statement and Plan incurred by the Liquidating Trust or any professional following the Effective Date. On the Effective Date, any requirement that professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trust may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**2. Priority Tax Claims**

Except to the extent the Debtors, with the consent of the Liquidating Trustee, and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, each holder of an Allowed Priority Tax Claim shall be paid Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable.

Any Claims asserted by a Governmental Unit on account of any penalties and assessments shall not be Priority Tax Claims and shall be subordinated to General Unsecured Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Entity.

**3. Statutory Fees**

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidating Trustee shall be liable to pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. The Liquidating Trust shall remain obligated to pay Statutory Fees on account of each Debtor's Chapter 11 Case until the earliest of that particular Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim for an Administrative Expense Claim in the Chapter 11 Cases and shall not be treated as providing any release under the Combined Disclosure Statement and Plan.

**B. Classified Claims and Equity Interests**

The below categories of Claims and Equity Interests classify such Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123 of the Bankruptcy Code.

**1. Class 1A – Secured Claims (MII)**

*Classification*: Class 1A consists of no Claims because the Scintilla Liens asserted against MII's assets are avoided and preserved for the benefit of the MII Estate. For the avoidance of doubt, in no event shall Scintilla have an Allowed Secured Claim against MII.

*Treatment*: N/A

*Impairment and Voting*: N/A

**2. Class 2A – Priority Non-Tax Claims (MII)**

*Classification*: Class 2A consists of all Priority Non-Tax Claims against MII.

*Treatment:* Except to the extent that a Holder of an Allowed Class 2A Claim agrees to less favorable treatment, each Holder of an Allowed Class 2A Claim shall receive Cash in an amount equal to such Allowed Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Claim becomes Allowed, and (iii) the date for payment provided by any agreement or arrangement between MII or the Liquidating Trustee and the Holder of such Allowed Claim.

The Debtors estimate that the aggregate amount of Allowed Class 2A Claims will be approximately $17,150.00.

*Impairment and Voting*: Class 2A is Unimpaired and is conclusively presumed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code.

**3. Class 3A – General Unsecured Claims (MII)**

*Classification*: Class 3A consists of all General Unsecured Claims against MII, including Scintilla's Allowed Claim against MII.

*Treatment*: Except to the extent that a Holder of an Allowed Class 3A Claim agrees to less favorable treatment, each Holder of an Allowed Class 3A Claim shall receive such Holder's Pro Rata share of Liquidating Trust Assets available for MII General Unsecured Claims; provided, however, that Scintilla shall not be entitled to any Pro Rata share of the proceeds of any Toshav-Related Insurance Recovery.

The Debtors estimate that the aggregate amount of Allowed Class 3A Claims will be approximately $199,689,237.78.

*Impairment and Voting*: Class 3A is Impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**4. Class 4A – Equity Interests (MII)**

*Classification:* Class 4A consists of all Equity Interests in MII.

*Treatment:* On the Effective Date, all Equity Interests in MII shall be cancelled, released, and extinguished, and Holders of Class 4A Equity Interests shall receive no Distribution under the Combined Disclosure Statement and Plan.

*Impairment and Voting:* Class 4A is Impaired and deemed to reject the Combined Disclosure Statement and Plan under section 1126(g) of the Bankruptcy Code.

**5. Class 1B – Secured Claims (MII Aviation)**

*Classification*: Class 1B consists of the Allowed Secured Claim of Scintilla against MII Aviation secured by the Scintilla Liens on assets of MII Aviation, including MII Aviation's equity interest in BEH and any proceeds thereof, subject to reduction of the Scintilla Claim only by the Scintilla Claim Mitigation Amount (if any).

*Treatment*: Except to the extent Scintilla agrees to less favorable treatment, Scintilla shall recover on account of the Class 1B Claim from proceeds of MII Aviation's encumbered assets, provided that any recovery upon the sale, transfer, or disposition of BEH's assets or its equity (or from other proceeds attributable to BEH), shall be subject to prior payment in full of all Allowed Administrative and Priority Non-Tax Claims of MII Aviation, including any Intercompany

Administrative Expense Claim held by MII (it being understood that all legitimate claims against BEH would need to be paid in full, assumed or reserved).

The Scintilla Claim against MII Aviation is a secured claim; provided however that such Claim is non-recourse and limited to Scintilla's collateral, and Scintilla shall not receive any separate deficiency Claim against MII Aviation under the Combined Disclosure Statement and Plan. Scintilla shall not be entitled to make an election under section 1111(b)(2) of the Bankruptcy Code with respect to the Class 1B Claim.

*Impairment and Voting*: Class 1B is Impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**6. Class 2B – Priority Non-Tax Claims (MII Aviation)**

*Classification*: Class 2B consists of all Priority Non-Tax Claims against MII Aviation.

*Treatment*: Except to the extent that a Holder of an Allowed Class 2B Claim agrees to less favorable treatment, each Holder of an Allowed Class 2B Claim shall receive Cash in an amount equal to such Allowed Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Claim becomes Allowed, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or Liquidating Trustee and the Holder of such Allowed Claim.

The Debtors estimate that the aggregate amount of Allowed Class 2B Claims will be approximately $17,150.00.

*Impairment and Voting*: Class 2B is Unimpaired and is conclusively presumed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code.

**7. Class 3B – General Unsecured Claims (MII Aviation)**

*Classification*: Class 3B consists of all General Unsecured Claims against MII Aviation.

*Treatment*: Holders of Allowed Class 3B Claims shall not receive any Distribution from proceeds of encumbered MII Aviation assets, including BEH proceeds, until the Scintilla Claim is paid in full. Holders of Allowed Class 3B Claims shall be entitled to receive a Distribution from proceeds, if any, of any unencumbered MII Aviation Assets, including proceeds of unencumbered Retained Causes of Action of MII Aviation, if any.

The Debtors estimate that the aggregate amount of Allowed Class 3B Claims will be approximately $2,658,482.34.

*Impairment and Voting*: Class 3B is Impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

#### 8. Class 4B – Equity Interests (MII Aviation)

*Classification:* Class 4B consists of all Equity Interests in MII Aviation, which are held by MII.

*Treatment*: On the Effective Date, all Equity Interests in MII Aviation shall remain in place and effective. MII, as Holder of 100% of the Equity Interests in MII Aviation, shall be entitled to receive a Distribution of unencumbered Cash, if any, on account of its Equity Interests in MII Aviation upon payment in full of the Allowed amount of all Allowed Class 3B Claims.

*Impairment and Voting*: Class 4B is Unimpaired and is conclusively presumed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code.

### C. Impaired Claims and Equity Interests

Under the Combined Disclosure Statement and Plan, Classes 3A, 4A, 1B, and 3B are Impaired Classes of Claims or Equity Interests pursuant to section 1124 of the Bankruptcy Code, because the Combined Disclosure Statement and Plan alters the legal, equitable, or contractual rights of the Holders of Claims or Equity Interests treated in such Classes.

### D. Cramdown and No Unfair Discrimination

The Plan Proponents will seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code. This provision allows the Bankruptcy Court to confirm a plan accepted by at least one impaired class so long as it does not unfairly discriminate and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan. Colloquially, this mechanism is known as a "cramdown."

The Plan Proponents believe the treatment of Claims and Equity Interests described in this Combined Disclosure Statement and Plan is fair and equitable and does not discriminate unfairly. The proposed treatment of Claims and Equity Interests provides that each Holder of such Claim or Equity Interest will be treated identically within its respective class and that, except when agreed to by such Holder, no Holder of any junior Claim or Equity Interest will receive or retain any property on account of such junior Claim or Equity Interest.

### E. Reservation of Rights

Nothing in the Combined Disclosure Statement and Plan shall be deemed to waive the Liquidating Trustee's rights to object to, subordinate, recharacterize, or otherwise challenge any Claim except to the extent such Claim is expressly Allowed, released, or otherwise resolved under the Combined Disclosure Statement and Plan or Confirmation Order.

# VI. CONFIRMATION PROCEDURES

## A. Confirmation Procedures

### 1. Hearing on Final Approval of Combined Disclosure Statement and Plan and Confirmation

The Confirmation Hearing shall be scheduled by further order of the Bankruptcy Court and shall be held at the United States Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom #2, Wilmington, DE 19801 to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code, and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

### 2. Procedure for Objections

Any objection to approval or Confirmation of the Combined Disclosure Statement and Plan on a final basis must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be Filed by **October 21, 2026 at 4:00 p.m. (ET)** with the Bankruptcy Court and served on the Debtors' counsel, the Committee's counsel, the U.S. Trustee, and all parties who have Filed a request for notice in these Chapter 11 Cases. Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court.

### 3. Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if the requirements of section 1129 of the Bankruptcy Code are met. As set forth in this Combined Disclosure Statement and Plan, the Plan Proponents believe that the Combined Disclosure Statement and Plan: (i) meets the cramdown requirements; (ii) meets the feasibility requirements; (iii) is in the best interests of creditors; (iv) has been proposed in good faith; and (v) meets all other technical requirements imposed by the Bankruptcy Code.

Additionally, pursuant to section 1126 of the Bankruptcy Code, under the Combined Disclosure Statement and Plan, only Holders of Claims in Impaired Classes are entitled to vote.

## B. Solicitation and Voting Procedures

### 1. No Substantive Consolidation

For purposes of administrative convenience and efficiency, the Combined Disclosure Statement and Plan has been filed as a joint plan for each of the Debtors. The Combined Disclosure Statement and Plan does not directly or indirectly provide for the substantive consolidation of any of the Debtors or the Estates, including voting or distributions, notwithstanding the commingling of any Assets or Liquidating Trust Assets.

### 2. Eligibility to Vote on the Combined Disclosure Statement and Plan

Except as otherwise ordered by the Bankruptcy Court or provided in any stipulated Bankruptcy Rule 3018(a) order, to vote on the Combined Disclosure Statement and Plan, a Holder must hold a Claim in Classes 3A, 1B, or 3B that is not subject to any pending claim objection, or have a Claim that has been temporarily Allowed for voting purposes only, including as to amount and classification, under Bankruptcy Rule 3018(a).

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 3A, 1B, AND 3B.**

### 3. Solicitation Package

Accompanying the Combined Disclosure Statement and Plan for the purposes of soliciting votes on the Combined Disclosure Statement and Plan, are Solicitation Packages, which contain copies of: (a) the notice of the Confirmation Hearing; (b) the Combined Disclosure Statement and Plan and all other exhibits annexed thereto; (c) the Interim Approval and Procedures Order, excluding the exhibits annexed thereto; (d) a Ballot; and (e) such other documents the Bankruptcy Court may direct or approve or that the Plan Proponents deem appropriate following consultation with the Committee.

Holders of Claims in non-voting classes will receive packages consisting of: (a) the notice of the Confirmation Hearing; and (b) a notice of such Holder's non-voting status.

### 4. Voting Procedures and Voting Deadline

The Voting Record Date for determining which Holders of Claims or Equity Interests in Classes 3A, 1B, and 3B may vote on the Combined Disclosure Statement and Plan is the date of entry of the Interim Approval and Procedures Order.

The Voting Deadline by which the Debtors must *RECEIVE* original Ballots by mail, overnight delivery, hand delivery, email, or other electronic means authorized by the Bankruptcy Court is **October 20, 2026 at 4:00 p.m. (ET)**.

If you are entitled to vote to accept or reject the Combined Disclosure Statement and Plan, a Ballot is enclosed. Please carefully review the Ballot instructions and complete the Ballot by: (a) indicating your acceptance or rejection of the Combined Disclosure Statement and Plan; and (b) signing and returning the Ballot to the Debtors.

If you are a member of the Voting Classes and did not receive a Ballot, received a damaged Ballot, or lost your Ballot, contact Debtors' counsel at:

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (DE Bar No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

| Telephone: (302) 295-0192<br>Email: desgross@chipmanbrown.com |
|---|

The following Ballots will not be counted or considered:

(1) any Ballot received after the Voting Deadline, unless the Movants or Bankruptcy Court grants an extension to the Voting Deadline with respect to such Ballot;

(2) any Ballot that is illegible or contains insufficient information;

(3) any Ballot cast by a Person or Entity that does not hold a Claim in the Voting Classes;

(4) any Ballot cast for a Claim designated as unliquidated, contingent, disputed, zero (0), or unknown in amount in the Schedules, unless: (i) a Proof of Claim has been timely Filed for such Claim and is not subject to any pending objection, (ii) a Rule 3018 Motion has been Filed, or (iii) a stipulated order has been entered by the Rule 3018 Motion deadline;

(5) any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Disclosure Statement and Plan or that indicates both acceptance and rejection of the Combined Disclosure Statement and Plan;

(6) simultaneously filed duplicative Ballots voted inconsistently;

(7) Ballots partially rejecting and partially accepting the Combined Disclosure Statement and Plan;

(8) any unsigned Ballot; or

(9) any Ballot submitted by facsimile; provided, however, that Ballots submitted by electronic mail (as approved by the Bankruptcy Court) shall be considered.

**5. Deemed Acceptance or Rejection**

Holders of Claims or Equity Interests in Classes 2A, 2B, and 4B are Unimpaired, and thus under section 1126(f) of the Bankruptcy Code, Holders of such Claims or Equity Interests are conclusively presumed to have accepted the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote and will not be solicited to vote.

Holders of Claims in Classes 3A, 1B, and 3B are Impaired and entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

Holders of Claims or Equity Interests in Class 4A are not entitled to receive any Distribution under the Combined Disclosure Statement and Plan except as expressly provided herein. Pursuant to section 1126(g) of the Bankruptcy Code, Class 4A is deemed to have rejected the Combined Disclosure Statement and Plan, and, therefore, Holders of Claims or Equity Interests in Class 4A are not entitled to vote and shall not be solicited.

#### 6. Acceptance By Impaired Classes

The Combined Disclosure Statement and Plan will be accepted by an Impaired Class of Claims, if Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class have accepted the Combined Disclosure Statement and Plan, excluding the votes of insiders. To be confirmed, at least one (1) Impaired Class must accept the Combined Disclosure Statement and Plan. The Plan Proponents urge that you vote to accept the Combined Disclosure Statement and Plan, and encourage you to complete, date, sign, and promptly mail the Ballot attached to the notice. Please be sure to complete the Ballot properly and legibly and identify the exact amount of your Claim and the name of the Creditor.

#### 7. Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Combined Disclosure Statement and Plan for purposes of voting to accept or reject the Combined Disclosure Statement and Plan and for purposes of determining acceptance or rejection of the Combined Disclosure Statement and Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## VII. IMPLEMENTATION AND EXECUTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

### A. Effective Date

The Effective Date shall not occur until the conditions for the Effective Date set forth in Section IX.B herein are satisfied or otherwise waived in accordance with the terms of the Combined Disclosure Statement and Plan. On or as soon as practicable after the Effective Date, the Debtors shall File a notice of the occurrence of the Effective Date.

