2026 OCT 20 P 2:41

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MII AVIATION SERVICES LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10123 (LSS)<br><br>(Jointly Administered)<br><br>Related Docket Nos. 286, 355, 356, 421, 445, 447, 465<br><br>Objection Deadline: October 21, 2026 at 4:00 p.m. (ET)<br><br>Hearing Date: October 29, 2026 at 10:00 a.m. (ET) |

**OBJECTION OF MOSHE YANAI TO FINAL APPROVAL AND CONFIRMATION OF THE REVISED FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION [D.I. 445], AND IN PARTICULAR TO THE PLAN SETTLEMENT WITH SCINTILLA FUND, L.P. AND THE RELEASE OF THE ESTATES' USURY CLAIMS**

Moshe Yanai ("Mr. Yanai"), the founder of debtor Michal International Investment LLC ("MII") and the personal guarantor of its debts to Scintilla Fund, L.P. and of most of its debts to its other creditors, appearing pro se and solely in his individual capacity, submits this objection (the "Objection") to final approval and confirmation of the *Revised First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 445] (the "Plan"). Mr. Yanai is a party in interest with a direct stake in the residual value of these cases, through his personal liability as guarantor and through the residual value of his own insolvency proceeding, which depends on how much of the debt asserted against him survives and on what MII ultimately recovers. Adv. Yariv Shai-Yashinovsky, the court-appointed Trustee in Mr. Yanai's insolvency proceedings, Case No. 72665-03-25, District Court of Tel Aviv-Jaffa (the "Israeli Trustee"), has permitted the filing of this

Objection on Mr. Yanai's own behalf. His permission is attached as Appendix A. In support, Mr. Yanai respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Plan asks the Court to approve a settlement that permanently releases the Estates' claim that the Scintilla loans violate the Massachusetts usury statute, G.L. c. 271, § 49, a claim no court has ever decided. In exchange, the Plan allows Scintilla Fund, L.P. ("Scintilla") a claim of $46,491,605, while Class 3A General Unsecured Claims of about $199.7 million are projected to recover only 2%–3%.

2. Scintilla gives up almost nothing in return for the release. Scintilla filed a claim for $48,634,881. The Plan allows $46,491,605, a reduction of $2,143,276, or about 4.4%. That reduction is smaller than the $3,328,106 of legal and other expenses that Scintilla itself lists in its debt claim in Mr. Yanai's Israeli insolvency proceeding. It is also smaller than what Scintilla's own Massachusetts-law expert says the usury statute would take off the claim if it applies: about $3.75 million on Scintilla's own figures. ¶ 39 below. In return, the Estates release a claim that, if successful, could void the loans or reduce them to a lawful rate, and so eliminate or sharply reduce the Scintilla claim. Mr. Yanai further contends that a knowing or willful violation would support an affirmative recovery for MII of up to three times its actual damages under G.L. c. 93A, § 11, which he estimates at up to about $90 million. D.I. 356 ¶ 21.

3. The allowed claim matters far beyond today's cash. As a Class 3A claim, Scintilla's $46.5 million would take about 23% of every dollar the Liquidating Trust later recovers for MII's unsecured creditors, including from the Retained Causes of Action relating to Infinidat and Lenovo. That share is calculated from the Liquidation Analysis, which lists $153.2 million of other

general unsecured claims and Scintilla's $46.5 million claim. D.I. 445, Ex. A, notes 25–26, at 92–93.

4. The settlement was also produced by a process that cannot receive deference. MII has been managed since January 28, 2025 by Mr. Boaz Toshav, whom Scintilla appointed. His employment agreement pays him a bonus "[s]olely to the extent the Scintilla Debt is paid in full." The same settlement caps his own personal liability to the Estates at available insurance and exculpates him. Of the three parties to the settlement negotiations, therefore, two, Scintilla and the Debtors, were in substance on the same side.

5. Mr. Yanai does not ask the Court to decide the usury question. He asks that the Plan not be confirmed in a form that releases that question untested. The Plan can be confirmed if the usury claims are carved out of the releases and preserved for adjudication, and the allowance of the Scintilla claim is made subject to that outcome.

6. Mr. Yanai files this Objection for himself alone. He objects because the Plan reaches him personally. The claim the Plan would allow against MII is the same debt that Scintilla is collecting from him as guarantor in Israel. If the usury claim succeeds, that debt may be void; if the Plan releases the claim untested, the debt is fixed at $46.5 million. How much of his debt survives the Israeli proceeding, and whether any residual value is left to him, turns on that question, and on two sources of value the Plan affects: MII's claims against Infinidat and Lenovo, and usury challenges to the claims of other MII lenders.

## JURISDICTION AND STANDING

7. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O).

8. Mr. Yanai is a party in interest entitled to be heard under 11 U.S.C. §§ 1109(b) and 1128(b). A party in interest is anyone who "may be directly and adversely affected" by a plan; only "truly peripheral parties" are excluded, and the question is how the proceedings might affect the party, not whether its objection will succeed. *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024). In this Circuit, a party whose financial exposure may be affected by a plan, even contingently, has standing to object to it. *In re Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011) (en banc).

9. The Israeli Trustee has not filed an objection. Asked at the September 17, 2026 hearing why he had not participated in these cases, he answered: "we don't have any money to participate, not afford taking lawyers in the US. And we have no . . . resources to do so." Hr'g Tr. 8 (Sept. 17, 2026) (00:38:09) [D.I. 437]; *see also id.* at 9 (00:43:51). As his permission provides, this Objection is filed solely on Mr. Yanai's own behalf and not on behalf of the insolvency estate. Appendix A. Mr. Yanai has standing in his own right, because the Plan directly affects interests that are his personally:

(a) *Liability as guarantor.* Mr. Yanai personally guaranteed the Scintilla loans, as the Superior Court recognized ("Moshe Yanai personally guaranteed repayment," Superior Court Decision at 1), and most of MII's other debts. Scintilla is enforcing that guarantee in his Israeli insolvency proceeding, where it has filed a debt claim of $45,542,119 for the same debt. ¶ 22 below. If the loans are usurious, they may be declared void or reformed to a lawful rate, G.L. c. 271, § 49(c), and Mr. Yanai contends that his guarantee would fall or be reduced with them. The Plan would instead fix the debt at $46,491,605, find the settlement made in good faith and "fair, equitable, and reasonable," and deem Scintilla's MII Aviation liens valid, all without the usury question ever being heard. Plan, Art. X.C; id. at 26, terms (k) and (m). Scintilla can be expected to invoke those findings against Mr. Yanai, and in the Israeli Trustee's examination of its debt claim, which the Israeli Trustee has told this Court will include the usury arguments. ¶ 27 below. Scintilla is already doing so. In its August 6, 2026 response to Mr. Yanai's objection to its Israeli debt claim, a letter from its Israeli counsel, Gornitzky & Co., to the Israeli Trustee in Insolvency Case No. 72665-03-25, file "קרן שינטילה - 6.8.2026 - תגובה להתנגדות החייב לתביעת החוב.pdf" (in Hebrew) (the "Scintilla