### B. Closing of the Chapter 11 Cases

On and after the Effective Date, the Liquidating Trustee shall be permitted to close all of the Chapter 11 Cases of the Debtors in accordance with Bankruptcy Rule 3022 except for the Chapter 11 Case of a Debtor entity identified in the Plan Supplement as having its Chapter 11 Case remain open following the Effective Date, and, subject to the filing of a motion requesting appropriate authority, all contested matters relating to any of the Debtors, including objections to Claims or Equity Interests and any adversary proceedings, may be administered and heard in the Chapter 11 Case of the Debtor entity identified in the Plan Supplement as having its Chapter 11 Case remain open following the Effective Date, irrespective of whether such Claims or Equity Interests were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

After the Effective Date, the Debtors may be dissolved in accordance with applicable state law by the Liquidating Trustee, provided that the Liquidating Trustee may elect to continue the existence of the Debtors if the Liquidating Trustee, in his sole discretion, deems it advantageous to do so.

On the Effective Date, all outstanding Equity Interests in MII shall be deemed cancelled, released, and extinguished without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of MII relating to, arising under, in respect of, or in connection with such interests or agreements shall be deemed discharged, released, and satisfied as to the Debtors. From and after the Effective Date, the Liquidating Trustee shall be authorized to execute and file on behalf of the Estates any UCC-3 termination statements, mortgage releases, or such other forms as may be necessary or appropriate to release, terminate, and extinguish any and all Liens securing any Claims that have been satisfied, released, or discharged under the Combined Disclosure Statement and Plan.

**C. Records**

On the Effective Date, the Liquidating Trustee shall have full control and ownership of all of the Debtors' books, records, and files that shall have been delivered by the Debtors to the Liquidating Trustee. The Debtors shall preserve all of their books and records in their possession, custody, or control prior to the Effective Date. After receipt of such documents, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment and in accordance with applicable law; *provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including but not limited to tax documents, that the Liquidating Trust is required to retain under applicable law.

Moshe Yanai (and, to the extent applicable, the Israeli insolvency administrator appointed in Mr. Yanai's Israeli insolvency proceeding), the estate of the late Rachel Yanai, and Mr. Donovan shall be obligated to remit to the Liquidating Trustee any and all books, records, documents, and files of the Debtors in his or their possession, custody, or control that have not previously been provided to the Debtors, promptly upon request by the Liquidating Trustee.

**D. Liquidating Trustee**

**1. Establishment of the Liquidating Trust**

On the Effective Date, the Liquidating Trust will be established pursuant to the Combined Disclosure Statement and Plan and Liquidating Trust Agreement, the form of which is attached hereto as **Exhibit B**, and all Liquidating Trust Assets, including all Assets of the Debtors, shall be deemed transferred to the Liquidating Trust without any further action of any of the Debtors, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors. The Liquidating Trustee may elect for the Liquidating Trust to be treated as a partnership, corporation, or other Entity for tax purposes only, if the Liquidating Trustee determines, in his or her reasonable discretion, that such election would be in the best interests of the Liquidating Trust Beneficiaries.

The Debtors shall have the power and authority to enter into the Liquidating Trust Agreement on the Effective Date. The Liquidating Trustee shall be selected by agreement of the Plan Proponents and Scintilla, and the initial proposed Liquidating Trustee is Mr. Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP. A summary of the Liquidating Trustee's background and experience, and the Liquidating Trustee's compensation arrangement, shall be set

forth in the Liquidating Trust Agreement and shall be subject to reasonable approval of the Debtors, the Committee, and Scintilla.

**2. Transfer of Liquidating Trust Assets to Liquidating Trust**

Pursuant to section 1141 of the Bankruptcy Code, all transfers and contributions made pursuant to this Section VII.D.2 shall be made free and clear of all Claims, liens, encumbrances, charges, and other interests, including free of any prohibition on transfer that may exist under contract or applicable nonbankruptcy law with respect to the Liquidating Trust Assets. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Combined Disclosure Statement and Plan, as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof. Pursuant to section 1146 of the Bankruptcy Code, the making or delivery of an instrument of transfer under or pursuant to the Combined Disclosure Statement and Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**3. Purpose of the Liquidating Trust**

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting the Retained Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Liquidating Trust Beneficiaries, and making Distributions in accordance with the Combined Disclosure Statement and Plan to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

**4. Preservation of Rights**

Under the Combined Disclosure Statement and Plan, the Liquidating Trustee retains any and all rights of, and on behalf of, the Debtors, the Estates, and the Liquidating Trust to commence and pursue any and all Retained Causes of Action, including, without limitation, setoff, offset, recoupment, turnover, avoidance, subordination, claim objection, claim estimation, and insurance rights, regardless of whether such rights are specifically enumerated in the Combined Disclosure Statement and Plan or elsewhere, and all such rights shall not be deemed modified, waived, released, barred, or discharged in any manner, nor shall Confirmation of the Combined Disclosure Statement and Plan or entry of the Confirmation Order act as *res judicata* or otherwise limit any of such rights of the Liquidating Trustee.

Unless a Retained Cause of Action against a Person or other Entity is expressly waived, relinquished, released, compromised, settled, or transferred pursuant to the Combined Disclosure

Statement and Plan, the Confirmation Order, or another Final Order, the Debtors expressly reserve any and all Retained Causes of Action for later enforcement and prosecution by the Liquidating Trustee, including any such Causes of Action not specifically identified herein or otherwise, presently unknown to the Debtors, or arising or existing by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist. No Person may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan or the Confirmation Order to any Retained Cause of Action, or potential defendant as any indication that the Debtors, the Estates, or the Liquidating Trustee will not pursue any such Cause of Action.

For the avoidance of doubt, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), laches, law of the case, claim splitting, or any similar theory, shall apply to any Retained Cause of Action upon or after entry of the Confirmation Order, the Effective Date, or substantial consummation of the Combined Disclosure Statement and Plan, except to the extent such Cause of Action is expressly released, waived, settled, compromised, transferred, or otherwise disposed of pursuant to the Combined Disclosure Statement and Plan, the Confirmation Order, or another Final Order.

Except as otherwise expressly provided in the Combined Disclosure Statement and Plan, all Retained Causes of Action shall, on the Effective Date, automatically vest in the Liquidating Trust free and clear of liens, claims, encumbrances, and interests, and no Retained Cause of Action shall be deemed released or discharged by the Combined Disclosure Statement and Plan unless expressly stated therein. The Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right, authority, standing, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Retained Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trustee, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, and on behalf of the Liquidating Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise, or abandon, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal.

### 5. Continued Cooperation

On and after the Effective Date, the Debtors' former management, including Moshe Yanai and any foreign representative, administrator or custodian, shall provide reasonable and timely cooperation to effectuate the provisions of the Combined Disclosure Statement and Plan as the Liquidating Trustee may reasonably request, including, but not limited to, executing such documents as necessary to carry out the terms of the Combined Disclosure Statement and Plan and administer the Liquidating Trust.

### 6. Liquidating Trustee

Appointment of Liquidating Trustee. The Liquidating Trustee shall be a disinterested Person. The Liquidating Trustee shall carry out the duties as set forth in this section and in the

Liquidating Trust Agreement. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall be deemed the appointed representative of the Estates, and may pursue, litigate, and compromise and settle any such rights, claims, and Retained Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries. In the event that the Liquidating Trustee resigns, is removed for cause, or is otherwise unable to serve due to death or incapacity, then a replacement Liquidating Trustee shall be appointed with the consent of each of (i) the Committee members of the Advisory Committee (which for the sake of clarity shall have one vote in the aggregate) and (ii) the Scintilla member of the Advisory Committee (which for the sake of clarity shall have one vote). If the Advisory Committee fails to approve a successor by unanimous vote within ten (10) business days after receiving notice of the need for a successor, the Liquidating Trustee, any Advisory Committee member, or other interested party may request that the Bankruptcy Court resolve the deadlock or appoint a successor, including by directing the parties to request a list of candidates from a former bankruptcy judge.

Responsibilities, Powers, and Authority of Liquidating Trustee. As of the Effective Date, the Liquidating Trustee shall assume responsibility for liquidation of the Estates' assets, pursuing Estate claims (that are not otherwise released under the Combined Disclosure Statement and Plan), and providing for Distributions in accordance with the Combined Disclosure Statement and Plan. The Liquidating Trustee shall have the exclusive right to object to any Claims that are not otherwise resolved under the Combined Disclosure Statement and Plan. Subject to the provisions herein and the Liquidating Trust Agreement, the Liquidating Trustee shall have full right, power and discretion to manage the affairs of the Liquidating Trust, subject to consultation with the Advisory Committee, as the Liquidating Trustee deems appropriate (provided that the Advisory Committee shall not have any power to direct the Liquidating Trustee), as further set forth in the Liquidating Trust Agreement. For the avoidance of doubt, as of the Effective Date, Mr. Toshav and all other officers, employees, and agents of the Debtors shall be deemed to have resigned from all such capacities with the Debtors and any Portfolio Companies (if applicable) and shall have no authority to act for or bind the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee. From and after the Effective Date, the Liquidating Trustee shall, without need for execution of any resolution, consent, or other corporate approval, be appointed to and serve as the sole officer, director, and manager of each Debtor, as applicable, and shall have and may exercise all rights, powers, authority, and privileges vested in such capacity under the applicable organizational documents of each Debtor and applicable law, including all Privileges, and all such former officers, directors, members, or managers shall have no authority to assert or waive any such rights or Privileges except as expressly authorized by the Liquidating Trustee or order of the Bankruptcy Court. Except as otherwise provided herein or in the Liquidating Trust Agreement, the Liquidating Trustee shall have the right and power to enter into any covenants or agreements binding the Liquidating Trust and in furtherance of the purpose of this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Liquidating Trustee to be consistent with and advisable in connection with the performance of the Liquidating Trustee's duties. On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Combined Disclosure Statement and Plan to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated herein, including, without limitation:

(a) To exercise all power and authority that may be or could have been exercised and take all actions that may be or could have been taken by the Debtors with like effect as if authorized, exercised and taken by unanimous action of the Debtors' partners, members, officers, directors and equity holders, including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors, merger of any Debtor into another Debtor, the dissolution of any Debtor and the assertion or waiver of the Privileges (as defined herein);

(b) To open and maintain bank and other deposit accounts, escrows and other accounts;

(c) To calculate and implement Distributions to Holders of Allowed Claims as provided for or contemplated by the Combined Disclosure Statement and Plan and take other actions consistent with the Combined Disclosure Statement and Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves in accordance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, in the name of the Debtors or the Liquidating Trustee, even in the event of the dissolution of the Debtors;

(d) To make a good faith valuation of the Liquidating Trust Assets, as soon as possible after the Effective Date;

(e) To collect and liquidate all Liquidating Trust Assets, including the sale of any Liquidating Trust Assets free and clear of any interests or liens pursuant to section 363 of the Bankruptcy Code;

(f) To object to any Claims (unless Allowed hereunder), and to defend, compromise, and settle any Claims prior to or following objection without the necessity of approval of the Bankruptcy Court, and to seek Bankruptcy Court approval for any Claims settlement, to the extent deemed appropriate by the Liquidating Trustee (unless such approval is required by prior order of the Bankruptcy Court);

(g) To retain or otherwise engage professionals, employees, and consultants for the Liquidating Trust and to pay, from the Liquidating Trust Assets (other than amounts reserved pursuant to Article V.A.1.), the fees and charges incurred by the Liquidating Trust on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the winding up of the Debtors and implementation of the Combined Disclosure Statement and Plan, without application to the Bankruptcy Court, provided that no professionals employed by the Debtors, the Committee, or Scintilla at any time between the Petition Date and the Effective Date may be engaged by the Liquidating Trustee, except that the Liquidating Trustee, subject to unanimous approval of the Advisory Committee, may engage the Debtors' investment banker, Silver Birch Group, Inc., and BA Securities, LLC;

(h) To cause, on behalf of the Liquidating Trust, the Debtors, and their Estates, all necessary tax returns and all other appropriate or necessary documents related to municipal, state, federal or other tax law to be prepared and timely filed;

(i) To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise deemed appropriate by the Liquidating Trustee in accordance with the Liquidating Trust Agreement;

(j) To enter into any agreement or execute any document required by or consistent with the Combined Disclosure Statement and Plan and perform all of the obligations of the Liquidating Trustee thereunder;

(k) Upon Bankruptcy Court approval, to abandon in any commercially reasonable manner, including by abandonment or donation to a charitable organization, any assets that the Liquidating Trustee concludes are of no benefit to the Liquidating Trust Beneficiaries or too impractical to distribute;

(l) To investigate (including pursuant to Bankruptcy Rule 2004), prosecute and/or settle any Retained Causes of Action, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding, litigate or settle such Retained Causes of Action on behalf of the Liquidating Trust and pursue to settlement or judgment such actions;

(m) To seek recognition, domestication, enforcement, or similar relief in Israel or any other foreign jurisdiction with respect to the Combined Disclosure Statement and Plan, the Confirmation Order, any plan injunction, the Liquidating Trustee's authority, or any Retained Causes of Action, including, as necessary, by commencing or participating in proceedings under chapter 15 of the Bankruptcy Code or applicable foreign insolvency law, and to take any related action necessary or appropriate to protect, preserve, or recover Estate property or implement the Combined Disclosure Statement and Plan in such jurisdiction;

(n) (Reserved);

(o) To commence, without limitation, receiverships, insolvency proceedings, or similar proceedings for any Portfolio Company over which the Liquidating Trustee exercises governance control, in the Liquidating Trustee's discretion, for the purpose of maximizing the value of the Liquidating Trust Assets;

(p) To enter into, without Bankruptcy Court approval, an agreement to settle any Retained Cause of Action for which the Liquidating Trustee or either of the Debtors has not initiated a proceeding before the Bankruptcy Court;

(q) To use Liquidating Trust Assets, subject to Article V.A.1., to purchase or create and carry all appropriate insurance policies, or other means of assurance and protection of the Liquidating Trust Assets and pay all insurance premiums and other

costs the Liquidating Trustee deems necessary or advisable to insure the acts and omissions of the Liquidating Trustee, and if appropriate, the Advisory Committee;

(r) To maintain appropriate books and records (including financial books and records) to govern the liquidation and distribution of the Liquidating Trust Assets;

(s) To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation financial reports for each of the Debtors until such time as a Final Decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed;

(t) To dissolve the Liquidating Trust if the Liquidating Trustee determines that the expenses of administering the Liquidating Trust so as to make a final Distribution are likely to exceed the value of the remaining Liquidating Trust Assets;

(u) To incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash;

(v) To seek one or more Final Decrees closing the Chapter 11 Cases;

(w) To be the representative of the Estates and successor of the Debtors for all purposes; and

(x) To do all other acts or things consistent with the provisions of the Combined Disclosure Statement and Plan that the Liquidating Trustee deems reasonably necessary or desirable with respect to implementing the Combined Disclosure Statement and Plan.