Israeli Response"), Scintilla told the Israeli Trustee that MII itself had declared a debt of about $48 million to Scintilla in these cases, and that Mr. Yanai therefore "has no right whatsoever to argue on behalf of MII that its debt to Scintilla is not valid – and for that reason alone the argument should be rejected." Scintilla Israeli Response ¶ 35 (Mr. Yanai's translation). It added that the validity of its security from MII "is being addressed in MII's insolvency proceedings," *id.* ¶ 30, and that the Superior Court Decision bars him by res judicata, *id.* ¶ 40. An order allowing the claim and finding the settlement "fair, equitable, and reasonable" would be put to the same use.

(b) *Other guaranteed debts.* Mr. Yanai also personally guaranteed most of MII's debts to its other creditors. Every dollar of future Class 3A distributions taken by the Scintilla Claim, about 23% of the total, is a dollar that those guaranteed creditors will seek from him instead. ¶ 3 above.

(c) *Residual value.* The residual value of Mr. Yanai's insolvency proceeding belongs, in the end, to him. Under Israeli insolvency law, the debts that remain unpaid bear on the terms of his discharge, and any value left after his creditors are paid returns to him. That interest is his, not the estate's, and it is distinct from the residual shareholder rights in MII that the Israeli Trustee administers. It is also real, not remote, because of two sources of value described in subparagraphs (d) and (e).

(d) *The Infinidat and Lenovo claims.* The Retained Causes of Action include MII's claims arising from the sale of Infinidat Ltd. to Lenovo, which closed on April 20, 2026 at a base price of $385 million. In 2025 a leading Israeli litigation firm prepared a draft lawsuit in Israel on these claims, which Mr. Toshav blocked. Mr. Yanai has since converted that work, for MII and himself, into a draft complaint for the Business Litigation Session of the Massachusetts Superior Court against Lenovo, Infinidat, its directors, and its controlling investors (the "Draft Complaint"). It pleads that MII, which invested more than $52 million and held a majority of Infinidat's share capital, received only about $3.6 million from the sale; that a valuation by Fahn Kanne & Co. (Grant Thornton Israel) as of December 31, 2024 placed Infinidat's equity value at about $1.624 billion to $1.778 billion; and that at that value, according to the distribution waterfall, MII would have received about $593 million, a shortfall of about $589 million. Draft Complaint ¶¶ 1–2, 57 & App. 11 (Appendix B). It seeks compensatory damages of not less than $589 million, up to treble damages under G.L. c. 93A, § 11 for willful and knowing violations, and a jury trial. *Id.* ¶¶ 75, 93–93A, 98 & Prayer ¶¶ A, D. A recovery of even a fraction of that amount would exceed the roughly $199.7 million of Class 3A claims against MII. D.I. 447-1 at 6. In that event MII's creditors would be paid in full, and every dollar paid on the Scintilla Claim would come out of the residual value, dollar for dollar. Whether the Scintilla loans are void is therefore not a question about the size of a 2%–3% distribution. It decides who keeps up to $46.5 million of the surplus.

(e) *Usury claims against other lenders.* Scintilla is not the only lender to MII whose interest exceeded the 20% ceiling of G.L. c. 271, § 49. Those creditors are not Released Parties, so the Estates' usury claims against them survive the Plan. But the Plan would have the Court approve, as within the range of reasonableness, the reasoning of the Usury Passage: that the choice of Israeli law and the Massachusetts Superior Court's forum ruling defeat a usury claim. Plan at 27–28. Those other lenders can be expected to rely on that approval. If the usury claims succeed, the claims of most of MII's other lenders could be reduced or voided as well. That would shrink the claims against MII and enlarge the residual value. Because Mr. Yanai guaranteed most of those loans, it would also reduce his own liability on them.

(f) *Claims preserved against him.* The Plan releases Scintilla, its principals, and its counsel, but preserves the Liquidating Trust's claims against Mr. Yanai personally, his Israeli insolvency estate, and the estate of the late Rachel Yanai. Plan at 12–13 (definition of "Retained Causes of Action").

10. None of these interests is peripheral. Each is a direct financial exposure of the kind that *Kaiser Gypsum* and *Global Industrial Technologies* hold sufficient, and each is Mr. Yanai's own: his liabilities and his residual interest, not assets of the insolvency estate. The Israeli Trustee permitted this Objection "to the extent that [Mr. Yanai] otherwise has standing." For these reasons he does. Each ground below is directed to the Plan Settlement or to Plan provisions that implement it.

## BACKGROUND

### A. The Plan Settlement

11. The Plan implements a settlement among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and Scintilla (the "Plan Settlement"), reached at mediation. Plan at 25. Because the Debtors were managed by Scintilla's appointee, Mr. Toshav, Scintilla and the Debtors were in substance a single party at that table. Under its terms, the Plan is proposed by the Debtors and the Committee "subject to Scintilla's approval," and Scintilla and the Committee agreed not to file claim objections or other substantive motions except as agreed. *Id.* at 25, terms (a) and (d).

12. The Plan Settlement (a) allows the Scintilla Claim at $46,491,605, subject only to reduction by the Scintilla Claim Mitigation Amount; (b) dismisses the Committee's adversary proceeding against Scintilla, Adv. Pro. No. 26-50412 (the "Committee Complaint"), with prejudice; (c) releases Scintilla, Scintilla Holdings Ltd., Mr. Zack Keinan personally, their principals, agents, and professionals, and three law firms; and (d) deems Scintilla's liens on MII Aviation's assets "valid and properly perfected." *Id.* at 12 (definition of "Released Parties"), 26, terms (k), (m), (o), and (p); Art. X.C.

13. The same settlement limits any recovery against Mr. Toshav to available insurance, with "no recourse to recover from the personal assets of Boaz Toshav," and exculpates him as post-petition manager. *Id.* at 7 (definition of "Exculpated Parties"), 26, term (o); Art. X.C. Confirmation would constitute approval under Bankruptcy Rule 9019, with findings that the release is "a good faith settlement" and "fair, equitable, and reasonable." *Id.* Art. X.C.