Except as expressly set forth in the Combined Disclosure Statement and Plan and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Liquidating Trust Beneficiaries and consistent with the purposes of the Liquidating Trust.

Subject to the other terms and provisions of the Combined Disclosure Statement and Plan, the Liquidating Trustee shall be granted standing, authority, power, and right to assert, prosecute, and/or settle the Retained Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a court-appointed representative of the Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.

<u>Enforcement of Retained Causes of Action</u>. Pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, on behalf of and for the benefit of the Liquidating Trust Beneficiaries, shall be vested with and shall retain and may prosecute Retained Causes of Action transferred to the Liquidating Trust that were held by, through, or on behalf of, the Debtors or the Estates against any other Entity, and that arose before the Effective Date, whether or not such Retained Causes of Action are specifically identified in the Combined Disclosure Statement and

Plan and whether or not litigation with respect to the same has been commenced prior to the Effective Date. The recoveries from any Retained Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

Compensation of Liquidating Trustee. The Liquidating Trustee shall be compensated from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to file a fee application to receive compensation. The Liquidating Trustee's compensation arrangement shall be subject to reasonable approval by the Debtors, the Committee, and Scintilla.

Indemnification of Liquidating Trustee. The Liquidating Trust shall indemnify the Liquidating Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; *provided*, *however*, the foregoing shall not require indemnification of the Liquidating Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

**7. Liquidating Trust Expenses**

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid expenses of the Liquidating Trust. All such expenses shall be charged against and paid from the Liquidating Trust Assets other than amounts reserved for Administrative Expense Claims pursuant to Article V.A.1.

**8. Privileges**

The transfer, assignment, or vesting (if any) of the Debtors' privileges (each a "Privilege"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections, will be governed by the final version of the Liquidating Trust Agreement.

**9. Termination of Liquidating Trust**

The Liquidating Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Liquidating Trust Beneficiaries and the third anniversary of the creation of the Liquidating Trust, *provided* that the Liquidating Trustee shall, in its sole discretion, be authorized to extend the dissolution date to the fifth anniversary of the creation of the Liquidating Trust with prior Bankruptcy Court approval. If warranted by the facts and circumstances involved in resolving any Retained Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding that such further extension is necessary for purposes of resolving such Retained Causes of Action and distributing the proceeds to Liquidating Trust Beneficiaries, the

term of the Liquidating Trust may be further extended by the Liquidating Trustee for a specified, finite term.

### E. Provisions Governing Distributions Under the Combined Disclosure Statement and Plan

#### 1. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or the Liquidating Trustee, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Equity Interests. The Debtors or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtors, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Combined Disclosure Statement and Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

#### 2. Method of Payment

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable. Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed. Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Combined Disclosure Statement and Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under the Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on, or as soon as reasonably practicable after, the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

All Distributions hereunder shall be made by the Liquidating Trustee, or its named successor or assign, as "Disbursing Agent," on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Combined Disclosure Statement and Plan shall be made by check drawn on a domestic bank or an electronic wire.

### 3. Surrender of Instruments

Pursuant to section 1143 of the Bankruptcy Code, as a condition precedent to receiving any Distribution under the Combined Disclosure Statement and Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any Holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution hereunder.

### 4. Delivery of Distributions

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notice of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim; or (c) at the address reflected in the Schedules if no Proof of Claim is Filed and the Liquidating Trustee has not received a written notice of a change of address.

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Liquidating Trustee shall use reasonable efforts to determine such Holder's then-current address, at which time a Distribution shall be made to such Holder without interest. If the Liquidating Trustee cannot determine, or is not notified of, a Holder's then-current address within ninety (90) days after the original Distribution date for such Holder, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust to be distributed in accordance with the terms of the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

### 5. Objection to and Resolution of Claims

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Equity Interest shall be deemed Allowed unless and until such Claim or Equity Interest is deemed Allowed under the Combined Disclosure Statement and Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest. On or after the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.

On and after the Effective Date, the Liquidating Trustee, with respect to all Claims and Equity Interests, shall have the exclusive right to file objections to any Claims and Equity Interests that are otherwise not deemed Allowed Claims or Equity Interests, including Claims listed on the Debtors' Schedules, under the Combined Disclosure Statement and Plan, or otherwise. Any objections to Claims shall be served and filed on or before the Claims Objection Deadline.

### 6. Preservation of Rights to Settle Claims

Except as otherwise expressly provided herein, nothing contained in the Combined Disclosure Statement and Plan or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Retained Causes of Action that the Debtors may have or which the Liquidating Trustee may choose to assert on behalf of the Estates or the Liquidating Trust, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle, or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Estates. This Section shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under the Combined Disclosure Statement and Plan or pursuant to a Final Order. Except as expressly provided in the Combined Disclosure Statement and Plan, nothing contained in the Combined Disclosure Statement and Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan, or the Confirmation Order to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against them. The Debtors and the Liquidating Trustee expressly reserve all rights to prosecute any and all causes of action against any Person or Entity, except as otherwise expressly provided in the Combined Disclosure Statement and Plan.

### 7. Miscellaneous Distribution Provisions

Disputed Claims. At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata share of the property distributable with respect to the Class in which such Claim belongs as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order. To the extent that all or a portion of a Disputed Claim is Disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed, and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

Setoff. The Liquidating Trustee retains the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records and in accordance with the Bankruptcy Code.

Minimum Distributions. Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be required to make Distributions or payments of less than $100.00.

Disputed Claims Reserve. On and after the Effective Date, the Liquidating Trustee shall maintain in reserve such Cash from the applicable distributable assets as the Liquidating Trustee deems reasonably necessary to satisfy Disputed Claims that may ultimately become Allowed Claims. Such reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine reserves and amounts available for Distribution to Holders of Allowed Claims. For the avoidance of doubt,

subject to the reserves required under Article V.A.1., the Liquidating Trustee shall pay or reserve for all Liquidating Trust Expenses before any Distribution may be made.

## VIII. EXECUTORY CONTRACTS

### A. Executory Contracts

All Executory Contracts of the Debtors that have not been assumed, assigned, or rejected prior to the Effective Date shall be deemed rejected on the Effective Date, except that any Executory Contract relating to a hangar lease of MII Aviation as to which MII Aviation and the applicable non-Debtor counterparty have agreed in writing to extend the deadline by which the Debtors must assume or reject such Executory Contract shall be deemed rejected as of such agreed later date unless otherwise assumed.

Assumption of any executory contract or unexpired lease pursuant to this Combined Disclosure Statement and Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Effective Date.

### B. Rejection Claims

In the event that the rejection of an Executory Contract by any of the Debtors pursuant to the Combined Disclosure Statement and Plan results in a Rejection Claim in favor of a counterparty to such Executory Contract, such Rejection Claim, if not heretofore evidenced by a properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Liquidating Trust, their respective properties or interests in property, or their agents, successors, or assigns, unless a Proof of Claim is Filed with the Bankruptcy Court and served upon counsel for the Debtors and the Liquidating Trustee on or before the Rejection Bar Date. All Allowed Rejection Claims shall be treated as General Unsecured Claims pursuant to the terms of the Combined Disclosure Statement and Plan.

To the extent that any and all of the Debtors' Insurance Policies, and any agreements, documents, or instruments related thereto, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, are considered Executory Contracts, then notwithstanding anything contained in the Combined Disclosure Statement and Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policies. For the avoidance of doubt, all rights under any Insurance Policy that is not an Executory Contract shall be preserved, shall vest with the Liquidating Trust, and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such insurance policies. Further, for the avoidance of doubt, the Liquidating Trustee may bring or assert Retained Causes of Action under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as

insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials, as those terms are used in the policies.

To the extent that any Portfolio Company Organizational Documents are considered Executory Contracts, then notwithstanding anything contained in the Combined Disclosure Statement and Plan to the contrary, such Portfolio Company Organizational Documents shall be deemed assumed and assigned to the Liquidating Trust. For the avoidance of doubt, all rights under any Portfolio Company Organizational Documents that are not Executory Contracts shall be preserved and shall vest with the Liquidating Trust and shall remain in full force and effect after the Effective Date for the term thereof.

### C. Rejection Bar Date

All Holders of Claims for damages arising from the rejection by the Debtors of any Executory Contract shall be forever barred from asserting such Claims against the Debtors or the Liquidating Trust or their respective properties or agents, successors, or assigns, unless a Proof of Claim is Filed so as to actually be received on or before the Rejection Bar Date. For the avoidance of doubt, this Combined Disclosure Statement and Plan shall not serve to extend the deadline to submit any Claim arising from the rejection of any Executory Contract pursuant to section 365 of the Bankruptcy Code to the extent that the Entity asserting such Claim was subject to an earlier deadline.

### D. Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract (or Insurance Policy or Portfolio Company Organizational Document, to the extent not determined to be an Executory Contract) transferred and assigned to the Liquidating Trust shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or that terminates or modifies such Executory Contract or allows the counterparty to such Executory Contract to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Combined Disclosure Statement and Plan.

Notwithstanding anything to the contrary herein, to the extent that any transfer, assignment, or vesting of any interest in the Liquidating Trust would violate applicable law or result in the forfeiture, impairment, or loss of such interest, such interest shall not be transferred, assigned, or vested and shall instead be deemed to remain with the applicable Debtor. Any such interest retained by the applicable Debtor pursuant to the foregoing sentence shall be held by the applicable Debtor solely for the benefit of the Liquidating Trust and administered in accordance with this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

# IX. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

## A. Conditions Precedent to Confirmation

The following is the list of conditions precedent to Confirmation:

(1) the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Committee, and Scintilla; and

(2) the form of Liquidating Trust Agreement shall be agreed upon by the Debtors, the Committee, and Scintilla, and the proposed Liquidating Trustee identified and disclosed.

## B. Conditions Precedent to the Effective Date

The following is the list of conditions precedent to the Effective Date:

(1) The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall be effective and not stayed;

(2) the Liquidating Trust Agreement shall be executed and the Liquidating Trustee shall have been appointed and accepted such appointment;

(3) the Combined Disclosure Statement and Plan shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Section XII.A herein.

## C. Waiver of Conditions

The conditions precedent to Confirmation and conditions precedent to the Effective Date, other than those in Sections IX.B. (1) and (2) above, may be waived in whole or in part, in writing, by the Debtors, the Committee, and Scintilla, without further order of the Bankruptcy Court.

## D. Effect of Nonoccurrence of Conditions

If the conditions precedent to the Effective Date are not satisfied or waived, the Plan Proponents may, upon motion and notice to parties in interest, seek to vacate the Confirmation Order.

If the Confirmation Order is vacated: (i) the Combined Disclosure Statement and Plan is null and void in all respects; and (ii) nothing contained in the Combined Disclosure Statement and Plan shall (a) constitute a waiver or release of any Claims by or against the Debtors, or (b) prejudice, in any manner, the rights of the Debtors or any other party in interest.

## X. EXCULPATION, RELEASES, AND INJUNCTIONS

### A. Injunction

**All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such injunction or stay.**

**Except as otherwise provided in the Combined Disclosure Statement and Plan or to the extent necessary to enforce the terms and conditions of the Combined Disclosure Statement and Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors shall be enjoined, through and until the dissolution of the Liquidating Trust and distribution of all property to be distributed under the Combined Disclosure Statement and Plan, from taking any of the following actions against the Debtors or the Debtors' Estates on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting any affirmative right of setoff not asserted (i) through a proof of claim either timely filed or permitted to be filed by Bankruptcy Court order or (ii) otherwise through a pleading filed before Confirmation (*provided, however*, that the foregoing does not enjoin the assertion of setoff as an affirmative defense), right of subrogation, or similar right against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Disclosure Statement and Plan; *provided, however*, that such Entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Disclosure Statement and Plan or the Confirmation Order; *provided, further*, that the foregoing injunction shall not apply to any acts, omissions, claims, causes of action, or other obligations expressly set forth in and preserved by this Combined Disclosure Statement and Plan or any defenses thereto. Notwithstanding any other provision of the Combined Disclosure Statement and Plan to the contrary, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors shall not receive a discharge.**

### B. Exculpation

**Except as otherwise specifically provided in the Combined Disclosure Statement and Plan, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Equity Interest (including liability under Retained Causes of Action) for any act or omission occurring on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of the Chapter 11 Cases, the Combined Disclosure Statement and Plan, the pursuit of Confirmation, the consummation of the Combined Disclosure Statement and Plan, the administration of the Combined Disclosure Statement and Plan, the property to be liquidated and/or distributed under the Combined Disclosure Statement and Plan (including with respect to the Debtors' interests in any Portfolio Company), or any postpetition and pre-Effective Date act taken or omitted to be taken in**

**connection with or in contemplation of the liquidation of the Debtors, except for their gross negligence, willful misconduct, or fraud, as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Combined Disclosure Statement and Plan.**

**The foregoing paragraph shall apply to attorneys to the greatest extent permissible under applicable bar rules and case law.**

**C. Releases**

**PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE COMBINED DISCLOSURE STATEMENT AND PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES (IN EACH CASE OTHER THAN THE DEBTORS), WHICH FOR CLARITY MEANS INDIVIDUALLY AND COLLECTIVELY, IN EACH CASE SOLELY IN THEIR CAPACITIES AS SUCH, SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS, EXPENSES, JUDGMENTS, PENALTIES, CAUSES OF ACTION (INCLUDING ANY AVOIDANCE ACTIONS AND ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES), REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE (EXCEPT FOR ANY CLAIMS BASED UPON INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION), THAT THE RELEASING PARTIES, AS APPLICABLE, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS OR THE ESTATES. RECOVERY ON ANY CLAIM THAT THE LIQUIDATING TRUSTEE MAY BRING AGAINST BOAZ TOSHAV SHALL BE LIMITED TO AVAILABLE INSURANCE PROCEEDS, AND UPON ANY DENIAL OF COVERAGE BY ANY APPLICABLE INSURER, INCLUDING ANY INSURER UNDER THE D&O INSURANCE COVERAGE, BOAZ TOSHAV SHALL ASSIGN (AND SHALL BE DEEMED TO HAVE ASSIGNED) TO THE LIQUIDATING TRUSTEE ALL RIGHTS TO CONTEST SUCH DENIAL AND TO SEEK PAYMENT FROM SUCH INSURER, PROVIDED THAT THE LIQUIDATING TRUSTEE SHALL HAVE NO RECOURSE TO RECOVER FROM THE PERSONAL ASSETS OF BOAZ TOSHAV; PROVIDED FURTHER, HOWEVER, THAT BOAZ TOSHAV SHALL RETAIN ALL OF HIS RIGHTS AGAINST ANY APPLICABLE INSURER TO ENGAGE COUNSEL AND**

**TO SEEK TO HAVE THE FEES AND EXPENSES OF SUCH COUNSEL PAID THROUGH SUCH INSURANCE AND THE PROCEEDS THEREOF.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE OF THE RELEASED PARTIES, THE ALLOWANCE OF THE SCINTILLA CLAIM, AND THE LIMITATION OF RECOVERY ON CLAIMS AGAINST MR. TOSHAV TO PROCEEDS OF INSURANCE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE AND LIMITATION OF RECOVERY BY THE DEBTORS AND THE ESTATES IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE RELEASING PARTIES; (C) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES, AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO THE DEBTORS, THEIR ESTATES, OR THE LIQUIDATING TRUST ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE BY THE RELEASING PARTIES.**

### D. Arbitration Rights

Notwithstanding any claimed contractual rights that purport to provide for mandatory arbitration of claims or disputes, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine all matters and proceedings that are core proceedings under section 157(b)(2) of the Bankruptcy Code.