14. The Committee Complaint pleaded usury under G.L. c. 271, § 49 (Eleventh Claim for Relief) and disallowance of interest unenforceable under the Massachusetts usury statute under 11 U.S.C. § 502(b) (Ninth Claim for Relief). D.I. 266; D.I. 356 ¶ 14. The Committee also pleaded that Scintilla has been an "affiliate" and "insider" of the Debtors since January 28, 2025, and that Mr. Toshav "took direction from Scintilla." D.I. 355, Points 8 and 11. The Committee Complaint was settled eleven days after Scintilla answered it. D.I. 355, Point 19.

15. The Plan's only explanation for compromising the usury claim is a single paragraph (the "Usury Passage"). Plan at 27–28. It states that the loan documents select Israeli law, that Israeli law does not impose usury limits on commercial loans, and that "a state court in Massachusetts had already enforced" the Israeli law and forum provisions. It concludes that the usury argument

"presented colorable theories" but faced "potential defenses and litigation risks." The Usury Passage refers to a "detailed review of all interest calculations" but discloses none of them.

16. The Usury Passage did not appear in the First Amended Combined Disclosure Statement and Plan filed on September 15, 2026 [D.I. 421], which contains no discussion of usury at all. It was added, in a single paragraph, to the revised version filed on September 21, 2026 [D.I. 445], after the September 17, 2026 hearing, and it misstates the record in material respects. ¶¶ 24–27 below.

17. Under the Plan, Class 3A General Unsecured Claims against MII, estimated at $199,689,237.78, are projected to recover 2%–3%. D.I. 447-1 at 6. The Liquidation Analysis treats Scintilla's $46.5 million as a Class 3A claim alongside $153.2 million of other general unsecured claims, and assigns no value to the Estates' "Other Litigation Claims." Plan, Ex. A, notes 13, 25–26.

**B. The Scintilla Loans and the Usury Claim**

18. MII is a Massachusetts limited liability company, organized on January 21, 1999. Its founders, Mr. Yanai and his late wife, resided in Massachusetts from 1982 until 2012 and filed Massachusetts tax returns, and MII conducted major operations in Waltham and Norwood, Massachusetts, employing more than 160 people. D.I. 286 ¶¶ 2, 12; D.I. 356 ¶ 12; Draft Complaint ¶ 24(a)–(b). Mr. Yanai served as chief executive of these businesses and remains an active co-manager of Boston Executive Helicopters LLC. He owned a house in Brookline, Massachusetts until 2025, and his accountants, lawyers, health-care providers, banks, investment advisers, friends, and other ties remain in Massachusetts.

19. Between 2019 and 2023, Scintilla extended three facilities to MII with net principal of about $33.5 million. D.I. 286 ¶ 13. The December 31, 2024 Omnibus Amendment raised the

stated interest rate to 23% per year, above the 20% ceiling of G.L. c. 271, § 49. It also doubled Scintilla's phantom-stock percentage from 10% to 20% and increased the equity kicker from $250,000 to $500,000. Its equity-upside provision would require cash payments of more than $12 million on a sale of MII's eToro and Infinidat interests, using Scintilla's own example prices. *Id.* ¶¶ 23–24.

20. Scintilla did not give the Massachusetts Attorney General the notice required by § 49(d) to charge more than 20%. *Id.* ¶ 22. The Massachusetts Superior Court itself noted the increase to 23% and questioned whether a rate above 20% is enforceable. D.I. 356 ¶ 19. Scintilla's own itemization of the debt in the Israeli proceeding includes an "Equity Upside" of $500,000, $608,759 of interest on that sum, and a reservation of "any equity upside which has not yet crystallised." D.I. 355 ¶ 23 & Ex. P.

21. The amounts are as follows:

| **Item** | **Amount** | **Source** |
|---|---:|---|
| Net principal lent to MII | ~$33.5 million | D.I. 286 ¶¶ 13, 25 |
| Interest paid by MII | $13,679,471 | D.I. 286 ¶ 25 |
| Principal repaid by MII | $6,000,000 | D.I. 286 ¶ 25 |
| 55 Leicester Street, Brookline, transferred to Scintilla (FY2024 assessed value) | $10,838,100 | D.I. 286 ¶ 25 |
| Scintilla's filed claim (includes attorneys' fees) | $48,634,881 | Proof of Claim No. 15-1, Addendum ¶ 7 |
| Scintilla Claim as allowed under the Plan | $46,491,605 | Plan at 26, term (m) |

22. Scintilla's own debt claim in Mr. Yanai's Israeli insolvency proceeding, filed March 9, 2026 (the “Israeli Debt Claim”), gives $44,650,673 as of October 28, 2025, plus $891,446 of further expenses through February 1, 2026, a total of $45,542,119. Its proof of claim here asserts $48,634,881 for the same date, $3,092,762 more, without explanation. The components the Israeli Debt Claim lists also add up to $45,150,673, $500,000 more than its own stated total. Those

components include $3,328,106 of “legal and other expenses” ($2,436,660 accrued through October 28, 2025 and $891,446 after). Israeli Debt Claim at 1–3 & n.2; D.I. 355, Point 17.

23. The interest above 20% did not begin with the Omnibus Amendment. Under the August 2023 Facility Agreement, Scintilla's commitment was $18,208,316, but MII received only $13,500,000. The other $4,708,316 was "all interest payable on the Loan up to (and including) the Maturity Date," deducted "in one up-front payment" on the day the loan was made and "not refundable under any circumstances." August 2023 Facility Agreement § 7.2; *id.* § 1.1 (definitions of "Commitment" and "Maturity Date") (Israeli Debt Claim App. 7). Measured on the $13,500,000 actually lent, over the 554 days from August 13, 2023 to the February 17, 2025 maturity date, that is about 23% a year before any other charge. The same agreement also gives Scintilla an equity-upside payment of not less than $1,820,835, which survives repayment. *Id.* § 6.4(e), (g). Counting that minimum, Scintilla's contracted return on the cash it lent was about 32% a year. Scintilla nonetheless counts the full $18,208,316 as "principal," so the $4,708,316 it took in advance as interest is carried again as principal on which further interest accrues. Israeli Debt Claim at 2–3 (principal balance of $32,208,316); Scintilla Israeli Response ¶¶ 6–7.

**C. The Massachusetts Superior Court Did Not Decide the Usury Question**

24. The "state court in Massachusetts" in the Usury Passage is the Superior Court in *Yanai v. Keinan*, No. 2584CV00565-BLS2 (Mass. Super. Ct. May 22, 2025) (the "Superior Court Decision"), D.I. 465 Ex. B. That court enforced the forum-selection clauses. It did not decide whether the loans violate § 49. It dismissed that claim without prejudice for refiling in Israel and denied the usury motion for partial judgment "as moot." *Id.* §§ 1, 1.2 & Orders.