## XI. RETENTION OF JURISDICTION

Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1) to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(2) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(3) to issue such orders in aid of execution and consummation of the Combined Disclosure Statement and Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(4) to consider any amendments to or modifications of the Combined Disclosure Statement and Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(5) to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code;

(6) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Combined Disclosure Statement and Plan;

(7) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(8) to hear and determine any motion to approve the sale of any Liquidating Trust Assets pursuant to section 363 of the Bankruptcy Code, all of which sales shall be deemed to be in furtherance of the Combined Disclosure Statement and Plan;

(9) to hear any other matter not inconsistent with the Bankruptcy Code;

(10) to enter the Final Decree;

(11) to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Disclosure Statement and Plan;

(12) to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(13) to hear and determine any and all motions, adversary proceedings, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Retained Causes of Action;

(14) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Disclosure Statement and Plan and Confirmation Order, except as otherwise provided herein;

(15) to determine any other matters that may arise in connection with or related to the Combined Disclosure Statement and Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Combined Disclosure Statement and Plan;

(16) to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(17) to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(18) to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Date, or the Confirmation Hearing, or for any other purpose;

(19) to authorize, support, or enforce any recognition, domestication, enforcement, or similar relief in Israel or any other foreign jurisdiction with respect to the Combined Disclosure Statement and Plan, the Confirmation Order, any plan injunction, the Liquidating Trustee's authority, or any Retained Causes of Action.

## XII. MISCELLANEOUS PROVISIONS

### A. Amendment or Modification of the Combined Disclosure Statement and Plan

Alterations, amendments, or modifications of the Combined Disclosure Statement and Plan may be proposed in writing by the Plan Proponents, but only with the prior written consent of the Debtors, the Committee, and Scintilla, at any time before the Confirmation Date; provided that the Combined Disclosure Statement and Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents shall have complied with sections 1125 and 1127 of the Bankruptcy Code. The Plan Proponents, but only with the prior written consent of the Debtors, the Committee, and Scintilla, may modify the Combined Disclosure Statement and Plan at any time after Confirmation and before substantial consummation, provided that this Combined Disclosure Statement and Plan, as modified, meets the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted such Combined Disclosure Statement and Plan as modified if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B. Exhibits/Schedules

All exhibits and schedules to this Combined Disclosure Statement and Plan are incorporated into and are part of the Combined Disclosure Statement and Plan as if set forth in full herein.

### C. Plan Supplement

The Plan Proponents shall file a Plan Supplement, if any, on or before October 9, 2026, at 4:00 p.m. (ET).

### D. Filing of Additional Documents

On or before substantial consummation of the Combined Disclosure Statement and Plan, the Liquidating Trustee shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

### E. Binding Effect of Combined Disclosure Statement and Plan

The Combined Disclosure Statement and Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns.

### F. Governing Law

Except as required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

### G. Time

To the extent that any time for the occurrence or happening of an event as set forth in this Combined Disclosure Statement and Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### H. Severability

Should any provision of the Combined Disclosure Statement and Plan be deemed unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Combined Disclosure Statement and Plan.

### I. Revocation

The Plan Proponents reserve the right to revoke and withdraw the Combined Disclosure Statement and Plan prior to the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Plan Proponents, any other Person or Entity, or to prejudice in any manner the rights of such parties in any further proceedings involving the Plan Proponents.

### J. Dissolution of the Committee

On the Effective Date, the Committee shall dissolve and the members thereof and the professionals retained by the Committee shall be released and discharged from all continuing duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Combined Disclosure Statement and Plan and its implementation; provided, however, that after the Effective Date, the Committee shall continue to exist and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for payment of Professional Fee Claims and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code, and (b) any appeals of the Confirmation Order or other appeal to which the Committee is a party.

**K. Section 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, or in furtherance of, the Combined Disclosure Statement and Plan, or by the Liquidating Trustee subsequent to the Effective Date, including any subsequent sale, transfer, or other disposition of Liquidating Trust Assets by the Liquidating Trustee on or after the Effective Date, shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**L. Section 1125(e) Good Faith Compliance**

The Plan Proponents and the other Exculpated Parties shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**M. No Stay of Confirmation Order**

The Plan Proponents shall request that the Confirmation Order include a finding that there is no just reason for delay in the implementation of the Confirmation Order, and that the Confirmation Order shall take effect immediately upon its entry, notwithstanding any otherwise applicable waiting periods, including any stay under Bankruptcy Rule 3020(e).

**N. Further Assurances**

The Plan Proponents, the Liquidating Trustee, all Holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Combined Disclosure Statement and Plan or the Confirmation Order.

**O. Inconsistency**

To the extent that any Plan Supplement document conflicts with or is inconsistent with the Combined Disclosure Statement and Plan, the terms of the Combined Disclosure Statement and Plan shall control. To the extent that the Combined Disclosure Statement and Plan conflicts with the Confirmation Order, the Confirmation Order shall control.

**P. No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Disclosure Statement and Plan shall be deemed an admission by any Entity with respect to any matter set forth herein.

### Q. Reservation of Rights

Except as expressly set forth herein, the Combined Disclosure Statement and Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Disclosure Statement and Plan, any statement or provision contained herein, or the taking of any action by the Plan Proponents with respect to the Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of the Plan Proponents, Holders of Claims, or Holders of Equity Interests before the Effective Date.

## XIII. RECOMMENDATION

In the opinion of the Plan Proponents, the Combined Disclosure Statement and Plan is superior and preferable to any alternative described in this Combined Disclosure Statement and Plan. Accordingly, the Plan Proponents recommend that Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan vote to accept the Combined Disclosure Statement and Plan and support Confirmation.

[*Signature page follows*]

Dated: September 21, 2026

**MII Aviation Services LLC and Michal International Investment LLC**

*/s/ Daniel Sasson*
By: Daniel Sasson, Chief Restructuring Officer

Dated: September 21, 2026

**The Official Committee of Unsecured Creditors of MII Aviation Services, LLC, *et al.***

*/s/ Eri Steimatzky*
By: Eri Steimatzky, solely in his capacity as Chair of the Committee and not in his individual capacity or any other capacity

# EXHIBIT A

## LIQUIDATION ANALYSIS

**LIQUIDATION ANALYSIS FOR MII AVIATION SERVICES LLC, et al.**[1]

Under the "best interests of creditors" test set forth by section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless each holder of an allowed claim or interest in an impaired class either: (a) accepts the plan; or (b) will receive or retain property on account of such claim or interest of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Accordingly, to demonstrate that the Combined Disclosure Statement and Plan satisfies the "best interests of creditors" test, the Plan Proponents, with the assistance of their advisors, have prepared the following hypothetical liquidation analysis presenting recoveries available to holders of claims and interests assuming a hypothetical chapter 7 liquidation of the Debtors (the "Liquidation Analysis"). In addition, the Plan Proponents, with the assistance of their advisors, have prepared a hypothetical chapter 11 wind-down analysis (the "Chapter 11 Wind-Down Analysis") to outline the various value drivers that an orderly chapter 11 wind-down provides as compared to a chapter 7 liquidation. The Liquidation Analysis and the Chapter 11 Wind-Down Analysis are based upon certain assumptions detailed in the Combined Disclosure Statement and Plan and in the Global Notes and Assumptions set forth below.

This Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests that may be realizable upon the disposition of assets pursuant to a hypothetical chapter 7 liquidation of the Debtors' Estates. Because the net liquidation proceeds would provide for lower recoveries relative to the recoveries under the Plan, as illustrated by this Liquidation Analysis, the Plan Proponents believe that Holders of Allowed Claims or Allowed Interests would receive greater value under the Plan than the amounts such Holders would receive if the Debtors were forced to liquidate under chapter 7, and that, as a result, the Plan satisfies the "best interests" test of section 1129(a)(7) of the Bankruptcy Code.

**Statement of Limitations**

**THE ILLUSTRATIVE LIQUIDATION ANALYSIS AND CHAPTER 11 WIND-DOWN ANALYSIS PRESENTED HEREIN HAVE BEEN PREPARED SOLELY FOR THE PURPOSES DESCRIBED ABOVE AND MAY NOT BE USED FOR ANY OTHER PURPOSE. THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS WAS NOT COMPILED OR EXAMINED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.**

The determination of the costs of and proceeds from the hypothetical liquidation of the Debtors' assets in a chapter 7 case or, alternatively, a chapter 11 wind-down involves the extensive use of estimates and assumptions that, although considered reasonable by the Plan Proponents

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. TBD] (the "Combined Disclosure Statement and Plan").

based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Plan Proponents, the Debtors' management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis and the Chapter 11 Wind-Down Analysis may not materialize in an actual chapter 7 liquidation or chapter 11 wind-down, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation or chapter 11 wind-down.

The Liquidation Analysis and Chapter 11 Wind-Down Analysis include estimates for Claims as part of the Debtors' chapter 11 cases that could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Claims, and chapter 7 administrative claims such as wind-down cost and fees owed to the chapter 7 trustee (the "Trustee"). To date, the Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analysis or Chapter 11 Wind-Down Analysis. Therefore, the Plan Proponents' estimate of Allowed Claims set forth in the Liquidation Analysis and Chapter 11 Wind-Down Analysis should not be relied on for any other purpose, including the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. **THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE DEBTORS' CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

NEITHER THE PLAN PROPONENTS NOR THEIR RESPECTIVE ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS OR CHAPTER 11 WIND-DOWN ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS ARE HYPOTHETICAL EXERCISES THAT HAVE BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE NET PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE OR IN A CHAPTER 11 WIND-DOWN AS OF THE CONVERSION DATE (DEFINED BELOW). THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS ARE NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS DO NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION OR WIND-DOWN.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS OR CHAPTER 11 WIND-DOWN ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH HEREIN. THE

PLAN PROPONENTS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSES SET FORTH HEREIN.

**Key Assumptions Underlying the Hypothetical Liquidation**

The following general assumptions were considered by the Plan Proponents and their advisors as assumptions that would be applicable in any hypothetical chapter 7 liquidation.

Based on the foregoing, and the Global Notes and Assumptions below, the Plan Proponents believe the following Liquidation Analysis reflects the likely results of a chapter 7 liquidation as compared to an orderly wind-down of the Debtors' estates pursuant to the Combined Disclosure Statement and Plan.

Plan Settlement Not Available in Chapter 7

The Plan Settlement among the Debtors, the Committee, and Scintilla is conditioned upon the occurrence of the Effective Date under the Combined Disclosure Statement and Plan. In a chapter 7 case, the Plan Settlement would not become effective, meaning that, among other consequences, the Scintilla Liens on the assets of MII would not be avoided and transferred to the MII Estate.

Administrative Procedures and Conversion of Cases

The Liquidation Analysis assumes that each of the Debtors' chapter 11 cases is converted to a case under chapter 7 and consolidated during the chapter 7 cases for procedural purposes only. In the event that the Debtors were to be liquidated in separately administered chapter 7 cases, the administrative costs to the Debtors in each of the cases, including professional fees, Trustee fees, and operational costs likely would be higher than if the cases were consolidated.

Professionals Involved in the Chapter 7 Cases

As part of the chapter 7 cases, the Plan Proponents assume that the Trustee would choose to retain certain professionals, including counsel, advisors, and investment bankers, among others, to provide expertise and assistance in the liquidation of any remaining assets of the Debtors. The Liquidation Analysis assumes that the existing counsel and advisors would be replaced by the Trustee with new professionals. Because the Plan Settlement would not become effective in a chapter 7 case, all of the Debtors' cash in a chapter 7 case may be subject to the Scintilla Liens. Any projected use of cash to pay chapter 7 administrative costs may be subject to the consent of Scintilla, and nothing herein is intended to reflect the likelihood or terms of any such consent.

Trustee Fees for Chapter 7 Administration

Under section 326(a) of the Bankruptcy Code, for a case under chapter 7, the Court may allow reasonable compensation for the Trustee's services not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable

compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. The Plan Proponents assume in the Liquidation Analysis that such fees would follow the compensation limits prescribed by the Bankruptcy Code.

Additional Claims

The cessation of the Debtors' businesses in a chapter 7 liquidation is likely to trigger certain Claims that otherwise would not exist under the Plan. Examples of these kinds of Claims include tax liabilities triggered upon the transfer of assets, Claims related to the rejection of executory contracts and unexpired leases, and litigation Claims. While some of these Claims could be significant and may be entitled to priority in payment over General Unsecured Claims, no adjustment has been made for these potential Claims unless specified in the assumptions and notes to the Liquidation Analysis and Chapter 11 Wind-Down Analysis.

Basis of Presentation

The assets in the Liquidation Analysis and the Chapter 11 Wind-Down Analysis are based on the Michal International Investment LLC schedules (unless otherwise indicated). The actual assets available to the Debtors' estates and claims arising in the event of an actual liquidation or wind-down may differ from the assets assumed to be available pursuant to the Liquidation Analysis.

Distribution of Liquidation Proceeds.

Chapter 7 and chapter 11 Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Statutory Fees, and other Claims that may arise in a liquidation or wind-down scenario would be paid from the liquidation / wind-down proceeds before the balance of any proceeds will be made available to make distributions on account of Allowed Claims or Allowed Interests. Under the absolute priority rule, no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full at such entity, and no equity holder at such entity would receive any distribution until all creditors at such entity are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis and the Chapter 11 Wind-Down Analysis are estimated in accordance with the absolute priority rule. Administrative claims, accrued outstanding post-petition expenses, U.S. Trustee fees, accrued payroll, and unpaid and accrued Chapter 11 professional fees incurred in the chapter 11 cases through September 30, 2026, are assumed to be paid in full in the Chapter 11 Wind-Down Analysis with cash on hand.

Liquidation Analysis

Upon conversion, a liquidation of all of the Debtors' assets would be conducted pursuant to chapter 7 of the Bankruptcy Code, with a Trustee appointed to manage the bankruptcy estates and to distribute funds received from any sale. The Trustee would be responsible for liquidating the Debtors' remaining assets in a manner intended to maximize the recovery to creditors. Asset sale proceeds resulting from the liquidation process would be reduced by the expenses of the

liquidation process prior to the distribution of such proceeds to any Holders of Allowed Claims or Allowed Interests. The three major components of the liquidation process would be as follows:

- Determination of the availability of cash collateral to fund the chapter 7 liquidation process;
- the generation of additional cash proceeds from the sale of remaining assets;
- the administration and management of costs and post-conversion operational cash flow related to the liquidation process, such as personnel retention costs, claims reconciliation costs, estate wind-down costs, and Trustee and professional fees; and
- the distribution of net proceeds generated from asset sales to claimants in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.