25. The court also stated that Israeli courts are "fully capable of … giving 'effect to Massachusetts fundamental public policy,' and applying Massachusetts law where appropriate."

*Id.* § 1.2. The Massachusetts action remains pending and stayed, with a further status conference on October 21, 2026. The usury count can be restored to that action by amending the complaint, which requires authorization on MII's behalf by its manager or by a trustee. D.I. 356 ¶¶ 3, 18.

26. The Superior Court also observed, in a footnote, that on the facts alleged in the verified complaint, upholding the contracts' choice of Israeli law would not be contrary to Massachusetts public policy, and that Israeli law would govern even without that choice. Superior Court Decision § 1.2 n.7. In the same footnote, however, the court stated that "it cannot enter judgment as to whether the Omnibus Agreement is subject to and violates the Massachusetts usury statute because, under the forum selection clauses, that claim may only be asserted in an Israeli court." Id. The observation was made on a motion to dismiss, on the allegations of the complaint alone, without an evidentiary record, and it was not necessary to the court's judgment, which rested on the forum-selection clauses. It does not bind the Israeli court, which the Superior Court said is capable of "giving 'effect to Massachusetts fundamental public policy.'" Id. § 1.2. Mr. Yanai discloses it because the Plan Proponents may rely on it, and because it is a question the Israeli forum has never addressed.

27. No court, in Israel or elsewhere, has decided the usury question. At the September 17, 2026 hearing before this Court, the Israeli Trustee testified that he will examine the debt claims there, including the usury arguments against Scintilla. He also stated that he had asked the parties for a legal opinion on whether Massachusetts usury law applies notwithstanding the Israeli governing-law clause. Hr'g Tr. 13–14 (Sept. 17, 2026) (01:10:18–01:11:27) [D.I. 437].

**D. The August 2025 Liens**

28. Scintilla's claim is secured by instruments dated August 1 and August 13, 2025, during Mr. Toshav's tenure and within the year before the February 1, 2026 petition date. They

include a general security agreement over substantially all of MII's personal property and a pledge by MII Aviation, which had not borrowed from Scintilla, of 100% of its interests in Boston Executive Helicopters LLC. D.I. 355 ¶¶ 70–71. Scintilla's own motion values the hard assets so encumbered at more than $12 million. D.I. 356 ¶ 20. Mr. Yanai contends that Mr. Toshav granted these liens while acting in Scintilla's interest as an insider, without disclosing them to MII's members, and contrary to the Superior Court's direction of March 28, 2025 that he act in the best interests of MII and its members rather than Scintilla. D.I. 356 ¶ 25 & Ex. A. Mr. Yanai further contends that the liens are avoidable.

29. The Plan avoids Scintilla's liens on MII's assets but deems its liens on MII Aviation's assets "valid and properly perfected." Plan at 26, term (k). Class 3B creditors of MII Aviation are projected to recover 0% until Scintilla is paid in full. D.I. 447-1 at 7.

**E. MII's Manager and His Scintilla-Contingent Bonus**

30. On January 28, 2025, Scintilla used its rights under the pledge agreements to remove Mr. Yanai as MII's manager and appoint Mr. Toshav. Plan § IV.A.3. Since the Superior Court Decision, Mr. Toshav has not presented MII's usury claim to any court. The Plan itself discloses the Committee's allegation that Mr. Toshav and Scintilla's principal, Mr. Keinan, "have had a longstanding personal and professional relationship dating back to at least 2016." Id.

31. In the Massachusetts action, Mr. Toshav declared twice under penalties of perjury: "I have no relationship with Scintilla. I have no economic interest in Scintilla." D.I. 355 ¶ 4 & Exs. B-1, B-2. Before this Court on July 8, 2026, he testified: "I have a relationship with Scintilla … I've done transactions with Scintilla." Tr. 118:7–16; D.I. 355 ¶ 5.

32. Mr. Toshav's Employment and Services Agreement, attached to his Proof of Claim No. 11-1, provides that his bonus is payable "[s]olely to the extent the Scintilla Debt is paid in

full." Agreement ¶ 4(b); D.I. 355 ¶ 21. The Agreement names "Scintilla Investment Fund, L.P." in a "CONSENTED TO" block on its execution page. It bears an effective date of January 1, 2025 but was signed on December 2, 2025, about two months before the petition date, by a Chief Restructuring Officer whom Mr. Toshav had himself engaged. D.I. 355 ¶¶ 10–14.

33. Mr. Toshav testified that the bonus was "waived." Tr. 128:4–5. No written waiver is of record, and the Agreement requires any amendment to be in writing and signed by both parties. Agreement ¶ 8(b); D.I. 355 ¶¶ 25–28. The Superior Court held on March 28, 2025 that Mr. Toshav owes fiduciary duties to MII and its members, not to Scintilla, and called his focus on repaying Scintilla "concerning." D.I. 356 ¶ 25 & Ex. A.

34. Scintilla is also the Debtors' DIP lender and stalking horse purchaser. The DIP facility rolls up $3,300,000 of prepetition debt against $1,650,000 of new money. D.I. 355, Point 7.

## OBJECTION

### I. The Plan Proponents Cannot Show That the Plan Settlement Falls Within the Range of Reasonableness

35. A settlement incorporated in a plan under 11 U.S.C. § 1123(b)(3)(A) must meet the same standard as a settlement under Bankruptcy Rule 9019. The Plan Proponents bear the burden. The Court must weigh (i) the probability of success in litigation, (ii) the likely difficulties in collection, (iii) the complexity, expense, and delay of the litigation, and (iv) the paramount interest of creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The Court must form its own informed and independent judgment. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). A settlement may not fall below "the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

36. **Probability of success.** The record contains no evaluation of the usury claim beyond the Usury Passage, which was added six days after the First Amended Plan was filed and discloses no figures. It rests on a court decision that expressly declined to decide the claim. It does not address the 23% stated rate, the equity-linked charges, the missing § 49(d) notice, or the Superior Court's statement that Israeli courts can give effect to Massachusetts fundamental public policy.