**Process Assumptions**

The Liquidation Analysis has been prepared assuming that the Debtors' cases were converted from chapter 11 to chapter 7 on or about August 31, 2026 (the "Conversion Date"). On the Conversion Date, it is assumed that a Trustee would be appointed to oversee the liquidation of the Debtors' estates. The Chapter 11 Wind-Down Analysis presumes that a liquidating trustee ("Liquidating Trustee") would be appointed as of the Effective Date to liquidate the Debtors' estates within the Chapter 11 Wind-Down Analysis.

**<u>Consummation of the Plan Will Provide Greater Value Than Under a Hypothetical Liquidation Through Chapter 7 of the Bankruptcy Code</u>**

Because the distributions to Holders of Claims under the Liquidation Analysis provide for lower recoveries relative to the recoveries under the Plan, the Plan Proponents believe that consummation of the Plan will provide greater value to such Holders than would a liquidation under chapter 7 of the Bankruptcy Code.

## Michal International Investment LLC Chapter 11 Wind-Down Analysis Compared to Chapter 7 Liquidation Analysis

The below exhibit provides a side-by-side comparison of the respective recoveries for various Classes of Claims and Interests under the Chapter 11 Wind-Down Analysis and the Liquidation Analysis for Michal International Investment LLC.

| *Liquidation Proceeds ($ in '000s)* | Notes | Valuation | | Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|
| | | Chapter 7 | Plan | Ch.7 (%) | Ch.7 ($) | Plan (%) | Plan ($) |
| Cash | 1 | $ 3,609 | $ 3,609 | 100% | $ 3,609 | 100% | $ 3,609 |
| 100% Interest in MII Aviation Services LLC | 2 | - | - | 0% | - | 0% | - |
| 69% Interest in SGP-Koolspan, LLC | 3 | - | - | 0% | - | 0% | - |
| 18% Interest in Arineta Ltd. | 4 | - | - | 0% | - | 0% | - |
| Interest in Koolspan | 5 | - | - | 0% | - | 0% | - |
| Interest in Maradin Ltd. | 6 | - | - | 0% | - | 0% | - |
| Less than 5% shares in Quris AI Technologies Ltd. | 7 | - | - | 0% | - | 0% | - |
| Interest in ION Crossover Partners II LP | 8 | 1,000 | 1,000 | 25% | 250 | 50% | 500 |
| 94,356 Shares of eToro Group, Ltd. | 9 | 2,676 | 2,676 | 85% | 2,275 | 95% | 2,542 |
| Less than 1% Interest in MoreTech Ventures | 10 | 1,000 | 1,000 | 25% | 250 | 50% | 500 |
| Interest in Vimodo Ltd. | 11 | - | - | 0% | - | 0% | - |
| 2% interest in Laminate Medical Technologies Ltd. | 12 | - | - | 0% | - | 0% | - |
| Other Litigation Claims | 13 | unknown | unknown | 0% | - | 0% | - |
| Insured Recoveries for Boaz Toshav | 14 | - | 2,500 | 0% | - | 50% | 1,250 |
| **Total Distributable Value** | | **$ 8,285** | **$ 10,785** | **77%** | **$ 6,383** | **78%** | **$ 8,401** |
| **Less: Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fee | 15 | | | | $ 215 | | |
| Chapter 7 Professional Fees | 16 | | | | 500 | | |
| Other Chapter 7 Fees | 17 | | | | 100 | | |
| Liquidating Trustee Fee | 18 | | | | - | | $ 450 |
| Chapter 11 Professional Fees | 19 | | | | - | | 2,532 |
| U.S. Trustee Fees | 20 | | | | 57 | | 76 |
| Other Wind-Down Fees | 21 | | | | - | | 150 |
| **Total Liquidation Costs** | | | | | $ 872 | | $ 3,208 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **$ 5,511** | | **$ 5,193** |

| **Claims** | Notes | Claim Amount | | Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|
| | | Chapter 7 | Plan | Ch.7 (%) | Ch.7 ($) | Plan (%) | Plan ($) |
| Class 1A - Secured Claims | 22 | $ 46,492 | $ - | 12% | $ 5,511 | N/A | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | *5,193* |
| Administrative Claims | 23 | $ 2,532 | $ - | 0% | $ - | N/A | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | *5,193* |
| Class 2A - Priority Non-Tax Claims | 24 | $ 17 | $ 17 | 0% | $ - | 100% | $ 17 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | *5,176* |
| Class 3A - General Unsecured Claims | 25 | $ 153,198 | $ 153,198 | 0% | $ - | 3% | $ 4,262 |
| Class 3A - Reclassified General Unsecured Claims | 26 | | $ 46,492 | N/A | - | 2% | 914 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - |
| Class 4A - Equity Interests | 27 | $ - | $ - | N/A | $ - | N/A | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - |

**Footnotes to Wind-Down Analysis**

**1. Cash**

Expected cash is pro forma for the sale of Infinidat, reduced by operating expenses including mediator expense, tax and accounting fees, UST fees and D&O insurance.

**2. 100% Interest in MII Aviation Services LLC**

No residual cash is expected to flow from MII Aviation Services LLC to Michal International Investment LLC.

**3. 69% Interest in SGP-Koolspan, LLC**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**4. 18% Interest in Arineta Ltd.**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**5. Interest in Koolspan**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**6. Interest in Maradin Ltd.**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**7. Less than 5% shares in Quris AI Technologies Ltd.**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**8. Interest in ION Crossover Partners II LP**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation. Chapter 7 assumes lower recovery given expected firesale nature of disposition. Plan assumes higher recovery given orderly sale process.

**9. 94,356 Shares of eToro Group, Ltd.**

Per market closing price of $28.36 on September 18, 2026. While eToro shares are publicly traded, they are not highly liquid, and the realizable value of such shares may be affected by timing and schedule of any sale(s). Chapter 7 assumes lower recovery given expected firesale nature of disposition. Plan assumes higher recovery given expected orderly sale of shares.

**10. Less than 1% Interest in MoreTech Ventures**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation. Chapter 7 assumes lower recovery given expected firesale nature of disposition. Plan assumes higher recovery given orderly sale process.

**11. Interest in Vimodo Ltd.**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**12. 2% Interest in Laminate Medical Technologies Ltd.**

Per the Michal International Investment LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**13. Other Litigation Claims**

Recovery prospects for the Retained Causes of Action is unknown; includes, among other Causes of Action, (i) Avoidance Actions, (ii) claims relating to the Infinidat sale transaction, and (iii) claims against Moshe Yanai and the estate of Rachel Yanai.

**14. Insured Recoveries for Boaz Toshav**

Per the Plan, recoveries on claims against Boaz Toshav shall be limited to insurance proceeds, and are only available to non-Scintilla creditors.

**15. Chapter 7 Trustee Fee**

The analysis assumes 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and 3 percent of such moneys in excess of $1,000,000.

**16. Chapter 7 Professional Fees**

Assumes $0.5M post-conversion professional fee budget to be paid by Michal International Investment LLC, provided that payment of any professional fees in chapter 7 would be subject to addressing the Scintilla Liens on the assets of Michal International Investment LLC.

**17. Other Chapter 7 Fees**

Assumes $0.1M other expenses budget to be paid by Michal International Investment LLC.

**18. Liquidating Trustee Fee**

Assumes $0.5M liquidating trustee budget to be paid by Michal International Investment LLC. This number is an estimate, subject to the plan and the trust agreement.

**19. Chapter 11 Professional Fees**

In accordance with the Plan Settlement, amount represents 50% of the accrued and unpaid professional fees, Boaz Toshav salary, and CRO fees.

**20. U.S. Trustee Fees**

Assumes 0.9% on total distributable value, per the latest U.S. Trustee fee schedule

**21. Other Wind-Down Fees**

Assumes $0.2M other wind-down expenses budget to be paid by Michal International Investment LLC.

**22. Class 1A – Secured Claims**

Chapter 7: Represents Scintilla's claim as scheduled as a secured claim. Plan: Treats Scintilla's reconciled claim as unsecured, in accordance with the Plan Settlement. NY 24 Holdings LLC claim allegedly secured with shares of eToro is treated as unsecured for purposes of this analysis.

**23. Chapter 11 Administrative Claims**

Chapter 7: Represents 50% of the accrued and unpaid professional fees, Boaz Toshav salary, and CRO fees prior to Ch. 7 conversion. Plan: none, as any Administrative Claims will be paid in connection with confirmation.

**24. Class 2A – Priority Non-Tax Claims**

Represents the $17,150 priority claim from Boaz Toshav pre-petition wages claim.

**25. Class 3A – General Unsecured Claims**

Represents general unsecured claims pool of $153.2M (excluding Scintilla), subject to reconciliation. Treats NY 24 Holdings LLC claim as unsecured.

**26. Class 3A – Reclassified General Unsecured Claims**

The Plan reclassifies Scintilla's reconciled $46.5M claim as a General Unsecured Claim.

**27. Class 4A – Equity Interests**

The Plan extinguishes any Equity Interests in Michal International Investment LLC.

**MII Aviation Services LLC Chapter 11 Wind-Down Analysis Compared to Chapter 7 Liquidation Analysis**

The below exhibit provides a side-by-side comparison of the respective recoveries for various Classes of Claims and Interests under the Chapter 11 Wind-Down Analysis and the Liquidation Analysis for MII Aviation Services LLC.

| *Liquidation Proceeds ($ in '000s)* | Notes | Valuation | | Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|
| | | Chapter 7 | Plan | Ch.7 (%) | Ch.7 ($) | Plan (%) | Plan ($) |
| Cash | 1 | $ - | $ - | 100% | $ - | 100% | $ - |
| 100% Interest in Boston Executive Helicopters | 2 | 6,000 | 6,000 | 17% | 1,000 | 50% | 3,000 |
| 100% Interest in Tel Aviv Executive Helicopters Ltd. | 3 | - | - | 0% | - | 0% | - |
| **Total Distributable Value** | **4** | **$ 6,000** | **$ 6,000** | **17%** | **$ 1,000** | **50%** | **$ 3,000** |
| **Less: Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fee | 5 | | | | $ 53 | | |
| Chapter 7 Professional Fees | 6 | | | | 500 | | |
| Other Chapter 7 Fees | 7 | | | | 50 | | |
| Liquidating Trustee Fee | 8 | | | | - | | $ 300 |
| Chapter 11 Professional Fees | 9 | | | | - | | 2,532 |
| U.S. Trustee Fees | 10 | | | | 4 | | 27 |
| Other Wind-Down Fees | 11 | | | | - | | 100 |
| **Total Liquidation Costs** | | | | | $ 603 | | $ 2,959 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **$ 397** | | **$ 41** |

| **Claims** | | Claim Amount | | Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|
| | | Chapter 7 | Plan | Ch.7 (%) | Ch.7 ($) | Plan (%) | Plan ($) |
| Class 1B - Secured Claims | 12 | $ 46,492 | $ 46,492 | 1% | $ 397 | 0% | $ 23 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | *17* |
| Administrative Claims | 13 | $ 2,532 | $ - | 0% | $ - | 0% | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | *17* |
| Class 2B - Priority Non-Tax Claims | 14 | $ 17 | $ 17 | 0% | $ - | 100% | $ 17 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - |
| Class 3B - General Unsecured Claims | 15 | $ 2,658 | $ 2,658 | 0% | $ - | 0% | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - |
| Class 4B - Equity Interests | | $ - | $ - | N/A | $ - | N/A | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - |

## Footnotes to Wind-Down Analysis

### 1. Cash

Cash per the latest Monthly Operating Report.

### 2. 100% Interest in Boston Executive Helicopters

Per MII Aviation Services LLC updated schedules [Docket # 346]. Valuation subject to confirmation. Chapter 7 assumes lower recovery given expected firesale nature of disposition. Plan assumes higher recovery given orderly sale process.

### 3. 100% Interest in Tel Aviv Executive Helicopters Ltd.

Per the MII Aviation Services LLC updated schedules [Docket # 346]. Valuation subject to confirmation.

**4. Total Distributable Value**

The Plan proceeds do not include any net recovery on claims against Boaz Toshav, which per the Plan will be applied against the non-Scintilla unsecured claims.

**5. Chapter 7 Trustee Fee**

The analysis assumes 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and 3 percent of such moneys in excess of $1,000,000.

**6. Chapter 7 Professional Fees**

Assumes $0.5M post-conversion professional fee budget to be paid by MII Aviation Services LLC.

**7. Other Chapter 7 Fees**

Assumes $0.1M other expenses budget to be paid by MII Aviation Services LLC.

**8. Liquidating Trustee Fee**

Assumes $0.3M liquidating trustee budget to be paid by MII Aviation Services LLC. This number is an estimate, subject to the plan and the trust agreement.

**9. Chapter 11 Professional Fees**

In accordance with the Plan Settlement, amount represents 50% of the accrued and unpaid professional fees, Boaz Toshav salary, and CRO fees.

**10. U.S. Trustee Fees**

Assumes 0.9% on total distributable value, per the latest U.S. Trustee fee schedule

**11. Other Wind-Down Fees**

Assumes $0.1M other wind-down expenses budget to be paid by MII Aviation Services LLC.

**12. Class 1B – Secured Claims**

Represents Scintilla's reconciled claim of $46.5M.

**13. Chapter 11 Administrative Claims**

Chapter 7: Represents 50% of the accrued and unpaid professional fees, Boaz Toshav salary, and CRO fees prior to Ch. 7 conversion. Plan: none, as any Administrative Claims will be paid in connection with confirmation.

**14. Class 2B – Priority Non-Tax Claims**

Represents the $17,150 priority claim from Christopher Donovan's pre-petition wages claim, which is disputed by the Plan Proponents.

**15. Class 3B – General Unsecured Claims**

Represents Christopher Donovan, Amos Madanes and EAC Realty Trust claims of $2.7M; excludes Moshe Yanai claim. Claims subject to reconciliation.

**16. Class 4B – Equity Interests**

On the Effective Date, all Equity Interests in MII Aviation will remain in place and effective.

# **EXHIBIT B**

## **FORM OF LIQUIDATING TRUST AGREEMENT**

# LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [●], 2026, is made by and among MII Aviation Services LLC and Michal International Investment LLC, as debtors and debtors in possession (collectively, the "Debtors"); Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP (together with any successors, the "Trustee"); and Amos & Daughters Investments & Partners, Abraham Jacob Neyman, Shaked Partners II Fund, LP, and Scintilla Fund LP, as initial Advisory Committee Members (as defined herein, and together with any successors, the Trustee, and the Debtors, the "Parties").

## RECITALS

A. On February 1, 2026, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as In re MII Aviation Services LLC, et al., Case No. 26-10123 (LSS).