37. Nor does it address Massachusetts choice-of-law doctrine beyond the Superior Court's footnote. A contractual choice of foreign law is honored only "as long as the result is not contrary to public policy." *Oxford Global Res., LLC v. Hernandez*, 480 Mass. 462, 468 (2018) (quoting *Hodas v. Morin*, 442 Mass. 544, 549–50 (2004)); *see also Melia v. Zenhire, Inc.*, 462 Mass. 164, 182 (2012). The usury statute embodies such a policy, and no device or disguise can defeat it. *Hopkins v. Flower*, 256 Mass. 367, 372 (1926). The federal court in Massachusetts has set aside a contractual choice of law in a usury case and applied the usury law of the borrower's home state, explaining that the Massachusetts statute "reflects the Commonwealth's fundamental public policy of protecting Massachusetts debtors." *Auctus Fund, LLC v. Sunstock, Inc.*, 405 F. Supp. 3d 218, 230–31 (D. Mass. 2019) (declining to apply a Nevada choice-of-law clause and applying California law, where the borrower was domiciled). Scintilla's expert in the Israeli proceeding reads *Auctus* as confining Massachusetts usury policy to consumers. Expert Opinion of Christopher A. Kenney ¶ 16 (Aug. 4, 2026) ("Kenney Op."), Scintilla Israeli Response App. 3. But the passage he quotes concerns loans by a Massachusetts *lender* to borrowers outside the Commonwealth. Here the borrower is the Massachusetts company. Israeli law has no usury limit for a loan of this kind. Scintilla itself acknowledges that Israel's Fair Credit Law does not apply to corporate borrowers or to loans above about NIS 1,200,000. Scintilla Israeli Response ¶ 45; D.I.

356 ¶¶ 30–31. Applying Israeli law would therefore not give effect to the Massachusetts policy but nullify it. The Superior Court's contrary observation was made on the pleadings and expressly without entering judgment on the question (¶ 26 above). It may weigh against the claim, but it does not decide it, and the forum it designated has never heard it. A claim in that posture, which the Committee itself pleaded and conceded is "colorable," cannot be valued at about 4.4% of the claim it challenges without any analysis of record.

38. The size of the compromise. The Plan allows $46,491,605 against a filed claim of $48,634,881. The $2,143,276 reduction is smaller than the $3,328,106 of legal and other expenses Scintilla lists in the Israeli Debt Claim. On net principal of about $33.5 million, MII has already paid Scintilla $6,000,000 in principal and at least $13,306,449 in interest, which is Scintilla's own figure. Scintilla Israeli Response ¶¶ 7–8. Mr. Yanai's figure is $13,679,471. ¶ 21 above. The Yanais' Brookline property, assessed at $10,838,100, has also been deeded to Scintilla under the Omnibus Amendment, yet the Israeli Debt Claim lists that deed only as "security" and gives no credit for it. Israeli Debt Claim at 4, ¶ 1.5; Omnibus Amendment § 7(b). The Israeli Trustee confirmed to this Court that, according to his report, the rights in the property were transferred to Scintilla in July 2025 at a declared value of about $7 million, and that "this amount has not been deducted" from Mr. Yanai's debt in Scintilla's books. Hr'g Tr. 12–13 (01:04:42–01:05:16) [D.I. 437]. If the loans are found usurious, a court "may either declare the parties' transaction void or reform their contract 'to reduce the excessive rate charged to one that is legally permissible.'" Superior Court Decision at 3 n.2 (quoting *Begelfer v. Najarian*, 381 Mass. 177, 187 (1980)); G.L. c. 271, § 49(c). Either outcome would eliminate or substantially reduce the $46.5 million claim. Mr. Yanai further contends that a knowing or willful violation would support an affirmative recovery for MII of up to three times its actual damages under G.L. c. 93A, § 11, which he

estimates at up to about $90 million, measured by the roughly $30 million Scintilla has already received. D.I. 356 ¶ 21.

39. Even Scintilla's own view of the remedy does not support a reduction of 4.4%. Scintilla's Massachusetts-law expert in the Israeli proceeding states that, in a commercial case, courts applying § 49 "will reform the loan by reducing the interest rate, often to the lawful maximum, leaving the principal and permissible interest fully enforceable." Kenney Op. ¶ 18; Scintilla Israeli Response ¶ 47. On Mr. Yanai's calculation from Scintilla's own itemization, that remedy alone would remove the $1,635,149 of default interest, which is charged on top of the 23% rate; the $500,000 equity upside and the $608,759 of interest on it; and the part of the $7,761,789 of accrued contract interest above 20%, about $1.0 million if that interest accrued at 23%. Israeli Debt Claim at 3, ¶¶ 1.2–1.4. That is about $3.75 million, before any adjustment for the interest taken in advance under the August 2023 facility (¶ 23 above) or for Scintilla's $3,328,106 of claimed expenses. The Plan reduces the claim by $2,143,276. A compromise that gives up more than the claimant's own expert says it would lose if the claim succeeds does not fall within the range of reasonableness.

40. The Superior Court's dismissal of the c. 93A claims does not foreclose MII's claim. That court dismissed the Yanais' own c. 93A claim with prejudice, and MII's without prejudice, because the allegations of the Yanais' verified complaint, on which the court was bound to rule, placed the center of gravity of Scintilla's conduct outside Massachusetts. Superior Court Decision § 4. MII's claim was not adjudicated, and it would rest on a different and fuller record. MII is a Massachusetts limited liability company. The conduct at the core of the usury claim reached into Massachusetts. Scintilla took the 55 Leicester Street property in Brookline, Massachusetts, MII's registered office, in July 2025. Hr'g Tr. 12 (01:04:42) [D.I. 437]. Scintilla also reached for

Massachusetts law when it served Scintilla: the August 2023 Facility Agreement required a "Massachusetts law" security agreement over the Yanais' membership interests and an opinion of MII's "Massachusetts counsel," August 2023 Facility Agreement §§ 1.1 (definition of "US Security Agreement"), 14.18(a)(v), and in February 2025 Scintilla noticed a foreclosure sale of those interests under Massachusetts' Uniform Commercial Code, Keinan Decl. ¶¶ 54–55, *Yanai v. Keinan*, No. 2584CV00565-BLS2 (Mass. Super. Ct. Mar. 2025). In August 2025 it took first-priority liens over substantially all of MII's assets and a pledge of MII Aviation's interest in Boston Executive Helicopters LLC, a fixed-base operator registered in Massachusetts since July 2, 2010 that operates from Norwood Memorial Airport with more than ten employees, and of which Mr. Yanai is a co-manager of record. And the equity-upside charges it claims are tied to MII's interest in Infinidat, whose operational headquarters, with about 150 employees, is in Waltham, Massachusetts. D.I. 286 ¶¶ 23–25; D.I. 355 ¶¶ 70–71; Draft Complaint ¶ 24(a), (d). Whether those facts place the center of gravity in Massachusetts has never been decided. A release that extinguishes the question for 4.4% of the claim does not value it at all.