B. On February 16, 2026, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 22], which is comprised of (i) Amos & Daughters Investments & Partners, (ii) Abraham Jacob Neyman, and (iii) Shaked Partners II Fund, LP.

C. On [●], 2026, the Bankruptcy Court entered the *[●]* [Docket No. [●]] (the "Confirmation Order"), which confirms the *Revised First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. [●]] (as confirmed, including all amendments and supplements thereto, the "Plan"). Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

D. The Plan and Confirmation Order provide for the establishment of a liquidating trust (the "Trust"), effective as of the Effective Date of the Plan.

E. The Trust is established pursuant to the Plan for the benefit of Holders of Allowed Claims, in their capacities as such, that are entitled to receive Distributions from the Liquidating Trust under the Plan, if any (collectively, the "Beneficiaries", and the beneficial interest such Beneficiary holds in the Trust, a "Liquidating Trust Interest").

F. The Trust is established for the purpose of liquidating the Liquidating Trust Assets, prosecuting the Liquidating Trust Claims transferred to the Liquidating Trust to maximize recoveries for the benefit of the Beneficiaries, and making Distributions in accordance with the Plan to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business.

G. Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all U.S. federal income tax purposes, the transfer of the Liquidating Trust Assets to the Trust as a transfer of the Liquidating Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by

the Beneficiaries to the Trust in exchange for the Liquidating Trust Interests, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H. The Trust is intended for U.S. federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

I. The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the Distribution of the Liquidating Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Liquidating Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidating Trust Claims, all other Liquidating Trust Assets, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

## ARTICLE I
## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1 Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2 Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3 Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4 Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and section VII.D. of the Plan, this Agreement controls.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1 Effectiveness of Agreement; Name of Trust. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date. The Trust shall be officially known as the "MII Creditors Liquidating Trust."

2.2 Purpose of Trust. The Debtors and the Trustee hereby create the Trust for the primary purpose of (i) collecting, holding, administering, liquidating, and distributing the Liquidating Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of the Plan, the Confirmation Order, and this Agreement; (ii) investigating, pursuing (as appropriate), and collecting any proceeds of Liquidating Trust Claims; and (iii) reconciling, seeking to subordinate, compromising, or settling any or all Claims (provided that the Scintilla Claim shall be deemed Allowed in accordance with the Plan) in accordance with the Plan; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3 Transfer of Liquidating Trust Assets.

2.3.1 Conveyance of Liquidating Trust Assets. In accordance with section VII.D.2 of the Plan, the Debtors hereby irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Liquidating Trust Assets to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. The transfer of the Liquidating Trust Assets to the Trust shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Liquidating Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2 Title to Liquidating Trust Assets. On the Effective Date, all of the Debtors' right, title, and interest in and to the Liquidating Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain possession or control of, liquidate, and collect all of the Liquidating Trust Assets;

pursue all of the Liquidating Trust Claims; and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Liquidating Trust Claims. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as Liquidating Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan, and the Confirmation Order. To the extent that the transfer, assignment, or vesting of any interest to or in the Trust free and clear of any liens, claims, encumbrances, and other interests pursuant to the Plan and Confirmation Order would result in a violation of applicable law or result in the forfeiture, impairment, or loss of such interest, such interest shall not be transferred, assigned, or vested and shall instead be deemed to remain with the applicable Debtor, to be held solely for the benefit of the Trust and administered in accordance with this Agreement for the benefit of the Beneficiaries.

2.4 Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5 Mutual Cooperation. The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Liquidating Trust Assets. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate reasonable access to any evidence and information the Trustee reasonably requests (including but not limited to reasonable access to the Debtors' books and records, as applicable) in connection with the Trust's investigation, prosecution, or other pursuit of the Liquidating Trust Claims. The Debtors shall preserve or, consistent with the prior sentence and subject to the terms of the Confirmation Order, turn over to the Trust copies of all physical or electronically stored documents and communications in their possession or control that relate to the Liquidating Trust Claims.

The Trustee and its professionals shall use commercially reasonable efforts to cooperate with the Debtors and their professionals in connection with implementing certain provisions of the Plan including, but not limited to, the issuance of Distributions pursuant to the Plan, reporting requirements, the exchange of information in the prosecution of claim objections to the extent necessary, and any other reasonably requested information or assistance.

2.6 No Retention of Excess Cash. Neither the Trust nor the Trustee shall retain cash or cash equivalents other than reserves established pursuant to sections 3.2.21, 4.2, or 4.8 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7 Single Trust. The Plan and Confirmation Order do not substantively consolidate the assets and liabilities of the Debtors. The Trustee shall maintain, account for, and administer the Liquidating Trust Assets transferred to and vested in the Trust from each of the Debtors in

accordance with the Plan in a manner that distinguishes between Assets and obligations of each Debtor. Nothing herein shall prevent the Trustee from commingling Liquidating Trust Assets of the Debtors so long as the Trustee's books and records and the Trustee's use of such Liquidating Trust Assets reflect the allocable ownership and entitlements of the applicable Debtor. Notwithstanding the foregoing, the Trustee, in his sole discretion and subject to the terms of section 8.3 of this Agreement, may elect to divide the Trust into two separate Trusts, one for each Debtor and each bound by the terms of this Agreement, or alternatively to create a sub-trust for either or both Debtor(s).

2.8 Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust. A summary of the initial Trustee's background and experience is attached hereto as Exhibit A.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1 Rights, Powers, and Privileges of Trustee Generally. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Liquidating Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the Liquidating Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the Liquidating Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Liquidating Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1 Power to Contract. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2 Authority to Act on Behalf of Debtors. The Trustee shall have all power and authority that may be or could have been exercised to take all actions that may be or could have been taken on behalf of the Debtors with like effect as if authorized, exercised and taken by unanimous action of the Debtors' partners, members, officers, directors and equity holders, including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors, merger of any Debtor into another Debtor, the dissolution of any Debtor, filing any final tax returns, and the assertion or waiver of any privilege owned by the Debtors.

3.1.3 Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the

performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2 Powers of Trustee. Without limiting the generality of the above section 3.1 and subject to Article VI hereof, in addition to the powers granted in the Plan, which are explicitly incorporated herein by reference, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1 hold legal title to the Liquidating Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the Liquidating Trust Assets;

3.2.2 receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Liquidating Trust Assets, including causing the Trust to invest any moneys held as Liquidating Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3 open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4 establish and maintain the Liquidating Trust Expense Fund (as defined herein);

3.2.5 borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund;

3.2.6 cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.7 collect and liquidate all Liquidating Trust Assets, including the sale of any Liquidating Trust Assets free and clear of any interests or liens under section 363 of the Bankruptcy Code;

3.2.8 protect and enforce the rights to the Liquidating Trust Assets (including any Liquidating Trust Claims) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.9 investigate any Liquidating Trust Assets, including potential Liquidating Trust Claims, and cause the Trust to seek the examination of any Person pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or other applicable rules;

3.2.10 cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.11 cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including compensation of the Trustee and all fees and expenses of professionals retained by the Trustee or the Trust, and make all other payments relating to the Liquidating Trust Assets;

3.2.12 cause the Trust to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Liquidating Trust Claims;

3.2.13 consistent with Article VII of the Plan, cause the Trust, as appropriate, to review, investigate, settle, resolve, reconcile, or object to all Claims, provided that the Scintilla Claim shall be deemed Allowed in accordance with the Plan;

3.2.14 establish, adjust, and maintain reserves for asserted Administrative Expense Claims, including asserted or estimated Professional Fee Claims, and Disputed Claims;

3.2.15 cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.16 in reliance upon the Debtors' schedules and the official claims register maintained in each Chapter 11 Case (such official registers collectively being the "Claims Register"), maintain a register evidencing the Liquidating Trust Interests held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.17 cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VIII hereof, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust; *provided*, *however*, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility in any capacity whatsoever for the preparation, filing, signing, or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, which shall be the sole responsibility of the Debtors;

3.2.18 cause the Trust to abandon or donate to a charitable organization any Liquidating Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries in accordance with the terms of the Plan;

3.2.19 cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.20 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.21 cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.22 consistent with section 3.11 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including appropriate insurance coverage for the benefit of the Trust, the Trustee, and the members of the Advisory Committee, and to pay all associated premiums and costs;

3.2.23 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.24 cause the Trust to seek entry of an order closing one or both of the Chapter 11 Cases and requesting entry of a final decree; and

3.2.25 take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3 General Authority of Trustee. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order. For the avoidance of doubt, except as provided in section VII.D. of the Plan, the Trustee shall not be required to file any employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedure or section 363 of the Bankruptcy Code to resolve, settle, transfer, or dispose of any Liquidating Trust Claim (except for a Retained Cause of Action that has been initiated as a proceeding before the Bankruptcy Court) or Liquidating Trust Assets. Notwithstanding the foregoing, the Trustee shall remain entitled to file an application under Rule 9019 of the Federal Rules of Bankruptcy Procedure or a motion under section 363 of the Bankruptcy Code if the Trustee determines such action is advisable to maximize the value of Liquidating Trust Assets, and any such application or motion filed by the Trustee shall be deemed to be in furtherance of the Plan and Confirmation Order.

3.4 Exclusive Authority to Pursue Liquidating Trust Claims. The Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Liquidating Trust Claims. The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Liquidating Trust Claims and all other matters affecting the Debtors and Liquidating Trust Assets. The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Retained Cause of Action. The Trust shall also be vested with and entitled to assert all the Debtors' and the Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

3.5 Abandonment. If, in the Trustee's reasonable judgment, any non-cash Liquidating Trust Assets cannot be sold or liquidated in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization, in accordance with the terms of the Plan.

3.6 Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust. Notwithstanding the foregoing, no professionals employed by the Debtors, the Committee, or Scintilla at any time between the Petition Date and the Effective Date may be engaged by the Trustee, except that, subject to unanimous approval of the then-serving Advisory Committee Members, the Trustee may engage the Debtors' investment banker, Silver Birch Group, Inc., and BA Securities, LLC. If the Advisory Committee fails to act on a request within ten (10) business days after receiving it, or if the vote is tied, the Trustee may seek approval or instructions from the Bankruptcy Court, and the deadlock or failure to act shall not prevent the Trustee from seeking such relief.

3.7 Safekeeping and Investment of Liquidating Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Liquidating Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or for producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8 Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Liquidating Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Trust. The books and records maintained by the Trustee, and any records of the Debtors

transferred to the Trust, may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9 Preservation of Privilege. Any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust. Neither the Trustee's receipt of any information subject to any privilege or similar protection, including information and communications shared on behalf of the Committee or its current or former professionals, nor the disclosure of any such information to the Advisory Committee shall waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.10 Reports to be Filed by the Trustee. The Trustee shall file with the Bankruptcy Court quarterly operating reports on behalf of the Trust, as required by the Office of the United States Trustee, until entry of a final decree closing the last of the Chapter 11 Cases.

3.11 No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is expressly authorized, but not obligated, to obtain and maintain, at the expense of the Trust, all reasonable insurance coverage for itself, the Trust, the Advisory Committee, and their respective members, agents, representatives, employees, or independent contractors, including, without limitation, fiduciary liability, directors and officers, errors and omissions, professional liability, and other liability coverage with respect to the liabilities, duties, and obligations of the Trustee, the Advisory Committee, and their respective members, agents, representatives, employees, or independent contractors under this Agreement. Such coverage may include claims-made tail, runoff, or extended reporting coverage that remains in effect after termination or winding up of the Trust. Premiums, deductibles, retentions, and other costs of such coverage may be paid from Liquidating Trust Assets, including reserves established under sections 3.2.21 and 4.2.

## ARTICLE IV
## DISTRIBUTIONS

4.1 Distribution. Following the transfer of Liquidating Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Liquidating Trust Assets through the Trustee subject to the reserves required under the Plan or this Agreement. For avoidance of doubt, the Trustee may make periodic Distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities).

Upon the Effective Date, the Trustee shall establish and maintain a reserve of cash, in an amount determined by the Plan Proponents immediately prior to the Effective Date (after consultation with and approval of Scintilla) to be sufficient to pay in full all Administrative Expense Claims, including all Professional Fee Claims asserted or estimated by the applicable Professional as of

the Effective Date, and all Priority Non-Tax Claims, which reserved cash shall be used by the Trustee solely to pay any such Claim promptly when such Claim is Allowed or otherwise awarded by entry of an order of the Bankruptcy Court. The Trustee shall not use such reserved amounts for any purpose other than payment of Administrative Expense Claims and Priority Non-Tax Claims, provided that if such reserve contains any surplus after entry of Final Orders resolving all Administrative Expense Claims, including all Professional Fee Claims, and payment of all Allowed Administrative and Priority Non-Tax Claims, including Professional Fee Claims, such surplus amounts shall be treated as general Liquidating Trust Assets in accordance with the Plan. In the event insufficient cash is available as of the Effective Date to fund such reserve in full, the Trustee shall promptly liquidate readily marketable Liquidating Trust Assets, including eToro stock, to fund such reserve.

4.2 Reserve of Liquidating Trust Assets. The Trustee shall maintain a reserve (the "Liquidating Trust Expense Fund") in an amount as is reasonably necessary to pay the costs and expenses incurred or expected to be incurred by the Trust and Trustee in connection with administering the Liquidating Trust Assets and performing the duties set forth in this Agreement, including, without limitation, paying the fees and expenses of the Trustee and professionals retained by the Trust or Trustee (the "Liquidating Trust Expenses"). Liquidating Trust Expenses on account of each Debtor shall be payable from Liquidating Trust Assets attributable to such Debtor.

In consultation with the Advisory Committee, but without requiring the unanimous consent of the Advisory Committee, the Trust may borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund, including from Liquidating Trust Assets attributable to another Debtor so long as the Trustee, based on the advice of the Trustee's professionals, has a reasonable expectation that such amounts will be repaid. If the Advisory Committee is asked to approve or consent to any borrowing or capital raising and fails to act within ten (10) business days after receiving the request, or if the vote is tied, the Trustee may seek approval or instructions from the Bankruptcy Court. Except for purposes of funding the Liquidating Trust Expense Fund, the Trust shall not incur any debt.

4.3 Liquidating Trust Proceeds. All Liquidating Trust Assets shall be distributed in accordance with this Agreement and the terms of the Plan and Confirmation Order.

4.4 Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan or Confirmation Order, by Final Order, or as agreed by the relevant parties, at such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata share of the property distributable with respect to the Class in which such Claim belongs as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order. To the extent that all or a portion of a Disputed Claim is Disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed, and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

4.5 No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no Distribution will be made with respect to any Disputed Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, Distributions on account of the non-Disputed portion of such Claim may be made.

4.6 Legal Proceedings. If any Liquidating Trust Claim is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any Creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such Creditor shall only receive Distributions under the Plan or Confirmation Order to the extent that the Distributions to which such Creditor is otherwise entitled exceed the maximum liability of such Creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.7 Objection Deadline. On and after the Effective Date, the Trustee shall have the exclusive right to file objections to all Claims (provided that the Scintilla Claim shall be deemed Allowed in accordance with the Plan), unless previously Allowed. As provided in section VII.E of the Plan, any objections to Claims shall be filed on or before the later of (i) 90 days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by order of the Bankruptcy Court for objecting to Claims.