41. **Collection.** There is no collection risk on the main benefit of a successful challenge. Disallowing or reducing the Scintilla Claim requires no collection at all; it simply increases what is left for other creditors.

42. **Complexity, expense, and delay.** The question is a discrete one of Massachusetts law and contract terms. It can be decided in the Massachusetts action, which remains pending, or in Israel. Mr. Yanai has asked the Court to permit that adjudication. D.I. 356. Preserving the claim for the Liquidating Trust would not delay confirmation.

43. **Paramount interest of creditors.** Class 3A creditors other than Scintilla are projected to recover 2%–3%. An allowed $46.5 million Scintilla claim would share in about 23%

of every future Class 3A distribution from MII, including any recovery on the Infinidat and Lenovo claims. A release that locks in that share for a 4.4% concession is not in their interest.

**II. The Settlement Is the Product of a Conflicted Process and Is Entitled to No Deference**

44. Transactions with insiders and fiduciaries are subject to rigorous scrutiny, and the burden is on those who benefit to prove their fairness. *Pepper v. Litton*, 308 U.S. 295, 306 (1939). The Committee itself has pleaded that Scintilla is an insider of the Debtors.

45. The Debtors' side of the Plan Settlement was controlled by a manager appointed by Scintilla, whose bonus depends on Scintilla being paid in full, and who has given sworn statements about his relationship with Scintilla that cannot be reconciled. D.I. 355, Points 1–6. That manager never brought the usury claim in the forum the Superior Court identified.

46. The Court need not accept that manager's account of the settlement, because his sworn statements cannot be reconciled with each other or with the record. In Massachusetts he declared twice that he has "no relationship with Scintilla" and "no economic interest in Scintilla"; before this Court he testified that he has "a relationship with Scintilla" and has "done transactions with Scintilla." Tr. 118:7–16. He testified that Scintilla "didn't pay me," Tr. 127:19–21, after declaring that MII borrowed from Scintilla "primarily to pay the remuneration of its independent manager." D.I. 25 ¶ 29. He testified that his Scintilla-contingent bonus was "waived," Tr. 128:4–5, but no written waiver exists, and his agreement requires one. He declared the Scintilla financing the product of "arm's-length, good-faith negotiations," D.I. 83 ¶ 12, without disclosing that Scintilla had paid the retainers of the professionals who negotiated it, or that his own bonus depends on Scintilla being paid in full. D.I. 355, Points 1–10. A settlement presented through a fiduciary with this record cannot be approved on his business judgment, and the Plan Proponents offer no independent evaluation in its place.

47. The record shows how far the Debtors' side depended on Scintilla. The Debtors have described Scintilla as their "one source of funding" since 2025. D.I. 311 ¶ 48. MII borrowed from Scintilla in April 2025 "primarily to pay the remuneration of its independent manager, Chief Restructuring Officer, and counsel." D.I. 25 ¶ 29. In the three weeks before the petition date, Scintilla paid $116,000 of the Debtors' restructuring retainers, including $100,000 to the Debtors' counsel. Statement of Financial Affairs, Case No. 26-10124, D.I. 4, Question 11. Mr. Toshav scheduled Scintilla as not an insider and its $48,634,881 claim as undisputed, D.I. 3, Schedule D ¶ 2.1, and declared the DIP and cash-collateral terms the product of "arm's-length, good-faith negotiations." D.I. 83 ¶ 12; D.I. 190 ¶ 9. He verified recharacterization and subordination claims against three other creditors of MII, but brought none against Scintilla; the Committee had to obtain derivative standing to do so. D.I. 355, Points 7, 9–11, 19.

48. The same settlement also benefits the manager directly. It caps the Estates' recovery on any claim against him at available insurance, bars recourse to his personal assets, and exculpates him. Plan at 7, 26; Art. X.C. A fiduciary who negotiates a settlement that limits his own liability, with the creditor to whose repayment his bonus is tied, cannot be given the deference ordinarily owed to a debtor's business judgment.

49. The Committee's agreement does not cure the problem. The Committee Complaint was settled eleven days after Scintilla answered, before any discovery on usury. The Plan was proposed "subject to Scintilla's approval," and the Committee agreed not to file claim objections except as agreed. Plan at 25.

## III. The Disclosure Statement Should Not Receive Final Approval, and the Votes Were Solicited on an Incomplete Description

50. Final approval of the Disclosure Statement under 11 U.S.C. § 1125 is before the Court at the Combined Hearing. A disclosure that is literally true may still be inadequate if it omits

facts needed to keep it from misleading. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

51. For the reasons in D.I. 465, incorporated here by reference, the Usury Passage omits that (a) the Superior Court did not decide the usury question and dismissed it without prejudice; (b) the Superior Court stated that Israeli courts can apply Massachusetts fundamental public policy; (c) MII's usury claim has never been presented to any court; (d) MII's manager was appointed by Scintilla and holds a Scintilla-contingent bonus; and (e) confirmation will release the claim permanently. It also discloses none of the "interest calculations" on which it says the compromise rests. Because acceptances were solicited on that description, the Plan Proponents cannot show compliance with 11 U.S.C. §§ 1125 and 1129(a)(2). The Disclosure Statement does disclose Mr. Toshav's $17,150 priority wage claim, but not his Scintilla-contingent bonus.

**IV. The Plan Does Not Satisfy Sections 1129(a)(3) and 1129(a)(7)**

52. **Good faith.** A plan must be proposed in good faith, which requires that it be fair and achieve a result consistent with the Bankruptcy Code. 11 U.S.C. § 1129(a)(3); *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000). A plan that releases the Estates' principal claim against their largest creditor, through a process controlled by that creditor's appointee, while capping that appointee's own liability, does not meet that standard on this record.

53. **Best interests.** The chapter 7 comparison assumes that Scintilla would prevail on everything in chapter 7. It treats Scintilla's claim "as scheduled as a secured claim" in the full $46.5 million and assigns no value to the Estates' litigation claims. Plan, Ex. A, notes 13, 22. It does not consider that an independent chapter 7 trustee could pursue the usury claim, or challenge liens granted in August 2025 to an alleged insider within a year of the petition date. Plan § IV.H. A

comparison built on the assumption that every challenge to Scintilla fails cannot show that each non-accepting holder will receive at least what it would receive in chapter 7. 11 U.S.C. § 1129(a)(7).