4.8 Disputed Claims Reserve. On and after the Effective Date, the Trust shall establish a disputed claims reserve to the extent required under section VII.E.7 of the Plan.

4.9 Settling Disputed Claims. Following the Effective Date, the Trustee is authorized to (i) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims (provided that the Scintilla Claim shall be deemed Allowed in accordance with the Plan), regardless of whether such Claims are in a Class or otherwise; (ii) settle, compromise, or resolve any such Disputed Claims; and (iii) administer and direct adjustment of the Claims Register to reflect any such settlements.

4.10 Distributions Net of Costs. Distributions shall be made net of the actual and reasonable costs of making the Distributions.

4.11 Setoff. The Trustee, pursuant to the Plan, the Bankruptcy Code (including Bankruptcy Code section 553), and applicable bankruptcy or nonbankruptcy law, may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or Trust may have against the Holder of such Allowed Claim, *provided*, *however*, that (i) the Trustee may not set off against any Allowed Claim or Distribution on account of any claim or cause of action that is released or exculpated pursuant to the Plan, and (ii) neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Trustee of any such claim the Debtors or Trust may have against the Holder of such Claim.

4.12 Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any U.S. federal, state, or local taxes from any cash payments made with respect to Allowed Claims.

4.13 Withholding from Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a Distribution of cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such Distribution. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

4.14 Right to Rely on Professionals. Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may reasonably rely and shall be fully protected in relying on the advice and opinion of the Trust's professionals.

4.15 Method and Timing of Distributions. Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make Distributions to the Beneficiaries.

4.16 Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Distribution upon receipt of such identification number or tax form. If, within three months of written request from the Trustee, a Beneficiary does not provide the Trustee with the foregoing information, then the Distribution to such Beneficiary shall be administered as an unclaimed Distribution in accordance with section 4.17 of this Agreement and, as provided in section VII.E of the Plan, no further Distributions shall be made to such Beneficiary.

4.17 Unclaimed and Undeliverable Distributions. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Trustee shall use reasonable efforts to determine such Holder's then-current address, at which time a Distribution shall be made to such Holder without interest. If the Trustee cannot determine, or is not notified of, a Holder's then-current address within ninety (90) days after the original Distribution date for such Holder, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust to be distributed in accordance with the terms of this Agreement and the Plan.

4.17.1 Disallowance of Claims; Cancellation of Corresponding Liquidating Trust Interests. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding Liquidating Trust Interests of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.17.2 Inapplicability of Unclaimed Property or Escheat Laws. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit except as provided herein.

4.18 Voided Checks. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within three months after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed Distributions under section VII.E of the Plan and administered under section 4.17 of this Agreement.

4.19 Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the Liquidating Trust Interests under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.19.1 The Trustee may elect to cause the Trust to not make any payment or Distribution with respect to Liquidating Trust Interests subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.19.2 The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable Liquidating Trust Interests the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

4.19.3 In acting or refraining to act under and in accordance with this section 4.19 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

4.20 De Minimis Distributions. No payment of cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1 Interest Beneficial Only. The ownership of a Liquidating Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2 Allocation of Liquidating Trust Interests. The allocation and Distribution of the Liquidating Trust Interests shall be accomplished as set forth in the Plan and the Confirmation Order. The aggregate number and face value of Liquidating Trust Interests to be distributed pursuant to the Plan shall be determined by the Trustee, consistent with the intent and purposes of the Plan.

5.3 Evidence of Liquidating Trust Interest. Ownership of a Liquidating Trust Interest shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4 No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Liquidating Trust Assets.

5.5 No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidating Trust Assets.

5.6 Requirement of Undertaking. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7 Limitation on Transferability. It is understood and agreed that the Liquidating Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by (i) operation of law, (ii) merger of the Holder of the Liquidating Trust Interests into another

Entity, (iii) sale of the Holder of the Liquidating Trust Interests to another Entity, or (iv) an event that causes an involuntary transfer of a Beneficiary's Liquidating Trust Interests; provided that the Holder of such Liquidating Trust Interest may transfer or assign such Liquidating Trust Interest to an Affiliate during the term of this Agreement. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee.

5.8 Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9 Delivery of Distributions. Subject to the terms of this Agreement, the Trustee shall make Distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI
## ADVISORY COMMITTEE

6.1 General. The Advisory Committee shall oversee, review, and guide the activities and performance of the Trustee.

6.2 Advisory Committee Membership.

a) The Advisory Committee shall initially consist of four members (the "Advisory Committee Members" and each, an "Advisory Committee Member"). The Advisory Committee Members shall initially consist of (i) Amos & Daughters Investments & Partners, (ii) Abraham Jacob Neyman, (iii) Shaked Partners II Fund, LP, and (iv) Scintilla Fund LP. By execution hereof, each Advisory Committee Member agrees to the terms set forth herein. The Advisory Committee and the Advisory Committee Members shall act in a nonfiduciary capacity under this Agreement.

b) Each Advisory Committee Member shall hold office until the earlier of (i) the termination of the Trust, (ii) the dissolution of such Advisory Committee Member under applicable law, (iii) all Claims of such Advisory

Committee Member are Disallowed by Final Order, or (iv) the resignation or removal of such Advisory Committee Member in accordance with this Agreement.

c) Any Advisory Committee Member may resign upon 30 days' prior written notice to the Trustee and the other Advisory Committee Members.

d) An Advisory Committee Member may be removed (i) for "cause" by order of the Bankruptcy Court upon application of the Trustee, (ii) for "cause" by the other members of the Advisory Committee acting unanimously, or (iii) if such Advisory Committee Member's Claim(s) become Disallowed in full by Final Order. For purposes of this Article, the term "cause" shall mean (a) the Advisory Committee Member's gross negligence, willful misconduct, or willful failure to perform its duties under the Plan, the Confirmation Order, or this Agreement, or (b) the Advisory Committee Member's misappropriation or embezzlement of any Liquidating Trust Assets or the proceeds thereof.

e) In the event of a vacancy on the Advisory Committee, whether as a result of the resignation, dissolution, or removal of an Advisory Committee Member, the remaining Advisory Committee Members, acting by unanimous vote, may select a replacement Advisory Committee Member. Until a successor member has been appointed, the Advisory Committee shall operate with one fewer member.

6.3 Compensation. The Advisory Committee Members shall not be compensated for their services.

6.4 Authority. Except as otherwise expressly provided herein, the Advisory Committee shall have no authority to act on behalf of the Trust or to direct the Trustee to take or refrain from taking any action.

6.5 Rights and Powers of the Advisory Committee. In addition to such other rights as are set forth in this Agreement, the Advisory Committee shall have the right to:

a) acting as described in section 9.5 of this Agreement, remove the Trustee for cause or appoint a successor Trustee;

b) receive and review the reports of the Trustee and consult with the Trustee on any material matters related to the Trust or disposition or administration of the Liquidating Trust Assets;

c) review and consult with the Trustee regarding: (i) distributions to Beneficiaries; (ii) the amendment of this Agreement as provided in section 11.7 of this Agreement; (iii) incurrence and payment of Liquidating Trust Expenses, and (iv) such other actions as are specified in this Agreement;

d) acting by a unanimous vote as described in section 6.2 of this Agreement, apply to the Bankruptcy Court for the removal of an Advisory Committee Member as provided in section 6.2(d) of this Agreement;

e) have access, upon reasonable notice and during normal business hours, to all reports, documents, memoranda, and other work product of the Trustee; and

f) monitor the actions of the Trustee and receive, upon reasonable request, periodic status reports from the Trustee as to the status of (i) the litigation, settlement, administration, and pursuit of the Liquidating Trust Claims and (ii) the administration of the Liquidating Trust Assets.

For the avoidance of doubt, the failure to specifically identify rights in this section 6.5 shall not limit or otherwise impair the right of the Trustee or any Advisory Committee Member to consult with the Trustee or Advisory Committee Members individually or collectively on any or all issues that the Trustee or the Advisory Committee Member may determine to be relevant or appropriate.

6.6 Duties; Standard of Care

a) Each Advisory Committee Member's rights and powers hereunder are exercisable solely on behalf of the Trust, consistent with, and in furtherance of, the purpose of the Trust and not otherwise, and in accordance with applicable law.

b) No Advisory Committee Member shall have the authority to bind the Trust.

c) No Advisory Committee Member, in its capacity as such, shall have any liability whatsoever to the Trust or its Beneficiaries for any claim, cause of action, loss, liability, damage, or expense suffered by the Trust or its Beneficiaries.

## ARTICLE VII
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1 Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Liquidating Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

7.2 Limitation of Trustee's Liability. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any

of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties, in each case only to the extent determined by a Final Order of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except to the extent actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties is determined by a Final Order of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

7.3 No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

7.4 No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

7.5 No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a Final Order that the Trustee was grossly negligent in ascertaining the pertinent facts.

7.6 Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee shall have no duty to independently investigate or verify the authenticity, accuracy, or completeness of any such matter, absent actual knowledge that it is not genuine or was not signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall be fully protected and not liable for any action taken, omitted, or suffered by the Trustee in reasonable, good-faith reliance upon the advice of such counsel, agents, or advisors.

7.7 No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Liquidating Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

7.8 No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability. In addition, to the fullest extent permitted by applicable law, the Trustee shall have no personal or individual liability for any tax, interest, penalty, or other tax obligation of the Trust, whether arising before, during, or after termination of the Trust, and the Trustee may cause the Trust to pay, reserve for, and otherwise provide for any such obligation from Liquidating Trust Assets in accordance with this Agreement, the Plan, Confirmation Order, and Article VIII.

7.9 Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, the Advisory Committee Members and their respective employees, employers, designees, or professionals, or any of their duly designated agents or representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement, the exercise or performance of any of the Advisory Committee's powers and duties under this Agreement, or in rendering services by the Indemnified Party to the Trust, the Trustee, or the Advisory Committee (except as provided in this section) (the "Indemnified Conduct"), provided, however, that this section 7.9 shall not be construed to provide compensation or reimbursement to any Indemnified Party for ordinary costs, fees, or expenses incurred in connection with routine Trust administration, as distinguished from losses, liabilities, or expenses incurred in connection with an actual claim, action, or proceeding asserted against such Indemnified Party in connection with the Indemnified Conduct; including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is determined by a Final Order of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of its duties under this Agreement by the Indemnified Party asserting this provision. For the avoidance of doubt, the definition of "Indemnified Conduct" shall not be construed to include costs in connection with any claim, action, or proceeding brought by the Trustee to object to any Claim held by any member of the Advisory Committee.

7.9.1 Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 7.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Liquidating Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. Subject to the Plan and Confirmation Order, the Trustee is expressly authorized to establish and maintain, including during and after the winding up or termination of the Trust, one or more reasonable reserves for indemnification, defense, reimbursement, and other obligations under section 7.9,

including amounts reasonably anticipated to be needed for obligations that may be asserted, incurred, or become payable after termination or winding up. Any such reserve may be retained in the Liquidating Trust Assets and administered by the Trustee until the applicable obligations are finally resolved, paid, or otherwise released, notwithstanding termination or winding up of the Trust, and may be funded and maintained under sections 3.2.21 and 4.2. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2 Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 7.9.

7.10 Limitation of Advisory Committee's Liability. In no event shall the Advisory Committee or any member thereof be liable for any Claim, expense, liability, or other obligation asserted against the Trust, or for any negligence or error of judgment made in good faith with respect to their decision to grant or withhold consent for any action taken or omitted to be taken in good faith, except to the extent that their decision to grant or withhold consent is judicially determined in a Final Order to have constituted gross negligence or willful misconduct. The Advisory Committee shall be, and hereby is, exculpated by all Persons, including all parties in interest in the Chapter 11 Cases, from any and all Claims, causes of action, and other assertions of liability arising out of their decision to grant or withhold consent for any action taken or omitted to be taken in good faith under this Agreement, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or applicable law, except for decisions to grant or withhold consent that are judicially determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct.

7.11 No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein or expressly required by the Plan or Confirmation Order, and no implied covenants, duties, or obligations shall be read into this Agreement against the Trustee, including by reason of the Trustee's status, the Trust's liquidating purpose, or any course of dealing.

7.12 Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns. For the avoidance of doubt, such survival includes the Trustee's and the Indemnified Parties' rights to defense, indemnification, reimbursement,

payment, and the establishment, retention, and administration of reserves under sections 7.9, 7.9.1, 3.2.21, and 4.2, including after termination or winding up of the Trust or this Agreement.

## ARTICLE VIII
## TAX MATTERS

8.1 Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and the transfer of the Liquidating Trust Assets to the Trust shall be treated as a transfer of the Liquidating Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for U.S. federal income tax purposes. Notwithstanding the foregoing, the Trustee may elect for the Trust to be treated as a partnership, corporation, or other Entity for tax purposes only, if the Trustee determines, in his or her reasonable discretion, that such election would be in the best interests of the Beneficiaries. In the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

8.2 Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3 Tax Treatment of Reserves for Disputed General Unsecured Claims. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report any reserve for Disputed General Unsecured Claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal or state income tax due.

8.4 Valuation of Liquidating Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first U.S. federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Liquidating Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all U.S. federal income tax purposes; *provided*, *however*, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Liquidating Trust Assets,

whether by disposition, liquidation, litigation, settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the Liquidating Trust Claims.

## ARTICLE IX
## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

9.1 Appointment. Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP shall be the initial Trustee and is appointed effective as of the Effective Date.

9.2 Term of Service. The Trustee shall serve until (a) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (b) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal in accordance with this Agreement.

9.3 Removal of Trustee. The Advisory Committee may remove the Trustee only by a unanimous vote and only for cause. If a Trustee is removed for cause, the removed Trustee shall forfeit only those accrued but unpaid fees, if any, that are determined by a Final Order of a court of competent jurisdiction to be directly attributable to the conduct constituting such cause. The removed Trustee shall retain all other accrued compensation for services properly rendered and reimbursement for expenses properly incurred before removal. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any Liquidating Trust Assets or the proceeds thereof.

9.4 Resignation of Trustee. The Trustee may resign at any time upon thirty (30) days' written notice to the Advisory Committee, the U.S. Trustee, and the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation, (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee, and (iii) upon the appointment of a permanent or interim successor Trustee. In the event of a resignation, the resigning Trustee shall render to the Advisory Committee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5 Appointment of Successor Trustee. Upon the death, dissolution, liquidation, resignation, incapacity, or removal of a Trustee, a successor Trustee shall be appointed with the unanimous approval of the then-serving Advisory Committee Members. If the Advisory Committee fails to approve a successor by unanimous vote within ten (10) business days after receiving notice of the need for a successor, the Trustee, any Advisory Committee Member, or other interested party may request that the Bankruptcy Court resolve the deadlock or appoint a successor, including by directing the parties to request a list of candidates from a former bankruptcy judge, consistent with section VII.D of the Plan. Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee and agree to be bound by the terms of this Agreement and the Plan, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee, and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor Trustee. Any successor Trustee may be appointed to serve on an interim basis.