**V. The Releases of Scintilla and Its Principals and Counsel Should Not Be Approved**

54. Estate releases of non-debtors must be justified on the record, considering among other things the identity of interest, the released parties' substantial contribution, and the support of affected creditors. *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *In re Washington Mut., Inc.*, 442 B.R. 314, 346–47 (Bankr. D. Del. 2011). Scintilla's "contribution" is a 4.4% reduction of its own claim. Mr. Keinan personally, Scintilla's other principals and employees, and three law firms are released without any contribution identified in the Plan.

55. The release is also one-sided. The Plan releases Scintilla and its principals from all estate claims, yet expressly preserves the Liquidating Trust's claims against Mr. Yanai, his Israeli insolvency estate, and the estate of the late Rachel Yanai. Plan at 12–13.

56. The Releasing Parties are the Debtors and their Estates, but the release extends to claims they could assert "on behalf of the holder of any claim or equity interest or other entity." Plan, Art. X.C. To the extent that language could be read to release Mr. Yanai's own claims or his defenses as guarantor without his consent, it is barred. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). The confirmation order should say so expressly.

**VI. The Validation of the August 2025 MII Aviation Liens Is Unexplained**

57. The Plan deems Scintilla's liens on MII Aviation's assets valid and properly perfected. Plan at 26, term (k). Those liens arise from a pledge granted on August 13, 2025, by an affiliate that had not borrowed from Scintilla, to a creditor the Committee alleges was an insider, within one year of the petition date. D.I. 355 ¶ 70. The Plan's only explanation is that MII Aviation

lacked cash to fund litigation. The Disclosure Statement does not describe the avoidance claims being given up or their value, and Class 3B is projected to recover nothing as a result. The Committee itself alleged that MII Aviation "had never borrowed any funds from Scintilla," that the Debtors "received nothing of meaningful value in exchange," and that Scintilla "charged MII over $500,000 in fees in conjunction with granting these liens, which amount was added to the debt owed to Scintilla." Committee Complaint, Adv. Pro. No. 26-50412, D.I. 1 ¶¶ 5–6. Those allegations are now released without any explanation of their value.

## VII. Scintilla's Governance Rights Over the Liquidating Trust Require Conflict Protections

58. The Plan gives Scintilla a representative on the Advisory Committee. Plan at 3. Scintilla's single member has a vote equal to all Committee members combined on any replacement of the Liquidating Trustee. *Id.* at 25, term (h); 54. The Liquidating Trustee's compensation is subject to Scintilla's reasonable approval, and engaging the Debtors' investment bankers requires unanimous Advisory Committee approval. *Id.* at 25, terms (f) and (i).

59. The Plan provides no procedure for matters in which Scintilla or its affiliates have an interest. That matters for the Retained Causes of Action, including MII's claim of not less than $589 million, before multiple damages, relating to Lenovo and Infinidat (¶ 9(d) above), which Scintilla has so far opposed pursuing. At a minimum, Scintilla's representative should be recused from any matter involving Scintilla, its affiliates, the Scintilla Claim, or Mr. Yanai, and should have no consent right over the appointment, replacement, or compensation of the Liquidating Trustee.

## RELIEF REQUESTED

60. Mr. Yanai requests that the Court deny final approval of the Disclosure Statement and confirmation of the Plan in its current form.

61. In the alternative, Mr. Yanai requests that any confirmation order:

(a) exclude from the Plan Settlement and from all releases in Art. X.C, and preserve for the Liquidating Trust, all claims and defenses of the Estates against Scintilla, Scintilla Holdings Ltd., and their principals arising under G.L. c. 271, § 49, G.L. c. 93A, § 11, or any other usury or interest-limitation law (the "Usury Claims");

(b) provide that the allowance of the Scintilla Claim is subject to reduction or disallowance based on the outcome of the Usury Claims, and that distributions on the Scintilla Claim be reserved until they are resolved;

(c) permit the Usury Claims to be adjudicated in the Massachusetts Superior Court or another appropriate forum, as requested in D.I. 356;

(d) decline to deem the August 2025 MII Aviation liens valid and preserve the related avoidance claims, unless the Plan Proponents disclose and justify their value;

(e) require that Scintilla's representative on the Advisory Committee be recused from any matter involving Scintilla, its affiliates, the Scintilla Claim, Mr. Yanai, or any Retained Cause of Action in which they have an interest, and remove Scintilla's consent rights over the appointment, replacement, and compensation of the Liquidating Trustee;

(f) provide that nothing in the Plan or the confirmation order releases, impairs, or affects the rights, claims, or defenses of Mr. Yanai as guarantor, the rights of his Israeli insolvency estate, or the examination of Scintilla's debt claim in Mr. Yanai's Israeli insolvency proceeding, and that no finding in the confirmation order concerning the Scintilla Claim, the Plan Settlement, or Scintilla's liens is binding in that proceeding; and

(g) provide that no finding in the confirmation order concerning the usury question, the choice of Israeli law, or the effect of the Superior Court Decision applies to any claim of a creditor other than Scintilla, and that all claims and defenses of the Estates against those creditors under G.L. c. 271, § 49 and G.L. c. 93A, § 11 are preserved for the Liquidating Trust.

62. Mr. Yanai has asked the Plan Proponents to carve the Usury Claims out of the releases. If they do, he will be willing to withdraw this Objection.

## RESERVATION OF RIGHTS

63. Mr. Yanai reserves all rights, including to supplement this Objection, to object on any further ground, to be heard at the Combined Hearing, and to seek the relief requested in D.I. 286, D.I. 356, and D.I. 465. Nothing in this Objection is asserted on behalf of, or waives or limits any right of, Mr. Yanai's Israeli insolvency estate or the Israeli Trustee, all of which are reserved.

WHEREFORE, Mr. Yanai respectfully requests that the Court sustain this Objection, grant the relief requested above, and grant such other relief as is just and proper.