9.6 Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order. By accepting the position as Trustee, such successor Trustee agrees that the provisions of this Agreement shall be binding upon, and inure to the benefit of, such successor Trustee and all of its heirs and legal and personal representatives, successors, or assigns.

9.7 Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action previously taken by the Trustee.

9.8 Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan and which shall be a charge against and paid out of the Liquidating Trust Assets. Except as set forth in Section 4.1 of this Agreement, all costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Liquidating Trust Assets prior to any Distribution to the Beneficiaries. The initial terms of the compensation of the Trustee are set forth on Exhibit B hereto.

9.9 Retention and Payment of Professionals. The Trustee, in consultation with the Advisory Committee, may retain such professionals, consultants, or other persons as the Trustee deems reasonably necessary to carry out its duties under this Agreement (the "Trustee's Professionals"); provided that the Trustee shall not engage any professional whose engagement is prohibited under section 3.6 of this Agreement or section VII.D of the Plan, including any professional employed by the Debtors, the Committee, or Scintilla at any time between the Petition Date and the Effective Date (except as expressly permitted with respect to Silver Birch Group, Inc. and BA Securities, LLC). The Trustee may pay the reasonable fees, costs and expenses of the Trustee's Professionals out of the Liquidating Trust Assets in the ordinary course of business and without any further notice to any party or action, order or approval of the Bankruptcy Court. Professionals retained by the Trustee shall receive compensation and reimbursement of expenses in a manner to be determined by the Trustee in consultation with the Advisory Committee. The Trustee and the members of the Advisory Committee shall not be personally liable to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered. The Bankruptcy Court shall retain jurisdiction to resolve any disputes relating to the foregoing.

## ARTICLE X
## DURATION OF TRUST

10.1 Trust Duration. The Trust shall become effective upon the Effective Date of the Plan and shall continue and remain in full force and effect until (i) the conclusion by settlement or Final Order of all pending litigation and contested matters to which the Trustee is a party and, in the opinion and discretion of the Trustee, in consultation with the Advisory Committee, the exhaustion of all efforts to collect thereon, (ii) all of the Liquidating Trust Assets are liquidated or disposed of in accordance with the Plan and this Agreement and all of the funds held by the Trust, other than reasonable reserves maintained under sections 7.9.1 and 7.12, have been completely distributed in accordance with the Plan and this Agreement, and (iii) the order closing the Chapter

11 Cases is a Final Order; *provided*, *however*, that in no event shall the Trust be dissolved later than the third anniversary of its creation, *provided further* that the Trustee shall, in its sole discretion, be authorized to extend the dissolution date to the fifth anniversary of the creation of the Liquidating Trust with prior Bankruptcy Court approval. If warranted by the facts and circumstances involved in resolving any Retained Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding that such further extension is necessary for purposes of resolving such Retained Causes of Action and distributing the proceeds to the Beneficiaries, the term of the Liquidating Trust may be further extended by the Trustee for a specified, finite term.

10.2 No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

10.3 Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. For the avoidance of doubt, and subject to the Plan and Confirmation Order, the Trustee is authorized to retain and administer any reasonable reserve maintained under section 7.9.1 for indemnification, defense, reimbursement, or other obligations that survive termination or winding up, until those obligations are finally resolved, paid, or otherwise released. Except as otherwise specifically provided herein, upon the Distribution of the Liquidating Trust Assets and all excess reserves, other than any reasonable reserve maintained under section 7.9.1 for obligations that survive termination, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE XI
## MISCELLANEOUS

11.1 Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2 Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee or the Advisory Committee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

*Trust or Trustee*:

**MII Creditors Liquidating Trust**
Fred Stevens
Klestadt Winters Jureller Southard & Stevens, LLP
286 Madison Ave.
11th Floor
New York, NY 10017
FStevens@Klestadt.com

*with a copy to his counsel*:
Sean Southard
Klestadt Winters Jureller Southard & Stevens, LLP
One Old Country Road, Suite 237
Carle Place, NY 11514
SSouthard@Klestadt.com

-and-

_____________________
Lowenstein Sandler LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
__________@lowenstein.com

*Advisory Committee*:

**Amos & Daughters Investments & Partners**
5 Neharde'a St.
Tel Aviv, Israel 6423505
Erimst@gmail.com

**Abraham Jacob Neyman**
10 Agmon Street, Ramat Efal
Ramat Gan, Israel 52960
aneyman@huji.ac.il

**Shaked Partners II Fund, LP**
c/o Benowich Law, LLP
1025 Westchester Avenue
West Harrison, NY 10604
leonard@benowichlaw.com

**Scintilla Fund LP**
c/o Michael Friedman
1270 Avenue of the Americas, 30th Floor
New York, NY 10020
friedman@chapman.com

or to such other address as may from time to time be provided in written notice by the respective Parties.

11.3 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

11.4 Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5 Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to the Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6 Execution. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the Liquidating Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

11.7 Amendment. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, subject to the prior approval of a unanimous vote of the Advisory Committee Members, or (ii) following dissolution of the Debtors, by the Trustee and a unanimous vote of the Advisory Committee Members, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without the approval of the Bankruptcy Court, following notice to the Beneficiaries, that would (i) adversely affect (a) the Distributions to any of the Beneficiaries or (b) the U.S. federal income tax status of the Trust as a "liquidating trust;" (ii) [require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary]; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and Section 2.2 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order.

11.8 No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9 No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.10 Severability. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.11 Further Assurances. The Debtors agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

11.12 Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.13 Entire Agreement. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

11.14 Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction over the Trust, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Trust, in each case in its capacity as such. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.

[*Remainder of this page intentionally left blank.*]

**IN WITNESS WHEREOF**, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**MII Aviation Services LLC**

By: ______________________________

Name: ______________________________

Title: ______________________________

**Michal International Investment LLC**

By: ______________________________

Name: ______________________________

Title: ______________________________

**Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP, *Trustee***

By: __________________________________
Name: ________________________________
Title: _________________________________

Amos & Daughters Investments & Partners**,** ***Advisory Committee Member***

By: ________________________________

Name: ______________________________

Title: _______________________________

Abraham Jacob Neyman**,** ***Advisory Committee Member***

By: ________________________________

Name: ______________________________

Title: _______________________________

Shaked Partners II Fund, LP**,** ***Advisory Committee Member***

By: ________________________________

Name: ______________________________

Title: _______________________________

Scintilla Fund LP**,** ***Advisory Committee Member***

By: ________________________________

Name: ______________________________

Title: _______________________________

# Exhibit A

**Summary of Trustee's Background and Experience**

## Fred Stevens

**fstevens@klestadt.com**
https://klestadt.com/team/fred-stevens/

**Mr. Stevens is a professional fiduciary and commercial restructuring lawyer whose practice focuses on the representation of trustees, debtors and creditors in complex bankruptcy cases, restructurings, and related litigation, with a focus on unwinding Ponzi schemes and other frauds.**

**Fred employs a practical, results-oriented approach to find money in the tough cases and maximize returns for creditors. Fred routinely serves as a bankruptcy trustee, examiner, plan administrator, and receiver in cases throughout the country.**

**Education:**
St. John's University School of Law – JD (1999)
St. John's University – BS Finance (1996)

**Bar Admissions:**
District of Columbia
Massachusetts
New Jersey
New York
Texas

**Federal Courts:**
District of Connecticut
District of Massachusetts
District of New Jersey
Eastern District of New York
Northern District of New York
Southern District of New York
Northern District of Texas
Southern District of Texas
Second Circuit Court of Appeals
U.S. Tax Court

**Additional Designations:**
- Certified Fraud Examiner
- Adjunct Professor at St. John's School of Law
- Member of Panel of Private Chapter 7 Trustees in the SDNY

**Select Fiduciary Roles:**
**Chapter 11 Trustee**
- *In re Daryl Fred Heller* (alleged $770 million fraud)
- *In re Miracle Mile Properties 2, LLC, et al.*
- *In re Itzhak Hershko*
- *In re M. Burton Marshall* ($95 million Ponzi scheme)
- *In re EMC Hotels and Resorts LLC (The Time Nyack Hotel) & EMC Bronxville*
- *In re La Cremaillere Rest. Corp. & Meyzen Realty*
- *In re 2111 Albany Post Road Corp.*

**Examiner**
- *In re PCP Group LLC*
- *In re Gateway Kensington LLC*

**Receiver**
- *Axos Financial Inc. v. 148 Duane LLC* (S.D.N.Y.)
- *Mass. Mutual Life Ins. Co.. v. Broadway 340 Madison Fee LLC* (S.D.N.Y.)
- *NYC Multifamily Portfolio LLC v. Numerous* (N.Y.S. Sup. Ct.)
- *Spin Capital, LLC v. Golden Foothill Ins. Svcs.* (N.Y.S. Sup. Ct.)

**Post-Confirmation**
- *In re Alachua Government Services, Inc.*
- *In re TPI Composites Inc.*
- *In re Prime Capital Ventures LLC*
- *In re Linqto Texas*
- *In re Hardinge Inc., et al.*
- *In re Malibu Lighting*
- *In re Auburn Armature*
- *In re Atari Inc.*

**Significant Representations:**
- Chapter 11 Trustee in *In re Prime Capital Ventures, LLC*, a vehicle for a $100+ million advance pay lending/Ponzi scheme
- Chapter 7 Trustee of *Fyre Festival LLC*, the failed music festival created by Billy McFarland and Ja Rule.
- Official Committee of Unsecured Creditors and Post-Confirmation Trustee for *FKF 3, LLC*, a $60 million real estate investment fund. Obtained over $50 million in judgments after a five-week jury trial on fiduciary duty and fraudulent transfer claims in 2018.
- Debtor in the Chapter 11 construction case of *Advanced Contracting Solutions LLC.* Obtained authority to sell the assets of the company over objections of multiple labor unions and employee benefit funds (decision reported at 582 B.R. 285 (Bankr. S.D.N.Y. 2018).
- Debtors in the Chapter 11 cases of *Hypnotic Taxi, LLC* and related debtor-owners of New York City Tax Medallions, owned by Evgeny Freidman.
- Debtor in the Chapter 11 case of *Hospital Audiences Inc.*, a storied New York City arts charity.
- Chapter 7 Trustee in *Revolate Holdings*, an advertising firm and investment vehicle, in connection with a multimillion-dollar settlement of director and officer liability claims.

- Official Committee of Unsecured Creditors for *Spectrum Healthcare LLC, Sonix Medical Resources, Inc., Word World LLC, Cavalry Construction, Inc., OMC, Inc., Lehr Construction* and *Cool Sheetmetal Inc.*
- Petitioning Creditors in involuntary cases of *Jacoby & Meyers – Bankruptcy, LLP* and *Macey Bankruptcy Law P.C.*
- Estate of Hilly Kristal as a secured lender in the *CBGB Holdings, LLC* bankruptcy case (decision reported at 439 B.R. 551).

**Arbitration:**

- Served as Member of Arbitration Tribunal in ICC Matter – *Ace Group Intl., LLC v. 225 Bowery LLC*

**Recent Speaking Engagements:**

- *Marital Issues in Bankruptcy*, Hudson Valley Bankruptcy Bar Association (Upcoming September 25, 2026) – Hyde Park, New York
- *Fraud and Bankruptcy*, ABI Mid-Atlantic Conference (August 3, 2026) – Annapolis, Maryland
- *Workshop: Liquidating Trusts*, ABI Spring Annual Meeting (April 24, 2026) – Washington, D.C.
- *The Unholy Interplay Between Domestic Relations Law and Bankruptcy Law*, Capital Region and Central New York Bankruptcy Bar Associations' 29th Annual Bankruptcy Conference (November 7, 2025) – Cooperstown, New York
- *International Issues – Asia*, National Association of Bankruptcy Trustees International Conference (October 24, 2025) – New York, New York
- *Ethics Jeopardy for Bankruptcy*, Hudson Valley Bankruptcy Bar Association, 22nd Annual Presentation of The New Deal for Consumer Bankruptcy (September 5, 2025) – Hyde Park, New York
- *Supreme Court Update – Important Cases and Trends*, TMA New York City (scheduled May 13, 2024) – Webinar
- *Bankruptcy Crimes*, United States Trustee Region 2's Panel Chapter 7 Trustee Training (September 6, 2024) – Albany, New York
- *Litigation of Avoidance Actions*, National Association of Bankruptcy Trustees Annual Meeting (August 18, 2024) – Nashville, Tennessee
- *Trustee Discretionary Calls*, National Association of Bankruptcy Trustees Region 2 Webinar (Jan. 22, 2024) – Webinar
- *Material Misrepresentations in Chapter 7 Cases*, National Association of Bankruptcy Trustees Region 2 Webinar (scheduled Jan. 22, 2024) – Webinar
- *Everything You Ever Wanted to Know About Bankruptcy But Were Afraid to Ask*, NYS Bar Association Commercial and Federal Litigation Section 2024 Annual Meeting (scheduled Jan. 16, 2024) – New York, New York
- *International Issues for Chapter 7 Trustees*, National Association of Bankruptcy Trustees International Committee Webinar (September 20, 2023) – Webinar
- *Collecting Judgments, Accounts Receivable and Avoidable Transfers*, National Association of Bankruptcy Trustees Annual Conference (June 10, 2022) – Vancouver, Canada
- *Attorney Misconduct*, United States Trustee Region 2's Panel Chapter 7 Trustee Training (June 3, 2022) – Albany, New York

- *All About Bankruptcy: A Primer for Non-Bankruptcy Lawyers*, DRI Webinar (May 7, 2021) – Chicago, Illinois
- *Bankruptcy Crimes*, Hudson Valley Bankruptcy Bar Association New Deal Seminar (Sept. 11, 2020) – Poughkeepsie, New York
- *Liquidation and Restructuring Issues for Nonprofits in New York State*, New York City Bar Association (March 29, 2019) – New York, New York
- *Jury Trials in Bankruptcy Cases*, EDNY Chapter 11 Lawyers' Advisory Committee (Jan. 16, 2019) – Brooklyn, New York

**Recent Expert Witness Experience:**

- *In re Madison Square Boys & Girls Club, Inc.* – Expert in the area of chapter 7 trustee property liquidations. Report provided to creditor The Rockefeller University regarding the best interests of creditors test in confirmation fight.

## Exhibit B

## Terms of Compensation of Trustee

In consideration for the services of the Trustee under this Agreement, the Trustee shall receive the following compensation from the Liquidating Trust Assets: $895 per hour for services rendered under this Agreement, subject to annual adjustment on January 1 of each year not to exceed the Trustee's published hour rate and maximum rate applied to other clients of the Trustee and his law firm.