Dated: October 17, 2026

Respectfully submitted,

Moshe Yanai

/s/ Moshe Yanai
Moshe Yanai, pro se
Antokolsky 3
Tel Aviv 6404420, Israel
Telephone: 617-480-7835
Email: m_yanai@att.net

**Attached:**

Appendix A – Permission of the Israeli Trustee (email of Adv. Yariv Shai-Yashinovsky to Mr. Yanai, October 16, 2026)

Appendix B – Waterfall: Shareholder Returns Summary, distribution of Infinidat sale proceeds by exit value, by shareholder

## CERTIFICATE OF SERVICE

I certify that on October 17, 2026, I caused this Objection to be served by email on the following parties listed in paragraph 13 of D.I. 447:

- Counsel to the Debtors: Chipman Brown Cicero & Cole LLP, Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)
- Counsel to Scintilla: Gordon Rees Scully Mansukhani LLP, Attn: Joseph E. Brenner (jbrenner@grsm.com); Chapman and Cutler LLP, Attn: Michael Friedman (friedman@chapman.com) and Yuliya Zahoroda (yzahoroda@chapman.com)
- Office of the United States Trustee: Joseph J. McMahon, Jr. (joseph.mcmahon@usdoj.gov) and Hannah McCollum (hannah.mccollum@usdoj.gov)
- Counsel to the Committee: McGuireWoods LLP, Attn: Dion W. Hayes (dhayes@mcguirewoods.com) and Aaron McCollough (amccollough@mcguirewoods.com); Faegre Drinker Biddle & Reath LLP, Attn: Brett D. Fallon (brett.fallon@faegredrinker.com) and Ryan M. Messina (ryan.messina@faegredrinker.com)

/s/ Moshe Yanai
Moshe Yanai



# APPENDIX A

Permission of the Israeli Trustee

Email of Adv. Yariv Shai-Yashinovsky, Trustee, Insolvency Proceedings of Moshe Yanai, Case No. 72665-03-25, District Court of Tel Aviv-Jaffa, to Moshe Yanai, October 16, 2026

**From:** Yariv Shai-Yashinovsky <yshai@ek-lawyers.com>
**Sent:** Friday, October 16, 2026 6:49 PM
**To:** Moshe Yanai <m_yanai@att.net>
**Cc:** Ofri Mor <omor@ek-lawyers.com>; Galit Gura <ggura@ek-lawyers.com>
**Subject:** Re:(דחוף – אישורך להגשת ההתנגדות בדלאוור (נדרש עוד היום

משה ראה את התיקון שאני נכון לעשות. לא יהיה מעבר לכך.

In my capacity as the court-appointed Trustee in the insolvency proceedings of Moshe Yanai, Case No. 72665-03-25, District Court of Tel Aviv-Jaffa, I do not oppose, and hereby permit, Mr. Yanai to file an objection to approval of the settlement agreement, to the extent that he otherwise has standing and is entitled to do so. For the avoidance of doubt, any such objection is filed solely on Mr. Yanai's behalf and not on behalf of the insolvency estate, including by virtue of any proof of claim based on Mr. Yanai's rights or any residual rights he may have as a shareholder of the companies. In my capacity as Trustee, I have determined not to file an objection based on any such rights.

**יריב שי ישינובסקי, עו"ד | שותף**

קנולר ישינובסקי קינן ושות' עורכי דין

Linkedin | Facebook | www.ek-lawyers.com
מגדל בסר 1, דרך בן גוריון 2, רמת גן 5257334
טלפון: 03-7611611 | פקס: 03-7655655

duns 100 The Standard of Achievement 2025
dun & bradstreet החברות המובילות מבית

# APPENDIX B

Waterfall — Shareholder Returns Summary

*Distribution of proceeds by exit value, by shareholder*

From Appendix 11 to the Draft Complaint. Exit values and distributions in US$ millions.

| Waterfall Shareholder Returns Summary | | | | | | | |
|---|---|---|---|---|---|---|---|
| | CI | ION | TPG | GS | SeaGate | Moshe | Employees |
| $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| $ 52 | $ 11.3 | $ 11.3 | $ 11.3 | $ 11.3 | $ - | $ 3.6 | $ - |
| $ 143 | $ 16.2 | $ 16.2 | $ 23.8 | $ 71.3 | $ - | $ 3.6 | $ 8.3 |
| $ 341 | $ 26.9 | $ 27.0 | $ 147.8 | $ 71.3 | $ 35.0 | $ 3.6 | $ 26.5 |
| $ 490 | $ 35.0 | $ 35.1 | $ 240.8 | $ 71.3 | $ 61.3 | $ 3.6 | $ 40.1 |
| $ 558 | $ 38.7 | $ 38.8 | $ 250.1 | $ 116.3 | $ 61.3 | $ 3.6 | $ 46.3 |
| $ 608 | $ 41.3 | $ 41.5 | $ 281.1 | $ 116.3 | $ 70.0 | $ 3.6 | $ 50.9 |
| $ 631 | $ 42.6 | $ 42.7 | $ 284.3 | $ 131.3 | $ 70.0 | $ 3.6 | $ 53.0 |
| $ 730 | $ 48.0 | $ 48.1 | $ 346.3 | $ 131.3 | $ 87.5 | $ 3.6 | $ 62.0 |
| $ 775 | $ 50.4 | $ 50.6 | $ 352.5 | $ 161.3 | $ 87.5 | $ 3.6 | $ 66.2 |
| $ 786 | $ 53.3 | $ 53.5 | $ 352.5 | $ 161.3 | $ 87.5 | $ 3.6 | $ 71.1 |
| $ 1,000 | $ 67.3 | $ 67.5 | $ 375.4 | $ 171.2 | $ 93.0 | $ 134.1 | $ 91.5 |
| $ 1,500 | $ 98.8 | $ 99.2 | $ 430.0 | $ 194.9 | $ 106.0 | $ 433.8 | $ 137.3 |
| $ 2,000 | $ 130.4 | $ 130.9 | $ 484.7 | $ 218.6 | $ 119.0 | $ 733.5 | $ 183.0 |

The column headed "Moshe" shows the distribution on the Infinidat shares held by MII.

**TO:**

U.S. Bankruptcy Court,

District of Delaware,

824 North Market Street, 3rd Floor,

Wilmington, DE 19801

U.S.A

**FROM:**

Moshe Yanai

Antokolsky 3

Tel Aviv 6404420

Israel

**Chapter 11 case:**

26-10123-LSS MII Aviation Services LLC

EXPRESS WORLDWIDE **DOX** DHL

2026-10-18 MYDHL+ 1.0 / *30-0821*

From : Moshe yanai
Moshe yanai
HANEGEV 7 ST

6618605 TEL AVIV
Israel

Origin:
LV

To : U.S. Bankruptcy Court
U.S. Bankruptcy Court
824 North Market Street,
3rd Floor

**19801 WILMINGTON**
**United States of Americ**

NJOC
23
4388406374
PCS:1
EDD:10/22/2026
COMM

**19F US-PHL-NJS** DENJ

Day Time

**ADI**

Ref:

Pce/Shpt Weight: **0.5 kg**
Piece: **1/1**

Contents: Documents - general business

WAYBILL 43 8840 6374

(2L)US19801+42000000

(J) JD01 4600 0128 4574 0417