**CHRISTOPHER R. DONOVAN, SR.**
209 Access Road, Gate #3 | Norwood Memorial Airport (KOWD) | Norwood, MA 02062
christopherdonovan1@gmail.com

RECEIVED
2026 OCT 26 A 11:09
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

October 23, 2026

*Filed on the Docket and Delivered to Chambers*

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

**Re:** ***In re MII Aviation Services LLC, et al.*, Case No. 26-10123 (LSS) (Jointly Administered) — Discovery Dispute with the Official Committee of Unsecured Creditors and the Debtors Concerning the Basis for the Scintilla Claim, Including Alvarez & Marsal's Analyses (Chambers Procedures § III)**

Dear Judge Silverstein:

I am a creditor and party in interest appearing pro se. Under Section III of Your Honor's Chambers Procedures, I advised Chambers of this dispute on October 23, 2026, and submit this letter on my disputes with the Official Committee of Unsecured Creditors (the "Committee") and the Debtors. Local Rule 7026-1(b) requires that a discovery motion be received seven days before the hearing, which for the October 29 hearing was October 22. Because I file by overnight delivery, on the evening of October 21, before the parties conferred, I sent my motions to compel to the Clerk and served them on all counsel; they were docketed today as D.I. 521 (the Debtors, Scintilla and the Committee, including A&M's analyses) and D.I. 520 (the Committee), with responses due October 28 at 4:00 p.m. I told counsel in writing each time why, and what I would do after conferring. Serving D.I. 521: "This does not change my request to confer. … If we resolve any Point at the conference or before the hearing, I will promptly file a notice withdrawing or narrowing the Motion to that extent. The Motion says so expressly." Serving D.I. 520: "If any matter is resolved, I will promptly file a notice withdrawing or narrowing the Motion to that extent." And in my agenda for the October 22 conference: "My motions to compel were sent for filing last night only because Local Rule 7026-1(b) requires that a discovery motion be received seven days before the October 29 hearing. I will withdraw, by written notice, any Point we resolve." (Ex. F.) Nothing was resolved. This letter is that update. Recognizing that Section III calls for a letter in lieu of a formal motion, I ask that the Court treat this letter as my submission under Section III and consider the motions as supporting material, or hold them in abeyance, as the Court prefers. (My earlier motion to shorten the time to respond to my requests, D.I. 502, drew the Debtors' objection, D.I. 505.) The parties conferred on October 22, 2026. At 10:20 a.m. on October 23, 2026, I sent all counsel a written summary of each party's position and asked each to correct it in writing, with specific reasons, by 5:00 p.m. that day (Ex. A). Debtors' counsel replied fourteen minutes later without disputing any statement in it (Ex. D). At 4:58 p.m. the Committee answered that its "analyses and communications involving its counsel, A&M, and Committee members are privileged and work product and will not be produced." It offered only its confirmation exhibits, to be filed October 27 at 11:00 a.m., and a "categorical privilege log." In the same email it asserted that the value of BEH "plainly" does not exceed the Scintilla claim, while withholding A&M's BEH valuation, and reserved a claim against me personally under 28 U.S.C. § 1927 (Ex. G-1). At 4:41 p.m. Scintilla's counsel answered me alone. He produced nothing new. He stated that he "cannot confirm anything about A&M's work," and that the spreadsheets he had located are the seven I identified, not those referenced in A&M's time records. The invoices, payoff and itemization remain under investigation. He asked what the "July 2025 payoff statement" is, although A&M compared the claim to the "July 2025 payoff amount" on May 28, 2026. D.I. 364-2 at 8. (Ex. G-2.) I respectfully

ask the Court to address these disputes at the October 29, 2026 omnibus hearing, or at a conference at the Court's convenience.

## 1. The Dispute

The Plan, proposed jointly by the Debtors and the Committee, deems the claim of Scintilla Fund LP ("Scintilla") allowed at $46,491,605 under Bankruptcy Rule 9019, releases Scintilla, and bars the Liquidating Trustee from objecting to the claim. D.I. 445 at 21–22, 35, 101, 104. My Second Requests for Production seek the documents showing how that amount was calculated, including the analyses of the Committee's financial advisor, Alvarez & Marsal North America, LLC ("A&M").

Neither Plan proponent has produced a single document. The Debtors state for seven requests that they "will not produce documents" and, as to how the claim was calculated, that they "rely on Scintilla's filed proof of claim." Debtors' Resp. No. 7. The Committee withholds all of A&M's work as privileged and work product, serves no privilege log, and states that how the claim amounts were calculated "is information held by Scintilla." Committee Resp. No. 7. At the October 22 conference, both refused to produce anything further. Scintilla has produced nothing new since October 19. Its counsel states that Scintilla "did not employ A&M," that its only computation of the claim "was created in response to" my request, and that it "will investigate" whether the July 2025 payoff statement and other source records exist. The Committee is therefore the only source of A&M's analysis, and it will not produce or identify any of it.

## 2. The Debtors' Refusal Contradicts What They Told the Court

At the close of the October 13, 2026 hearing, Debtors' counsel told the Court that "there obviously was considerable discovery in connection with the Scintilla claim and Scintilla litigation before that was resolved through mediation," referred to "reviews of the apps," and concluded that "there was ample discovery." (Ex. B.)[1] Eight days later the Debtors produced nothing, and my Request 4, which asked them to identify that discovery, remains unanswered. Asked on October 23 to confirm or correct their position, Debtors' counsel answered only that my requests were "untimely and otherwise not in compliance with the applicable rules," and did not answer any of the questions put to the Debtors, identify the discovery, or dispute any fact stated. (Ex. D.) Timeliness does not explain withholding documents the Debtors have already collected, reviewed and produced to the Committee. By counsel's own account the discovery preceded the mediation and is not a mediation communication. The Debtors cannot rely on that discovery before the Court while refusing to produce or identify any of it.

[1] The official transcript of the October 13, 2026 hearing is not yet available. The quotations are from a machine-generated transcription of the hearing audio (Ex. B). I will file the official pages when available.

## 3. A&M's Own Billing Records Describe What Is Being Withheld

The fee applications counsel referred to are A&M's, which bill the estates $263,233.43 through July 31, 2026. D.I. 288, 364. Their time entries show:

(a) *Pre-mediation discovery.* A&M analyzed "Scintilla production files including loan agreements and amendments" and the "secured debt claim amount" (March 27), reviewed the "Debtor Production - 4-17-2026" (Bates "MII"), and analyzed "documentation provided in discovery to back Scintilla claim amount" (May 7). D.I. 288-2 at 3–4; D.I. 364-2 at 3, 5.

(b) *The Debtors' involvement.* On May 7 and 8, A&M corresponded with the Debtors' CRO "requesting documentation backing Scintilla claim amount" and "support for senior secured claim." D.I. 364-2 at 3.

(c) *Source records Scintilla says it must look for.* On May 28, A&M compared the proof of claim "to July 2025 payoff amount." Id. at 8.

(d) *Recalculations and discrepancies.* Between June 2 and July 31, A&M repeatedly recalculated the claim, including "for reduction of conveyed property," "based on lender

credit documentation," and "to exclude default rate on eToro share sales proceeds"; summarized "discrepancies in Scintilla claim calculations"; and reviewed Scintilla's "answers to discrepancies identified" and "deficiencies in Scintilla response." Id. at 9–17.

(e) *Shared with a Committee member, not with me.* On July 12 and 14, A&M gave "support files necessary to reconcile Scintilla claim" and "updated calculations" to a Committee member. Id. at 16–17. See 11 U.S.C. § 1102(b)(3)(A).

(f) *Work already supporting confirmation.* A&M prepared an "expert report" on solvency and BEH's valuation (108.7 hours, $97,942.50) and the liquidation analysis and best-interests test "to conform with" the Plan. D.I. 364 at 3; D.I. 364-2 at 3–17.

Committee counsel's and Debtors' counsel's own billing records confirm a full pre-mediation discovery record: Committee interrogatories and document requests served on the Debtors in March and answered; Debtor productions to the Committee through June 10 from a hosted review database under a "confidentiality agreement" (207.5 hours in April alone); a Debtor "privilege log"; "discovery requests from Alvarez" to the Debtors; Scintilla's discovery responses; "discovery deficiency letters to Debtors and Scintilla"; and deposition notices to Mr. Toshav, the Debtors, Mr. Keinan, Scintilla and Mr. Gray. D.I. 224-1 at 4–6; D.I. 227 at 4–5, 11; D.I. 270-2 at 15; D.I. 298 at 4, 8; D.I. 339-1 at 7; D.I. 363-2 at 19, 22–23. On May 4, Committee counsel reviewed "emails from Scintilla and debtor regarding their alleged inability to locate fundamental documents regarding Scintilla's claim," and in June recorded "text messages missing from Scintilla production." D.I. 363-2 at 6, 39.

None of these documents has been produced or logged to me by any party. Most of A&M's claim work was billed as claims reconciliation, not litigation. I do not seek communications made in the June 11 mediation session itself.

### 4. Privilege Does Not Shield A&M's Work

The Committee told the Court it needed A&M to "monitor and evaluate the Debtors' operations, cash flows and business plans," to maximize estate value, and to assist in liquidating assets. D.I. 127 ¶ 12. It retained A&M directly, through its Chair, not through counsel. *Id.* at 12. Its only confidentiality term provides that A&M's advice is for the Committee's "benefit and use," a limit on use, not a privilege. *Id.* ¶ 21(g). The approved terms anticipated depositions, subpoenas and "expert testimony." *Id.* ¶¶ 16(k), 21(k); D.I. 174 ¶¶ 2, 6. Work product does not reach documents prepared in the ordinary course of business. *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). Privilege extends to a non-lawyer advisor only where it assists counsel in giving legal advice. *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). Documents the Committee received from Scintilla or the Debtors are, by its own concession, not privileged. Gen. Obj. 11.

(a) *At-issue waiver.* The Committee relies on its investigation in its own Plan. D.I. 445 at 37. On October 22, the Plan proponents told the Court again that "the Committee evaluated the legal and factual issues associated with the Scintilla Claim, including usury theories, before entering into the settlement that formed the basis for the Combined Disclosure Statement and Plan." D.I. 515 ¶ 24. A party that relies on protected material waives protection over it. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

(b) *Substantial need.* Scintilla does not have A&M's work, its tracker was made for this litigation, and the Debtors disclaim knowledge. Fed. R. Civ. P. 26(b)(3)(A)(ii).

(c) *No privilege log.* Fed. R. Civ. P. 26(b)(5)(A), applicable through Bankruptcy Rules 7026 and 9014(c).

### 5. Relief Requested

I respectfully request an order directing, within three business days or by a date the Court sets, that:

(i) the Debtors produce to me what they produced to the Committee, by Bates range, including the April 17, 2026 production, their interrogatory answers, privilege log and confidentiality agreement, A&M's and Scintilla's discovery requests to them and their responses, Scintilla's discovery responses, the May 2026 correspondence about the inability to locate fundamental claim documents, and the CRO's May 2026 correspondence with A&M;

(ii) the Debtors produce any independent analysis of the $46,491,605 amount, or state in writing that none exists;

(iii) the Committee produce all documents it or A&M received from Scintilla or the Debtors concerning Scintilla's claim, including the trackers, payoff figures, updated calculations and discrepancy answers described in D.I. 364-2, and the support files given to a Committee member on July 12 and 14, 2026;

(iv) the Committee produce A&M's non-mediation analyses, recalculations and discrepancy summaries of the claim, and the liquidation analysis workpapers supporting the Plan;

(v) the Committee and the Debtors serve privilege logs for anything still withheld, for in camera review; and

(vi) any party intending to use A&M's testimony or work, in any way, to support confirmation, the allowance or amount of Scintilla's claim, or any other matter, produce at least seven days before that hearing (for October 29, by 12:00 p.m. on October 26) the complete analysis and everything it considered, with native calculations.

Absent that disclosure, I ask that the Committee, the Debtors and Scintilla be barred from relying on any A&M work or analysis, or on the undisclosed discovery described on October 13, in support of the Plan, Scintilla's claim, or any other matter. Bankruptcy Rule 9014(c) permits the Court to direct that Rule 26(a)(2) apply in a contested matter; I ask that it do so, with the preclusion Rule 37(c)(1) provides. The Plan cannot rest on evidence withheld from the creditors bound by it. The parties may disclose it or forgo relying on it, but not both.

**6. My Cooperation, and the Debtors' Stated Need for BEH Records**

While refusing all discovery on the $46.5 million Scintilla claim, the Debtors, the Committee and Scintilla jointly ask the Court to value my $2.1 million claim at $0 (D.I. 509), and the Debtors continue to pursue discovery of me and of non-debtor Boston Executive Helicopters LLC ("BEH"), which I manage. I have produced 926 Bates-numbered pages, answered all interrogatories and document requests, agreed to a Zoom deposition, and arranged the Court-permitted review of BEH's records in Norwood on the dates the Debtors chose, October 26–27, with airport access, an escort and a dedicated BEH representative. D.I. 475 ¶¶ 4–6; Ex. E. The Chipman Brown attorneys conducting the review, Mr. Bach and Ms. Maser, have filed papers for the Debtors on these matters (D.I. 398, 405, 407, 455). At 2:41 p.m. on October 23, Debtors' counsel replied that the Debtors are "not paying for any escort or time for any BEH personnel," that a log of flagged pages "is not necessary," and that he "cannot guarantee" prompt return of originals. He demanded access to "all files" beyond the boxes. Eleven weeks after the August 6 production, he also asked when the licenses were produced. They were identified by Bates number that day (DONO100641, 100668–100670), and on September 17 he told the Court, "If we need to raise an issue with your honor, we will." (D.I. 436, unofficial.) I answered each point from the Court's October 13 ruling: the review is "at their expense," and I am "entitled to know what pages they flagged." (Ex. H.)

The record also bears on the reasons the Debtors have given for that discovery. Their Rule 2004 motion sought "all books and records for BEH," including "email login credentials," because the Debtors "require access to the BEH Records in order to facilitate such sale." D.I. 121 at 1–2, ¶ 12. On October 13, counsel described that request as a search for "documents that would give us, or give a potential bidder, insight into what BEH is worth." (Ex. B.) A&M's time records show that the Debtors' own files, Bates-prefixed "MII," already held a "'BEH Valuation Analysis Highly

Confidential' report dated May 2025" (MII014378); a "Fair Market Value Opinion Letter for Boston Executive Helicopters … as of 5/1/2024" with aircraft Bluebook values; and BEH financial statements through July 31, 2025. D.I. 364-2 at 5, 7. Between May 26 and June 11, 2026, before the July 8 hearing at which the Debtors told the Court "[w]e don't need 100 boxes of documents in a room" (D.I. 327 at 71:4–6), A&M performed its own "valuation analysis for Boston Executive Helicopter" for its expert report. D.I. 364-2 at 7–13. None of this was disclosed when the Debtors described their need for BEH's records, and none has been produced to me. The Court later vacated the Rule 2004 order, finding no non-compliance or bad faith. D.I. 342 ¶¶ 1, 13.

Finally, during the October 22 conference, Debtors' counsel asserted that I instructed Mr. O'Malley to refuse his deposition or to refuse to cooperate in any way. That is not true; I told counsel so at the time, and he declined further discussion. When I asked in writing on October 23 that he withdraw the statement or identify its basis, he did not withdraw it and gave a different account: that Mr. O'Malley said the subpoena was made out to his CPA firm, that as a BEH employee he cannot respond for BEH, and that I told him he cannot act or speak for BEH without my approval. (Ex. D.) Even as restated, that is not an instruction to refuse a deposition or to refuse to cooperate. Who may act for BEH is the question the Court reserved and declined to decide. D.I. 342 ¶ 11. The Debtors have also described Mr. O'Malley three different ways: as BEH's "Chief Financial Officer" (D.I. 459-1, Ex. B), as "certainly the outside accountant for BEH" (Oct. 13; Ex. B), and now as a BEH employee (Ex. D). I have asked counsel for the source, dates and any record of the statements he attributes to Mr. O'Malley. (Ex. D.) He has not provided them. I have not instructed Mr. O'Malley, or anyone else, to refuse a deposition, to withhold documents, or to refuse to cooperate in any respect.

Thank you for the Court's consideration.

*Exhibits:* A — October 23, 2026 email to all counsel confirming the results of the October 22 conference, with attachments; B — excerpt of a machine-generated transcription of the October 13, 2026 hearing audio (official transcript not yet available); C — A&M time records, D.I. 288-2 and D.I. 364-2; D — October 23, 2026 email of Debtors' counsel and my reply; E — October 23, 2026 email to Debtors' counsel confirming access, procedures and scope for the October 26–27 review of BEH records; F — my October 21–22, 2026 emails serving the motions and setting the conference agenda; G — October 23, 2026 written responses of the Committee and Scintilla; H — October 23, 2026 email of Debtors' counsel on the Norwood review and D.I. 342, and my reply.

Respectfully submitted,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr., pro se
Creditor and Party in Interest

*cc (by email):* Dion W. Hayes, Esq., Aaron G. McCollough, Esq. (McGuireWoods LLP); Brett D. Fallon, Esq. (Faegre Drinker Biddle & Reath LLP); Mark L. Desgrosseilliers, Esq. (Chipman Brown Cicero & Cole, LLP); Eric S. Silvestri, Esq. (Chapman and Cutler LLP); Joseph E. Brenner, Esq. (Gordon Rees Scully Mansukhani, LLP); Hannah J. McCollum, Esq. and Joseph J. McMahon, Jr., Esq. (Office of the U.S. Trustee)

# EXHIBIT A

October 23, 2026 email to all counsel confirming the results of the October 22, 2026 conference, with Attachments 1, 2, 3, 4a and 4b

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Friday, October 23, 2026, 10:20 a.m. (ET)
**To:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** MII – Results of October 22, 2026 Meet-and-Confer; Written Response Requested by 5:00 p.m. (ET) Today – In re MII Aviation Services LLC, No. 26-10123 (LSS)
**Attached:** Attachment 1 (Debtors' Responses, Oct. 21, 2026); Attachment 2 (Committee's Responses, Oct. 19, 2026); Attachment 3 (Supporting Excerpts); Attachments 4a and 4b (A&M time records, D.I. 288-2 and D.I. 364-2). Attachments follow this email.

Counsel:

Thank you for conferring on October 22, 2026 under Fed. R. Civ. P. 37(a)(1) and Del. Bankr. L.R. 7026-1. This email confirms the results. It also addresses the responses provided by Mr. Silvestri and the professionals' fee applications on the docket.

## SUMMARY

- **Debtors:** produced no documents in response to my Second Requests, and refuse to produce anything further.
- **Committee:** produced no documents in response to my Second Requests, and refuses to produce anything further.
- **Scintilla:** has produced nothing new since October 19.
- **No party** has produced a document showing how the $46,491,605 that the Plan would allow to Scintilla was calculated, although the Debtors and the Committee are the Plan proponents asking the Court to approve that amount.
- **On October 13, 2026,** Debtors' counsel told the Court there "was considerable discovery in connection with the Scintilla claim" and "there was ample discovery." The professionals' own billing records confirm that this discovery, and much more, exists.

## RESPONSE REQUESTED

1. Please respond in writing by **5:00 p.m. (ET) today, Friday, October 23, 2026.**
2. An objection to my characterization is not a response. If you disagree with anything below, state specifically what is inaccurate, why, and what your position is.
3. It would be most helpful if each party answered, item by item, the questions directed to it in Section 8.
4. If I receive no specific written response by that time, I will submit this email to the Court, with my pending motion and my letter under Section III of the Court's Chambers Procedures, as an accurate statement of each party's position.

## 1. THE DEBTORS

- The Debtors produced no documents in response to my Second Requests and refuse to produce anything further.
- Their position is that the responsive documents are Scintilla's and that Scintilla's production is all that exists.
- Their written Responses (October 21, 2026) state for Requests 1, 2, 4, 5, 6, 7 and 8 that they "will not produce documents."
- As to how Scintilla's claim was calculated, they state that "the Debtors rely on Scintilla's filed proof of claim" (Resp. No. 7). (Attachment 1; Attachment 3 at 5.)

**What Debtors' counsel told the Court on October 13, 2026:**

- Mr. Desgrosseilliers volunteered that there "obviously was considerable discovery in connection with the Scintilla claim and Scintilla litigation before that was resolved through mediation."
- He pointed the Court to "reviews of the apps" (the professionals' fee applications).
- He concluded that "there was ample discovery."
- The official transcript is not yet available. These quotations are from a machine-generated transcription of the hearing audio. If counsel contends any is inaccurate, please say so specifically.

**Why that matters:**

- Eight days later, the Debtors produced nothing, and at the conference they refused to produce anything further.
- My Request 4 asked the Debtors to identify the "considerable" and "ample" discovery. They have not.
- By counsel's own account that discovery took place before the mediation, so it is not a mediation communication.
- The fee applications counsel pointed to are summarized in Section 4.
- The Debtors cannot rely on that discovery before the Court while refusing to produce any of it to a creditor who objects to the claim.

**Mr. O'Malley:**

- During the conference, Mr. Desgrosseilliers asserted that I instructed Mr. O'Malley, BEH's outside accountant, to refuse his deposition or to refuse to cooperate in any way when contacted.
- That is not true. I told him so at the time, and he declined to discuss it further.
- I state again, in writing: I have not instructed Mr. O'Malley, or anyone else, to refuse a deposition, to withhold documents, or to refuse to cooperate in any respect.
- I have answered every interrogatory, made the BEH records available for the Debtors' review on the dates counsel requested, and agreed to sit for my deposition by Zoom as an accommodation.
- Mr. Desgrosseilliers, please either withdraw the statement or identify, specifically, its basis.

## 2. THE COMMITTEE

- The Committee produced no documents in response to my Second Requests and refuses to produce anything further.

- It maintains that all materials of Alvarez & Marsal North America, LLC ("A&M") concerning the Scintilla claim are privileged or work product.
- It will produce none of them, will not identify them, and has served no privilege log.
- It takes the position that Scintilla's production is all that exists, stating that how the claim amounts were calculated "is information held by Scintilla" (Resp. No. 7). (Attachment 2; Attachment 3 at 3–4.)

## 3. SCINTILLA

At the 11:00 a.m. conference and again at 3:00 p.m., Mr. Silvestri stated that he would continue to look for responsive documents, would answer my questions and concerns as best he could, and that Scintilla does not have A&M's work. Based on the responses provided by Mr. Silvestri:

1. Scintilla's October 19 production (SCINTILLADONOVAN000001–000468) "contains all that is needed to support that calculation."
2. Scintilla "anticipates" a supplemental production by 12:00 p.m. (ET) on October 26, 2026, including the spreadsheets referenced in A&M's time records (at least one redacted), the linked spreadsheets I requested, "additional information and calculations relating to the loans," and documents relating to the real estate.
3. For the invoices supporting the $3,328,126 cost component, the July 2025 payoff statement, the $41,633,405 Closing Date Loan Balance computation, and the $45,542,119 Israeli itemization, Scintilla "will investigate whether these are available." It has not committed to produce them.
4. The payoff tracker "was created in response to" my document request. It is not a record kept in the ordinary course of Scintilla's business.
5. Scintilla "did not employ A&M and is not in a position to comment on its work."
6. Scintilla has not withheld any document on privilege grounds so far and will serve a log if it does.
7. Scintilla "has received no value from any real estate conveyance"; any future real estate proceeds would be addressed by the Plan's Scintilla Claim Mitigation Amount.

**Nothing has changed:**

- Scintilla has produced no new documents.
- The only computation of the claim in its production is a payoff tracker prepared for this litigation, which draws figures from linked spreadsheets that have not been produced.
- No document produced shows, from source records, every advance, the cash actually funded, the interest and charges applied, every payment and credit received, and how those produce $46,491,605.
- My detailed questions to Mr. Silvestri remain unanswered on the record.
- I will review the supplemental production in good faith when it arrives, as he asks, and will narrow my motion as to any item it actually resolves. Until then, my motion stands as to Scintilla.
- Mr. Silvestri: the General Objection 11 language quoted in Section 5 is from the Committee's written Responses, not from Scintilla.

## 4. WHAT THE PROFESSIONALS' OWN BILLING RECORDS SHOW

A&M's two interim fee applications (D.I. 288, 288-2; D.I. 364, 364-2) bill the estates $263,233.43 through July 31, 2026. Their time entries, and those of Committee counsel and Debtors' counsel, describe in the professionals' own words the documents and analyses now being withheld.

**(a) Discovery before the litigation and the mediation**

- March 27, 2026: A&M analyzed "Scintilla production files including loan agreements and amendments" and the "secured debt claim amount." D.I. 288-2 at 3–4.
- May 7: A&M analyzed "documentation provided in discovery to back Scintilla claim amount." D.I. 364-2 at 3.
- A&M reviewed an inventory of the "Debtor Production - 4-17-2026" and Debtor documents Bates-numbered "MII." Id. at 5, 7.
- None of it has been produced or identified to me.

**(b) The Debtors' own involvement**

- May 7–8: A&M corresponded with the Debtors' CRO "requesting documentation backing Scintilla claim amount" and "support for senior secured claim." D.I. 364-2 at 3; see D.I. 363-2 at 2.
- May 4 and 7: Debtors' counsel reviewed "discovery requests from Alvarez" and "Alvarez additional discovery requests." D.I. 298 at 4.
- July 30: A&M met with the CRO and Debtors' counsel on the Plan's liquidation analysis. D.I. 364-2 at 17.

**(c) The July 2025 payoff**

- May 28: A&M "[a]nalyze[d] Scintilla payoff amount from proof of claim; compare[d] to July 2025 payoff amount." D.I. 364-2 at 8.
- The July 2025 payoff figure that Scintilla now says it "will investigate" was in the Committee's hands by May 28.

**(d) Repeated recalculations and discrepancies** (D.I. 364-2 at 9–17)

- May 29 – June 2: "MII interest expense calculation methodology."
- June 2: "discrepancies in Scintilla payoff amount based on interest rate trackers and legal documentation."
- June 3, 4, 10: "senior secured claim accrued interest and related equity kicker components," with updated calculations sent to McGuireWoods.
- June 9: recalculated the claim "for reduction of conveyed property" and "through settlement date."
- June 11: recalculated the claim "based on lender credit documentation" and compared it "to claim amount asserted by Scintilla."
- July 14: updated the claim "to exclude default rate on eToro share sales proceeds not submitted to Scintilla."
- July 17 and 31: summarized "discrepancies in Scintilla claim calculations."

**(e) Scintilla answered A&M's questions**

- July 20: A&M reviewed "answers to discrepancies identified," "recalculate[d] accrued interest based on answers provided by Scintilla," and corresponded about "deficiencies in Scintilla response to discrepancies." D.I. 364-2 at 17.
- July 9: Committee counsel corresponded "with financial advisor and Scintilla's counsel regarding information request in support of claim." D.I. 363-2 at 46.
- Those answers and that correspondence are not in Scintilla's production.

**(f) Circulated widely, withheld from me**

- A&M sent its Scintilla claim calculations, including an "Excel spreadsheet," to Committee co-counsel. D.I. 337-2 at 11; D.I. 368-2 at 10.
- July 12 and 14: A&M gave "support files necessary to reconcile Scintilla claim" and "updated calculations" to a Committee member. D.I. 364-2 at 16–17.
- The same information is withheld from me, the holder of the largest scheduled unsecured claim, whom the Committee is obligated to keep informed. 11 U.S.C. § 1102(b)(3)(A).

**(g) Expert report and liquidation analysis**

- May 14 – June 11: A&M prepared a "report on behalf of UCC," a "solvency report," and an "expert report" (the "Russell expert report"), including a valuation of BEH, billed at 108.7 hours and $97,942.50. D.I. 364 at 3; D.I. 364-2 at 3–13.
- June 12 – July 30: A&M prepared the liquidation analysis and best-interests test and updated them "to conform with" the Plan. D.I. 364-2 at 13–17.
- A&M's work is therefore already being used to support confirmation.

**(h) A full discovery record exists among the Debtors, the Committee and Scintilla**

- March 2026: the Committee served interrogatories and document requests on the Debtors (D.I. 247-2 at 17; D.I. 270-2 at 12–13), and the Debtors answered them (D.I. 270-2 at 15).
- February – June 10: Debtors' counsel reviewed documents "for production to Committee" from a hosted review database maintained by an ESI vendor, under a "confidentiality agreement." In April 2026 alone, that category of time totals 207.5 hours and $92,542.50. D.I. 221-1 at 6; D.I. 224-1 at 4–6, 14; D.I. 227 at 4–5; D.I. 339-1 at 7.
- Debtors' counsel reviewed "privileged documents in connection with Committee production" and the "log." D.I. 227 at 11; D.I. 298 at 8.
- Debtors' counsel reviewed "discovery requests from Scintilla" (D.I. 227 at 10), "Scintilla's responses to requests for production" (D.I. 224-1 at 4), and "documents produced by Committee" (D.I. 298 at 5, 9–10).
- May 6: Committee counsel analyzed the Debtors' "privilege log and debtor responses to interrogatories" and drafted "discovery deficiency letters to Debtors and Scintilla." D.I. 363-2 at 19; D.I. 336-2 at 4–5.
- Depositions of Mr. Toshav, the Debtors, Mr. Keinan, Scintilla and Mr. Gray were noticed. D.I. 363-2 at 22–23, 41–42.

**(i) The missing fundamental documents were known**

- May 4, 2026: Committee counsel reviewed "emails from Scintilla and debtor regarding their alleged inability to locate fundamental documents regarding Scintilla's claim." D.I. 363-2 at 6.
- June: Committee counsel recorded "text messages missing from Scintilla production" and correspondence with Mr. Silvestri "re missing WhatsApp messages." D.I. 363-2 at 39; D.I. 337-2 at 5.
- The Plan nonetheless asks the Court to allow the claim at $46,491,605.

**Not one of these documents has been produced or logged to me by any party.**

## 5. THESE POSITIONS CANNOT ALL BE TRUE

1. The Debtors told the Court there was "considerable" and "ample" discovery before the mediation. They now say the only documents are Scintilla's production, and they produce nothing. The billing records show Debtor productions, interrogatory answers, a Debtor privilege log, discovery requests from A&M and Scintilla, Scintilla's responses, Committee productions, deficiency letters, deposition notices, and correspondence with the Debtors' CRO about the claim.
2. The Committee refers me to Scintilla. The Debtors refer me to Scintilla's proof of claim. Scintilla did not employ A&M and does not have its work. The Committee is therefore the only source of A&M's analysis, and it refuses to produce or identify any of it.
3. Scintilla's only computation of the claim is a tracker created for this litigation that draws $11,801,228 from seven linked workbooks that were not produced. (Attachment 3 at 11–12.)
4. The Committee's General Objection 11 excludes from its privilege claim "documents produced to the Committee by the Debtors or Scintilla." It has nonetheless produced none of them. (Attachment 3 at 2.)
5. Scintilla says it received no value from any conveyance, yet the Committee's advisor recalculated the claim "for reduction of conveyed property." The Committee will not produce that recalculation.
6. The Debtors prepared a privilege log for the Committee but have served none on me. The Committee has served none. Fed. R. Civ. P. 26(b)(5)(A) requires one.
7. The record contains payments, a property conveyance and an Israeli itemization ($45,542,119) that appear nowhere in the production. (D.I. 413 ¶¶ 1, 14, 22.)

## 6. THE COMMITTEE'S RETENTION PAPERS DO NOT SUPPORT A BLANKET PRIVILEGE CLAIM

1. **Business purpose.** The Committee told the Court it retained A&M to "monitor and evaluate the Debtors' operations, cash flows and business plans," to maximize estate value, and to assist in liquidating assets. D.I. 127 ¶ 12.
2. **Retained directly.** The Committee retained A&M through its Chair, not through counsel. D.I. 127 at 12.
3. **Use limit, not privilege.** The only confidentiality term is that A&M's advice is for the Committee's "benefit and use." D.I. 127 ¶ 21(g).
4. **Testimony anticipated.** The retention terms contemplate depositions of A&M personnel and production under subpoena, at the estates' expense, and include "rendering expert testimony" and "issuing expert reports." D.I. 127 ¶¶ 16(k), 21(k). The Court approved those terms. D.I. 174 ¶¶ 2, 6.

5. **Timing.** A&M was retained effective March 18, 2026 (D.I. 174 ¶ 2), months before the complaint against Scintilla (D.I. 266) and the June 11 mediation (D.I. 287). Through April 30 it billed 22.0 hours of "ad-hoc financial analyses," 2.6 hours on claims, and 0.5 hour on litigation. D.I. 288 at 2–3.
6. **Claims work, not litigation.** Most of A&M's Scintilla claim work was billed as "Claims / Liabilities" (LIAB). D.I. 364-2. A&M itself served discovery requests on the Debtors. D.I. 298 at 4.
7. **Mediation.** I do not seek communications made in the June 11 mediation session itself.
8. **At issue.** The Committee asks the Court to approve the allowance of Scintilla's claim at $46,491,605 under Bankruptcy Rule 9019 on the strength of its investigation. D.I. 445 at 21–22, 37. It cannot rely on that investigation and withhold it.

## 7. USE OF A&M'S WORK

No party may support the Plan, the Scintilla claim, or any other matter before the Court with analysis it refuses to disclose. A&M's liquidation analysis and best-interests test are already part of the Plan's support.

1. **Disclosure.** If A&M will testify, or if any A&M work, analysis, calculation, report, opinion or conclusion will be used in any way (testimony, declaration, proffer, argument, exhibit or otherwise) to support confirmation, the allowance or amount of the Scintilla claim, the Rule 9019 settlement, or any other matter, I request that the party intending to use it produce to me, at least seven days before that hearing (and for October 29, by 12:00 p.m. (ET) on October 26, 2026):
   - the complete analysis;
   - all facts, data, documents and assumptions considered or relied on;
   - all supporting calculations and schedules in native form; and
   - the identity and qualifications of each A&M person who will testify or whose work will be relied on.
2. **Preclusion.** If that production is not made, I will ask the Court to bar the Committee, the Debtors and Scintilla from relying on any A&M work or analysis in any way. Fed. R. Bankr. P. 9014(c) permits the Court to direct that Fed. R. Civ. P. 26(a)(2) apply in a contested matter, and I will ask the Court to do so, with the preclusion that Fed. R. Civ. P. 37(c)(1) provides.
3. **Not both.** The Plan and the Scintilla claim cannot rest on undisclosed evidence or analysis. The parties may disclose A&M's work or forgo relying on it, but not both. The same applies to the "considerable" and "ample" discovery described on October 13.

## 8. QUESTIONS REQUIRING A SPECIFIC WRITTEN ANSWER BY 5:00 P.M. (ET) TODAY

### The Committee

1. Will it produce all documents it or A&M received from Scintilla or the Debtors concerning the claim, including the "Scintilla production files" (March 27), the "documentation provided in discovery to back Scintilla claim amount" (May 7), the amortization and interest rate trackers (June 1), Scintilla's "answers to discrepancies identified" (July 20), and the "updated Scintilla claim calculations provided by Scintilla" (July 31)? If not, on what basis, given General Objection 11?

2. Will it produce A&M's analyses, calculations, recalculations, reconciliations, spreadsheets and discrepancy summaries described in Section 4(c)–(f), including the July 2025 payoff comparison (May 28), the recalculation "for reduction of conveyed property" (June 9), and the calculations and Excel spreadsheet sent to co-counsel (June 23, July 9)?
3. Will it produce the support files and updated calculations given to a Committee member on July 12 and 14, 2026, and the July 9 correspondence with Scintilla's counsel?
4. Will it produce the liquidation analysis, best-interests test and supporting workpapers that A&M prepared for the Plan?
5. Will it produce its May 2026 deficiency letters to the Debtors and Scintilla and their responses, A&M's May 2026 discovery requests to the Debtors, and the Committee's own productions to the Debtors?
6. For anything still withheld, will it serve a privilege log by 12:00 p.m. (ET) on October 26, 2026, showing for each item the date, author, recipients, and whether it was prepared before or after June 11, 2026?
7. Will A&M testify, or will any A&M work be used in any way, in support of confirmation, the Scintilla claim, or any other matter? If so, will the Committee make the production described in Section 7 by the dates stated there?

**The Debtors**

1. What is the "considerable" and "ample" discovery described to the Court on October 13? Will the Debtors produce to me by 12:00 p.m. (ET) on October 26, 2026, identified by Bates range, what they produced to the Committee, including:
    - the "Debtor Production - 4-17-2026" (Bates prefix "MII");
    - their answers to the Committee's interrogatories;
    - their privilege log and the confidentiality agreement governing the production;
    - the Committee's deficiency letter and their response;
    - A&M's May 2026 discovery requests and their responses;
    - Scintilla's discovery requests to them and the Scintilla responses they reviewed; and
    - the May 2026 emails concerning the "alleged inability to locate fundamental documents regarding Scintilla's claim"?

   These documents are already collected in the Debtors' hosted review database.
2. Will the Debtors produce the May 4–8, 2026 correspondence between their CRO and A&M concerning support for the Scintilla claim, and whatever the CRO provided?
3. Did the Debtors perform any independent analysis of the $46,491,605 amount? If so, will they produce it? If not, will they say so in writing?
4. Do the Debtors still maintain that Scintilla's production is all that exists, given Section 4 and Scintilla's statement that its tracker was created in response to my request?
5. Will the Debtors rely, directly or indirectly, on any A&M work, including the liquidation analysis? If so, will they make the production described in Section 7?
6. Will Mr. Desgrosseilliers withdraw the statement that I instructed Mr. O'Malley to refuse his deposition or to refuse to cooperate? If not, what specifically is its basis?

**Scintilla**

1. Mr. Silvestri, please confirm that Scintilla's October 26 production will include:
   - its answers to the discrepancies A&M identified (D.I. 364-2 at 17);
   - the updated claim calculations it provided on or about July 31, 2026;
   - the July 2025 payoff statement A&M compared to the proof of claim on May 28, 2026;
   - its 2026 discovery requests to the Debtors, and its discovery responses and productions to the Committee and the Debtors, including its response to the Committee's May 2026 deficiency letter; and
   - its May 2026 correspondence concerning the "alleged inability to locate fundamental documents regarding Scintilla's claim" and the missing WhatsApp and text messages.
2. Please confirm that Scintilla will not rely on any A&M work in support of its claim.
3. Please state whether the items in Section 9(e) and (f) exist and will be produced.

## 9. SCINTILLA ITEMS AND STATUS

| Item | Requested | Status per Mr. Silvestri |
|---|---|---|
| (a) | Seven linked workbooks (native); payoff tracker with original metadata | Anticipated Oct. 26, at least one redacted; no original metadata because the tracker was created in response to my request |
| (b) | Loan-by-loan ledger: each advance, cash funded, prepaid interest withheld, every payment | "Additional information and calculations" anticipated Oct. 26 |
| (c) | Every receipt and its application, incl. five unaccounted sales ($15,199,667) and D.I. 413 cash and property | Says no sales or real estate proceeds to apply; real estate documents anticipated Oct. 26 |
| (d) | Contract provisions for monthly compounding, the "Where is this agreed upon in doc?" default-interest line, and the 23% rate after Aug. 1, 2025 | Says produced Oct. 19. I have not located them; please identify by Bates number |
| (e) | Invoices supporting the $3,328,126 cost component | "Will investigate"; no commitment |
| (f) | July 2025 payoff statement; $41,633,405 Closing Date Loan Balance computation; $45,542,119 Israeli itemization | "Will investigate"; no commitment. A&M had the July 2025 payoff amount by May 28, 2026 |
| (g) | Calculation of $46,491,605; trackers and updated calculations given to the Committee and A&M | Says calculation produced Oct. 19; A&M-referenced spreadsheets anticipated Oct. 26 |
| (h) | Written responses to First Requests; privilege log for SCINTILLADONOVAN000173, 000340, 000341, 000353 | Says nothing withheld on privilege |

## 10. NEXT STEPS

The conference did not resolve the disputes in my pending motions to compel. I will proceed as follows:

1. **Chambers Procedures.** Section III of Judge Silverstein's Chambers Procedures (effective February 1, 2025) provides that parties unable to resolve a discovery dispute contact Chambers, the party seeking relief files and delivers a letter of no more than five pages, and any opposing party responds by letter of no more than five pages within 48 hours. I will contact Chambers and submit such a letter, including the relief described in Section 7. Please be prepared to respond within that time.

2. **Supplement.** I will submit this email, and any written responses I receive, to the Court as a supplement to my motion and with my letter, to show the efforts made to confer and to obtain the documents underlying the Scintilla claim.
3. **Hearing.** I will ask that these disputes be addressed at the October 29, 2026 hearing or at a conference at the Court's convenience.
4. **Narrowing.** I will withdraw or narrow any point resolved in writing or by actual production.

Nothing in this email waives any right, claim, objection, or position.

**ATTACHMENTS**

1. Debtors' Responses and Objections to Second Requests for Production (October 21, 2026)
2. Committee's Responses and Objections to Second Requests for Production (October 19, 2026)
3. Supporting Excerpts, with index and highlighting added
4. A&M time records: (a) D.I. 288-2 (6 pages); (b) D.I. 364-2 (17 pages)

Other fee applications cited in Section 4 (D.I. 221-1, 224-1, 227, 247-2, 270-2, 298, 336-2, 337-2, 339-1, 363-2, 368-2) are on the docket and cited by page.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr.
Creditor and Party in Interest, pro se
209 Access Road, Gate #3
Norwood, Massachusetts 02062
(781) 603-6186
christopherdonovan1@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MII Aviation Services LLC, *et al.*, | Case No. 26-10123 (LSS) |
| Debtors.[1] | *(Jointly Administered)* |

**RESPONSES AND OBJECTIONS OF THE DEBTORS TO SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS OF CHRISTOPHER R. DONOVAN, SR. TO THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND SCINTILLA FUND L.P.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), MII Aviation Services LLC ("**MII Aviation**"), and Michal International Investment LLC ("**MII**" and with MII Aviation, collectively, the "**Debtors**"), by and through their undersigned counsel, hereby respond and object to the Second Requests (collectively, the "**Requests**" and each a "**Request**") for Production of Documents of Christopher R. Donovan, Sr. to the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), and Scintilla Fund L.P. ("**Scintilla**"), dated October 15, 2026.

## GENERAL OBJECTIONS

The following General Objections apply to each Definition, Instruction, and Request, and shall have the same force and effect as if fully set forth in the response to each Request. The Debtors do not waive any General Objections by providing specific responses and objections to the Requests.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: MII Aviation Services LLC (8667); and Michal International Investment LLC (2440). The Debtors' service address is c/o Arbel Capital Advisors, Attn: Daniel Sasson, 4 Waverly Place, Lawrence, NY 11559.

1. The Debtors object to each Request, Definition, and Instruction to the extent it purports to impose obligations beyond those required by the Federal Rules, the Bankruptcy Rules, or the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**" and collectively, with the Federal Rules and the Bankruptcy Rules, the "**Rules**"), and to the extent that each seeks information beyond that permitted by such Rules and to the extent that they require terms to be construed in a manner other than their plain, ordinary, and customary meaning.

2. The Debtors object to the Requests to the extent they seek discovery that is cumulative or duplicative.

3. The Debtors object to each Request to the extent it purports to seek any communication or information protected by the attorney-client privilege, the work-product doctrine, common interest doctrine, joint defense privilege, or any other state or federal applicable privileges or protections against disclosure. The inadvertent disclosure of any such information shall not constitute a waiver of any ground for objecting to its production and/or seeking its immediate destruction or return to the Debtors.

4. The Debtors object to each Definition, Instruction, and Request to the extent it is overbroad, unduly burdensome, vexatious, or designed to harass or annoy or requires actions not reasonable in light of Mr. Donovan's actions in these bankruptcy cases.

5. The Debtors object to each Definition, Instruction, and Request as calling for the production of documents or information that is not relevant to any claim or defense and not designed to lead to the discovery of relevant documents or is not proportional to the needs of this case, considering the factors set forth in Federal Rule 26(b)(1).

6. The Debtors object to each Definition, Instruction, and Request to the extent it seeks "all" documents responsive to a Request. It is impossible to represent, even after a reasonable and diligent search, that all, each, or every piece of information falling within any description can be, or has been, assembled. Moreover, the production of "all" documents responsive to each Request would impose an undue burden on the Debtors that is not proportional to the needs of these bankruptcy cases.

7. The Debtors object to each Request to the extent it purports to require the Debtors to disclose information outside of their possession, custody, or control.

8. The Debtors object to each Request to the extent it seeks documents that are publicly available or in Scintilla's or the Committee's possession, custody, or control. To the extent that such information or documents have already been produced or provided by any party, the Debtors assume no obligation to reproduce such information or documents in response to these Requests.

9. The Debtors object to each Request to the extent it seeks information or documents that may be obtained from sources other than the Debtors, or through other means of discovery that are more convenient, more efficient, less burdensome, or less expensive than production by the Debtors.

10. The Debtors object to each Request to the extent it is vague and ambiguous.

11. The Debtors object to the use of undefined terms in the Requests as vague and ambiguous to the extent they purport to mean anything other than their commonly understood meaning.

12. The Debtors object to each of the Requests to the extent such Request seeks proprietary, confidential, or trade secret information.

13. In providing responses to the Requests, the Debtors do not in any way waive or intend to waive, but rather intend to preserve and do preserve:

a) All objections as to relevancy, materiality, competency, authenticity, and admissibility;

b) All rights to object on any ground to the use of any information and documents provided or produced in response to the Requests in any proceedings, including the trial of this or any other action; and

c) All rights to object on any ground to any further requests for information or documents involving or related to any of the paragraphs in the Requests.

14. The Debtors reserve the right to supplement and amend their responses and objections, if necessary, to reflect additional information as it becomes available. The responses herein reflect the Debtors' objections and responses to the extent now known.

## OBJECTIONS TO SPECIFIC DEFINITIONS AND INSTRUCTIONS

1. The Debtors object to and reject the definition of "Pre-Mediation Discovery" in the Requests delivered to the Debtors as overbroad as defined.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

1. All documents produced by any person in the Pre-Mediation Discovery, with the Bates range of each production and the identity of the producing and receiving parties.

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of the bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "[a]ll documents produced by any person." The Debtors understand that certain documents responsive to this Request will be produced by Scintilla Fund, L.P. ("**Scintilla**"). The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors refer Donovan to Scintilla's production and will not produce documents in response to this Request.

2. All written discovery requests served in the Pre-Mediation Discovery (interrogatories, requests for production, requests for admission, subpoenas, and deposition notices, including D.I. 260, 264, 282, 283, and 284), and all written responses and objections to them.

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of the bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it requests the production of "[a]ll written discovery requests" that were served and "all written responses and objections" thereto. In particular, seeking any (and all) written discovery requests and responses thereto for Pre-Mediation Discovery and the same relating to five separate docket entries is unwarranted. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors refer Donovan to Scintilla's production and will not produce documents in response to this Request.

3. All transcripts of depositions or examinations taken in the Pre-Mediation Discovery, with exhibits. If no deposition noticed at D.I. 260, 264, 282, 283, or 284 was taken, documents sufficient to show, for each notice or subpoena, whether the deposition occurred, and if not, why not.

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of the bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "[a]ll transcripts." Moreover, all deposition notices requested in this Request were publicly filed and are available to Mr. Donovan on the docket of these bankruptcy cases or already in his possession. Further, the Debtors object

to this Request because the Debtors did not notice any of the depositions at the docket numbers referenced in the Request, and, thus, this Request does not apply to the Debtors. Finally, the depositions referenced in the Request did not occur. The Debtors will not produce documents in response to this Request.

4. Documents sufficient to identify each item of "considerable discovery" and "ample discovery" referred to by Debtors' counsel at the October 13, 2026 hearing.

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of the bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "Documents." In particular, the terms "considerable discovery" and "ample discovery" in the Request are undefined, and thus too vague for the Debtors to determine to what documents this Request would apply. The Debtors also object to this Request to the extent that it seeks any Privileged Information. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents in response to this Request.

5. All analyses, calculations, reconciliations, schedules, and reports – other than Mediation Communications – reflecting the "careful investigation by the Committee… including detailed review of all interest calculations and potential offsets" described in D.I. 476 ¶ 16, including any prepared by or for the Committee's financial advisor.

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of the bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "[a]ll analyses, calculations,

reconciliations, schedules, and reports." In particular, seeking all analyses, calculations, reconciliations, schedules, and reports is unduly burdensome. The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents in response to this Request.

6. Documents sufficient to show how the amount of $46,491,605.00, the "Scintilla Claim Mitigation Amount," and the reduction from the $48,634,881.00 asserted in Proof of Claim No. 15 were calculated. (Scintilla may respond by reference to its response to Request No. 3 of Mr. Donovan's First Requests served October 8, 2026).

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "documents" that are "sufficient." The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents in response to this Request.

7. All documents – other than Mediation Communications – concerning the interest rate, default interest, fees, and charges included in the Scintilla claim, including any analysis of

whether the rate under the Omnibus Amendment is usurious under Massachusetts law (see D.I. 266 ¶ 41).

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, at least to the extent that it requests the production of "[a]ll documents." Further, the Debtors rely on Scintilla's filed proof of claim as to how amounts in Scintilla's claim were calculated. The Debtors also object to this request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents in response to this Request.

8. All documents – other than Mediation Communications – concerning whether Scintilla is an insider of either Debtors, including Scintilla's role in the appointment, compensation, and removal of Boaz Toshav (see D.I. 266 ¶¶ 16, 62, 70-72; D.I. 445 at 26).

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "[a]ll documents." The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents

in response to this Request.

9. Every document each Responding Party intends to offer or rely on at the October 29, 2026 hearing to support (a) temporary allowance of the Scintilla claim, (b) allowance of the Scintilla claim under the plan, or (c) approval of the Scintilla settlement under Fed. R. Bankr. P. 9019 as fair, equitable, and in the best interests of the estates.

**RESPONSE**: The Debtors object to this document request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "every document." The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. Subject to and without waiving the foregoing general and specific objections, the Debtors will comply with the Rules related to exhibits and their use at hearings.

10. Any protective order, confidentiality agreement, or common-interest agreement governing the Pre-Mediation Discovery.

**RESPONSE**: The Debtors object to this document request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "any protective order, confidentiality agreement, or common-interest agreement governing the Pre-Mediation Discovery." The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors will not produce documents in response to this Request.

11. The log required by Instruction 6.

**RESPONSE**: The Debtors submit no response is required to this Request. The Debtors

will not produce documents in response to this Request.

Dated: October 21, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
E-mail: desgross@chipmanbrown.com

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MII Aviation Services LLC, *et al.*, | Case No. 26-10123 (LSS) |
| Debtors.[1] | (*Jointly Administered*) |

**RESPONSES AND OBJECTIONS BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS OF CHRISTOPHER R. DONOVAN, SR. DIRECTED TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 7026-1 and 7026-3 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**" and, together with the Federal Rules and the Bankruptcy Rules, the "**Rules**"), the Official Committee of Unsecured Creditors (the "**Committee**") of MII Aviation Services LLC ("**MII Aviation**"), and Michal International Investment LLC ("**MII**" and with MII Aviation, collectively, the "**Debtors**"), by and through its undersigned counsel, hereby responds and objects to the Second Requests for Production of Documents of Christopher R. Donovan, Sr. to the Debtors, the Official Committee of Unsecured Creditors, and Scintilla Fund L.P., dated October 15, 2026, solely to the extent directed to the Committee (each a "**Request**" and together the "**Requests**"), served by Christopher R. Donovan, Sr. ("**Donovan**") together with his letter to counsel of the same date (the "**Letter**"). Donovan's

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: MII Aviation Services LLC (8667); and Michal International Investment LLC (2440). The Debtors' service address is c/o Arbel Capital Advisors, Attn: Daniel Sasson, 4 Waverly Place, Lawrence, NY 11559.

First Requests for Production, served October 8, 2026 (the "**First Requests**"), were directed solely to Scintilla Fund L.P. and do not require a response from the Committee. Nothing herein constitutes a response on behalf of the Debtors or Scintilla Fund L.P.

## GENERAL OBJECTIONS

The following General Objections apply to each Definition, Instruction, and Request, and shall have the same force and effect as if fully set forth in the response to each Request. The Committee does not waive any General Objections by providing specific responses and objections to the Requests.

1. The Committee objects to the Requests to the extent they are overly broad, duplicative, unreasonable, vague, ambiguous, not properly limited in time and/or scope, and to the extent that they impose an unjust burden upon the Committee in that responding to such Requests would require an excessive expenditure of time and money.

2. The Committee objects to the Requests to the extent that they purport to impose any duties beyond those explicitly set forth in the Rules, and to the extent that they require terms to be construed in a manner other than their plain, ordinary, and customary meaning. Without limitation, the Committee objects to the Definitions and Instructions, including Instructions 5 and 6, to the extent they purport to redefine the scope of protection afforded by Local Rule 9019-5, the attorney-client privilege, and the work product doctrine, or to dictate the form and content of any privilege log beyond what Rule 26(b)(5)(A) requires.

3. The Committee objects to each Request to the extent it calls for the production of documents or disclosure of information protected by any privilege, including the attorney-client privilege, the work product doctrine, the common interest doctrine, the mediation confidentiality protections of Local Rule 9019-5 and the Court's order approving the mediation stipulation [Dkt.

No. 277], or any other grounds for withholding documents or information from production or disclosure. The Committee is a statutory fiduciary that acts through its retained professionals. Communications between the Committee (including its members acting in their capacity as such) and McGuireWoods LLP and Faegre Drinker Biddle & Reath LLP (together, "**Committee Counsel**"), and the analyses, memoranda, calculations, drafts, and other materials prepared by Committee Counsel or by the Committee's financial advisor at the direction of Committee Counsel, lie at the core of the attorney-client privilege and the work product doctrine. The Committee will not produce such materials.

4. The Committee objects to the Requests to the extent they seek opinion work product, including the mental impressions, conclusions, opinions, and legal theories of Committee Counsel and of the Committee's financial advisor acting as counsel's agent. Such materials are entitled to near-absolute protection and are not discoverable upon any showing of need. Fed. R. Civ. P. 26(b)(3)(B). The Committee further objects to the extent the Requests seek fact work product, as Donovan has not shown, and cannot show, substantial need or an inability to obtain the substantial equivalent of such materials by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii).

5. The Committee objects to the Requests to the extent they seek documents prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3)(A). From its formation, the Committee anticipated, and pursued, litigation concerning the liens and claims asserted by Scintilla Fund L.P. ("Scintilla"), including in connection with the Debtors' motion for debtor-in-possession financing [Dkt. Nos. 70, 189] (the "**DIP Motion**") and as described in Dkt. No. 266, and its analyses of the Scintilla claim were prepared because of that litigation.

6. The Committee objects to the Requests to the extent they seek communications among the Committee, the Debtors, or their counsel and advisors in furtherance of a shared legal interest, including regarding the Revised First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation [Dkt. No. 445] (as may be amended, the "**Plan**") and the settlement among Scintilla, the Debtors, and the Committee embodied in the Plan (the "**Scintilla Settlement**"), which are protected by the common interest doctrine.

7. The Committee objects to the Requests to the extent they seek "Mediation Communications," as defined in the Requests, or any document prepared for, submitted in, or reflecting the substance of the mediation before the Hon. Robert D. Drain (ret.) (the "Mediation"), all of which are protected by Local Rule 9019-5(d) and Dkt. No. 277. The Committee further objects to Instruction 5 as imposing a disproportionate burden to determine whether each document "existed before June 11, 2026" or was "created outside the Mediation." The Committee also objects to Instruction 5's reading of Local Rule 9019-5(d)(iv). That provision means only that information otherwise discoverable does not become protected merely because it was disclosed in the Mediation; it does not make discoverable any document that is independently protected by the attorney-client privilege, the work product doctrine, or the common interest doctrine, nor does it require production of materials prepared for or used in the Mediation simply because they were created before June 11, 2026, or outside a mediation session.

8. The Committee objects to the Requests to the extent they seek documents already in Donovan's possession, custody, or control, publicly available on the docket in these chapter 11 cases, or equally available to Donovan from another source that is more convenient, less burdensome, or less expensive, including documents in the possession of the Debtors or Scintilla, each of which has been served with identical Requests. Fed. R. Civ. P. 26(b)(2)(C)(i). The

Committee was appointed on February 16, 2026, to fulfill the statutory duties of a committee of unsecured creditors under 11 U.S.C. § 1102 in these cases. Dkt. No. 22. The Committee does not have non-privileged responsive documents or information regarding the events leading to the Debtors' bankruptcy cases or the relationship between the Debtors and Scintilla other than documents produced to the Committee by the Debtors or Scintilla in connection with these cases.

9. The Committee objects to the Requests as not proportional to the needs of the contested matters. Fed. R. Civ. P. 26(b)(1); Local Rule 7026-1(a). The Requests seek, in substance, the entire discovery record of a separate dispute resolved through the Mediation and the Committee's privileged evaluation of it.

10. The Committee further objects to each Request to the extent it seeks "all," "every," or "any" document, as no party can represent that every such document has been located after a reasonable search.

11. The Committee objects to the Requests to the extent they require a document-by-document log of communications with Committee Counsel, or work product of Committee Counsel or the Committee's financial advisor, created after the Committee's formation, which would be unduly burdensome and would itself reveal protected information. Virtually all of the Committee's documents responsive to the Requests—other than documents produced to the Committee by the Debtors or Scintilla—are privileged or work product, making creation of a detailed privilege log enormously burdensome and of limited utility. To the extent any log is required, the Committee will provide a categorical log consistent with Rule 26(b)(5)(A).

12. The Committee objects to the Requests to the extent they seek documents of individual Committee members. Committee Counsel represents the Committee in its collective

capacity under section 1102(a)(1) of the Bankruptcy Code, not individual members, and has no obligation to collect or produce individual members' documents.

13. The Committee objects to the definition of "Pre-Mediation Discovery" as overly broad, vague, and ambiguous, including insofar as it encompasses "informal" discovery and "discussions," and discovery "requested, served, produced, or taken by or among" persons other than the Committee. The Committee further objects to the definition of "Disputes" to the extent it seeks to characterize the Committee's positions.

14. The Committee objects to the Requests to the extent they assume facts, draw legal conclusions, or characterize statements made by any party or the Court. Any response by the Committee is not an admission of any fact or characterization in the Requests.

15. The inadvertent production of any privileged or protected document shall not be deemed a waiver, and the Committee reserves its rights under Fed. R. Civ. P. 26(b)(5)(B) and Fed. R. Evid. 502.

16. These responses are based on information currently known to the Committee, and the Committee reserves the right to supplement them under Fed. R. Civ. P. 26(e).

17. In providing these responses, the Committee preserves (a) all objections as to relevance, materiality, competency, authenticity, and admissibility; (b) all rights to object to the use of any information or documents produced in any proceeding; and (c) all rights to object to any further discovery requests. Each General Objection is incorporated into each specific response below.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents produced by any person in the Pre-Mediation Discovery, with the Bates range of each production and the identity of the producing and receiving parties.

**RESPONSE:** The Committee objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the work product doctrine (including counsel's selection and compilation of materials received in the Pre-Mediation Discovery), or the common interest doctrine. The Committee further objects to this Request as overly broad and not proportional because it seeks every document produced "by any person" in a separate dispute, regardless of relevance to the October 29, 2026, hearing. Fed. R. Civ. P. 26(b)(1). Documents produced by the Debtors or Scintilla may be obtained from them, each of which has been served with this Request, and the Committee understands that Scintilla has produced or will produce certain documents responsive to this Request. Fed. R. Civ. P. 26(b)(2)(C)(i). Any further production by the Committee would be unduly burdensome and duplicative. The Committee also cannot produce documents designated confidential by another party without that party's consent or a Court order. Local Rule 9018-1(f). Rule 34 does not require the Committee to create a list of Bates ranges and producing and receiving parties. *See* Fed. R. Civ. P. 34(a)(1). Subject to these objections, the Committee refers Donovan to Scintilla's production and will not produce documents in response to this Request.

2. All written discovery requests served in the Pre-Mediation Discovery (interrogatories, requests for production, requests for admission, subpoenas, and deposition notices, including Dkt. Nos. 260, 264, 282, 283, and 284), and all written responses and objections to them.

**RESPONSE:** The Committee objects to this Request to the extent it seeks drafts, internal communications, or communications with Committee Counsel concerning discovery strategy, which are privileged and protected work product. The Committee further objects to this Request to the extent it seeks documents on the docket, including Dkt. Nos. 260, 264, 282, 283, and 284, or responses of the Debtors or Scintilla, which are equally available to Donovan from those sources. Fed. R. Civ. P. 26(b)(2)(C)(i). The Committee understands, including from the Debtors' responses to the Requests, that documents responsive to this Request have been or will be produced by Scintilla. Subject to these objections, the Committee refers Donovan to the docket and to Scintilla's production, and will not produce additional documents in response to this Request.

3. All transcripts of depositions or examinations taken in the Pre-Mediation Discovery, with exhibits. If no deposition noticed at Dkt. Nos. 260, 264, 282, 283, or 284 was taken, documents sufficient to show, for each notice or subpoena, whether the deposition occurred, and if not, why not.

**RESPONSE:** The Committee objects to the second sentence of this Request, which asks "why not," because it seeks counsel's reasons for strategic decisions regarding noticed depositions, which are opinion work product and privileged communications. Fed. R. Civ. P. 26(b)(3)(B). The Committee further objects to the extent the Request seeks Mediation Communications protected by Local Rule 9019-5(d) and Dkt. No. 277, or deposition notices publicly filed on the docket. The Request is also an improperly framed interrogatory. Rule 34 does not require the Committee to create documents or explain its litigation decisions. Subject to these objections, the Committee states that, to its knowledge and consistent with the Debtors' responses, the depositions noticed at Dkt.

Nos. 260, 264, 282, 283, and 284 did not occur, and the Committee is not aware of any responsive transcripts or exhibits. Accordingly, the Committee will not produce documents in response to this Request.

4. Documents sufficient to identify each item of "considerable discovery" and "ample discovery" referred to by Debtors' counsel at the October 13, 2026 hearing.

**RESPONSE:** The Committee objects to this Request because it seeks documents concerning statements made by Debtors' counsel, not the Committee; any such documents are in the Debtors' possession, and the Debtors have been served with this Request. The Committee further objects to the extent the Request seeks Committee Counsel's characterization or evaluation of the discovery record, which is privileged and protected work product, and as vague (the terms "considerable discovery" and "ample discovery" are undefined), and entirely duplicative of Request Nos. 1 through 3. Fed. R. Civ. P. 26(b)(2)(C)(i). Subject to these objections, the Committee refers Donovan to its responses to Request Nos. 1 through 3 and will not produce additional documents in response to this Request.

5. All analyses, calculations, reconciliations, schedules, and reports — other than Mediation Communications — reflecting the "careful investigation by the Committee . . . including detailed review of all interest calculations and potential offsets" described in Dkt. No. 476 ¶ 16, including any prepared by or for the Committee's financial advisor.

**RESPONSE:** The Committee objects to this Request in its entirety because it directly seeks the Committee's privileged investigation file and the opinion work product of Committee Counsel and the Committee's financial advisor.

First, the Committee's investigation of the Scintilla claim and liens was conducted through Committee Counsel to advise the Committee regarding the validity, priority, amount, and avoidability of the Scintilla claim and liens, the causes of action described in Dkt. No. 266, the DIP Motion, and settlement. The resulting analyses were communicated in confidence among the Committee, Committee Counsel, and the Committee's financial advisor for the purpose of rendering legal advice and are privileged.

Second, the financial advisor's analyses of interest, default interest, fees, charges, offsets, and usury were prepared at the direction of Committee Counsel in anticipation of, and during, litigation with Scintilla. They are work product of the Committee's "representative" and reflect counsel's mental impressions and legal theories, which are protected against disclosure. Fed. R. Civ. P. 26(b)(3)(A)–(B).

Third, Donovan cannot show substantial need or an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Non-privileged information about the loan documents, Proof of Claim No. 15, and the claim calculation is available from Scintilla, the claimant, which has been served with Donovan's First Requests, including Request No. 3.

Fourth, the Committee has not placed its investigation "at issue." The quoted statement appears in Scintilla's motion [Dkt. No. 476 ¶ 16], not a Committee filing, and the Committee does not intend to offer its privileged analyses at the October 29, 2026, hearing. The Committee rejects the "sword and shield" characterization in the Letter.

Fifth, notwithstanding the purported exclusion of "Mediation Communications," the Committee's analyses were prepared, revised, and used in the Mediation, and separating "non-mediation work" would disclose the substance of the Mediation in

violation of Local Rule 9019-5(d) and Dkt. No. 277. The Committee also objects to the extent the Request seeks materials shared with the Debtors under the common interest doctrine.

Sixth, the Request is overly broad, unduly burdensome, not proportional, and vague as to "analyses," "reconciliations," and "reflecting." Fed. R. Civ. P. 26(b)(1).

Accordingly, the Committee is withholding all responsive documents on the basis of these objections and will not produce documents in response to this Request. To the extent required, the Committee will provide a categorical log as described in General Objection No. 11.

6. Documents sufficient to show how the amount of $46,491,605.00, the "Scintilla Claim Mitigation Amount," and the reduction from the $48,634,881.00 asserted in Proof of Claim No. 15 were calculated. (Scintilla may respond by reference to its response to Request No. 3 of Mr. Donovan's First Requests served October 8, 2026.)

**RESPONSE:** The Committee objects to this Request to the extent it seeks the Committee's own analysis of the settled amount, for the reasons stated in its response to Request No. 5, which is incorporated by reference, and to the extent it seeks settlement positions exchanged in the Mediation, which are protected by Local Rule 9019-5(d) and Dkt. No. 277, or common interest materials. The documents sought are more conveniently obtained from Scintilla, the claimant, as the Request itself acknowledges. Fed. R. Civ. P. 26(b)(2)(C)(i). Subject to these objections, the Committee refers Donovan to the Plan [Dkt. No. 445] and to Scintilla's response to the First Requests. The Committee will produce any calculation of the Scintilla claim that may be used as evidence or a demonstrative at the confirmation hearing, at the time required by the applicable scheduling order for the

October 29, 2026, hearing. The Committee is otherwise withholding responsive documents on the basis of the foregoing objections.

7. All documents — other than Mediation Communications — concerning the interest rate, default interest, fees, and charges included in the Scintilla claim, including any analysis of whether the rate under the Omnibus Amendment is usurious under Massachusetts law (see Dkt. No. 266 ¶ 41).

**RESPONSE:** The Committee objects to this Request to the extent it seeks "any analysis of whether the rate under the Omnibus Amendment is usurious under Massachusetts law," which is legal advice of Committee Counsel or work product of the Committee's financial advisor prepared at counsel's direction. The Committee's assertion of a usury theory [Dkt. No. 266 ¶¶ 41, 136–38, 152–57] does not waive privilege over counsel's underlying analysis. The Committee incorporates its response to Request No. 5. The Committee further objects to the Request's demand for "all documents" "concerning" interest, fees, and charges as overly broad and not proportional, and to the extent it seeks documents held by Scintilla or the Debtors or publicly available, including as attachments to Proof of Claim No. 15. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i). How the claim amounts were calculated is information held by Scintilla, the claimant. The Debtors have likewise stated they have no knowledge of how those amounts were calculated, and that documents responsive to this Request have been or will be produced by Scintilla. Subject to these objections, the Committee refers Donovan to Proof of Claim No. 15 and to Scintilla's production and will not produce documents in response to this Request.

8. All documents — other than Mediation Communications — concerning whether Scintilla is an insider of either Debtor, including Scintilla's role in the appointment, compensation, and removal of Boaz Toshav (*see* Dkt. No. 266 ¶¶ 16, 62, 70–72; Dkt. No. 445 at 26).

**RESPONSE:** The Committee objects to this Request to the extent it seeks the Committee's evaluation of whether Scintilla is an "insider" under section 101(31) of the Bankruptcy Code, or of the related equitable subordination theory described in Dkt. No. 266, which is reflected in privileged communications and work product; the Committee's allegations do not waive privilege over the underlying investigation. The Committee incorporates its response to Request No. 5. The Committee further objects to the demand for "all documents" concerning insider status as overly broad and not proportional, and to the extent it seeks documents regarding the Debtors' governance and the role of Boaz Toshav, which are more conveniently obtained from the Debtors and Scintilla. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i). The Committee understands, including from the Debtors' responses to the Requests, that documents responsive to this Request have been or will be produced by Scintilla. Subject to these objections, the Committee refers Donovan to Scintilla's production and will not produce documents in response to this Request.

9. Every document each Responding Party intends to offer or rely on at the October 29, 2026 hearing to support (a) temporary allowance of the Scintilla claim, (b) allowance of the Scintilla claim under the Plan, or (c) approval of the Scintilla settlement under Fed. R. Bankr. P. 9019 as fair, equitable, and in the best interests of the estates.

**RESPONSE:** The Committee objects to this Request as premature and overly broad to the extent it seeks "every document." The Committee has not determined what documents, if any, it will offer at the October 29, 2026, hearing. The Committee further objects to the

extent the Request seeks counsel's mental impressions in selecting evidence, Fed. R. Civ. P. 26(b)(3)(B), or documents that the Debtors or Scintilla, as proponents of the relief, intend to offer. Subject to these objections, to the extent the Committee determines to offer any exhibits at the hearing, it will identify them as required by the applicable scheduling order and the Rules governing exhibits and their use at hearings.

10. Any protective order, confidentiality agreement, or common-interest agreement governing the Pre-Mediation Discovery.

**RESPONSE:** The Committee objects to this Request to the extent it seeks the contents of any common interest agreement, which reflect counsel's strategy and are privileged and protected work product, and to the extent it seeks orders on the docket that are equally available to Donovan, including Dkt. No. 277. The Committee further objects to this Request to the extent it seeks any confidentiality agreement to which other parties are bound, which the Committee cannot produce without their consent, and which is equally available from the Debtors and Scintilla. Subject to these objections, the Committee refers Donovan to the docket and will not produce documents in response to this Request.

11. The log required by Instruction 6.

**RESPONSE:** The Committee objects to this Request because a privilege log is not a document within the scope of Rule 34, and to Instruction 6 to the extent it demands more than Rule 26(b)(5)(A) requires, including whether each document "existed before June 11, 2026 or was created for the Mediation," or logging of the materials described in General Objection No. 11. Subject to these objections, and to the extent required by Rule 26(b)(5)(A), the Committee will describe any withheld materials on a categorical basis as set forth in General Objection No. 11.

**RESPONSE TO DEMAND FOR ACCESS TO INFORMATION UNDER SECTION 1102(b)(3)(A)**

In section 4 of the Letter, Donovan asks the Committee, "independently of the requests," to give him access to the Committee's investigation of the Scintilla claim and liens, invoking section 1102(b)(3)(A) of the Bankruptcy Code (the "**Access Demand**"). The Committee objects to and declines the Access Demand for the following reasons.

1. Section 1102(b)(3)(A) does not override the attorney-client privilege or the work product doctrine. The statute requires a committee to "provide access to information" for creditors it represents. It does not require a committee to disclose privileged communications with its counsel, the work product of its counsel and advisors, or confidential information. The materials sought by the Access Demand are the same privileged investigation file and opinion work product addressed in the Committee's response to Request No. 5, which is incorporated herein by reference. Disclosure to one creditor would also risk waiving the privilege and protection as to all parties, to the detriment of the unsecured creditor body as a whole.

2. Section 1102(b)(3)(A) is not a discovery device. The statute contemplates the provision of general information to the creditor constituency regarding the case. It does not entitle an individual creditor to use the committee's information-sharing obligation to obtain, outside of and in addition to Rules 26 and 34, documents that he is simultaneously seeking through formal discovery in contested matters in which he is an adverse litigant. Donovan's Access Demand seeks precisely the same materials as Request No. 5, and the Committee's obligations with respect to those materials are governed by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

3. Donovan does not qualify for access to the information sought under the circumstances. Donovan is not seeking information in his capacity as a member of the unsecured

creditor constituency. He is seeking it to prosecute his own objections to Proof of Claim No. 15 [Dkt. No. 400], to Scintilla's motion for temporary allowance [Dkt. No. 483], and to confirmation of the Plan [Dkt. No. 474], and he is himself the subject of pending discovery in these cases. A committee's duty runs to the creditor body as a whole, and it is not obligated to provide information to an individual creditor whose request is adverse to the committee's positions or to the interests of the estates, or whose use of the information would undermine the committee's ability to discharge its fiduciary duties.

4. The Committee has fulfilled, and will continue to fulfill, its obligations under section 1102(b)(3)(A) through the means it uses to provide information to all general unsecured creditors. Nothing herein is a waiver of any privilege or protection, and the Committee reserves all rights, including the right to seek a protective order under Rule 26(c) and an order of the Court under section 1102(b)(3) regarding the scope of any information to be provided.

Dated: October 19, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
Ryan M. Messina (DE Bar No. 6875)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
brett.fallon@faegredrinker.com
ryan.messina@faegredrinker.com

-and-

**MCGUIREWOODS LLP**
Dion W. Hayes (admitted *pro hac vice*)
Morgan E. Mumford (admitted *pro hac vice*)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1061
dhayes@mcguirewoods.com
mmumford@mcguirewoods.com

-and-

Aaron G. McCollough (admitted *pro hac vice*)
Jory Berg (admitted *pro hac vice*)
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 849-8100
amccollough@mcguirewoods.com
jberg@mcguirewoods.com

*Counsel for the Official Committee of Unsecured Creditors*

**In re MII Aviation Services LLC, No. 26-10123 (LSS)**

## Supporting Excerpts -- Results of October 22, 2026 Meet-and-Confer Conference

Submitted by Christopher R. Donovan, Sr., pro se. Highlighting added.

1. Committee Responses, General Objection 11 -- documents from the Debtors or Scintilla are excluded from privilege (p. 2)
2. Committee Responses, Response No. 5 -- A&M analyses withheld (p. 3)
3. Committee Responses, Response No. 7 -- calculation 'held by Scintilla' (p. 4)
4. Debtors' Responses, Response No. 7 -- Debtors 'rely on Scintilla's filed proof of claim' (p. 5)
5. D.I. 364-2 (Ex. A, Statements of Fees, to A&M's Second Interim Fee Application) -- cover page (p. 6)
6. D.I. 364-2 at 9 -- 6/1/2026: 'amortization and interest rate trackers provided by Scintilla supporting claim amount' (p. 7)
7. D.I. 364-2 at 11 -- 6/9/2026: claim recalculated 'for reduction of conveyed property'; 'files showing Scintilla advances'; settlement amounts received from parties to Yanai settlements (p. 8)
8. D.I. 364-2 at 17 -- 7/31/2026: 'updated Scintilla claim calculations provided by Scintilla'; 'discrepancies in claim calculations' (p. 9)
9. Scintilla Responses to Second Requests at 8 -- objection that a privilege log 'is not a document' (p. 10)
10. Donovan Deficiency Letter (Oct. 19, 2026) at 2 and 4 -- $11,801,228 drawn from seven unproduced workbooks (p. 11)

D.I. 413 (Response of Moshe Yanai, Sept. 11, 2026) ¶¶ 1, 14, 22 is cited from the docket and is not reproduced here.

Committee was appointed on February 16, 2026, to fulfill the statutory duties of a committee of unsecured creditors under 11 U.S.C. § 1102 in these cases. Dkt. No. 22. The Committee does not have non-privileged responsive documents or information regarding the events leading to the Debtors' bankruptcy cases or the relationship between the Debtors and Scintilla other than documents produced to the Committee by the Debtors or Scintilla in connection with these cases.

9. The Committee objects to the Requests as not proportional to the needs of the contested matters. Fed. R. Civ. P. 26(b)(1); Local Rule 7026-1(a). The Requests seek, in substance, the entire discovery record of a separate dispute resolved through the Mediation and the Committee's privileged evaluation of it.

10. The Committee further objects to each Request to the extent it seeks "all," "every," or "any" document, as no party can represent that every such document has been located after a reasonable search.

11. The Committee objects to the Requests to the extent they require a document-by-document log of communications with Committee Counsel, or work product of Committee Counsel or the Committee's financial advisor, created after the Committee's formation, which would be unduly burdensome and would itself reveal protected information. Virtually all of the Committee's documents responsive to the Requests—other than documents produced to the Committee by the Debtors or Scintilla—are privileged or work product, making creation of a detailed privilege log enormously burdensome and of limited utility. To the extent any log is required, the Committee will provide a categorical log consistent with Rule 26(b)(5)(A).

12. The Committee objects to the Requests to the extent they seek documents of individual Committee members. Committee Counsel represents the Committee in its collective

First, the Committee's investigation of the Scintilla claim and liens was conducted through Committee Counsel to advise the Committee regarding the validity, priority, amount, and avoidability of the Scintilla claim and liens, the causes of action described in Dkt. No. 266, the DIP Motion, and settlement. The resulting analyses were communicated in confidence among the Committee, Committee Counsel, and the Committee's financial advisor for the purpose of rendering legal advice and are privileged.

Second, the financial advisor's analyses of interest, default interest, fees, charges, offsets, and usury were prepared at the direction of Committee Counsel in anticipation of, and during, litigation with Scintilla. They are work product of the Committee's "representative" and reflect counsel's mental impressions and legal theories, which are protected against disclosure. Fed. R. Civ. P. 26(b)(3)(A)–(B).

Third, Donovan cannot show substantial need or an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Non-privileged information about the loan documents, Proof of Claim No. 15, and the claim calculation is available from Scintilla, the claimant, which has been served with Donovan's First Requests, including Request No. 3.

Fourth, the Committee has not placed its investigation "at issue." The quoted statement appears in Scintilla's motion [Dkt. No. 476 ¶ 16], not a Committee filing, and the Committee does not intend to offer its privileged analyses at the October 29, 2026, hearing. The Committee rejects the "sword and shield" characterization in the Letter.

Fifth, notwithstanding the purported exclusion of "Mediation Communications," the Committee's analyses were prepared, revised, and used in the Mediation, and separating "non-mediation work" would disclose the substance of the Mediation in

October 29, 2026, hearing. The Committee is otherwise withholding responsive documents on the basis of the foregoing objections.

7. All documents — other than Mediation Communications — concerning the interest rate, default interest, fees, and charges included in the Scintilla claim, including any analysis of whether the rate under the Omnibus Amendment is usurious under Massachusetts law (see Dkt. No. 266 ¶ 41).

**RESPONSE:** The Committee objects to this Request to the extent it seeks "any analysis of whether the rate under the Omnibus Amendment is usurious under Massachusetts law," which is legal advice of Committee Counsel or work product of the Committee's financial advisor prepared at counsel's direction. The Committee's assertion of a usury theory [Dkt. No. 266 ¶¶ 41, 136–38, 152–57] does not waive privilege over counsel's underlying analysis. The Committee incorporates its response to Request No. 5. The Committee further objects to the Request's demand for "all documents" "concerning" interest, fees, and charges as overly broad and not proportional, and to the extent it seeks documents held by Scintilla or the Debtors or publicly available, including as attachments to Proof of Claim No. 15. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i). How the claim amounts were calculated is information held by Scintilla, the claimant. The Debtors have likewise stated they have no knowledge of how those amounts were calculated, and that documents responsive to this Request have been or will be produced by Scintilla. Subject to these objections, the Committee refers Donovan to Proof of Claim No. 15 and to Scintilla's production and will not produce documents in response to this Request.

whether the rate under the Omnibus Amendment is usurious under Massachusetts law (see D.I. 266 ¶ 41).

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, at least to the extent that it requests the production of "[a]ll documents." Further, the Debtors rely on Scintilla's filed proof of claim as to how amounts in Scintilla's claim were calculated. The Debtors also object to this request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents in response to this Request.

8. All documents – other than Mediation Communications – concerning whether Scintilla is an insider of either Debtors, including Scintilla's role in the appointment, compensation, and removal of Boaz Toshav (see D.I. 266 ¶¶ 16, 62, 70-72; D.I. 445 at 26).

**RESPONSE**: The Debtors object to this Request as overly broad, outside the proportional needs of these bankruptcy cases, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it requests the production of "[a]ll documents." The Debtors also object to this Request to the extent that it seeks any Privileged Information and Documents that are not in the Debtors' possession, custody, or control. The Debtors understand that documents responsive to this Request have been or will be produced by Scintilla. The Debtors further object to this Request, therefore, on the grounds that any additional production by the Debtors would be unduly burdensome and duplicative. The Debtors will not produce documents

**Exhibit A**

**Statements of Fees**

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation methodology | 1.2 | $990.00 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation implementation | 1.1 | $907.50 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation and interpret results | 1.6 | $1,320.00 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Compilation and organization of available information / supporting documentation to assess estimated value of MII's various investment holdings as of date of Paydown Agreement | 1.7 | $1,572.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review various Proofs of Claim schedules for identified unsecured creditors | 0.9 | $832.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review certain declarations of Mr. Boaz Toshav and filings for DIP Financing (refer to Docket 190 and Docket 189, respectively) | 1.8 | $1,665.00 | VAL |
| 5/30/2026 | Coloma, Paul | Review bid procedures motion | 0.3 | $270.00 | FA |
| 6/1/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $280.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $180.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation | 0.4 | $360.00 | VAL |
| 6/1/2026 | Coloma, Paul | Analyze legal documentation supporting Scintilla payoff amount | 1.6 | $1,440.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Analyze amortization and interest rate trackers provided by Scintilla supporting claim amount | 0.5 | $450.00 | LIAB |
| 6/1/2026 | Hurley, Stephen | Work on MII interest expense calculation | 1.1 | $907.50 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on internal call with A&M team (KR, TB, SH - KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $412.50 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $462.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/5/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/5/2026 | Hurley, Stephen | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/8/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $280.00 | LIT |
| 6/8/2026 | Roberts, Mark | Review emails related to the case and respond accordingly | 0.3 | $420.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $180.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding treatment of senior secured claim accrued interest amounts | 0.2 | $180.00 | LIT |
| 6/8/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and transaction analysis | 1.0 | $925.00 | VAL |
| 6/9/2026 | Coloma, Paul | Review Moshe Yanai objection to Scintilla claim; recalculate senior secured claim accrued interest and principal for reduction of conveyed property; correspondence with McGuireWoods discussing updates to senior secured claim | 0.7 | $630.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Review answer and affirmative defenses filed by Scintilla; provide files showing Scintilla advances to A&M team (SH) | 0.6 | $540.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Recalculate unsecured claims originally calculated with multiplier of original amount loaned by using alternative interest rate | 0.9 | $810.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Summarize claims and settlement amounts received from parties subject to settlement with Moshe Yanai; recalculate claim amount through settlement date | 0.4 | $360.00 | LIAB |
| 6/9/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and summary transaction analysis | 2.5 | $2,312.50 | VAL |
| 6/9/2026 | Bresnahan, Thomas | Review Recalculation of Scintilla Claim schedule outlining timeline and description of borrowings including drawdowns | 0.5 | $462.50 | VAL |
| 6/9/2026 | Hurley, Stephen | Review Answers and Affirmative Defenses filed by Scintilla in response to UCC Complaint | 0.7 | $577.50 | VAL |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss recalculation of claim amounts | 0.4 | $560.00 | LIT |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to prepare for mediation | 0.8 | $1,120.00 | UCC |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 7/14/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss calculation of default rate on Scintilla's claim | 0.4 | $360.00 | LIAB |
| 7/14/2026 | Coloma, Paul | Update Scintilla claim calculations to exclude default rate on eToro share sales proceeds not submitted to Scintilla, provide updated calculations to UCC member | 0.5 | $450.00 | LIAB |
| 7/15/2026 | Grussing, Bernice | Pull raw dataset and send weekly report to team leadership for review | 0.1 | $37.50 | FEE |
| 7/17/2026 | Coloma, Paul | Correspondence summarizing discrepancies in Scintilla claim calculations with McGuireWoods | 0.3 | $270.00 | LIAB |
| 7/20/2026 | Roberts, Mark | Review outstanding issues around liquidation analysis, senior lender claim and other outstanding issues for the POR | 1.1 | $1,540.00 | POR |
| 7/20/2026 | Coloma, Paul | Review answers to discrepancies identified in Scintilla complaint answers; recalculate accrued interest based on answers provided by Scintilla; correspondence with McGuireWoods re: deficiencies in Scintilla response to discrepancies identified in Scintilla complaint answers | 0.4 | $360.00 | LIAB |
| 7/27/2026 | Roberts, Mark | Review updated writeup for liquidation analysis | 0.5 | $700.00 | POR |
| 7/27/2026 | Coloma, Paul | Review updated writeup for liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Roberts, Mark | Review changes to assumptions for liquidation analysis | 0.5 | $700.00 | POR |
| 7/30/2026 | Coloma, Paul | Review materials in advance of discussion on liquidation analysis with CRO, Chipman Brown and McGuireWoods | 0.4 | $360.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with CRO, Chipman Brown and McGuireWoods to discuss assumptions in liquidation analysis | 1.0 | $900.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss changes to liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Coloma, Paul | Update liquidation analysis for feedback received from CRO, Chipman Brown, and McGuireWoods | 0.8 | $720.00 | POR |
| 7/31/2026 | Roberts, Mark | Review updates Scintilla claim calculation and provided support | 0.5 | $700.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Reconcile updated Scintilla claim calculations provided by Scintilla; correspondence with McGuireWoods re: discrepancies in claim calculations | 0.4 | $360.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Prepare second fee application | 1.4 | $1,260.00 | FEE |

Subject to and without waiving these objections and the General Objections, Scintilla has produced non-privileged documents responsive to Donovan's First Requests, which contain the documents that can be said to fairly responsive and within the scope of discovery for these contested matters including a calculation of Scintilla's claim.

> 9. Every document each Responding Party intends to offer or rely on at the October 29, 2026 hearing to support (a) temporary allowance of the Scintilla claim, (b) allowance of the Scintilla claim under the Plan, or (c) approval of the Scintilla settlement under Fed. R. Bankr. P. 9019 as fair, equitable, and in the best interests of the estates.

**RESPONSE:** Subject to and without waiving these objections and the General Objections, Scintilla has produced non-privileged documents responsive to Donovan's First Requests, which contain the documents that can be said to fairly responsive and within the scope of discovery for these contested matters including a calculation of Scintilla's claim.

> 10. Any protective order, confidentiality agreement, or common-interest agreement governing the Pre-Mediation Discovery.

**RESPONSE:** Scintilla objects to this Request to the extent it seeks the contents of any common interest agreement, which reflect counsel's strategy and are privileged and protected work product, and to the extent it seeks orders on the docket that are equally available to Donovan on the docket.

> 11. The log required by Instruction 6.

**RESPONSE:** Scintilla objects to this Request because a privilege log is not a document within the scope of Rule 34, and to Instruction 6 to the extent it demands more than Rule 26(b)(5)(A) requires.

The production does not answer those questions. It raises more questions than it answers. Specifically:

1. **It is a single snapshot of a document folder.** All 38 documents come from one OneDrive export dated March 16, 2026, plus one spreadsheet. The production contains no correspondence and no internal or external communications. It contains no loan ledger, bank statement, wire confirmation, payment record, invoice file, or statement of account. It contains no record of any receipt after December 29, 2024. The load file has no dates, authors, or e-mail fields for any document.
2. **The only computation of the claim cannot be tested.** As detailed in Part III, $11,801,228 of the claim is pulled from seven workbooks that were not produced. The produced file was edited by counsel on the day of production. Its own preparer questioned one of its lines.
3. **It shows no accounting for recoveries.** It does not account for any collateral, guarantee, sale, or settlement recovery. Its own embedded table lists $28,856,063 of sales, of which $15,199,667 is not accounted for anywhere.
4. **Key documents are withheld or missing.** Four documents are withheld without a log. Dozens of instruments the produced documents depend on are absent (Part V). Many of the instruments that were produced are unsigned, undated, internally inconsistent, or signed by Scintilla on both sides (Part VI).

A Rule 30(b)(6) deposition cannot serve its purpose on this record. Scintilla must prepare its designee to testify to information "known or reasonably available to the organization" (Fed. R. Civ. P. 30(b)(6)). I cannot examine the witness on a computation whose inputs I have not seen. I cannot examine on receipts that are not recorded, or on a Plan figure whose derivation has not been produced. Proceeding now would require a second session once the missing material is produced. Scintilla's claim also cannot be fairly assessed, by me or by the Court, before the October 29 hearing.

I therefore ask for two things before the deposition goes forward:

1. **A full accounting.** This means a complete, sworn or certified ledger of the loans from December 5, 2019 to the present. It should show:
   (a) each advance, gross and net of any amount withheld, with date and wire record;
   (b) each payment or recovery received from any source, with date, payor, source, amount, and how it was applied among principal, interest, default interest, fees, VAT, and costs;
   (c) the interest rate and compounding convention applied in each period, with the contractual provision relied on;
   (d) each fee, cost, and expense charged, with the invoice and proof of payment;
   (e) every realization or pending realization of collateral or guarantee value, including all amounts received from or through Moshe Yanai, his Israeli trustee, the Israeli and U.S. properties, the Infinidat SPV, and any portfolio company; and
   (f) a reconciliation of the balance to each figure Scintilla has asserted: the $27.5 million, $33.2 million, and $45 million figures previously asserted; the $41,633,405 Closing Date Loan Balance; the $46,491,605 Plan figure; and the $48,634,881 in Claim 15.
2. **Cure of the specific deficiencies in Parts II through VI**, so that the witness can be examined on a complete record.

| Linked workbooks (scintillaholdings.sharepoint.com/Shared Documents/All Transactions/Scintilla - Portfolio/...) |
|---|
| /191205 - MII - Infinidat/240922 - non-pmt breach/mii-260207 - breakdown of loans to sources.xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-250301 - amortization schedule - (iii).xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-250301 - amortization schedule - (iv).xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-250301 - amended payment schedule - (i-ii).xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-260207 - amended payment schedule - (i-ii).xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-260207 - amortization schedule - (iii).xlsx |
| /191205 - MII - Infinidat/Maintenance/mii-260207 - amortization schedule - (iv).xlsx |

A summary offered to prove the content of underlying records is usable only if those records are made available (Fed. R. Evid. 1006). Without these workbooks, $11,801,228 of the claim cannot be checked at all: $8,473,102 of contractual interest and the $3,328,126 cost component. The $32,208,316 principal figure can be compared only to Omnibus Amendment § 3. Please produce all seven in native form, together with any earlier versions of the payoff tracker.

### *B. The computation departs from the documents Scintilla produced*

Each figure below comes from the spreadsheet's own formulas and values:

1. **Retroactive interest charged at the full rate.** Omnibus Amendment § 4(a) raises the 2019 and February 2023 facilities ($14,000,000) to 23% "retroactively starting 1 August 2024" (000289). The "Interest Paid" tab records that interest at the prior rates for Q3 and Q4 2024 was paid. The "Accrued Interest" tab computes the rate differential for that period at $393,112 (cell S17). The payoff instead uses cell D7. That cell charges the full 23% for five months ($1,394,092) and compounds it to $1,792,269. Compounded the same way, the differential is about $505,000. The difference is about **$1,286,878**.

2. **Default interest charged twice on the same principal.** The $818,441 line ("Default Interest" tab, D4) charges default interest on $16,912,830 of eToro sale proceeds from each sale date through February 1, 2026. The $1,338,255 line (D5) separately charges 4% default interest on the entire $32,208,316 principal from January 30, 2025. For the 367 days of overlap, the eToro amounts bear default interest twice. That is about **$702,728**. The spreadsheet itself annotates the $818,441 line: "Where is this agreed upon in doc?" (cell E4). Please identify the provision Scintilla relies on for that line.

3. **Monthly compounding.** Interest, default interest, and equity-upside interest are compounded monthly, using the formula (1 + rate/12)^(days/30). Please identify the provision of any Facility Agreement or the Omnibus Amendment that provides for monthly compounding.

4. **Asset Sale and Paydown Agreement rate not applied.** Section 4.3 of that agreement provides that from the Closing Date, "notwithstanding anything to the contrary in the Loan Documents," interest accrues on the Loan Balance at 20% per annum, compounded quarterly (000308). The spreadsheet ignores it and applies 23% plus 4% default through February 1, 2026. If Scintilla contends that agreement terminated, please produce every notice of default or termination and state the date and basis.

# Exhibit A

## Statements of Fees

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 3/19/2026 | Coloma, Paul | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $270.00 | ADM |
| 3/19/2026 | Charlotin, Carl | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $165.00 | ADM |
| 3/20/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss MII workstreams | 0.1 | $140.00 | ADM |
| 3/20/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss MII workstreams | 0.1 | $90.00 | ADM |
| 3/23/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss retention application process | 0.3 | $420.00 | ADM |
| 3/27/2026 | Coloma, Paul | Set up Relativity access provided by MW | 0.5 | $450.00 | ADM |
| 3/30/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss changes to retention application | 0.3 | $420.00 | ADM |
| 4/6/2026 | Coloma, Paul | Read correspondence re: Infinidat sale | 0.1 | $90.00 | AS |
| 4/8/2026 | Roberts, Mark | Review communications with debtor on the potential liquidation of certain assets in the case. | 0.3 | $420.00 | AS |
| 4/29/2026 | Roberts, Mark | Review the motion to use cash collateral | 0.4 | $560.00 | CASH |
| 4/30/2026 | Coloma, Paul | Review cash collateral motion and declaration of Boaz Toshav in support of motion | 0.3 | $270.00 | CASH |
| 4/22/2026 | Roberts, Mark | Prepare potential witness testimony and attend court hearing. Follow up conversations with counsel on the case | 1.2 | $1,680.00 | CRT |
| 3/30/2026 | Roberts, Mark | Attempt to reach out to Debtor financial advisor to discuss potential plan solutions and discuss DIP. Develop emails and respond accordingly | 0.3 | $420.00 | DEB |
| 3/30/2026 | Roberts, Mark | Review proposed DIP and begin analysis | 0.8 | $1,120.00 | DIP |
| 4/1/2026 | Roberts, Mark | Continue to review DIP financing issues and reviewing the case in order to develop cost effective plan and related negotiations | 1.0 | $1,400.00 | DIP |
| 4/27/2026 | Roberts, Mark | Briefly review proposed cash collateral order and discuss with counsel. | 0.2 | $280.00 | DIP |
| 3/18/2026 | Coloma, Paul | Analyze chronology of key events | 0.4 | $360.00 | FA |
| 3/18/2026 | Coloma, Paul | Analyze inventory of documents | 0.9 | $810.00 | FA |
| 3/18/2026 | Charlotin, Carl | Analyze document production re: historical financials | 2.4 | $1,320.00 | FA |
| 3/18/2026 | Charlotin, Carl | Analyze document production re: corporate structure | 1.1 | $605.00 | FA |
| 3/19/2026 | Charlotin, Carl | Analyze document production re: asset valuation | 0.9 | $495.00 | FA |
| 3/20/2026 | Coloma, Paul | Analyze debtor bank statements | 1.2 | $1,080.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 3/20/2026 | Coloma, Paul | Analyze debtor portfolio company bank statements | 0.8 | $720.00 | FA |
| 3/20/2026 | Coloma, Paul | Review debtor tax returns and audits | 0.5 | $450.00 | FA |
| 3/20/2026 | Coloma, Paul | Review debtor portfolio company financial statements, valuation reports, tax returns | 1.1 | $990.00 | FA |
| 3/20/2026 | Coloma, Paul | Correspondence re: various asset valuation reports w. C. Charlotin (A&M) | 0.2 | $180.00 | FA |
| 3/20/2026 | Coloma, Paul | Check summary asset valuation table provided by C. Charlotin (A&M) | 0.4 | $360.00 | FA |
| 3/20/2026 | Charlotin, Carl | Prepare exhibit re: MII's holdings | 2.1 | $1,155.00 | FA |
| 3/23/2026 | Coloma, Paul | Correspondence re: relationship between debtors and debtor affiliates w. MW | 0.2 | $180.00 | FA |
| 3/24/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss asset valuation reports | 0.2 | $280.00 | FA |
| 3/24/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss asset valuation reports | 0.2 | $180.00 | FA |
| 3/24/2026 | Coloma, Paul | Correspondence re: various asset valuation reports w. MW | 0.2 | $180.00 | FA |
| 3/24/2026 | Charlotin, Carl | Prepare exhibit re: MII's holdings | 0.2 | $110.00 | FA |
| 3/27/2026 | Coloma, Paul | Analyze Scintilla production files including loan agreements and amendments | 1.7 | $1,530.00 | FA |
| 3/27/2026 | Coloma, Paul | Analyze loan documentation executed post removal of previous board members via proxy | 0.5 | $450.00 | FA |
| 3/27/2026 | Coloma, Paul | Check payments made to insiders | 0.4 | $360.00 | FA |
| 4/2/2026 | Coloma, Paul | Check case discovery requests provided by MW | 0.2 | $180.00 | FA |
| 4/6/2026 | Coloma, Paul | Correspondence re: updating plan term sheet w. MW | 0.1 | $90.00 | FA |
| 4/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM, JB - DH partial) to discuss case updates | 0.6 | $840.00 | FA |
| 4/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss liquidating plan terms | 0.3 | $420.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM, JB - DH partial) to discuss case updates | 0.6 | $540.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss liquidating plan terms | 0.3 | $270.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with McGuireWoods team (JB) to discuss updates to liquidating plan terms | 0.3 | $270.00 | FA |
| 4/16/2026 | Coloma, Paul | Check docket for updates | 0.3 | $270.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/17/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss case updates | 0.4 | $560.00 | FA |
| 4/17/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss case updates | 0.4 | $360.00 | FA |
| 4/17/2026 | Coloma, Paul | Correspondence re: supplemental declaration on retention application with McGuireWoods | 0.1 | $90.00 | FA |
| 4/20/2026 | Coloma, Paul | Review chronology of events provided by McGuireWoods | 0.2 | $180.00 | FA |
| 4/22/2026 | Roberts, Mark | Read correspondences from portfolio company related to potential conflict of interest issues discussed with current CRO at the debtor. | 0.1 | $140.00 | FA |
| 4/22/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss retention hearing updates and discuss next steps | 0.3 | $420.00 | FA |
| 4/22/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss retention hearing updates and discuss next steps | 0.3 | $270.00 | FA |
| 4/22/2026 | Coloma, Paul | Read correspondence from portfolio company related to potential conflict of interest issues discussed with current CRO at the debtor | 0.1 | $90.00 | FA |
| 4/22/2026 | Coloma, Paul | Research potential conflict of interests with insiders | 0.3 | $270.00 | FA |
| 4/23/2026 | Coloma, Paul | Read updated plan term sheet provided by McGuireWoods (AM) | 0.2 | $180.00 | FA |
| 4/27/2026 | Coloma, Paul | Review draft interim cash collateral order | 0.3 | $270.00 | FA |
| 4/29/2026 | Coloma, Paul | Review 2004 motion | 0.2 | $180.00 | FA |
| 4/29/2026 | Coloma, Paul | Review document review findings provided by MW | 0.8 | $720.00 | FA |
| 3/30/2026 | Grussing, Bernice | Finalize billing framework for bankruptcy, create database for exhibits, review docket for first day items | 0.9 | $337.50 | FEE |
| 3/24/2026 | Coloma, Paul | Reconcile payments made within one year to payments shown in bank statements | 1.8 | $1,620.00 | LIAB |
| 3/27/2026 | Coloma, Paul | Analyze secured debt claim amount | 0.3 | $270.00 | LIAB |
| 3/31/2026 | Roberts, Mark | Review issues around alleged senior debt. Discuss with counsel. | 0.5 | $700.00 | LIAB |
| 4/29/2026 | Roberts, Mark | Review draft complaint against lender and comment. | 0.5 | $700.00 | LIT |
| 4/6/2026 | Coloma, Paul | Begin developing liquidating plan terms | 0.2 | $180.00 | POR |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/8/2026 | Roberts, Mark | Review potential strategy behind potential negotiations of a successful POR. Review potential terms and begin to draft term sheet. | 1.0 | $1,400.00 | POR |
| 4/10/2026 | Coloma, Paul | Develop proposed plan term sheet; correspondence related thereto | 0.5 | $450.00 | POR |
| 3/18/2026 | Grussing, Bernice | Process conflict details with legal, review with team | 2.4 | $900.00 | RET |
| 3/23/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss retention application process | 0.3 | $270.00 | RET |
| 3/27/2026 | Coloma, Paul | Update retention application | 0.8 | $720.00 | RET |
| 3/30/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss changes to retention application | 0.3 | $270.00 | RET |
| 3/30/2026 | Coloma, Paul | Update retention application | 0.4 | $360.00 | RET |
| 3/31/2026 | Coloma, Paul | Update retention application for comments provided by MW | 0.3 | $270.00 | RET |
| 4/1/2026 | Coloma, Paul | Update retention application with comments provided by A&M internal counsel | 0.3 | $270.00 | RET |
| 4/15/2026 | Coloma, Paul | Update retention application | 0.3 | $270.00 | RET |
| 4/16/2026 | Coloma, Paul | Update retention application for comments received from US Trustee | 0.4 | $360.00 | RET |
| 4/27/2026 | Grussing, Bernice | Pull raw dataset and send to team, review docket for retention order | 0.2 | $75.00 | RET |
| 3/18/2026 | Coloma, Paul | Analyze docket entries including SOFAs, schedules and statements | 1.5 | $1,350.00 | SOFA |
| 3/24/2026 | Coloma, Paul | Summarize differences between payments made within one year shown in SOFA and payments shown in bank statements | 0.3 | $270.00 | SOFA |
| 4/6/2026 | Coloma, Paul | Correspondence re: plan term sheet with McGuireWoods (DH, JB) and A&M (MR) | 0.3 | $270.00 | UCC |
| 4/9/2026 | Coloma, Paul | Review proposed scheduling order | 0.2 | $180.00 | UCC |
| 4/21/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss UCC meeting agenda topics | 0.5 | $700.00 | UCC |
| 4/21/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to discuss various topics | 0.9 | $1,260.00 | UCC |
| 4/21/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss UCC meeting agenda topics | 0.5 | $450.00 | UCC |

Case 26-10123-LSS Doc 523-2 Filed 10/26/26 Page 61 of 138

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/21/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to discuss various topics | 0.9 | $810.00 | UCC |
| 4/30/2026 | Roberts, Mark | Prepare for and attend UCC Committee meeting on the status of the case and strategy thereto | 0.9 | $1,260.00 | UCC |
| 4/30/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss research requests from UCC committee | 0.1 | $140.00 | UCC |
| 4/30/2026 | Coloma, Paul | Prepare for and attend UCC Committee meeting on the status of the case and strategy thereto | 0.9 | $810.00 | UCC |
| 4/30/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss research requests from UCC committee | 0.1 | $90.00 | UCC |
| | | **Total Fees** | **47.0** | **$43,612.50** | |

**Exhibit A**

**Statements of Fees**

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/1/2026 | Coloma, Paul | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $270.00 | FA |
| 5/1/2026 | Coloma, Paul | Check production files to identify bank account statements to reconcile to schedules and statements | 1.6 | $1,440.00 | FA |
| 5/1/2026 | Coloma, Paul | Review UCC objection to Scintilla's Rule 2004 motion | 0.2 | $180.00 | LIT |
| 5/1/2026 | Charlotin, Carl | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $165.00 | ADM |
| 5/1/2026 | Charlotin, Carl | Analyze Relativity contents re: bank statements | 0.9 | $495.00 | FA |
| 5/4/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM) to discuss various topics | 0.6 | $840.00 | UCC |
| 5/4/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM) to discuss various topics | 0.6 | $540.00 | UCC |
| 5/4/2026 | Coloma, Paul | Summarize list of missing information not yet provided to UCC for purposes of requesting additional information to Debtors' CRO and banker | 1.2 | $1,080.00 | FA |
| 5/4/2026 | Coloma, Paul | Summarize discrepancies in filed documents for purposes of requesting additional information from Debtors' CRO and banker | 0.4 | $360.00 | FA |
| 5/4/2026 | Coloma, Paul | Correspondence requesting additional information from Debtors' CRO and banker | 0.2 | $180.00 | FA |
| 5/5/2026 | Roberts, Mark | Review pleadings related to case and communicate with counsel regarding UCC workstreams. | 0.3 | $420.00 | FA |
| 5/6/2026 | Roberts, Mark | Review additional documents related to case and develop additional list of information needed for the case. | 0.5 | $700.00 | FA |
| 5/6/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), Daniel Sasson, JR Manning re: incremental requests for information needed to respond to cash collateral motion | 0.5 | $700.00 | FA |
| 5/6/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss information needed for response to cash collateral motion | 0.2 | $280.00 | FA |
| 5/6/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), Daniel Sasson, JR Manning re: incremental requests for information needed to respond to cash collateral motion | 0.5 | $450.00 | FA |
| 5/6/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss information needed for response to cash collateral motion | 0.2 | $180.00 | FA |
| 5/6/2026 | Coloma, Paul | Read correspondence re: case updates provided by McGuireWoods | 0.4 | $360.00 | FA |
| 5/6/2026 | Coloma, Paul | Review analyst research reports on eToro to assess timing of share sales | 0.5 | $450.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss findings from analyst research reports on eToro to assess timing of share sales | 0.2 | $280.00 | FA |
| 5/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss findings from analyst research reports on eToro to assess timing of share sales | 0.2 | $180.00 | FA |
| 5/7/2026 | Coloma, Paul | Analyze documentation provided in discovery to back Scintilla claim amount | 0.5 | $450.00 | LIAB |
| 5/7/2026 | Coloma, Paul | Correspondence requesting documentation backing Scintilla claim amount with CRO | 0.2 | $180.00 | LIAB |
| 5/8/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss share sale transactions and related issues | 0.2 | $280.00 | FA |
| 5/8/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss share sale transactions and related issues | 0.2 | $180.00 | FA |
| 5/8/2026 | Coloma, Paul | Correspondence requesting support for senior secured claim from CRO | 0.3 | $270.00 | LIAB |
| 5/8/2026 | Coloma, Paul | Correspondence discussing various matters with McGuireWoods | 0.4 | $360.00 | FA |
| 5/8/2026 | Coloma, Paul | Check proofs of claim provided by McGuireWoods | 0.1 | $90.00 | LIAB |
| 5/11/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss draft complaint | 0.1 | $140.00 | LIT |
| 5/11/2026 | Coloma, Paul | Read draft complaint | 0.3 | $270.00 | LIT |
| 5/11/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss draft complaint | 0.1 | $90.00 | LIT |
| 5/12/2026 | Coloma, Paul | Read 2004 discovery motion provided by McGuireWoods | 0.2 | $180.00 | LIT |
| 5/12/2026 | Coloma, Paul | Read correspondence regarding matters concerning D&O insurance claims provided by McGuireWoods | 0.3 | $270.00 | FA |
| 5/13/2026 | Coloma, Paul | Read correspondence regarding challenge period issues provided by McGuireWoods | 0.2 | $180.00 | FA |
| 5/13/2026 | Coloma, Paul | Summarize relevant information in production files for purposes of allowing valuation team to assess insolvency | 0.5 | $450.00 | VAL |
| 5/14/2026 | Roberts, Mark | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC | 0.9 | $1,260.00 | VAL |
| 5/14/2026 | Coloma, Paul | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC | 0.9 | $810.00 | VAL |
| 5/14/2026 | Coloma, Paul | Reconcile MII expenses paid since January 2025 to bank statements | 1.7 | $1,530.00 | FA |
| 5/14/2026 | Coloma, Paul | Correspondence with CRO Dan Sasson regarding discrepancies in MII expenses and bank statements | 0.2 | $180.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/14/2026 | Hurley, Stephen | Review draft complaint. | 0.5 | $412.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $742.50 | VAL |
| 5/14/2026 | Russell, Kimberly | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $967.50 | VAL |
| 5/14/2026 | Bresnahan, Thomas | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $832.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Download and review document production on internal Box site. | 1.1 | $907.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.6 | $495.00 | VAL |
| 5/15/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) regarding discrepancies in MII expenses and bank statements | 0.3 | $420.00 | FA |
| 5/15/2026 | Coloma, Paul | Check MII tax returns for 2022 and 2023; request MII tax returns for 2024 from CRO Dan Sasson | 0.4 | $360.00 | FA |
| 5/15/2026 | Coloma, Paul | Check supporting information provided by CRO Dan Sasson regarding MII expenses paid in 2025 | 0.4 | $360.00 | FA |
| 5/15/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) regarding discrepancies in MII expenses and bank statements | 0.3 | $270.00 | FA |
| 5/15/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding discrepancies in MII expenses and bank statements | 0.2 | $180.00 | FA |
| 5/15/2026 | Charlotin, Carl | Analyze Relativity contents re: DIP transaction | 0.3 | $165.00 | FA |
| 5/15/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss and assemble information request list required to complete analysis. | 1.2 | $990.00 | VAL |
| 5/15/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss and assemble information request list required to complete analysis. | 1.2 | $1,110.00 | VAL |
| 5/18/2026 | Coloma, Paul | Correspondence providing source documentation to A&M team (SH) for purposes of preparing report on behalf of UCC | 0.2 | $180.00 | VAL |
| 5/18/2026 | Coloma, Paul | Check proposed revised budget on behalf of McGuireWoods; correspondence regarding revised budget with McGuireWoods | 0.3 | $270.00 | CASH |
| 5/18/2026 | Bresnahan, Thomas | Review of certain documents and materials provided to the court in connection with bankruptcy procedures, including Debtor Response to the UCC | 1.4 | $1,295.00 | VAL |
| 5/18/2026 | Hurley, Stephen | Work on solvency report outline. | 1.1 | $907.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/18/2026 | Russell, Kimberly | Review of certain documents and materials provided to the court in connection with bankruptcy procedures, including Debtor Response to the UCC | 1.5 | $1,612.50 | VAL |
| 5/19/2026 | Coloma, Paul | Correspondence re: case strategy and updates with McGuireWoods | 0.2 | $180.00 | FA |
| 5/19/2026 | Hurley, Stephen | Work on solvency report outline. | 1.2 | $990.00 | VAL |
| 5/20/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss summarizing claim register | 0.2 | $280.00 | LIAB |
| 5/20/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss summarizing claim register | 0.2 | $180.00 | LIAB |
| 5/20/2026 | Coloma, Paul | Analyze claims register | 0.4 | $360.00 | LIAB |
| 5/20/2026 | Bresnahan, Thomas | Review MII historical tax returns for the fiscal years ended December 31, 2021 - 2023 | 1.3 | $1,202.50 | VAL |
| 5/21/2026 | Coloma, Paul | Correspondence re: objections to cash collateral motion with McGuireWoods | 0.2 | $180.00 | FA |
| 5/21/2026 | Coloma, Paul | Correspondence discussing recovery waterfall with McGuireWoods | 0.1 | $90.00 | FA |
| 5/21/2026 | Coloma, Paul | Analyze proofs of claim | 0.5 | $450.00 | LIAB |
| 5/21/2026 | Coloma, Paul | Participate on call with A&M Team (PC, CC - PC Partial) and McGuireWoods (JB) to discuss summarizing and categorizing of claims | 0.2 | $180.00 | LIAB |
| 5/21/2026 | Charlotin, Carl | Participate on call with A&M Team (PC, CC - PC Partial) and McGuireWoods (JB) to discuss summarizing and categorizing of claims | 0.3 | $165.00 | LIAB |
| 5/21/2026 | Charlotin, Carl | Analyze proof of claims | 0.7 | $385.00 | LIAB |
| 5/21/2026 | Hurley, Stephen | Work on solvency report outline. | 1.4 | $1,155.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review summary and inventory of debtor production regarding files received in connection with initial discovery process (refer to the file titled "Inventory and Summaries - Debtor Production - 4-17-2026 (1).xlsx") | 0.4 | $370.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review draft complaint | 0.8 | $740.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review Fair Market Value Opinion Letter for Boston Executive Helicopters prepared by Business Presentation Solutions as of 5/1/2024, Aircraft Bluebook print-out dated 5/16/2024 for owned aircraft (refer to the files titled (i) "MII002432.pdf" (ii) "MII002522", and (iii) "MII002523") | 0.7 | $647.50 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review Asset Sale and Paydown Agreement dated 8/1/2025 and analyze terms and features | 1.7 | $1,572.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/22/2026 | Coloma, Paul | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC | 0.4 | $360.00 | VAL |
| 5/22/2026 | Coloma, Paul | Correspondence re: updates to preparation of report on behalf of UCC with McGuireWoods, A&M (KR) | 0.2 | $180.00 | VAL |
| 5/22/2026 | Coloma, Paul | Correspondence discussing sourcing of documentation necessary for preparation of report on behalf of UCC with A&M team (SH) | 0.1 | $90.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review MII's various facility / loan agreements (including amendments, as applicable) as of December 2019, February 2023, August 2023, and December 2024 Omnibus | 2.0 | $1,850.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.3 | $247.50 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (SH, KR, TB) to discuss document production | 0.5 | $412.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, KR, TB) to discuss document production | 0.5 | $462.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review the Proof of Claim (POC) and related addendum filed on 5/15/2026 for MII (refer to the file titled "Michal - Scintilla POC.pdf") | 0.4 | $370.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review Boaz Toshav Declaration file on 2/25/2026 (refer to the file titled "Docket 25 - Boaz Toshav declaration.pdf") | 0.7 | $647.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review chronology and timeline of key events (refer to the file titled "MII - Document Share 2-27-2026 - Chronology of Key Events.docx") | 0.6 | $555.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Review document production on internal Box site and create internal document index | 2.0 | $1,650.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC. | 0.4 | $330.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC. | 0.4 | $370.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss data sourcing. | 0.5 | $412.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss data sourcing. | 0.5 | $462.50 | VAL |
| 5/26/2026 | Roberts, Mark | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $700.00 | VAL |
| 5/26/2026 | Coloma, Paul | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $450.00 | VAL |
| 5/26/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.7 | $577.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/26/2026 | Hurley, Stephen | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $412.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $537.50 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $462.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $330.00 | VAL |
| 5/26/2026 | Russell, Kimberly | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $430.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $370.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review internally prepared historical financial statements of Boston Executive Helicopters LLC (FY 2023 - FY 2024 and YTD period ending July 31, 2025); refer to the files titled "MII022221", "MII022223", "MII022224" and "MII005552" | 0.8 | $740.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review "BEH Valuation Analysis Highly Confidential" report dated May 2025 (refer to the file titled "MII014378") | 0.4 | $370.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review certain email correspondence and activity between Mr. Toshav and outside counsel re: BEH - Background, Handover, and Next Steps | 0.2 | $185.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review Asset Sale and Paydown Agreement dated 8/1/2025 (refer to the file titled "MII037704.pdf") and develop counter arguments to proposed benefits received | 1.0 | $925.00 | VAL |
| 5/26/2026 | Hurley, Stephen | Review document production on internal Box site and draft additional information request | 1.9 | $1,567.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Spread financials for Boston Executive Helicopter | 0.5 | $412.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Perform transaction screening for aviation-related target companies | 0.5 | $412.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Review of certain documents and materials provided to the court in connection with bankruptcy procedures | 1.3 | $1,397.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Review document production on internal Box site | 1.8 | $1,935.00 | VAL |
| 5/26/2026 | Russell, Kimberly | Review of certain documents flagged by team as relevant to solvency analysis | 1.5 | $1,612.50 | VAL |
| 5/27/2026 | Roberts, Mark | Attend hearing related to the case. | 1.0 | $1,400.00 | CRT |
| 5/27/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss summary of claim register | 0.3 | $420.00 | FA |
| 5/27/2026 | Roberts, Mark | Review Scintilla POC | 0.2 | $280.00 | LIAB |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/27/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss summary of claim register | 0.3 | $270.00 | LIAB |
| 5/27/2026 | Charlotin, Carl | Analyze proof of claims | 0.3 | $165.00 | LIAB |
| 5/27/2026 | Hurley, Stephen | Spread financials for Boston Executive Helicopter | 0.9 | $742.50 | VAL |
| 5/27/2026 | Hurley, Stephen | Perform transaction screening for aviation-related target companies | 1.9 | $1,567.50 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review document production on internal Box site. | 0.6 | $555.00 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review MII's various facility / loan agreements (including amendments, as applicable) as of December 2019, February 2023, August 2023, and December 2024 Omnibus | 0.9 | $832.50 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review of MII Aviation Schedule of Assets and Liabilities court filing (refer to file titled "Docket 8 - MII Aviation Schedules.pdf") | 1.2 | $1,110.00 | VAL |
| 5/28/2026 | Roberts, Mark | Review Scintilla complaint and related schedules and comment accordingly | 0.5 | $700.00 | LIT |
| 5/28/2026 | Coloma, Paul | Analyze Scintilla payoff amount from proof of claim; compare to July 2025 payoff amount | 0.7 | $630.00 | LIAB |
| 5/28/2026 | Coloma, Paul | Analyze Scintilla debt documentation for support of payoff amount from proof of claim | 0.8 | $720.00 | LIAB |
| 5/28/2026 | Coloma, Paul | Correspondence discussing matters concerning debtor cash with McGuireWoods | 0.2 | $180.00 | FA |
| 5/28/2026 | Hurley, Stephen | Work on valuation analysis for Boston Executive Helicopter | 1.4 | $1,155.00 | VAL |
| 5/28/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss BEH valuation analysis | 1.2 | $990.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss BEH valuation analysis | 1.2 | $1,110.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Review draft complaint and issues related to avoidance and recovery claims | 0.8 | $740.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Preparation of Net Asset Value (NAV) schedule for MII and MII Aviation for purposes of evaluating solvency | 2.7 | $2,497.50 | VAL |
| 5/28/2026 | Hurley, Stephen | Review MII loan agreements | 0.9 | $742.50 | VAL |
| 5/29/2026 | Roberts, Mark | Review Scintilla credit bid filing and related details | 0.5 | $700.00 | AS |
| 5/29/2026 | Coloma, Paul | Read draft complaint | 0.3 | $270.00 | LIT |
| 5/29/2026 | Hurley, Stephen | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $742.50 | VAL |
| 5/29/2026 | Russell, Kimberly | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $967.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $832.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation methodology | 1.2 | $990.00 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation implementation | 1.1 | $907.50 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation and interpret results | 1.6 | $1,320.00 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Compilation and organization of available information / supporting documentation to assess estimated value of MII's various investment holdings as of date of Paydown Agreement | 1.7 | $1,572.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review various Proofs of Claim schedules for identified unsecured creditors | 0.9 | $832.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review certain declarations of Mr. Boaz Toshav and filings for DIP Financing (refer to Docket 190 and Docket 189, respectively) | 1.8 | $1,665.00 | VAL |
| 5/30/2026 | Coloma, Paul | Review bid procedures motion | 0.3 | $270.00 | FA |
| 6/1/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $280.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $180.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation | 0.4 | $360.00 | VAL |
| 6/1/2026 | Coloma, Paul | Analyze legal documentation supporting Scintilla payoff amount | 1.6 | $1,440.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Analyze amortization and interest rate trackers provided by Scintilla supporting claim amount | 0.5 | $450.00 | LIAB |
| 6/1/2026 | Hurley, Stephen | Work on MII interest expense calculation | 1.1 | $907.50 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on internal call with A&M team (KR, TB, SH - KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $412.50 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $462.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/2/2026 | Coloma, Paul | Analyze discrepancies in Scintilla payoff amount based on interest rate trackers and legal documentation | 0.6 | $540.00 | LIAB |
| 6/2/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (SH, TB) to discuss analysis of Paydown Agreement | 0.6 | $555.00 | VAL |
| 6/2/2026 | Hurley, Stephen | Participate on internal call with A&M team (SH, TB) to discuss analysis of Paydown Agreement | 0.6 | $495.00 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report reasonably equivalent value section | 1.1 | $907.50 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report transaction analysis section | 1.5 | $1,237.50 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII interest expense calculation | 1.8 | $1,485.00 | VAL |
| 6/3/2026 | Coloma, Paul | Analyze senior secured claim accrued interest amounts and related equity kicker components | 1.7 | $1,530.00 | LIAB |
| 6/3/2026 | Coloma, Paul | Correspondence discussing matters concerning senior secured claim accrued interest amounts with McGuireWoods | 0.2 | $180.00 | LIAB |
| 6/3/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB SH) and McGuireWoods to discuss information provided in discovery related to Boston Executive Helicopters | 1.1 | $1,017.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Participate on call with A&M team (TB SH) and McGuireWoods to discuss information provided in discovery related to Boston Executive Helicopters | 1.1 | $907.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report reasonably equivalent value section | 1.3 | $1,072.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Participate on internal call with A&M team (SH, TB) to discuss BEH valuation | 0.6 | $495.00 | VAL |
| 6/3/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (SH, TB) to discuss BEH valuation | 0.6 | $555.00 | VAL |
| 6/3/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report transaction analysis section | 1.2 | $990.00 | VAL |
| 6/4/2026 | Coloma, Paul | Review draft mediation statement | 0.4 | $360.00 | LIT |
| 6/4/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding calculation of senior secured claim accrued interest amounts | 0.2 | $180.00 | LIAB |
| 6/4/2026 | Coloma, Paul | Update senior secured claim accrued interest amounts and related equity kicker components; provide updated calculation to McGuireWoods | 0.3 | $270.00 | LIAB |
| 6/4/2026 | Coloma, Paul | Summarize entries for first fee application | 0.5 | $450.00 | FEE |
| 6/4/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss first fee application | 0.3 | $270.00 | FEE |
| 6/4/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss first fee application | 0.3 | $420.00 | FEE |
| 6/4/2026 | Coloma, Paul | Prepare first fee application | 0.9 | $810.00 | FEE |
| 6/5/2026 | Coloma, Paul | Review claim objections against unsecured creditors | 0.4 | $360.00 | LIAB |

Case 26-10123-LSS Doc 384-2 Filed 08/14/26 Page 11 of 17

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/5/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/5/2026 | Hurley, Stephen | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/8/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $280.00 | LIT |
| 6/8/2026 | Roberts, Mark | Review emails related to the case and respond accordingly | 0.3 | $420.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $180.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding treatment of senior secured claim accrued interest amounts | 0.2 | $180.00 | LIT |
| 6/8/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and transaction analysis | 1.0 | $925.00 | VAL |
| 6/9/2026 | Coloma, Paul | Review Moshe Yanai objection to Scintilla claim; recalculate senior secured claim accrued interest and principal for reduction of conveyed property; correspondence with McGuireWoods discussing updates to senior secured claim | 0.7 | $630.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Review answer and affirmative defenses filed by Scintilla; provide files showing Scintilla advances to A&M team (SH) | 0.6 | $540.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Recalculate unsecured claims originally calculated with multiplier of original amount loaned by using alternative interest rate | 0.9 | $810.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Summarize claims and settlement amounts received from parties subject to settlement with Moshe Yanai; recalculate claim amount through settlement date | 0.4 | $360.00 | LIAB |
| 6/9/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and summary transaction analysis | 2.5 | $2,312.50 | VAL |
| 6/9/2026 | Bresnahan, Thomas | Review Recalculation of Scintilla Claim schedule outlining timeline and description of borrowings including drawdowns | 0.5 | $462.50 | VAL |
| 6/9/2026 | Hurley, Stephen | Review Answers and Affirmative Defenses filed by Scintilla in response to UCC Complaint | 0.7 | $577.50 | VAL |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss recalculation of claim amounts | 0.4 | $560.00 | LIT |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to prepare for mediation | 0.8 | $1,120.00 | UCC |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/10/2026 | Roberts, Mark | Review documents related to the upcoming mediation and prepare for mediation. Review analysis and related evidence | 1.4 | $1,960.00 | LIT |
| 6/10/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss recalculation of claim amounts | 0.4 | $360.00 | LIT |
| 6/10/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to prepare for mediation | 0.8 | $720.00 | UCC |
| 6/10/2026 | Coloma, Paul | Update senior secured claim accrued interest amounts and related equity kicker components; provide updated calculation to McGuireWoods | 0.2 | $180.00 | LIAB |
| 6/10/2026 | Coloma, Paul | Review documentation prepared in advance of mediation | 0.5 | $450.00 | LIT |
| 6/10/2026 | Coloma, Paul | Update summary claim tracker for expected claim amounts | 0.3 | $270.00 | LIAB |
| 6/10/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 1.8 | $1,665.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Review Answers and Affirmative Defenses filed by Scintilla in response to UCC Complaint | 0.6 | $555.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, KR, TB) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $370.00 | VAL |
| 6/10/2026 | Hurley, Stephen | Participate on call with A&M team (KR, TB, SH) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $330.00 | VAL |
| 6/10/2026 | Russell, Kimberly | Participate on call with A&M team (TB, SH, KR) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $430.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding summary transaction analysis | 2.7 | $2,497.50 | VAL |
| 6/10/2026 | Hurley, Stephen | Work on BEH valuation and solvency analysis section of expert report | 1.9 | $1,567.50 | VAL |
| 6/11/2026 | Roberts, Mark | Review and prepare for upcoming mediation. Read several documents and analysis related to mediation and email counsel etc. | 1.2 | $1,680.00 | LIT |
| 6/11/2026 | Roberts, Mark | Prepare for and participate in mediation | 9.1 | $12,740.00 | LIT |
| 6/11/2026 | Coloma, Paul | Attend and participate in mediation; perform supporting calculations during mediation | 4.1 | $3,690.00 | LIT |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/11/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss mediation outcome and next steps | 0.2 | $180.00 | LIT |
| 6/11/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss mediation outcome and next steps | 0.2 | $280.00 | LIT |
| 6/11/2026 | Coloma, Paul | Recalculate Scintilla claim amount based on lender credit documentation; compare to claim amount asserted by Scintilla | 0.8 | $720.00 | LIAB |
| 6/11/2026 | Hurley, Stephen | Work on BEH valuation and solvency analysis section of expert report | 1.9 | $1,567.50 | VAL |
| 6/11/2026 | Hurley, Stephen | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 1.3 | $1,072.50 | VAL |
| 6/11/2026 | Hurley, Stephen | Review, edit and draft sections of the expert report regarding summary transaction analysis | 1.8 | $1,485.00 | VAL |
| 6/11/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 2.2 | $2,035.00 | VAL |
| 6/11/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding summary transaction analysis | 2.4 | $2,220.00 | VAL |
| 6/12/2026 | Roberts, Mark | Continue to review mediation term sheet and start penciling out the POR and process going forward to bring case to a close. | 1.6 | $2,240.00 | POR |
| 6/12/2026 | Roberts, Mark | Call with counsel on the status of the mediation and next steps. Discuss outstanding issues. | 0.5 | $700.00 | POR |
| 6/12/2026 | Coloma, Paul | Assist in preparation of first fee application | 0.9 | $810.00 | FEE |
| 6/12/2026 | Coloma, Paul | Start to prepare liquidation analysis for MII Aviation Services and MII | 1.2 | $1,080.00 | POR |
| 6/12/2026 | Grussing, Bernice | Create draft of fee application document; review dataset for errors; pull and review expenses | 2.6 | $975.00 | FEE |
| 6/12/2026 | Grussing, Bernice | Create charts for application and update | 1.4 | $525.00 | FEE |
| 6/12/2026 | Grussing, Bernice | Prepare exhibits for first fee application | 1.6 | $600.00 | FEE |
| 6/13/2026 | Coloma, Paul | Finalize liquidation analysis for MII Aviation Services | 0.6 | $540.00 | POR |
| 6/14/2026 | Coloma, Paul | Finalize liquidation analysis for MII | 1.2 | $1,080.00 | POR |
| 6/15/2026 | Roberts, Mark | Review settlement document and begin working through the drafting of the POR as negotiated. Review elements and begin assisting counsel with plan of reorganization analysis | 1.1 | $1,540.00 | POR |
| 6/15/2026 | Roberts, Mark | Call with counsel on liquidation analysis and assumptions | 0.2 | $280.00 | POR |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/15/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss liquidation analysis assumptions | 0.6 | $840.00 | POR |
| 6/15/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 6/15/2026 | Coloma, Paul | Update liquidation analysis for MII Aviation Services | 2.0 | $1,800.00 | POR |
| 6/15/2026 | Coloma, Paul | Update liquidation analysis for MII | 1.0 | $900.00 | POR |
| 6/15/2026 | Grussing, Bernice | Review current fee status and provide reports to team | 0.3 | $112.50 | FEE |
| 6/16/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis assumptions | 0.6 | $840.00 | POR |
| 6/16/2026 | Roberts, Mark | Review draft Chapter 7 liquidation analysis and comment to team on footnotes and assumptions. Prepare for call with Staff. | 0.4 | $560.00 | POR |
| 6/16/2026 | Roberts, Mark | Review mediation term sheet and comment on POR for counsel. Read drafts and respond accordingly | 1.1 | $1,540.00 | POR |
| 6/16/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 6/16/2026 | Coloma, Paul | Update best interests test for MII Aviation Services | 1.2 | $1,080.00 | POR |
| 6/16/2026 | Coloma, Paul | Update best interests test for MII | 0.9 | $810.00 | POR |
| 6/17/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis | 0.9 | $1,260.00 | POR |
| 6/17/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis | 0.9 | $810.00 | POR |
| 6/17/2026 | Coloma, Paul | Update liquidation analysis for MII | 2.1 | $1,890.00 | POR |
| 6/17/2026 | Coloma, Paul | Review correspondence relating to litigation matters at BEH | 0.3 | $270.00 | LIT |
| 6/17/2026 | Coloma, Paul | Review correspondence relating to questions of UCC on outcome of mediation and next steps | 0.2 | $180.00 | UCC |
| 6/19/2026 | Coloma, Paul | Review documentation regarding status of various assets and proposed third party stalking horse bid | 0.3 | $270.00 | AS |
| 6/20/2026 | Coloma, Paul | Review draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.5 | $1,350.00 | POR |
| 6/21/2026 | Coloma, Paul | Summarize findings of draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors; provide findings to M. Roberts (A&M) | 0.4 | $360.00 | POR |
| 6/22/2026 | Roberts, Mark | Review the liquidation calculation analysis/updated analysis and comment accordingly | 0.4 | $560.00 | POR |
| 6/22/2026 | Roberts, Mark | Review staff analysis on Scintilla proof of claim and related calculations | 0.9 | $1,260.00 | LIT |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/23/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss court hearing updates and next steps | 0.2 | $280.00 | FA |
| 6/23/2026 | Coloma, Paul | Participate in court hearing | 0.3 | $270.00 | CRT |
| 6/23/2026 | Coloma, Paul | Participate on call with Silver Birch, Chipman, McGuireWoods, and Faegre Drinker to discuss asset sale updates | 0.7 | $630.00 | AS |
| 6/23/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss updates to liquidation analysis | 0.2 | $180.00 | POR |
| 6/23/2026 | Coloma, Paul | Update liquidation analysis for MII; MII Aviation Services to match proposed liquidation plan | 0.8 | $720.00 | POR |
| 6/23/2026 | Coloma, Paul | Respond to Scintilla claim reconciliation items | 0.6 | $540.00 | LIAB |
| 6/23/2026 | Coloma, Paul | Review information on assets for sale and potential interested parties provided by Silver Birch | 0.3 | $270.00 | AS |
| 6/23/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss court hearing updates and next steps | 0.2 | $180.00 | FA |
| 6/24/2026 | Roberts, Mark | Review numerous emails related to the case and respond accordingly. | 0.4 | $560.00 | POR |
| 6/29/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss updates on draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 0.1 | $140.00 | POR |
| 6/29/2026 | Roberts, Mark | Call with McGuireWoods on the status of the plan of reorganization | 0.4 | $560.00 | POR |
| 6/29/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss updates on draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 0.1 | $90.00 | POR |
| 6/29/2026 | Coloma, Paul | Review proposed liquidating trustee pitch deck | 0.2 | $180.00 | ADM |
| 6/30/2026 | Roberts, Mark | Review latest red-line of POR and discuss with counsel. | 1.1 | $1,540.00 | POR |
| 6/30/2026 | Grussing, Bernice | Final processing of A&M first interim fee application | 0.7 | $262.50 | FEE |
| 7/1/2026 | Roberts, Mark | Review outstanding POR issues with counsel | 0.2 | $280.00 | POR |
| 7/1/2026 | Roberts, Mark | Respond to emails related to case and to Senior Lender claims with counsel and staff | 0.4 | $560.00 | LIT |
| 7/6/2026 | Roberts, Mark | Continue to review analysis around Senior Lender Claim and comment accordingly | 0.4 | $560.00 | LIT |
| 7/6/2026 | Roberts, Mark | Review POR related issues and respond to numerous emails to counsel on the status. | 0.7 | $980.00 | POR |
| 7/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss updates to liquidation analysis | 0.6 | $840.00 | POR |
| 7/7/2026 | Roberts, Mark | Prepare for call on liquidation analysis and other POR related items | 0.4 | $560.00 | POR |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| | | | | | |
| 7/7/2026 | Roberts, Mark | Review numerous emails related to the case about POR issues and claims issues and respond accordingly | 0.5 | $700.00 | POR |
| 7/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss updates to liquidation analysis | 0.6 | $540.00 | POR |
| 7/7/2026 | Coloma, Paul | Update liquidation analysis to conform with most recent draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.1 | $990.00 | POR |
| 7/7/2026 | Coloma, Paul | Start drafting write-up for liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 7/7/2026 | Grussing, Bernice | Pull and chart current raw dataset, send to team for review | 0.5 | $187.50 | FEE |
| 7/8/2026 | Coloma, Paul | Finalize write-up for liquidation analysis assumptions | 1.5 | $1,350.00 | POR |
| 7/8/2026 | Coloma, Paul | Draft email with additional requests to reconcile Scintilla claim, send to McGuireWoods | 0.4 | $360.00 | LIAB |
| 7/8/2026 | Coloma, Paul | Review correspondence on matters outstanding shared with UCC by McGuireWoods | 0.2 | $180.00 | UCC |
| 7/9/2026 | Roberts, Mark | Prepare for UCC call and read up on outstanding items related to POR | 0.6 | $840.00 | UCC |
| 7/9/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods, Faegre Drinker (BF) and members of UCC committee to discuss combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.6 | $2,240.00 | UCC |
| 7/9/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods, Faegre Drinker (BF) and members of UCC committee to discuss combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.6 | $1,440.00 | UCC |
| 7/10/2026 | Roberts, Mark | Respond to emails related to POR questions with counsel and staff. | 0.3 | $420.00 | POR |
| 7/12/2026 | Coloma, Paul | Aggregate support files necessary to reconcile Scintilla claim; provide to UCC member | 0.4 | $360.00 | LIAB |
| 7/12/2026 | Coloma, Paul | Participate on call with UCC member to discuss reconciliation of Scintilla claim | 0.7 | $630.00 | LIAB |
| 7/12/2026 | Coloma, Paul | Correspondence discussing questions on Scintilla claim reconciliation with UCC member, McGuireWoods | 0.2 | $180.00 | LIAB |
| 7/13/2026 | Coloma, Paul | Review support files to calculate Scintilla's default rate calculations | 0.9 | $810.00 | LIAB |
| 7/13/2026 | Coloma, Paul | Correspondence discussing Scintilla's calculations of default rate with McGuireWoods | 0.2 | $180.00 | LIAB |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 7/14/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss calculation of default rate on Scintilla's claim | 0.4 | $360.00 | LIAB |
| 7/14/2026 | Coloma, Paul | Update Scintilla claim calculations to exclude default rate on eToro share sales proceeds not submitted to Scintilla, provide updated calculations to UCC member | 0.5 | $450.00 | LIAB |
| 7/15/2026 | Grussing, Bernice | Pull raw dataset and send weekly report to team leadership for review | 0.1 | $37.50 | FEE |
| 7/17/2026 | Coloma, Paul | Correspondence summarizing discrepancies in Scintilla claim calculations with McGuireWoods | 0.3 | $270.00 | LIAB |
| 7/20/2026 | Roberts, Mark | Review outstanding issues around liquidation analysis, senior lender claim and other outstanding issues for the POR | 1.1 | $1,540.00 | POR |
| 7/20/2026 | Coloma, Paul | Review answers to discrepancies identified in Scintilla complaint answers; recalculate accrued interest based on answers provided by Scintilla; correspondence with McGuireWoods re: deficiencies in Scintilla response to discrepancies identified in Scintilla complaint answers | 0.4 | $360.00 | LIAB |
| 7/27/2026 | Roberts, Mark | Review updated writeup for liquidation analysis | 0.5 | $700.00 | POR |
| 7/27/2026 | Coloma, Paul | Review updated writeup for liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Roberts, Mark | Review changes to assumptions for liquidation analysis | 0.5 | $700.00 | POR |
| 7/30/2026 | Coloma, Paul | Review materials in advance of discussion on liquidation analysis with CRO, Chipman Brown and McGuireWoods | 0.4 | $360.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with CRO, Chipman Brown and McGuireWoods to discuss assumptions in liquidation analysis | 1.0 | $900.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss changes to liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Coloma, Paul | Update liquidation analysis for feedback received from CRO, Chipman Brown, and McGuireWoods | 0.8 | $720.00 | POR |
| 7/31/2026 | Roberts, Mark | Review updates Scintilla claim calculation and provided support | 0.5 | $700.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Reconcile updated Scintilla claim calculations provided by Scintilla; correspondence with McGuireWoods re: discrepancies in claim calculations | 0.4 | $360.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Prepare second fee application | 1.4 | $1,260.00 | FEE |

# EXHIBIT B

Excerpts of machine-generated transcription of the October 13, 2026 hearing audio (official transcript not yet available)

*In re MII Aviation Services LLC*, No. 26-10123 (LSS) — Letter of Christopher R. Donovan, Sr. under Chambers Procedures § III

## Excerpts of Machine-Generated Transcription — Hearing of October 13, 2026

*The official transcript of the October 13, 2026 hearing is not yet available. The passages below are excerpts from a machine-generated transcription of the hearing audio. Speaker labels were assigned by context, and proper names may be misspelled (for example, "DeGrossier" for Mr. Desgrosseilliers). Omitted passages are marked "* * *". Movant will file the corresponding pages of the official transcript when available.*

**MR. DEGROSSIER:** Okay, thank you. I think that gets us right to the second matter, which is the discovery dispute. Again, we set forth, I think, our position, our collective position, both all of the debtors, with respect to a certain, I think, limited discovery, not with respect to scope, but amount. We issued the discovery to Mr. Donovan. This is in connection with Mr. Donovan's 3018 motion. As Your Honor knows, that 3018 motion and certain others will be up for hearing on October 29th, which is the same date scheduled for the confirmation hearing. We issued the discovery when we did to afford as much time as possible to Mr. Donovan and the others.

**MR. DEGROSSIER:** We issued two — actually three — things on Mr. Donovan: the deposition notice, a document request, and we issued a subpoena on the BEH requesting a deposition and certain documents, and we issued a subpoena on Mr. O'Malley's firm. Mr. O'Malley is sometimes identified as the chief financial officer, but certainly the outside accountant for BEH, and that was requesting a deposition and certain documents.

* * *

**MR. DEGROSSIER:** The other issue, and the more pressing issue, Your Honor, frankly, is the scope issue. Mr. Donovan raises the issue that we seek documents and communications going back 17 years. And he's not wrong in that regard. But if Your Honor will recall — and Your Honor may not — what's at issue in the 3018 is — and there is an underlying claim objection from the debtors. Mr. Donovan has asserted that there was a 2025 employment agreement that was signed, but there was an earlier 2010 unexecuted agreement. And so he — it's kind of difficult to parse through the pleadings, and no offense to anyone, but he's going to rely on that 2010 agreement. We are entitled, in our view, I think collectively, to discovery into the communication, the world of communications regarding what the alleged deal was, right, and who it was with.

* * *

**MR. DEGROSSIER:** And normally I would agree that 17 years is a long time to look back. We've tried to kind of focus the discovery as much as we could. We asked for all financial statements and other things from BEH because BEH is the operating company, and we assume that if there's an obligation that's reflected on the financial statements, it would be on BEH's financial statements. And unfortunately, because we have to go back to 2010 and Mr. Donovan's introduced certain limited emails around that 2009, 2010, unfortunately we have to go back there to get the full scope of what may or may not have been on financial statements. And those rest with BEH. And those rest potentially with Mr. Donovan, but more precisely would be BEH and likely Mr. O'Malley. Again, we don't know, but that's where we assume they are.

**THE COURT:** Where do we stand on the 100 boxes?

**MR. DEGROSSIER:** So the 100 boxes, Your Honor, that we've heard a lot about — I think it bears going back a little bit to our 2004 request, which was filed well before we had a plan, well before we had a settlement. We were going down a kind of a sale path and would have been contested with the committee and probably a lot of parties if we had pursued that path. But we were looking for documents that would give us, or give a potential bidder, insight into what BEH is worth, right? And so we filed the 2004 request for that and for the reports that we have to file, frankly, where we have to keep parties and interests up to date on what's going on at BEH and other non-debtor subsidiaries. So that was pretty limited, I would say.

**MR. DEGROSSIER:** And we agreed to limit it further after — Your Honor recalls — we had an order entered and then we revisited that, and then a new order was entered after discussions with Mr. Donovan about what he could and couldn't do. And so we limited that to what we thought we would need for a sale, from a sale perspective. This is obviously a different perspective, Your Honor. We need considerably more documents, and I told Mr. Donovan this as well, and I don't think I'm talking out of turn, but look, if he doesn't have documents, he doesn't have documents, right? He can just send something back and say I don't have the documents, and that's a fine answer, and we expressed that to him. We did not receive those answers that there are no such documents.

* * *

**THE COURT:** And so you want to be able to look at the boxes of documents to see if there's anything in there?

**MR. DEGROSSIER:** Correct. We don't know what's in there, but I told Mr. Donovan that, you know, in light of the burden on him, we would be amenable — and I don't want to do this, but we can send two associates up there, and they're not going to be thrilled about it, but they'll go look at 100 boxes and tell us what's in there, and we can tab what we think we need and copy those. I'm not sure if that offer is still extant. I can't tell, frankly, from the various pleadings. Some say one thing, some say another. But we're willing to go up there, obviously at the estate's expense — so my firm's expense at this point — to go up there and look at those documents and see if there's even anything relevant. Now, normally it would be helpful to have an index of what those documents are, but we don't have it, so we're going to do it ourselves, and that's fine.

* * *

**THE COURT:** And the debtors and the committee are entitled to discovery with respect to that claim from you individually. They may also be entitled to discovery on that claim from other persons and entities that have knowledge about it so that they can present their case with respect to the Rule 3018 motion. So my understanding is, and I want to go through the issues and then we can also talk about any other issues. But the deposition issues that we need to come up with a day and time for your individual deposition, you as Mr. Donovan. They're entitled to your deposition and they're entitled to ask anything about this claim that you've asserted, okay?

* * *

**THE COURT:** And they're entitled to ask questions, and they're entitled to see if there are any documents that would say something in addition to or contrary to what you have given to them. They're allowed to see whether, for example, I'm making this up, in 2016 there's something that says, "Oh, you

know what? We're not doing the 2010 deal anymore. It's off. You didn't take your money. We're starting afresh." They're entitled to look for that stuff. It may not be there, and that's what you're telling me, it's not going to be there, but they're entitled to look to see if there's anything additional. And the question is, where should they look and what documents are there? It sounds like you've given them everything that you're aware of, but if they want to waste their time and look through 100 boxes of documents, why shouldn't they be able to do that?

* * *

**THE COURT:** The approach may be counterproductive, but it's an approach that's permitted. Okay, so they're permitted to explore and look for documents. I don't know that they're going to find anything, and if they don't, then we'll have the documents that we have. I guess one question I do have, Mr. DeGrossier, is as I recall, most of the objection was legal in nature and not necessarily factual in nature. So what documents do you really need? What are you really looking for?

**MR. DEGROSSIER:** Mark DeGrossier, for the record. So part of the problem is we made a statute of frauds argument, right, and so if there are writings out there that somehow would satisfy the minimum requirements of the statute of frauds under Massachusetts law, then I need to know that, right? And if it's just the two emails or the handful of emails that we have, that's fine. I just need to know that's the world.

**MR. DEGROSSIER:** Also, I would say with respect to the hundred boxes of documents, it's not exactly a futile effort, nor — contrary to Mr. Donovan's assertions — is there nothing related to his employment agreement in there. As Your Honor knows, if you have a financial statement that doesn't show a substantial potential obligation of a company, that in itself, in my mind at least, is evidence that that may not be an obligation of that company, right, which is why we are going to get into Mr. O'Malley, and why we want to talk to Mr. O'Malley.

**MR. DEGROSSIER:** But also, if the company has historical financials — and I think they do in those hundred boxes — we are entitled to look at those. We're entitled to see what they say, right? We don't have those. We have the — as Your Honor knows, what we said, we agreed to limit those for purposes of a sale to kind of more current stuff, right? That's what would matter to a purchaser. But going back now to look at this claim — if I have a holding company or BEH, an operating company, with X amount of revenue, right, and I suddenly have a several hundred thousand dollar claim, that seems to me that that should be on the financials that are pulled up into the tax returns. And if they're not, I think that's evidence that we all would want to look at and present to the court. I just don't know what's there. I don't know what those historical financials say. That's just one example.

* * *

**THE COURT:** Now, I appreciate that, but the way the process works, once someone files a claim, once someone calls an objection to a motion, what someone calls a motion, is that it creates a contested matter and discovery is permitted and the other side's allowed to test your theories, they're allowed to see if there's anything that supports their theory of the case, and they're allowed to get documents and take that position. So that is going to happen here. And I'm going to permit the debtors to go look in those hundred boxes of documents at their expense. It needs to be during business hours so that you're there or somebody's there, and they can't come at 10 o'clock at night to look at stuff. It's got to be during business hours. They can flag pages that they want copied. It's at their expense. You're entitled to know what pages they flagged, so they need to tell you that.

* * *

**THE COURT:** Should agree on a date. It can be in Massachusetts. It could be at Norwood at your place, or if they have a law firm that's close to there and they want a conference room, whatever they want to do, but it will be not down here. It will be up in Norwood. And they're entitled to go through documents with you and ask you questions about them. And you're entitled to be represented if you wish to be, but they're entitled to that deposition.

* * *

**MR. DEGROSSIER:** Sorry, Your Honor, I think the last issue is the O'Malley issue. I just want to clarify one thing. With respect to documents then that are quote BEH documents, we will obviously accept the offer to review the \[boxes\]. I am concerned about the introducing documents, because it has happened here where I've been handed a stack of documents as I'm preparing to argue. And I think Your Honor was clear, and I appreciate Your Honor's words on that, that neither side is going to be permitted to do that. So if a document is not produced to us in response to this, it should not be considered.

**THE COURT:** Yes. I think that solves a lot of problems. And I'm not going to take documents that have not been produced to the other side, from either party, any side.

* * *

**MR. DONOVAN:** Thank you.

**MR. DEGROSSIER:** And, Your Honor, I do want to clarify one thing. And it may already be known based on reviews of the apps, but there obviously was considerable discovery in connection with the Scintilla claim and Scintilla litigation before that was resolved through mediation. And so I just want to — in case anyone feels pressed upon, that was a considerable amount of money, time, expense — everything was spent in connection with that. So just to be clear, the discovery is — there was ample discovery.

# EXHIBIT C

Alvarez & Marsal time records: D.I. 288-2 (March–April 2026) and D.I. 364-2 (May–July 2026)

# Exhibit A

## Statements of Fees

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 3/19/2026 | Coloma, Paul | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $270.00 | ADM |
| 3/19/2026 | Charlotin, Carl | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $165.00 | ADM |
| 3/20/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss MII workstreams | 0.1 | $140.00 | ADM |
| 3/20/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss MII workstreams | 0.1 | $90.00 | ADM |
| 3/23/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss retention application process | 0.3 | $420.00 | ADM |
| 3/27/2026 | Coloma, Paul | Set up Relativity access provided by MW | 0.5 | $450.00 | ADM |
| 3/30/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss changes to retention application | 0.3 | $420.00 | ADM |
| 4/6/2026 | Coloma, Paul | Read correspondence re: Infinidat sale | 0.1 | $90.00 | AS |
| 4/8/2026 | Roberts, Mark | Review communications with debtor on the potential liquidation of certain assets in the case. | 0.3 | $420.00 | AS |
| 4/29/2026 | Roberts, Mark | Review the motion to use cash collateral | 0.4 | $560.00 | CASH |
| 4/30/2026 | Coloma, Paul | Review cash collateral motion and declaration of Boaz Toshav in support of motion | 0.3 | $270.00 | CASH |
| 4/22/2026 | Roberts, Mark | Prepare potential witness testimony and attend court hearing. Follow up conversations with counsel on the case | 1.2 | $1,680.00 | CRT |
| 3/30/2026 | Roberts, Mark | Attempt to reach out to Debtor financial advisor to discuss potential plan solutions and discuss DIP. Develop emails and respond accordingly | 0.3 | $420.00 | DEB |
| 3/30/2026 | Roberts, Mark | Review proposed DIP and begin analysis | 0.8 | $1,120.00 | DIP |
| 4/1/2026 | Roberts, Mark | Continue to review DIP financing issues and reviewing the case in order to develop cost effective plan and related negotiations | 1.0 | $1,400.00 | DIP |
| 4/27/2026 | Roberts, Mark | Briefly review proposed cash collateral order and discuss with counsel. | 0.2 | $280.00 | DIP |
| 3/18/2026 | Coloma, Paul | Analyze chronology of key events | 0.4 | $360.00 | FA |
| 3/18/2026 | Coloma, Paul | Analyze inventory of documents | 0.9 | $810.00 | FA |
| 3/18/2026 | Charlotin, Carl | Analyze document production re: historical financials | 2.4 | $1,320.00 | FA |
| 3/18/2026 | Charlotin, Carl | Analyze document production re: corporate structure | 1.1 | $605.00 | FA |
| 3/19/2026 | Charlotin, Carl | Analyze document production re: asset valuation | 0.9 | $495.00 | FA |
| 3/20/2026 | Coloma, Paul | Analyze debtor bank statements | 1.2 | $1,080.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 3/20/2026 | Coloma, Paul | Analyze debtor portfolio company bank statements | 0.8 | $720.00 | FA |
| 3/20/2026 | Coloma, Paul | Review debtor tax returns and audits | 0.5 | $450.00 | FA |
| 3/20/2026 | Coloma, Paul | Review debtor portfolio company financial statements, valuation reports, tax returns | 1.1 | $990.00 | FA |
| 3/20/2026 | Coloma, Paul | Correspondence re: various asset valuation reports w. C. Charlotin (A&M) | 0.2 | $180.00 | FA |
| 3/20/2026 | Coloma, Paul | Check summary asset valuation table provided by C. Charlotin (A&M) | 0.4 | $360.00 | FA |
| 3/20/2026 | Charlotin, Carl | Prepare exhibit re: MII's holdings | 2.1 | $1,155.00 | FA |
| 3/23/2026 | Coloma, Paul | Correspondence re: relationship between debtors and debtor affiliates w. MW | 0.2 | $180.00 | FA |
| 3/24/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss asset valuation reports | 0.2 | $280.00 | FA |
| 3/24/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss asset valuation reports | 0.2 | $180.00 | FA |
| 3/24/2026 | Coloma, Paul | Correspondence re: various asset valuation reports w. MW | 0.2 | $180.00 | FA |
| 3/24/2026 | Charlotin, Carl | Prepare exhibit re: MII's holdings | 0.2 | $110.00 | FA |
| 3/27/2026 | Coloma, Paul | Analyze Scintilla production files including loan agreements and amendments | 1.7 | $1,530.00 | FA |
| 3/27/2026 | Coloma, Paul | Analyze loan documentation executed post removal of previous board members via proxy | 0.5 | $450.00 | FA |
| 3/27/2026 | Coloma, Paul | Check payments made to insiders | 0.4 | $360.00 | FA |
| 4/2/2026 | Coloma, Paul | Check case discovery requests provided by MW | 0.2 | $180.00 | FA |
| 4/6/2026 | Coloma, Paul | Correspondence re: updating plan term sheet w. MW | 0.1 | $90.00 | FA |
| 4/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM, JB - DH partial) to discuss case updates | 0.6 | $840.00 | FA |
| 4/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss liquidating plan terms | 0.3 | $420.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM, JB - DH partial) to discuss case updates | 0.6 | $540.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss liquidating plan terms | 0.3 | $270.00 | FA |
| 4/7/2026 | Coloma, Paul | Participate on call with McGuireWoods team (JB) to discuss updates to liquidating plan terms | 0.3 | $270.00 | FA |
| 4/16/2026 | Coloma, Paul | Check docket for updates | 0.3 | $270.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/17/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss case updates | 0.4 | $560.00 | FA |
| 4/17/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss case updates | 0.4 | $360.00 | FA |
| 4/17/2026 | Coloma, Paul | Correspondence re: supplemental declaration on retention application with McGuireWoods | 0.1 | $90.00 | FA |
| 4/20/2026 | Coloma, Paul | Review chronology of events provided by McGuireWoods | 0.2 | $180.00 | FA |
| 4/22/2026 | Roberts, Mark | Read correspondences from portfolio company related to potential conflict of interest issues discussed with current CRO at the debtor. | 0.1 | $140.00 | FA |
| 4/22/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss retention hearing updates and discuss next steps | 0.3 | $420.00 | FA |
| 4/22/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss retention hearing updates and discuss next steps | 0.3 | $270.00 | FA |
| 4/22/2026 | Coloma, Paul | Read correspondence from portfolio company related to potential conflict of interest issues discussed with current CRO at the debtor | 0.1 | $90.00 | FA |
| 4/22/2026 | Coloma, Paul | Research potential conflict of interests with insiders | 0.3 | $270.00 | FA |
| 4/23/2026 | Coloma, Paul | Read updated plan term sheet provided by McGuireWoods (AM) | 0.2 | $180.00 | FA |
| 4/27/2026 | Coloma, Paul | Review draft interim cash collateral order | 0.3 | $270.00 | FA |
| 4/29/2026 | Coloma, Paul | Review 2004 motion | 0.2 | $180.00 | FA |
| 4/29/2026 | Coloma, Paul | Review document review findings provided by MW | 0.8 | $720.00 | FA |
| 3/30/2026 | Grussing, Bernice | Finalize billing framework for bankruptcy, create database for exhibits, review docket for first day items | 0.9 | $337.50 | FEE |
| 3/24/2026 | Coloma, Paul | Reconcile payments made within one year to payments shown in bank statements | 1.8 | $1,620.00 | LIAB |
| 3/27/2026 | Coloma, Paul | Analyze secured debt claim amount | 0.3 | $270.00 | LIAB |
| 3/31/2026 | Roberts, Mark | Review issues around alleged senior debt. Discuss with counsel. | 0.5 | $700.00 | LIAB |
| 4/29/2026 | Roberts, Mark | Review draft complaint against lender and comment. | 0.5 | $700.00 | LIT |
| 4/6/2026 | Coloma, Paul | Begin developing liquidating plan terms | 0.2 | $180.00 | POR |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/8/2026 | Roberts, Mark | Review potential strategy behind potential negotiations of a successful POR. Review potential terms and begin to draft term sheet. | 1.0 | $1,400.00 | POR |
| 4/10/2026 | Coloma, Paul | Develop proposed plan term sheet; correspondence related thereto | 0.5 | $450.00 | POR |
| 3/18/2026 | Grussing, Bernice | Process conflict details with legal, review with team | 2.4 | $900.00 | RET |
| 3/23/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss retention application process | 0.3 | $270.00 | RET |
| 3/27/2026 | Coloma, Paul | Update retention application | 0.8 | $720.00 | RET |
| 3/30/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss changes to retention application | 0.3 | $270.00 | RET |
| 3/30/2026 | Coloma, Paul | Update retention application | 0.4 | $360.00 | RET |
| 3/31/2026 | Coloma, Paul | Update retention application for comments provided by MW | 0.3 | $270.00 | RET |
| 4/1/2026 | Coloma, Paul | Update retention application with comments provided by A&M internal counsel | 0.3 | $270.00 | RET |
| 4/15/2026 | Coloma, Paul | Update retention application | 0.3 | $270.00 | RET |
| 4/16/2026 | Coloma, Paul | Update retention application for comments received from US Trustee | 0.4 | $360.00 | RET |
| 4/27/2026 | Grussing, Bernice | Pull raw dataset and send to team, review docket for retention order | 0.2 | $75.00 | RET |
| 3/18/2026 | Coloma, Paul | Analyze docket entries including SOFAs, schedules and statements | 1.5 | $1,350.00 | SOFA |
| 3/24/2026 | Coloma, Paul | Summarize differences between payments made within one year shown in SOFA and payments shown in bank statements | 0.3 | $270.00 | SOFA |
| 4/6/2026 | Coloma, Paul | Correspondence re: plan term sheet with McGuireWoods (DH, JB) and A&M (MR) | 0.3 | $270.00 | UCC |
| 4/9/2026 | Coloma, Paul | Review proposed scheduling order | 0.2 | $180.00 | UCC |
| 4/21/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss UCC meeting agenda topics | 0.5 | $700.00 | UCC |
| 4/21/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to discuss various topics | 0.9 | $1,260.00 | UCC |
| 4/21/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods team (DH, AM) to discuss UCC meeting agenda topics | 0.5 | $450.00 | UCC |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 4/21/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to discuss various topics | 0.9 | $810.00 | UCC |
| 4/30/2026 | Roberts, Mark | Prepare for and attend UCC Committee meeting on the status of the case and strategy thereto | 0.9 | $1,260.00 | UCC |
| 4/30/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss research requests from UCC committee | 0.1 | $140.00 | UCC |
| 4/30/2026 | Coloma, Paul | Prepare for and attend UCC Committee meeting on the status of the case and strategy thereto | 0.9 | $810.00 | UCC |
| 4/30/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss research requests from UCC committee | 0.1 | $90.00 | UCC |
| | | **Total Fees** | **47.0** | **$43,612.50** | |

**Exhibit A**

**Statements of Fees**

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/1/2026 | Coloma, Paul | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $270.00 | FA |
| 5/1/2026 | Coloma, Paul | Check production files to identify bank account statements to reconcile to schedules and statements | 1.6 | $1,440.00 | FA |
| 5/1/2026 | Coloma, Paul | Review UCC objection to Scintilla's Rule 2004 motion | 0.2 | $180.00 | LIT |
| 5/1/2026 | Charlotin, Carl | Participate on call with A&M team (PC, CC) to discuss MII workstreams | 0.3 | $165.00 | ADM |
| 5/1/2026 | Charlotin, Carl | Analyze Relativity contents re: bank statements | 0.9 | $495.00 | FA |
| 5/4/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM) to discuss various topics | 0.6 | $840.00 | UCC |
| 5/4/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM) to discuss various topics | 0.6 | $540.00 | UCC |
| 5/4/2026 | Coloma, Paul | Summarize list of missing information not yet provided to UCC for purposes of requesting additional information to Debtors' CRO and banker | 1.2 | $1,080.00 | FA |
| 5/4/2026 | Coloma, Paul | Summarize discrepancies in filed documents for purposes of requesting additional information from Debtors' CRO and banker | 0.4 | $360.00 | FA |
| 5/4/2026 | Coloma, Paul | Correspondence requesting additional information from Debtors' CRO and banker | 0.2 | $180.00 | FA |
| 5/5/2026 | Roberts, Mark | Review pleadings related to case and communicate with counsel regarding UCC workstreams. | 0.3 | $420.00 | FA |
| 5/6/2026 | Roberts, Mark | Review additional documents related to case and develop additional list of information needed for the case. | 0.5 | $700.00 | FA |
| 5/6/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), Daniel Sasson, JR Manning re: incremental requests for information needed to respond to cash collateral motion | 0.5 | $700.00 | FA |
| 5/6/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss information needed for response to cash collateral motion | 0.2 | $280.00 | FA |
| 5/6/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), Daniel Sasson, JR Manning re: incremental requests for information needed to respond to cash collateral motion | 0.5 | $450.00 | FA |
| 5/6/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss information needed for response to cash collateral motion | 0.2 | $180.00 | FA |
| 5/6/2026 | Coloma, Paul | Read correspondence re: case updates provided by McGuireWoods | 0.4 | $360.00 | FA |
| 5/6/2026 | Coloma, Paul | Review analyst research reports on eToro to assess timing of share sales | 0.5 | $450.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss findings from analyst research reports on eToro to assess timing of share sales | 0.2 | $280.00 | FA |
| 5/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss findings from analyst research reports on eToro to assess timing of share sales | 0.2 | $180.00 | FA |
| 5/7/2026 | Coloma, Paul | Analyze documentation provided in discovery to back Scintilla claim amount | 0.5 | $450.00 | LIAB |
| 5/7/2026 | Coloma, Paul | Correspondence requesting documentation backing Scintilla claim amount with CRO | 0.2 | $180.00 | LIAB |
| 5/8/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss share sale transactions and related issues | 0.2 | $280.00 | FA |
| 5/8/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss share sale transactions and related issues | 0.2 | $180.00 | FA |
| 5/8/2026 | Coloma, Paul | Correspondence requesting support for senior secured claim from CRO | 0.3 | $270.00 | LIAB |
| 5/8/2026 | Coloma, Paul | Correspondence discussing various matters with McGuireWoods | 0.4 | $360.00 | FA |
| 5/8/2026 | Coloma, Paul | Check proofs of claim provided by McGuireWoods | 0.1 | $90.00 | LIAB |
| 5/11/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss draft complaint | 0.1 | $140.00 | LIT |
| 5/11/2026 | Coloma, Paul | Read draft complaint | 0.3 | $270.00 | LIT |
| 5/11/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss draft complaint | 0.1 | $90.00 | LIT |
| 5/12/2026 | Coloma, Paul | Read 2004 discovery motion provided by McGuireWoods | 0.2 | $180.00 | LIT |
| 5/12/2026 | Coloma, Paul | Read correspondence regarding matters concerning D&O insurance claims provided by McGuireWoods | 0.3 | $270.00 | FA |
| 5/13/2026 | Coloma, Paul | Read correspondence regarding challenge period issues provided by McGuireWoods | 0.2 | $180.00 | FA |
| 5/13/2026 | Coloma, Paul | Summarize relevant information in production files for purposes of allowing valuation team to assess insolvency | 0.5 | $450.00 | VAL |
| 5/14/2026 | Roberts, Mark | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC | 0.9 | $1,260.00 | VAL |
| 5/14/2026 | Coloma, Paul | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC | 0.9 | $810.00 | VAL |
| 5/14/2026 | Coloma, Paul | Reconcile MII expenses paid since January 2025 to bank statements | 1.7 | $1,530.00 | FA |
| 5/14/2026 | Coloma, Paul | Correspondence with CRO Dan Sasson regarding discrepancies in MII expenses and bank statements | 0.2 | $180.00 | FA |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/14/2026 | Hurley, Stephen | Review draft complaint. | 0.5 | $412.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $742.50 | VAL |
| 5/14/2026 | Russell, Kimberly | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $967.50 | VAL |
| 5/14/2026 | Bresnahan, Thomas | Participate on call with A&M team (MR, KR, TB, PC, SH) and McGuireWoods to discuss preparation of report on behalf of UCC. | 0.9 | $832.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Download and review document production on internal Box site. | 1.1 | $907.50 | VAL |
| 5/14/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.6 | $495.00 | VAL |
| 5/15/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) regarding discrepancies in MII expenses and bank statements | 0.3 | $420.00 | FA |
| 5/15/2026 | Coloma, Paul | Check MII tax returns for 2022 and 2023; request MII tax returns for 2024 from CRO Dan Sasson | 0.4 | $360.00 | FA |
| 5/15/2026 | Coloma, Paul | Check supporting information provided by CRO Dan Sasson regarding MII expenses paid in 2025 | 0.4 | $360.00 | FA |
| 5/15/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) regarding discrepancies in MII expenses and bank statements | 0.3 | $270.00 | FA |
| 5/15/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding discrepancies in MII expenses and bank statements | 0.2 | $180.00 | FA |
| 5/15/2026 | Charlotin, Carl | Analyze Relativity contents re: DIP transaction | 0.3 | $165.00 | FA |
| 5/15/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss and assemble information request list required to complete analysis. | 1.2 | $990.00 | VAL |
| 5/15/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss and assemble information request list required to complete analysis. | 1.2 | $1,110.00 | VAL |
| 5/18/2026 | Coloma, Paul | Correspondence providing source documentation to A&M team (SH) for purposes of preparing report on behalf of UCC | 0.2 | $180.00 | VAL |
| 5/18/2026 | Coloma, Paul | Check proposed revised budget on behalf of McGuireWoods; correspondence regarding revised budget with McGuireWoods | 0.3 | $270.00 | CASH |
| 5/18/2026 | Bresnahan, Thomas | Review of certain documents and materials provided to the court in connection with bankruptcy procedures, including Debtor Response to the UCC | 1.4 | $1,295.00 | VAL |
| 5/18/2026 | Hurley, Stephen | Work on solvency report outline. | 1.1 | $907.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/18/2026 | Russell, Kimberly | Review of certain documents and materials provided to the court in connection with bankruptcy procedures, including Debtor Response to the UCC | 1.5 | $1,612.50 | VAL |
| 5/19/2026 | Coloma, Paul | Correspondence re: case strategy and updates with McGuireWoods | 0.2 | $180.00 | FA |
| 5/19/2026 | Hurley, Stephen | Work on solvency report outline. | 1.2 | $990.00 | VAL |
| 5/20/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss summarizing claim register | 0.2 | $280.00 | LIAB |
| 5/20/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss summarizing claim register | 0.2 | $180.00 | LIAB |
| 5/20/2026 | Coloma, Paul | Analyze claims register | 0.4 | $360.00 | LIAB |
| 5/20/2026 | Bresnahan, Thomas | Review MII historical tax returns for the fiscal years ended December 31, 2021 - 2023 | 1.3 | $1,202.50 | VAL |
| 5/21/2026 | Coloma, Paul | Correspondence re: objections to cash collateral motion with McGuireWoods | 0.2 | $180.00 | FA |
| 5/21/2026 | Coloma, Paul | Correspondence discussing recovery waterfall with McGuireWoods | 0.1 | $90.00 | FA |
| 5/21/2026 | Coloma, Paul | Analyze proofs of claim | 0.5 | $450.00 | LIAB |
| 5/21/2026 | Coloma, Paul | Participate on call with A&M Team (PC, CC - PC Partial) and McGuireWoods (JB) to discuss summarizing and categorizing of claims | 0.2 | $180.00 | LIAB |
| 5/21/2026 | Charlotin, Carl | Participate on call with A&M Team (PC, CC - PC Partial) and McGuireWoods (JB) to discuss summarizing and categorizing of claims | 0.3 | $165.00 | LIAB |
| 5/21/2026 | Charlotin, Carl | Analyze proof of claims | 0.7 | $385.00 | LIAB |
| 5/21/2026 | Hurley, Stephen | Work on solvency report outline. | 1.4 | $1,155.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review summary and inventory of debtor production regarding files received in connection with initial discovery process (refer to the file titled "Inventory and Summaries - Debtor Production - 4-17-2026 (1).xlsx") | 0.4 | $370.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review draft complaint | 0.8 | $740.00 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review Fair Market Value Opinion Letter for Boston Executive Helicopters prepared by Business Presentation Solutions as of 5/1/2024, Aircraft Bluebook print-out dated 5/16/2024 for owned aircraft (refer to the files titled (i) "MII002432.pdf" (ii) "MII002522", and (iii) "MII002523") | 0.7 | $647.50 | VAL |
| 5/21/2026 | Bresnahan, Thomas | Review Asset Sale and Paydown Agreement dated 8/1/2025 and analyze terms and features | 1.7 | $1,572.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/22/2026 | Coloma, Paul | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC | 0.4 | $360.00 | VAL |
| 5/22/2026 | Coloma, Paul | Correspondence re: updates to preparation of report on behalf of UCC with McGuireWoods, A&M (KR) | 0.2 | $180.00 | VAL |
| 5/22/2026 | Coloma, Paul | Correspondence discussing sourcing of documentation necessary for preparation of report on behalf of UCC with A&M team (SH) | 0.1 | $90.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review MII's various facility / loan agreements (including amendments, as applicable) as of December 2019, February 2023, August 2023, and December 2024 Omnibus | 2.0 | $1,850.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.3 | $247.50 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (SH, KR, TB) to discuss document production | 0.5 | $412.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, KR, TB) to discuss document production | 0.5 | $462.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review the Proof of Claim (POC) and related addendum filed on 5/15/2026 for MII (refer to the file titled "Michal - Scintilla POC.pdf") | 0.4 | $370.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review Boaz Toshav Declaration file on 2/25/2026 (refer to the file titled "Docket 25 - Boaz Toshav declaration.pdf") | 0.7 | $647.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Review chronology and timeline of key events (refer to the file titled "MII - Document Share 2-27-2026 - Chronology of Key Events.docx") | 0.6 | $555.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Review document production on internal Box site and create internal document index | 2.0 | $1,650.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC. | 0.4 | $330.00 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB, SH, PC) to discuss data sourcing for preparation of report on behalf of UCC. | 0.4 | $370.00 | VAL |
| 5/22/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss data sourcing. | 0.5 | $412.50 | VAL |
| 5/22/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss data sourcing. | 0.5 | $462.50 | VAL |
| 5/26/2026 | Roberts, Mark | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $700.00 | VAL |
| 5/26/2026 | Coloma, Paul | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $450.00 | VAL |
| 5/26/2026 | Hurley, Stephen | Review document production on internal Box site. | 0.7 | $577.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/26/2026 | Hurley, Stephen | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $412.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $537.50 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Participate on call with A&M team (MR, KR, TB, PC, SH), McGuireWoods, Faegre Drinker to discuss preparation of report on behalf of UCC | 0.5 | $462.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $330.00 | VAL |
| 5/26/2026 | Russell, Kimberly | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $430.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, SH, TB) to discuss Russell expert report | 0.4 | $370.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review internally prepared historical financial statements of Boston Executive Helicopters LLC (FY 2023 - FY 2024 and YTD period ending July 31, 2025); refer to the files titled "MII022221", "MII022223", "MII022224" and "MII005552" | 0.8 | $740.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review "BEH Valuation Analysis Highly Confidential" report dated May 2025 (refer to the file titled "MII014378") | 0.4 | $370.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review certain email correspondence and activity between Mr. Toshav and outside counsel re: BEH - Background, Handover, and Next Steps | 0.2 | $185.00 | VAL |
| 5/26/2026 | Bresnahan, Thomas | Review Asset Sale and Paydown Agreement dated 8/1/2025 (refer to the file titled "MII037704.pdf") and develop counter arguments to proposed benefits received | 1.0 | $925.00 | VAL |
| 5/26/2026 | Hurley, Stephen | Review document production on internal Box site and draft additional information request | 1.9 | $1,567.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Spread financials for Boston Executive Helicopter | 0.5 | $412.50 | VAL |
| 5/26/2026 | Hurley, Stephen | Perform transaction screening for aviation-related target companies | 0.5 | $412.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Review of certain documents and materials provided to the court in connection with bankruptcy procedures | 1.3 | $1,397.50 | VAL |
| 5/26/2026 | Russell, Kimberly | Review document production on internal Box site | 1.8 | $1,935.00 | VAL |
| 5/26/2026 | Russell, Kimberly | Review of certain documents flagged by team as relevant to solvency analysis | 1.5 | $1,612.50 | VAL |
| 5/27/2026 | Roberts, Mark | Attend hearing related to the case. | 1.0 | $1,400.00 | CRT |
| 5/27/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss summary of claim register | 0.3 | $420.00 | FA |
| 5/27/2026 | Roberts, Mark | Review Scintilla POC | 0.2 | $280.00 | LIAB |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/27/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss summary of claim register | 0.3 | $270.00 | LIAB |
| 5/27/2026 | Charlotin, Carl | Analyze proof of claims | 0.3 | $165.00 | LIAB |
| 5/27/2026 | Hurley, Stephen | Spread financials for Boston Executive Helicopter | 0.9 | $742.50 | VAL |
| 5/27/2026 | Hurley, Stephen | Perform transaction screening for aviation-related target companies | 1.9 | $1,567.50 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review document production on internal Box site. | 0.6 | $555.00 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review MII's various facility / loan agreements (including amendments, as applicable) as of December 2019, February 2023, August 2023, and December 2024 Omnibus | 0.9 | $832.50 | VAL |
| 5/27/2026 | Bresnahan, Thomas | Review of MII Aviation Schedule of Assets and Liabilities court filing (refer to file titled "Docket 8 - MII Aviation Schedules.pdf") | 1.2 | $1,110.00 | VAL |
| 5/28/2026 | Roberts, Mark | Review Scintilla complaint and related schedules and comment accordingly | 0.5 | $700.00 | LIT |
| 5/28/2026 | Coloma, Paul | Analyze Scintilla payoff amount from proof of claim; compare to July 2025 payoff amount | 0.7 | $630.00 | LIAB |
| 5/28/2026 | Coloma, Paul | Analyze Scintilla debt documentation for support of payoff amount from proof of claim | 0.8 | $720.00 | LIAB |
| 5/28/2026 | Coloma, Paul | Correspondence discussing matters concerning debtor cash with McGuireWoods | 0.2 | $180.00 | FA |
| 5/28/2026 | Hurley, Stephen | Work on valuation analysis for Boston Executive Helicopter | 1.4 | $1,155.00 | VAL |
| 5/28/2026 | Hurley, Stephen | Participate on call with A&M team (SH, TB) to discuss BEH valuation analysis | 1.2 | $990.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, TB) to discuss BEH valuation analysis | 1.2 | $1,110.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Review draft complaint and issues related to avoidance and recovery claims | 0.8 | $740.00 | VAL |
| 5/28/2026 | Bresnahan, Thomas | Preparation of Net Asset Value (NAV) schedule for MII and MII Aviation for purposes of evaluating solvency | 2.7 | $2,497.50 | VAL |
| 5/28/2026 | Hurley, Stephen | Review MII loan agreements | 0.9 | $742.50 | VAL |
| 5/29/2026 | Roberts, Mark | Review Scintilla credit bid filing and related details | 0.5 | $700.00 | AS |
| 5/29/2026 | Coloma, Paul | Read draft complaint | 0.3 | $270.00 | LIT |
| 5/29/2026 | Hurley, Stephen | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $742.50 | VAL |
| 5/29/2026 | Russell, Kimberly | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $967.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, SH, TB) to discuss reasonably equivalent value analysis and BEH valuation | 0.9 | $832.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation methodology | 1.2 | $990.00 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation implementation | 1.1 | $907.50 | VAL |
| 5/29/2026 | Hurley, Stephen | Work on MII interest expense calculation and interpret results | 1.6 | $1,320.00 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Compilation and organization of available information / supporting documentation to assess estimated value of MII's various investment holdings as of date of Paydown Agreement | 1.7 | $1,572.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review various Proofs of Claim schedules for identified unsecured creditors | 0.9 | $832.50 | VAL |
| 5/29/2026 | Bresnahan, Thomas | Review certain declarations of Mr. Boaz Toshav and filings for DIP Financing (refer to Docket 190 and Docket 189, respectively) | 1.8 | $1,665.00 | VAL |
| 5/30/2026 | Coloma, Paul | Review bid procedures motion | 0.3 | $270.00 | FA |
| 6/1/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $280.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss process to validate senior secured claim | 0.2 | $180.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation | 0.4 | $360.00 | VAL |
| 6/1/2026 | Coloma, Paul | Analyze legal documentation supporting Scintilla payoff amount | 1.6 | $1,440.00 | LIAB |
| 6/1/2026 | Coloma, Paul | Analyze amortization and interest rate trackers provided by Scintilla supporting claim amount | 0.5 | $450.00 | LIAB |
| 6/1/2026 | Hurley, Stephen | Work on MII interest expense calculation | 1.1 | $907.50 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on call with A&M team (KR, TB, PC, SH), McGuireWoods to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/1/2026 | Hurley, Stephen | Participate on internal call with A&M team (KR, TB, SH - KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $412.50 | VAL |
| 6/1/2026 | Russell, Kimberly | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.40 | $430.00 | VAL |
| 6/1/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (KR, TB, SH- KR partial) to discuss valuation of MII and MII Aviation. | 0.5 | $462.50 | VAL |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/2/2026 | Coloma, Paul | Analyze discrepancies in Scintilla payoff amount based on interest rate trackers and legal documentation | 0.6 | $540.00 | LIAB |
| 6/2/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (SH, TB) to discuss analysis of Paydown Agreement | 0.6 | $555.00 | VAL |
| 6/2/2026 | Hurley, Stephen | Participate on internal call with A&M team (SH, TB) to discuss analysis of Paydown Agreement | 0.6 | $495.00 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report reasonably equivalent value section | 1.1 | $907.50 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report transaction analysis section | 1.5 | $1,237.50 | VAL |
| 6/2/2026 | Hurley, Stephen | Work on MII interest expense calculation | 1.8 | $1,485.00 | VAL |
| 6/3/2026 | Coloma, Paul | Analyze senior secured claim accrued interest amounts and related equity kicker components | 1.7 | $1,530.00 | LIAB |
| 6/3/2026 | Coloma, Paul | Correspondence discussing matters concerning senior secured claim accrued interest amounts with McGuireWoods | 0.2 | $180.00 | LIAB |
| 6/3/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB SH) and McGuireWoods to discuss information provided in discovery related to Boston Executive Helicopters | 1.1 | $1,017.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Participate on call with A&M team (TB SH) and McGuireWoods to discuss information provided in discovery related to Boston Executive Helicopters | 1.1 | $907.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report reasonably equivalent value section | 1.3 | $1,072.50 | VAL |
| 6/3/2026 | Hurley, Stephen | Participate on internal call with A&M team (SH, TB) to discuss BEH valuation | 0.6 | $495.00 | VAL |
| 6/3/2026 | Bresnahan, Thomas | Participate on internal call with A&M team (SH, TB) to discuss BEH valuation | 0.6 | $555.00 | VAL |
| 6/3/2026 | Hurley, Stephen | Work on MII and MII Aviation solvency report transaction analysis section | 1.2 | $990.00 | VAL |
| 6/4/2026 | Coloma, Paul | Review draft mediation statement | 0.4 | $360.00 | LIT |
| 6/4/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding calculation of senior secured claim accrued interest amounts | 0.2 | $180.00 | LIAB |
| 6/4/2026 | Coloma, Paul | Update senior secured claim accrued interest amounts and related equity kicker components; provide updated calculation to McGuireWoods | 0.3 | $270.00 | LIAB |
| 6/4/2026 | Coloma, Paul | Summarize entries for first fee application | 0.5 | $450.00 | FEE |
| 6/4/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss first fee application | 0.3 | $270.00 | FEE |
| 6/4/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss first fee application | 0.3 | $420.00 | FEE |
| 6/4/2026 | Coloma, Paul | Prepare first fee application | 0.9 | $810.00 | FEE |
| 6/5/2026 | Coloma, Paul | Review claim objections against unsecured creditors | 0.4 | $360.00 | LIAB |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/5/2026 | Bresnahan, Thomas | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $370.00 | VAL |
| 6/5/2026 | Hurley, Stephen | Participate on call with A&M team (TB, SH), McGuireWoods (ES, MM) to discuss valuation of MII and MII Aviation. | 0.4 | $330.00 | VAL |
| 6/8/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $280.00 | LIT |
| 6/8/2026 | Roberts, Mark | Review emails related to the case and respond accordingly | 0.3 | $420.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss items required for mediation | 0.2 | $180.00 | LIT |
| 6/8/2026 | Coloma, Paul | Participate on call with A&M team (PC) and McGuireWoods team (AM) regarding treatment of senior secured claim accrued interest amounts | 0.2 | $180.00 | LIT |
| 6/8/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and transaction analysis | 1.0 | $925.00 | VAL |
| 6/9/2026 | Coloma, Paul | Review Moshe Yanai objection to Scintilla claim; recalculate senior secured claim accrued interest and principal for reduction of conveyed property; correspondence with McGuireWoods discussing updates to senior secured claim | 0.7 | $630.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Review answer and affirmative defenses filed by Scintilla; provide files showing Scintilla advances to A&M team (SH) | 0.6 | $540.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Recalculate unsecured claims originally calculated with multiplier of original amount loaned by using alternative interest rate | 0.9 | $810.00 | LIAB |
| 6/9/2026 | Coloma, Paul | Summarize claims and settlement amounts received from parties subject to settlement with Moshe Yanai; recalculate claim amount through settlement date | 0.4 | $360.00 | LIAB |
| 6/9/2026 | Bresnahan, Thomas | Review, edit and draft sections of the experts regarding assessment of reasonably equivalent value and summary transaction analysis | 2.5 | $2,312.50 | VAL |
| 6/9/2026 | Bresnahan, Thomas | Review Recalculation of Scintilla Claim schedule outlining timeline and description of borrowings including drawdowns | 0.5 | $462.50 | VAL |
| 6/9/2026 | Hurley, Stephen | Review Answers and Affirmative Defenses filed by Scintilla in response to UCC Complaint | 0.7 | $577.50 | VAL |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss recalculation of claim amounts | 0.4 | $560.00 | LIT |
| 6/10/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to prepare for mediation | 0.8 | $1,120.00 | UCC |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/10/2026 | Roberts, Mark | Review documents related to the upcoming mediation and prepare for mediation. Review analysis and related evidence | 1.4 | $1,960.00 | LIT |
| 6/10/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss recalculation of claim amounts | 0.4 | $360.00 | LIT |
| 6/10/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods team (DH, AM), Faegre Drinker (BF) and members of UCC committee to prepare for mediation | 0.8 | $720.00 | UCC |
| 6/10/2026 | Coloma, Paul | Update senior secured claim accrued interest amounts and related equity kicker components; provide updated calculation to McGuireWoods | 0.2 | $180.00 | LIAB |
| 6/10/2026 | Coloma, Paul | Review documentation prepared in advance of mediation | 0.5 | $450.00 | LIT |
| 6/10/2026 | Coloma, Paul | Update summary claim tracker for expected claim amounts | 0.3 | $270.00 | LIAB |
| 6/10/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 1.8 | $1,665.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Review Answers and Affirmative Defenses filed by Scintilla in response to UCC Complaint | 0.6 | $555.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Participate on call with A&M team (SH, KR, TB) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $370.00 | VAL |
| 6/10/2026 | Hurley, Stephen | Participate on call with A&M team (KR, TB, SH) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $330.00 | VAL |
| 6/10/2026 | Russell, Kimberly | Participate on call with A&M team (TB, SH, KR) and McGuireWoods (ES, MM) to discuss preparation and topics of expert report | 0.4 | $430.00 | VAL |
| 6/10/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding summary transaction analysis | 2.7 | $2,497.50 | VAL |
| 6/10/2026 | Hurley, Stephen | Work on BEH valuation and solvency analysis section of expert report | 1.9 | $1,567.50 | VAL |
| 6/11/2026 | Roberts, Mark | Review and prepare for upcoming mediation. Read several documents and analysis related to mediation and email counsel etc. | 1.2 | $1,680.00 | LIT |
| 6/11/2026 | Roberts, Mark | Prepare for and participate in mediation | 9.1 | $12,740.00 | LIT |
| 6/11/2026 | Coloma, Paul | Attend and participate in mediation; perform supporting calculations during mediation | 4.1 | $3,690.00 | LIT |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/11/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss mediation outcome and next steps | 0.2 | $180.00 | LIT |
| 6/11/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss mediation outcome and next steps | 0.2 | $280.00 | LIT |
| 6/11/2026 | Coloma, Paul | Recalculate Scintilla claim amount based on lender credit documentation; compare to claim amount asserted by Scintilla | 0.8 | $720.00 | LIAB |
| 6/11/2026 | Hurley, Stephen | Work on BEH valuation and solvency analysis section of expert report | 1.9 | $1,567.50 | VAL |
| 6/11/2026 | Hurley, Stephen | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 1.3 | $1,072.50 | VAL |
| 6/11/2026 | Hurley, Stephen | Review, edit and draft sections of the expert report regarding summary transaction analysis | 1.8 | $1,485.00 | VAL |
| 6/11/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding assessment of reasonably equivalent value | 2.2 | $2,035.00 | VAL |
| 6/11/2026 | Bresnahan, Thomas | Review, edit and draft sections of the expert report regarding summary transaction analysis | 2.4 | $2,220.00 | VAL |
| 6/12/2026 | Roberts, Mark | Continue to review mediation term sheet and start penciling out the POR and process going forward to bring case to a close. | 1.6 | $2,240.00 | POR |
| 6/12/2026 | Roberts, Mark | Call with counsel on the status of the mediation and next steps. Discuss outstanding issues. | 0.5 | $700.00 | POR |
| 6/12/2026 | Coloma, Paul | Assist in preparation of first fee application | 0.9 | $810.00 | FEE |
| 6/12/2026 | Coloma, Paul | Start to prepare liquidation analysis for MII Aviation Services and MII | 1.2 | $1,080.00 | POR |
| 6/12/2026 | Grussing, Bernice | Create draft of fee application document; review dataset for errors; pull and review expenses | 2.6 | $975.00 | FEE |
| 6/12/2026 | Grussing, Bernice | Create charts for application and update | 1.4 | $525.00 | FEE |
| 6/12/2026 | Grussing, Bernice | Prepare exhibits for first fee application | 1.6 | $600.00 | FEE |
| 6/13/2026 | Coloma, Paul | Finalize liquidation analysis for MII Aviation Services | 0.6 | $540.00 | POR |
| 6/14/2026 | Coloma, Paul | Finalize liquidation analysis for MII | 1.2 | $1,080.00 | POR |
| 6/15/2026 | Roberts, Mark | Review settlement document and begin working through the drafting of the POR as negotiated. Review elements and begin assisting counsel with plan of reorganization analysis | 1.1 | $1,540.00 | POR |
| 6/15/2026 | Roberts, Mark | Call with counsel on liquidation analysis and assumptions | 0.2 | $280.00 | POR |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/15/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss liquidation analysis assumptions | 0.6 | $840.00 | POR |
| 6/15/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 6/15/2026 | Coloma, Paul | Update liquidation analysis for MII Aviation Services | 2.0 | $1,800.00 | POR |
| 6/15/2026 | Coloma, Paul | Update liquidation analysis for MII | 1.0 | $900.00 | POR |
| 6/15/2026 | Grussing, Bernice | Review current fee status and provide reports to team | 0.3 | $112.50 | FEE |
| 6/16/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis assumptions | 0.6 | $840.00 | POR |
| 6/16/2026 | Roberts, Mark | Review draft Chapter 7 liquidation analysis and comment to team on footnotes and assumptions. Prepare for call with Staff. | 0.4 | $560.00 | POR |
| 6/16/2026 | Roberts, Mark | Review mediation term sheet and comment on POR for counsel. Read drafts and respond accordingly | 1.1 | $1,540.00 | POR |
| 6/16/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 6/16/2026 | Coloma, Paul | Update best interests test for MII Aviation Services | 1.2 | $1,080.00 | POR |
| 6/16/2026 | Coloma, Paul | Update best interests test for MII | 0.9 | $810.00 | POR |
| 6/17/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis | 0.9 | $1,260.00 | POR |
| 6/17/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss liquidation analysis | 0.9 | $810.00 | POR |
| 6/17/2026 | Coloma, Paul | Update liquidation analysis for MII | 2.1 | $1,890.00 | POR |
| 6/17/2026 | Coloma, Paul | Review correspondence relating to litigation matters at BEH | 0.3 | $270.00 | LIT |
| 6/17/2026 | Coloma, Paul | Review correspondence relating to questions of UCC on outcome of mediation and next steps | 0.2 | $180.00 | UCC |
| 6/19/2026 | Coloma, Paul | Review documentation regarding status of various assets and proposed third party stalking horse bid | 0.3 | $270.00 | AS |
| 6/20/2026 | Coloma, Paul | Review draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.5 | $1,350.00 | POR |
| 6/21/2026 | Coloma, Paul | Summarize findings of draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors; provide findings to M. Roberts (A&M) | 0.4 | $360.00 | POR |
| 6/22/2026 | Roberts, Mark | Review the liquidation calculation analysis/updated analysis and comment accordingly | 0.4 | $560.00 | POR |
| 6/22/2026 | Roberts, Mark | Review staff analysis on Scintilla proof of claim and related calculations | 0.9 | $1,260.00 | LIT |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 6/23/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss court hearing updates and next steps | 0.2 | $280.00 | FA |
| 6/23/2026 | Coloma, Paul | Participate in court hearing | 0.3 | $270.00 | CRT |
| 6/23/2026 | Coloma, Paul | Participate on call with Silver Birch, Chipman, McGuireWoods, and Faegre Drinker to discuss asset sale updates | 0.7 | $630.00 | AS |
| 6/23/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss updates to liquidation analysis | 0.2 | $180.00 | POR |
| 6/23/2026 | Coloma, Paul | Update liquidation analysis for MII; MII Aviation Services to match proposed liquidation plan | 0.8 | $720.00 | POR |
| 6/23/2026 | Coloma, Paul | Respond to Scintilla claim reconciliation items | 0.6 | $540.00 | LIAB |
| 6/23/2026 | Coloma, Paul | Review information on assets for sale and potential interested parties provided by Silver Birch | 0.3 | $270.00 | AS |
| 6/23/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss court hearing updates and next steps | 0.2 | $180.00 | FA |
| 6/24/2026 | Roberts, Mark | Review numerous emails related to the case and respond accordingly. | 0.4 | $560.00 | POR |
| 6/29/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) to discuss updates on draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 0.1 | $140.00 | POR |
| 6/29/2026 | Roberts, Mark | Call with McGuireWoods on the status of the plan of reorganization | 0.4 | $560.00 | POR |
| 6/29/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) to discuss updates on draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 0.1 | $90.00 | POR |
| 6/29/2026 | Coloma, Paul | Review proposed liquidating trustee pitch deck | 0.2 | $180.00 | ADM |
| 6/30/2026 | Roberts, Mark | Review latest red-line of POR and discuss with counsel. | 1.1 | $1,540.00 | POR |
| 6/30/2026 | Grussing, Bernice | Final processing of A&M first interim fee application | 0.7 | $262.50 | FEE |
| 7/1/2026 | Roberts, Mark | Review outstanding POR issues with counsel | 0.2 | $280.00 | POR |
| 7/1/2026 | Roberts, Mark | Respond to emails related to case and to Senior Lender claims with counsel and staff | 0.4 | $560.00 | LIT |
| 7/6/2026 | Roberts, Mark | Continue to review analysis around Senior Lender Claim and comment accordingly | 0.4 | $560.00 | LIT |
| 7/6/2026 | Roberts, Mark | Review POR related issues and respond to numerous emails to counsel on the status. | 0.7 | $980.00 | POR |
| 7/7/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss updates to liquidation analysis | 0.6 | $840.00 | POR |
| 7/7/2026 | Roberts, Mark | Prepare for call on liquidation analysis and other POR related items | 0.4 | $560.00 | POR |

Case 26-10123-LSS Doc 364-2 Filed 08/14/26 Page 16 of 17

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| | | | | | |
| 7/7/2026 | Roberts, Mark | Review numerous emails related to the case about POR issues and claims issues and respond accordingly | 0.5 | $700.00 | POR |
| 7/7/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC) and McGuireWoods to discuss updates to liquidation analysis | 0.6 | $540.00 | POR |
| 7/7/2026 | Coloma, Paul | Update liquidation analysis to conform with most recent draft combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.1 | $990.00 | POR |
| 7/7/2026 | Coloma, Paul | Start drafting write-up for liquidation analysis assumptions | 0.6 | $540.00 | POR |
| 7/7/2026 | Grussing, Bernice | Pull and chart current raw dataset, send to team for review | 0.5 | $187.50 | FEE |
| 7/8/2026 | Coloma, Paul | Finalize write-up for liquidation analysis assumptions | 1.5 | $1,350.00 | POR |
| 7/8/2026 | Coloma, Paul | Draft email with additional requests to reconcile Scintilla claim, send to McGuireWoods | 0.4 | $360.00 | LIAB |
| 7/8/2026 | Coloma, Paul | Review correspondence on matters outstanding shared with UCC by McGuireWoods | 0.2 | $180.00 | UCC |
| 7/9/2026 | Roberts, Mark | Prepare for UCC call and read up on outstanding items related to POR | 0.6 | $840.00 | UCC |
| 7/9/2026 | Roberts, Mark | Participate on call with A&M team (MR, PC), McGuireWoods, Faegre Drinker (BF) and members of UCC committee to discuss combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.6 | $2,240.00 | UCC |
| 7/9/2026 | Coloma, Paul | Participate on call with A&M team (MR, PC), McGuireWoods, Faegre Drinker (BF) and members of UCC committee to discuss combined disclosure statement and chapter 11 plan of liquidation proposed by the Debtors and the Official Committee of Unsecured Creditors | 1.6 | $1,440.00 | UCC |
| 7/10/2026 | Roberts, Mark | Respond to emails related to POR questions with counsel and staff. | 0.3 | $420.00 | POR |
| 7/12/2026 | Coloma, Paul | Aggregate support files necessary to reconcile Scintilla claim; provide to UCC member | 0.4 | $360.00 | LIAB |
| 7/12/2026 | Coloma, Paul | Participate on call with UCC member to discuss reconciliation of Scintilla claim | 0.7 | $630.00 | LIAB |
| 7/12/2026 | Coloma, Paul | Correspondence discussing questions on Scintilla claim reconciliation with UCC member, McGuireWoods | 0.2 | $180.00 | LIAB |
| 7/13/2026 | Coloma, Paul | Review support files to calculate Scintilla's default rate calculations | 0.9 | $810.00 | LIAB |
| 7/13/2026 | Coloma, Paul | Correspondence discussing Scintilla's calculations of default rate with McGuireWoods | 0.2 | $180.00 | LIAB |

| Date | User | Description | Time | Amount | Code |
|---|---|---|---|---|---|
| 7/14/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss calculation of default rate on Scintilla's claim | 0.4 | $360.00 | LIAB |
| 7/14/2026 | Coloma, Paul | Update Scintilla claim calculations to exclude default rate on eToro share sales proceeds not submitted to Scintilla, provide updated calculations to UCC member | 0.5 | $450.00 | LIAB |
| 7/15/2026 | Grussing, Bernice | Pull raw dataset and send weekly report to team leadership for review | 0.1 | $37.50 | FEE |
| 7/17/2026 | Coloma, Paul | Correspondence summarizing discrepancies in Scintilla claim calculations with McGuireWoods | 0.3 | $270.00 | LIAB |
| 7/20/2026 | Roberts, Mark | Review outstanding issues around liquidation analysis, senior lender claim and other outstanding issues for the POR | 1.1 | $1,540.00 | POR |
| 7/20/2026 | Coloma, Paul | Review answers to discrepancies identified in Scintilla complaint answers; recalculate accrued interest based on answers provided by Scintilla; correspondence with McGuireWoods re: deficiencies in Scintilla response to discrepancies identified in Scintilla complaint answers | 0.4 | $360.00 | LIAB |
| 7/27/2026 | Roberts, Mark | Review updated writeup for liquidation analysis | 0.5 | $700.00 | POR |
| 7/27/2026 | Coloma, Paul | Review updated writeup for liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Roberts, Mark | Review changes to assumptions for liquidation analysis | 0.5 | $700.00 | POR |
| 7/30/2026 | Coloma, Paul | Review materials in advance of discussion on liquidation analysis with CRO, Chipman Brown and McGuireWoods | 0.4 | $360.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with CRO, Chipman Brown and McGuireWoods to discuss assumptions in liquidation analysis | 1.0 | $900.00 | POR |
| 7/30/2026 | Coloma, Paul | Participate on call with McGuireWoods to discuss changes to liquidation analysis | 0.3 | $270.00 | POR |
| 7/30/2026 | Coloma, Paul | Update liquidation analysis for feedback received from CRO, Chipman Brown, and McGuireWoods | 0.8 | $720.00 | POR |
| 7/31/2026 | Roberts, Mark | Review updates Scintilla claim calculation and provided support | 0.5 | $700.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Reconcile updated Scintilla claim calculations provided by Scintilla; correspondence with McGuireWoods re: discrepancies in claim calculations | 0.4 | $360.00 | LIAB |
| 7/31/2026 | Coloma, Paul | Prepare second fee application | 1.4 | $1,260.00 | FEE |

# EXHIBIT D

October 23, 2026 email of Debtors' counsel and Mr. Donovan's reply

**From:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Date:** Friday, October 23, 2026, 10:34 a.m. (ET)
**To:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** RE: MII – Results of October 22, 2026 Meet-and-Confer; Written Response Requested by 5:00 p.m. (ET) Today – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Mr. Donovan:

Thank you for your email below. Your document request sent to me by email was untimely and otherwise not in compliance with the applicable rules as set forth in the Debtors' responses and in the objection to your motion to shorten.

With respect to Mr. O'Malley, Mr. O'Malley stated that the subpoena was made out to his CPA firm, and that since he is an employee of BEH, he cannot respond on behalf of BEH. He also stated that you told him he cannot do anything without your approval and that he cannot speak on behalf of BEH.

Thank you.

Regards,

Mark L. Desgrosseilliers | Partner
Chipman Brown Cicero & Cole, LLP

*[Quoted below this reply was the October 23, 2026 email reproduced as Exhibit A; it is omitted here.]*

---

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Friday, October 23, 2026, 10:41 a.m. (ET)
**To:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** RE: MII – Results of October 22, 2026 Meet-and-Confer; Written Response Requested by 5:00 p.m. (ET) Today – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Mr. Desgrosseilliers:

Thank you for your response. So that the record I provide to the Court is accurate, I confirm my understanding of the Debtors' position below. If any part of it is wrong, please say so specifically by **5:00 p.m. (ET) today**. Otherwise I will present it to the Court as the Debtors' position.

**1. THE DEBTORS' POSITION ON DISCOVERY**

1. The Debtors will not produce any documents in response to my Second Requests, on the ground that the requests were untimely and not in compliance with the applicable rules.
2. The Debtors will not answer any of the questions directed to them in Section 8 of my email (questions 8–13).
3. The Debtors will not identify the "considerable" and "ample" discovery concerning the Scintilla claim that you described to the Court on October 13, 2026.
4. The Debtors will not produce, or identify by Bates range, any of the documents they already collected and produced to the Committee, including the "Debtor Production - 4-17-2026," their interrogatory answers, and their privilege log.
5. The Debtors will not serve a privilege log on me.
6. The Debtors will not state whether they performed any independent analysis of the $46,491,605 claim amount, and will not state whether they will rely on any A&M work, including the liquidation analysis.
7. Your response does not dispute any of the facts in my email, including the billing entries in Section 4.

Your timeliness objection does not explain why documents the Debtors have already collected, reviewed, and produced to the Committee cannot be produced to a creditor objecting to the same claim. I will ask the Court to decide that question.

## 2. MR. O'MALLEY

- During the October 22 conference, you stated that I instructed Mr. O'Malley to refuse his deposition or to refuse to cooperate.
- Your email today describes something different. It says Mr. O'Malley told you that the subpoena was made out to his CPA firm, that as a BEH employee he cannot respond on behalf of BEH, and that I told him he cannot do anything without my approval and cannot speak on behalf of BEH.
- Even as you now describe it, nothing attributed to Mr. O'Malley is an instruction from me to refuse a deposition or to refuse to cooperate. I repeat: I have not given anyone such an instruction.
- Please withdraw the statement you made during the conference, or confirm that you stand by it.

So that the Court has the complete facts, please provide the following by **5:00 p.m. (ET) today**:

1. The date, time, and method (telephone, email, in person) of each communication in which Mr. O'Malley made the statements you attribute to him, and who participated in or was present for each.
2. Whether those statements were made to you personally or reported to you by someone else, and if so, by whom.
3. Any email, letter, text message, note, or other written record of those statements, or of any communication between the Debtors or their counsel and Mr. O'Malley or his firm.
4. A copy of the subpoena, including the name of the person or entity to whom it was directed, the documents and testimony it sought, the date and manner of service, and any proof of service.
5. Whether Mr. O'Malley or his firm served any written objection or response to the subpoena, and a copy of it.

6. Whether the Debtors contacted me, as BEH's manager, to arrange for BEH's records or Mr. O'Malley's testimony, and if so, when.
7. The specific words you contend I used with Mr. O'Malley, and when and how you contend I said them.

**3. ANY OTHER FACTS**

- If the Debtors contend that any other fact should be before the Court on these discovery disputes, please state it by **5:00 p.m. (ET) today**, with its basis, so that I can include the Debtors' position fairly in my letter.
- If I receive no response, I will tell the Court that the Debtors declined to provide one.

I will include your email and this response with my letter to the Court under Section III of the Chambers Procedures and with the supplement to my motion.

Nothing in this email waives any right, claim, objection, or position.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr.
Creditor and Party in Interest, pro se
209 Access Road, Gate #3
Norwood, Massachusetts 02062
(781) 603-6186
christopherdonovan1@gmail.com

# EXHIBIT E

October 23, 2026 email to Debtors' counsel confirming access, procedures and scope for the October 26–27, 2026 review of BEH records

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Friday, October 23, 2026, 11:21 a.m. (ET)
**To:** Aaron J. Bach <bach@chipmanbrown.com>; Alison R. Maser <maser@chipmanbrown.com>
**Cc:** Mark L. Desgrosseilliers; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** MII – Document Review in Norwood, October 26–27, 2026: Access, Procedures and Scope – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Mr. Bach and Ms. Maser:

Thank you. I confirm the arrangements for your document review in Norwood on **Monday, October 26 and Tuesday, October 27, 2026**. I also set out below, from the record, the purpose and scope of the review, so that there is no misunderstanding on site.

## 1. IDENTIFICATION AND AIRPORT ACCESS

- I have received the identification for both of you (Mr. Bach's driver's license and Ms. Maser's passport). Nothing further is needed for airport security.
- Norwood Memorial Airport is a secure perimeter. We will provide your access and an escort for the entire time you are inside it.

## 2. TIME AND LOCATION

- BEH's operating hours are 7:00 a.m. to 7:00 p.m., seven days a week.
- Early mornings are busy with quality control and other safety-critical work, so I ask that you arrive at **9:00 a.m.** each day.
- Location: **Boston Executive Helicopters, 209 Access Road, Gate #3, Norwood Memorial Airport, Norwood, MA 02062.** Please come to Gate #3, where you will be met.

## 3. ASSISTANCE ON SITE

- I may not be on site because of a family matter. You will have a dedicated person with you to assist in any way you need.
- You may call me at any time with questions at (781) 603-6186.
- We stand ready to assist with the review.

## 4. HANDLING OF DOCUMENTS

1. Before any document is removed for copying, please identify it to the BEH representative.
2. Every document removed must be returned the same day.
3. A log of every document removed and copied must be prepared and a copy given to me. The Court directed that I am "entitled to know what pages they flagged, so they need to tell you that."
4. The review and copying are at the Debtors' expense, as the Court ruled, and as I stated in my email of October 20, 2026, that includes the escort.

## 5. THE PRIOR RULE 2004 DISCOVERY AND THE ORDER THAT LIMITED IT

You are both attorneys at Chipman Brown representing the Debtors in these cases, and both of you have worked on the matters involving me and BEH. Mr. Bach filed D.I. 113, 164 and 407 (the Debtors' objection to my Rule 9001(5) motion). Ms. Maser filed D.I. 398 (the Debtors' objection to my emergency motion), D.I. 405 (the Debtors' preliminary objection to my filing package) and D.I. 455 (the notice of my deposition). Mr. Bach was an addressee of my August 3, 2026 letter to Debtors' counsel, and both of you were copied on my October 20, 2026 email and the correspondence arranging this review. You are therefore familiar with the record summarized below, which governs the review.

### (a) The Debtors' Rule 2004 motion (D.I. 121, filed April 1, 2026)

- The Debtors sought "all books and records for BEH (including, but not limited to, books, documents, records, employment records, accounts receivable, accounts payable, contracts, leases, papers, electronically stored information, email login credentials and other information necessary to access BEH's books and records)." D.I. 121 at 1–2.
- The stated reason was the sale: "the Debtors require access to the BEH Records in order to facilitate such sale and to provide the Debtors with the best chance of obtaining the highest and best offer for BEH and its assets." Id. ¶ 12. The requests were described as "critical to the efficient sale of the Debtors' assets." Id.
- The Court granted the motion on a certificate of no objection on April 14, 2026. D.I. 136, 154.

### (b) The July 8, 2026 evidentiary hearing (D.I. 327)

- Debtors' counsel told the Court: "Just get us the documents, the more limited ones that we requested. We don't need 100 boxes of documents in a room. We just need specific information." D.I. 327 at 71:4–6.
- The Debtors' CRO testified: "[I]t would be enough for us at this stage. We don't need the full 100 boxes." Id. at 97:1–2.
- The Court observed that "a hundred boxes were offered," that the Debtors "decided not to take them," and that it did not "think there was a lack of cooperation here." Id. at 79:12–13, 80:6–9.

### (c) The order entered on certification of counsel (D.I. 340; Order, D.I. 342, July 23, 2026)

- "The 2004 Order shall be vacated." D.I. 342 ¶ 1. The request to hold me in contempt "is denied." Id. ¶ 2.
- Production was limited to listed categories of BEH documents: licenses and certifications, leases, 2025 and Q1–Q2 2026 financial statements, bank reconciliations, receivables, payables and employee rosters, six payroll runs, insurance policies, three years of tax returns, monthly bank statements, and help obtaining aircraft bills of sale. Id. ¶¶ 4–7.
- "This Order is a document production order only. … [N]othing in this Order grants, requires, or permits access to any bank account of BEH, to the QuickBooks or any other accounting system of BEH, or to any operating, administrative, or day-to-day management access to or responsibility for BEH or any other non-debtor entity." Id. ¶ 10.
- Nothing in the order determines the identity or authority of any manager of BEH or its internal governance. Id. ¶ 11.

- "The Court makes no finding that Mr. Donovan failed to comply … and makes no finding that Mr. Donovan acted in bad faith." Id. ¶ 13.
- All rights, claims, defenses and objections of BEH and me with respect to any further discovery are expressly reserved. Id. ¶¶ 15–16.

**(d) What I have produced**

- August 6, 2026: 796 pages of BEH records under D.I. 342 (DONO100000–DONO100795).
- October 5, 2026: signed responses to all seventeen interrogatories and all six requests for production, with a supplemental production of 130 pages, 27 documents (DONO100796–DONO100925).
- Total Bates-numbered production: 926 pages (DONO100000–DONO100925), in addition to the documents attached to Proof of Claim No. 1 and my filings of record. See D.I. 475 ¶¶ 4–6.

## 6. THE PRESENT DISCOVERY AND ITS STATED PURPOSE

**(a) What was served (September 25, 2026)**

- A notice of my deposition (D.I. 455); requests for production and interrogatories to me (D.I. 457); and subpoenas to BEH and to Patrick J. O'Malley, CPA, P.C. (D.I. 459).
- The BEH subpoena's deposition topics are: "1. The Alleged Employment Agreement between Christopher R. Donovan, Sr., MII Aviation Services LLC, and Boston Executive Helicopters LLC ('BEH'). 2. Historical financial information of BEH. 3. Corporate authorization of bonus payments to BEH employees. 4. Board or member meetings of BEH." D.I. 459-2, Ex. A.
- Its document requests are:
  1. "any and all financial documents of BEH," including "balance sheets, tax filings (both federal and state), employee compensation and payroll records, accounting records, and member distribution logs";
  2. communications of BEH personnel, including with Mr. Yanai, Mr. O'Malley and me, "related to the Alleged Employment Agreement and the financial documents requested in Request 1";
  3. "any and all minutes of any and all board or member meetings of BEH";
  4. "any and all corporate authorizations by BEH of any bonus payments … including any and all authorizations by BEH for any bonus payment alleged in the Donovan Claim"; and
  5. "any and all corporate documents and agreements relating to BEH, including … any and all operating agreements for BEH, and amendments thereto."

  D.I. 459-2, Ex. B. The requests run "from and after January 1, 2009." Id., Instr. 9.

**(b) The purpose the Debtors gave the Court in writing (D.I. 480, October 8, 2026)**

- "The Debtors served three pieces of discovery in connection with their objection to the effort of Christopher R. Donovan, Sr. … to have his disputed claim temporarily allowed so that he may vote." D.I. 480 ¶ 1.
- "The Discovery supports the Debtors' objection to the 3018 Motion." Id. ¶ 19.
- "The depositions and document demands bear on the existence and validity of the claimed obligation, which in turn determine whether any enforceable claim runs against the Debtors as

distinct from non-debtor BEH." Id. ¶ 21.

**(c) What Debtors' counsel told the Court on October 13, 2026**

- The discovery "is in connection with Mr. Donovan's 3018 motion."
- On the prior Rule 2004 request: "we were looking for documents that would give us, or give a potential bidder, insight into what BEH is worth" and "we limited that to what we thought we would need for a sale, from a sale perspective. This is obviously a different perspective."
- On the boxes: the Debtors would "go up there and look at those documents and see if there's even anything relevant," and "tab what we think we need and copy those."
- Asked by the Court what documents the Debtors really need: "we made a statute of frauds argument, right, and so if there are writings out there that somehow would satisfy the minimum requirements of the statute of frauds under Massachusetts law, then I need to know that. ... And if it's just the two emails or the handful of emails that we have, that's fine. I just need to know that's the world."
- On historical financials: whether an obligation of that size "should be on the financials that are pulled up into the tax returns."

**(d) What the Court ruled on October 13, 2026**

- The Debtors and the Committee "are entitled to discovery with respect to that claim."
- "[T]hey're entitled to see if there are any documents that would say something in addition to or contrary to what you have given to them."
- "I'm going to permit the debtors to go look in those hundred boxes of documents at their expense. It needs to be during business hours ... They can flag pages that they want copied. It's at their expense. You're entitled to know what pages they flagged, so they need to tell you that."
- The Court declined to decide who may designate a Rule 30(b)(6) witness or speak for BEH: "I'm not going to decide a non-debtor corporate issue."

The official transcript of the October 13 hearing is not yet available. The October 13 quotations above are from a machine-generated transcription of the hearing audio. If you contend any is inaccurate, please say so specifically.

## 7. WHAT THE DEBTORS AND THE COMMITTEE ALREADY HAD ON BEH'S VALUE

The Debtors told the Court that the Rule 2004 discovery was needed for the sale: "the Debtors require access to the BEH Records in order to facilitate such sale and to provide the Debtors with the best chance of obtaining the highest and best offer for BEH and its assets" (D.I. 121 ¶ 12), and on October 13 that they "were looking for documents that would give us, or give a potential bidder, insight into what BEH is worth." The Committee's financial advisor's own time records (D.I. 364-2) show what was already in hand:

**(a) Valuation documents in the Debtors' own files (Bates prefix "MII")**

- May 21, 2026: "Review Fair Market Value Opinion Letter for Boston Executive Helicopters prepared by Business Presentation Solutions as of 5/1/2024, Aircraft Bluebook print-out dated

5/16/2024 for owned aircraft (refer to the files titled (i) 'MII002432.pdf' (ii) 'MII002522', and (iii) 'MII002523')." D.I. 364-2 at 5.

- May 26, 2026: "Review 'BEH Valuation Analysis Highly Confidential' report dated May 2025 (refer to the file titled 'MII014378')." Id. at 7.
- May 26, 2026: "Review internally prepared historical financial statements of Boston Executive Helicopters LLC (FY 2023 - FY 2024 and YTD period ending July 31, 2025); refer to the files titled 'MII022221', 'MII022223', 'MII022224' and 'MII005552'." Id.
- May 26, 2026: "Review certain email correspondence and activity between Mr. Toshav and outside counsel re: BEH - Background, Handover, and Next Steps." Id.
- The valuation documents and financial statements carry the Debtors' "MII" Bates prefix and are dated May 2024, May 2025 and July 2025, all before the Debtors filed their Rule 2004 motion on April 1, 2026 claiming they needed BEH's records to learn its value. A&M also reviewed an inventory of the "Debtor Production - 4-17-2026." Id. at 5.

**(b) A&M's own valuation of BEH (May 26 – June 11, 2026)**

- May 26–27: "Spread financials for Boston Executive Helicopter" and "Perform transaction screening for aviation-related target companies." Id. at 7–8.
- May 28: "Work on valuation analysis for Boston Executive Helicopter" and calls "to discuss BEH valuation analysis." Id. at 8.
- May 29: calls "to discuss reasonably equivalent value analysis and BEH valuation." Id.
- June 3: calls with McGuireWoods "to discuss information provided in discovery related to Boston Executive Helicopters," and "to discuss BEH valuation." Id. at 10.
- June 10–11: "Work on BEH valuation and solvency analysis section of expert report." Id. at 12–13.
- This valuation work was part of A&M's report for the Committee, billed at 108.7 hours and $97,942.50 to the estates. D.I. 364 at 3. The Committee is the Debtors' co-proponent of the Plan.

**(c) What this shows**

1. When the Debtors moved under Rule 2004 for "all books and records for BEH" to learn "what BEH is worth," their own files already contained a BEH valuation report (May 2025), a fair market value opinion for BEH (May 2024), aircraft values, and BEH financial statements through July 31, 2025.
2. By the July 8, 2026 hearing, at which the Debtors told the Court they did not need the 100 boxes and pressed for the "more limited" documents for the sale, the Committee's advisor had already completed a BEH valuation for its expert report.
3. On October 13, 2026, Debtors' counsel described the prior Rule 2004 request as a search for "insight into what BEH is worth," without disclosing either the valuation documents in the Debtors' own production or A&M's valuation.
4. The sale-valuation reason given for the Rule 2004 discovery cannot be squared with these records. It is one more reason the present review must stay within the claim-related purpose the Debtors have now stated.

Please produce to me the "BEH Valuation Analysis Highly Confidential" report (MII014378), the Business Presentation Solutions opinion letter and Bluebook print-outs (MII002432, MII002522, MII002523), the BEH financial statements (MII022221, MII022223, MII022224, MII005552), and A&M's BEH valuation analysis. BEH is the subject of each, and I manage it.

## 8. SCOPE OF THIS REVIEW

On that record, I ask that the review proceed as follows:

1. **Purpose.** The review is discovery on my claim and the Rule 3018 motion, as the Debtors told the Court in writing and at the hearing: documents bearing on the compensation arrangement, the 2010 and January 8, 2025 agreements, any writing on the statute of frauds issue, and whether an obligation appears in BEH's historical financial statements.
2. **Not a renewal of the Rule 2004 discovery.** The review is not a means of reopening the sale-related Rule 2004 discovery that the Court vacated, or of getting around the limits of D.I. 342. Consistent with D.I. 342 ¶ 10, it does not include access to any BEH bank account, QuickBooks or other accounting system, computers or email, or any operating or management access.
3. **The boxes only.** The Court permitted review of the hundred boxes. BEH's other files, including confidential operating, customer, personnel and regulatory records that are not relevant to my claim or the requests, are not part of the review.
4. **Copying.** Please flag and copy only documents relevant to my claim and the Rule 3018 motion, and identify every flagged page to me, as the Court directed.
5. **Confidentiality.** BEH is a non-debtor operating company. Please confirm that copies will be used only in these chapter 11 cases and will not be shared beyond the parties and the Court without notice to BEH.
6. **Reservation.** BEH's objections to the September 25 subpoena, and the reservations in D.I. 342 ¶¶ 11, 14, 15 and 16, are preserved. Nothing in this review determines who manages or speaks for BEH.

We will assist your review in every way consistent with these terms. If you disagree with any of them, please tell me before Monday so that we can resolve it in advance rather than on site.

Nothing in this email waives any right, claim, objection, or position of mine or of BEH.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr.
Creditor and Party in Interest, pro se
209 Access Road, Gate #3
Norwood, Massachusetts 02062
(781) 603-6186
christopherdonovan1@gmail.com

# EXHIBIT F

October 21–22, 2026 emails serving the motions to compel (D.I. 520, 521) and setting the conference agenda

*In re MII Aviation Services LLC*, No. 26-10123 (LSS) — Letter of Christopher R. Donovan, Sr. under Chambers Procedures § III

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Wednesday, October 21, 2026, 5:33 p.m. (ET)
**To:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** RE: MII
**Attached:** Letter requesting Rule 37(a)(1) conference (Oct. 21, 2026); Third Requests for Production

Mr. Desgrosseilliers:

I respond to each point in your email of this afternoon. Attached are my letter of today's date requesting a conference under Fed. R. Civ. P. 37(a)(1) and Del. Bankr. L.R. 7026-1 on the Debtors' Responses and Objections served this morning, and my Third Requests for Production.

1. Deposition. To be clear, this is the Debtors' deposition of me, not a deposition I have requested. At the October 13 hearing the Court ruled that it "will be not down here. It will be up in Norwood," and you told the Court you were willing to come to Norwood for it. I offered Wednesday, October 28 at 9:00 a.m. in Norwood, for up to three hours as the Court allowed. I will agree to appear by Zoom from Norwood at that time as an accommodation, on these conditions: (a) the Zoom link, the court reporter's details, and any exhibits you intend to use are sent to me by 5:00 p.m. (ET) on Monday, October 26; (b) the deposition is limited to three hours on the record; and (c) all costs of the reporter and the platform are borne by the Debtors. My agreeing to Zoom waives none of my objections to scope.

2. Document review. There has been no delay or non-compliance on my part, and I reject the suggestion. Your October 13 email asked for review dates "starting no earlier than next week" and said you would "need at least two consecutive days." I responded on October 20, during the week you specified, and offered two consecutive business days, October 27 and 28, exactly as you asked. The Court directed only that the review take place during business hours, at the Debtors' expense, and that I be told which pages are flagged. It set no other date. If you want to begin earlier, I can also make Monday, October 26 and Tuesday, October 27 available, provided I receive the full name, date of birth, and a copy of a government-issued photo ID for each person attending by 12:00 p.m. (ET) on Friday, October 23, so that airport security can be arranged. Please tell me which two days you choose.

3. Timing before the hearing. Any timing problem is not of my making. The Debtors objected to my claim on June 30, 2026, served their discovery when they chose, and today filed D.I. 509 asking the Court to value my claim at $0 on the existing record. My production is complete and my interrogatories are answered, as I stated on October 20.

4. The Debtors' own discovery. Please compare your new claims with the Debtors' own conduct, as set out in the attached letter. At the October 13 hearing you told the Court there "was considerable discovery in connection with the Scintilla claim" and "there was ample discovery." This morning the Debtors objected to all eleven of my requests, produced no documents at all, and as to seven of them, including how the $46,491,605 figure was calculated, referred me to Scintilla and stated that the Debtors "rely on Scintilla's filed proof of claim." Scintilla's production remains deficient for the reasons in my October 19 letter to Mr. Silvestri, which is unanswered. You cannot reserve rights against me for offering

the review dates you asked for while the Debtors themselves produce nothing on the claim the Plan would allow at $46.5 million.

5. Conference. As the attached letter states, I request a conference by telephone or videoconference tomorrow, Thursday, October 22, 2026, at 11:00 a.m. (ET), to address each of its seventeen Points. Please confirm and send a dial-in or link by 10:30 a.m. If the matters in the letter are not resolved, I will file a motion to compel at 12:00 p.m. (ET) tomorrow so that it may be heard on October 29.

I reserve all of my rights, including with respect to the Debtors' Responses and Objections.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr., pro se

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Wednesday, October 21, 2026, 5:44 p.m. (ET)
**To:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** RE: MII – Service of Donovan Motion to Compel (D. Del. Bankr. No. 26-10123 (LSS))
**Attached:** Motion to Compel the Debtors, Scintilla Fund L.P., and the Committee, with Exhibits A–K (docketed as D.I. 521)

Mr. Desgrosseilliers and Counsel:

Local Rule 7026-1(b) requires that a discovery motion be received by the Court at least seven days before the hearing. For the October 29, 2026 hearing, that is tomorrow, October 22. Because I file by overnight delivery, I am sending my Motion to Compel the Debtors, Scintilla Fund L.P., and the Official Committee of Unsecured Creditors to Produce Documents, with Exhibits A through K, to the Clerk tonight so that it is timely. A copy is attached and is served on you by this email.

This does not change my request to confer. I remain available at 11:00 a.m. (ET) tomorrow, October 22, as requested in my letter, or on October 23 or 24. If we resolve any Point at the conference or before the hearing, I will promptly file a notice withdrawing or narrowing the Motion to that extent. The Motion says so expressly.

Mr. Silvestri: my offer in my 2:54 p.m. email stands. If Scintilla commits in writing to the four items listed there, all by October 26, 2026, I will withdraw the portions of the Motion directed to Scintilla.

The Motion also reflects the Committee's Responses and Objections served October 19, 2026 (D.I. 501), attached as Exhibit K.

Nothing in this email waives any right, claim, objection, or position.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr., pro se

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Wednesday, October 21, 2026, 9:06 p.m. (ET)
**To:** Dion W. Hayes; Brett D. Fallon; Mark L. Desgrosseilliers; Eric S. Silvestri; Joseph Brenner; Hannah J. McCollum; Joseph J. McMahon, Jr.
**Cc:** Aaron G. McCollough; M. Mumford; Jory Berg; Ryan Messina; Aaron Bach; Alison Maser; Renae Fusco; Michael Friedman; Yuliya Zahoroda
**Subject:** In re MII Aviation Services LLC, No. 26-10123 (LSS) – Service of Donovan Motion to Compel the Committee and for Access to Information Under 11 U.S.C. § 1102(b)(3)(A)
**Attached:** Motion to Compel the Committee, with Notice, Appendix 1, Exhibits A–F and Motion to Shorten Notice (docketed as D.I. 520)

Counsel and Office of the United States Trustee:

Attached and served on you today, October 21, 2026, by electronic mail, is the Motion of Christopher R. Donovan, Sr. to Compel the Official Committee of Unsecured Creditors to Produce Documents and to Provide Access to Information Under 11 U.S.C. § 1102(b)(3)(A), and for Related Relief, with Notice of Motion, Appendix 1 (verbatim requests and responses under Local Rule 7026-1(c)), Exhibits A through F, and a Motion to Shorten Notice to the extent necessary.

The Motion is set for the October 29, 2026 hearing, with responses due October 28, 2026 at 4:00 p.m. (ET). Because Local Rule 7026-1(b) requires that a discovery motion be received seven days before the hearing, the original is being sent tonight by FedEx overnight to the Clerk.

Counsel for the Committee: the Motion responds to your Responses and Objections served October 19, 2026. I remain available to confer at 11:00 a.m. (ET) tomorrow, October 22, or on October 23 or 24, as stated in my letter sent earlier this evening. If any matter is resolved, I will promptly file a notice withdrawing or narrowing the Motion to that extent. My offer to be bound by a reasonable confidentiality agreement or protective order stands.

Nothing in this email waives any right, claim, objection, or position.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr., pro se

**From:** Christopher R. Donovan, Sr. <christopherdonovan1@gmail.com>
**Date:** Thursday, October 22, 2026, 9:39 a.m. (ET)
**To:** Mark L. Desgrosseilliers <desgross@chipmanbrown.com>
**Cc:** Aaron Bach; Alison Maser; Renae Fusco (Chipman Brown); Dion W. Hayes; Aaron G. McCollough; M. Mumford; Jory Berg (McGuireWoods); Brett D. Fallon; Ryan Messina (Faegre Drinker); Eric S. Silvestri; Michael Friedman; Yuliya Zahoroda (Chapman and Cutler); Joseph Brenner (Gordon Rees); Hannah J. McCollum; Joseph J. McMahon, Jr. (U.S. Trustee)
**Subject:** RE: MII – Agenda for 11:00 a.m. Meet-and-Confer Conference, October 22, 2026 – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Counsel:

Thank you, Mr. Desgrosseilliers, for agreeing to confer at 11:00 a.m. (ET) today. Please send the invitation when Committee and Scintilla counsel confirm. So that the conference is productive and the record is clear, below is the agenda I propose, following the seventeen Points in my letter of October 21, 2026. The conference is held under Fed. R. Civ. P. 37(a)(1), made applicable by Fed. R. Bankr. P. 7037 and 9014(c), and Del. Bankr. L.R. 7026-1.

My motions to compel were sent for filing last night only because Local Rule 7026-1(b) requires that a discovery motion be received seven days before the October 29 hearing. I will withdraw, by written notice, any Point we resolve. I ask that each responding party confirm in writing, by 5:00 p.m. (ET) today, its position on each Point directed to it.

A. THE DEBTORS (Points 1–14; Debtors' Responses served October 21, 2026)

1. Referral to Scintilla (Requests 1, 2, 4–8). Will the Debtors produce responsive documents in their own possession, custody, or control, including documents held by their Chief Restructuring Officer, their Manager, and their counsel, identifying by Bates number any document already produced by Scintilla?
2. Withheld documents. Will the Debtors serve amended responses stating, for each Request, whether documents are being withheld and on which objection (Rule 34(b)(2)(C))?
3. Superseded standard. Will the Debtors withdraw objections based on the pre-2015 "reasonably calculated" standard and state any proportionality objection with specificity?
4. General Objections 1–14. Will the Debtors withdraw them or state how each applies to each Request?
5. Privilege log. Will the Debtors serve a log under Rule 26(b)(5)(A), or confirm in writing that nothing is withheld on privilege, common-interest, or joint-defense grounds?
6. General Objection 4. Will the Debtors withdraw it?
7. Request 1. Will the Debtors produce their own pre-mediation productions (including the "MII" Bates-numbered production) and the documents they received, with Bates ranges?
8. Request 2. Will the Debtors produce the written discovery served on or by them (D.I. 260, 264, 282–284) and their written responses?
9. Request 3. Will the Debtors confirm in writing who noticed each deposition and why none occurred?
10. Request 4. Will the Debtors identify, by production, Bates range, and producing party, the "considerable" and "ample" discovery described to the Court on October 13, 2026, or confirm that none exists beyond what is identified?
11. Requests 5–7. Did the Debtors perform any independent analysis of the $46,491,605.00 allowed amount, the interest, default interest, fees, and charges? Will they produce the non-mediation

documents showing how that amount was calculated?
12. Request 8. Will the Debtors produce their governance documents and the documents concerning Mr. Toshav's appointment and compensation, including the June 4, 2025 written consent?
13. Request 9. Will the Debtors produce every exhibit for the October 29 hearing by 12:00 p.m. (ET) on October 26, 2026?
14. Requests 10–11. Will the Debtors produce any protective, confidentiality, or common-interest agreement, or state in writing that none exists, and serve the log?

B. SCINTILLA FUND L.P. (Points 15 and 17; my letter of October 19, 2026)

15. Will Scintilla commit in writing to the following, each by October 26, 2026: (a) written responses to my First Requests; (b) the seven linked workbooks referenced in SCINTILLADONOVAN000468, in native form, and that spreadsheet as it existed before counsel's handling, with original metadata; (c) production or a log of SCINTILLADONOVAN000173, 000340, 000341, and 000353; and (d) the payment, conveyance, and claim-calculation records identified in my Third Requests? If so, I will withdraw the portions of my motion directed to Scintilla.
17. Will Scintilla produce the records of each payment and conveyance it received on account of the loans, including the approximately $19.2 million in cash and the Massachusetts real property described in D.I. 413 ¶¶ 1, 22, and how each was applied; the July 2025 payoff statement; and its itemization of $45,542,119 in Israel with supporting schedules?

C. THE COMMITTEE (Point 16; Committee Responses served October 19, 2026, D.I. 501)

16. (a) Will the Committee produce the reports, calculations, recalculations, reconciliations, and schedules of Alvarez & Marsal North America, LLC concerning the Scintilla claim, including, at a minimum, the documents Scintilla provided to A&M, the figures A&M calculated, and work performed after June 11, 2026?
(b) Will the Committee produce, or identify by Bates number, the documents produced to it by the Debtors or Scintilla, which General Objection 11 acknowledges are not privileged?
(c) Will the Committee serve its categorical log by October 26, 2026, showing date ranges (before or after June 11, 2026), authors, recipients, and whether any category includes documents received from Scintilla or the Debtors?
(d) Will the Committee produce any calculation of the Scintilla claim, and identify any exhibit, it may use on October 29 by 12:00 p.m. (ET) on October 26, 2026?
(e) Does any common-interest agreement exist? If so, what is its date, and who are its parties?
(f) Under 11 U.S.C. § 1102(b)(3)(A), how does the Committee provide information to holders of general unsecured claims against MII Aviation Services LLC, and will it provide me the non-privileged results of its investigation of the Scintilla claim under a reasonable confidentiality agreement, which I have offered to sign?

I will follow the conference with an email confirming what was agreed.

Nothing in this email waives any right, claim, objection, or position.

Respectfully,

/s/ Christopher R. Donovan, Sr.
Christopher R. Donovan, Sr., pro se

# EXHIBIT G

October 23, 2026 written responses of the Committee (4:58 p.m.) and of Scintilla (4:41 p.m.)

*In re MII Aviation Services LLC*, No. 26-10123 (LSS) — Letter of Christopher R. Donovan, Sr. under Chambers Procedures § III

**G-1. Email of Committee counsel, October 23, 2026, 4:58 p.m. (ET)**

**From:** Aaron G. McCollough <amccollough@mcguirewoods.com>
**Sent:** Friday, October 23, 2026 4:58 PM (ET)
**To:** christopherdonovan1@gmail.com; desgross@chipmanbrown.com
**Cc:** bach@chipmanbrown.com; maser@chipmanbrown.com; Fusco@chipmanbrown.com; dhayes@mcguirewoods.com; mmumford@mcguirewoods.com; jberg@mcguirewoods.com; brett.fallon@faegredrinker.com; ryan.messina@faegredrinker.com; silvest@chapman.com; friedman@chapman.com; yzahoroda@chapman.com; jbrenner@grsm.com; hannah.mccollum@usdoj.gov; joseph.mcmahon@usdoj.gov
**Subject:** RE: MII – Results of October 22, 2026 Meet-and-Confer; Written Response Requested by 5:00 p.m. (ET) Today – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Mr. Donovan:

As conveyed to you, the Committee will produce to you the exhibits the Committee intends to use at the confirmation hearing, which will include the document reflecting the calculation that forms the basis for the agreed Scintilla Claim amount in the Plan. The Committee did not exist prior to the Petition Date and has no historical relevant records of its own, and you have served discovery on the sources of information received by the Committee.

The Committee's analyses and communications involving its counsel, A&M, and Committee members are privileged and work product and will not be produced. The nonprivileged results of these analyses and communications are reflected in the Committee's public filings, including the Complaint and the Plan. As has been represented to you on multiple occasions, the Committee will provide a categorical privilege log regarding privileged and work product documents, the contents of which will necessarily be reflective of the late timing and overbroad nature of your requests (which essentially seek all of the Committee's privileged communications from its inception).

The Committee also notes that virtually all of the information you have sought—as well as the multitude of filings you have recently generated that have required enormous costs to address—are wholly disproportionate to any issue that affects your interest under the Plan. The agreed amount of the Scintilla Claim is one feature of a broader settlement that forms the basis for the Plan. Whether the Scintilla Claim allowed at MII Aviation is $48 million or $20 million, the precise calculation of such claim likely does not affect any conceivable recovery you could be entitled to under the Plan (or would be entitled to under chapter 7), unless you assert that the value of BEH exceeds the amount of the Scintilla Claim, which it plainly does not. Moreover, given that you have a right of recovery from BEH as primary and solvent obligor—to the extent your claim is valid at all—your vexatious filings in these bankruptcy cases focused on calculation of the Scintilla Claim are clearly intended not to generate any recovery on your claim from MII Aviation, which has no assets of any value other than its ownership of BEH, but solely to position yourself for a recovery from a non-debtor or to extract improper value through nuisance. The Committee reserves all rights to recover from you personally the professional costs incurred by the estate in responding to your vexatious and unreasonable filings—compounded through your use of AI tools—pursuant to 28 U.S.C. § 1927 or other applicable law.

You are free to cross-examine witnesses at confirmation if you wish to ask further questions about the work conducted, subject to the Committee's right to assert its privileges and protections.

In accordance with Paragraph 3 of the Court's Order (i) Approving Revised First Amended Disclosure Statement and Plan on Interim Basis for Solicitation Purposes,, (ii) Scheduling Combined Hearing and Objection Deadline, (iii) Establishing Procedures for Solicitation and Tabulation of Votes, (iv) Approving Form of Ballot and Solicitation Package, and (v) Approving Notice [Docket No. 447], the Committee's exhibits and any other evidence will be filed no later than October 27, 2026 at 11 a.m. Eastern.

Aaron G. McCollough
Partner
McGuireWoods LLP

*[The quoted text of Mr. Donovan's October 23, 2026, 10:20 a.m. email below this message is omitted; that email is Exhibit A.]*

## G-2. Email of Scintilla's counsel, October 23, 2026, 4:41 p.m. (ET)

**From:** Eric S. Silvestri <silvest@chapman.com>
**Sent:** Friday, October 23, 2026 4:41 PM (ET)
**To:** christopherdonovan1@gmail.com
**Subject:** Re: MII – Results of October 22, 2026 Meet-and-Confer; Written Response Requested by 5:00 p.m. (ET) Today – In re MII Aviation Services LLC, No. 26-10123 (LSS)

*[Mr. Silvestri's responses are reproduced in full. Each numbered statement in italics is the statement from Section 3 of Mr. Donovan's October 23, 2026 email (Exhibit A) to which he was responding, as quoted in his reply.]*

Chris,

I am dropping all other parties off this email chain as I do not think it's appropriate to have discovery issues litigated over email with other parties, particularly everyone on all legal teams and the U.S. Trustee. Below please find my response to your points directed at Scintilla.

**3. SCINTILLA**

1. *Scintilla's October 19 production (SCINTILLADONOVAN000001–000468) "contains all that is needed to support that calculation."*

   This is correct, however, not withstanding that view, Scintilla is willing to produce more documents to you relating to the issues you have raised in the meet and confer in the spirit of cooperation and so that we are making every effort to avoid unnecessary discovery fights

2. *Scintilla "anticipates" a supplemental production by 12:00 p.m. (ET) on October 26, 2026, including the spreadsheets referenced in A&M's time records (at least one redacted), the linked spreadsheets I requested, "additional information and calculations relating to the loans," and documents relating to the real estate.*

   This is mostly accurate but needs correction to avoid imprecision. I did not tell you I have located the spreadsheets referenced in A&M's time records. I have no way of confirming what A&M's time records refer to. Instead, what I said was that I had located the seven spreadsheets you identified in your email to me regarding Scintilla's October 19, 2026 production, and that I believe they would address your concerns regarding A&M's time records. As I'm sure you can appreciate, I cannot confirm anything about A&M's work, although I want to continue to stress to you that A&M's work was performed at a time when the Committee was directly adverse to Scintilla, challenging Scintilla's liens in full, challenging Scintilla's claim calculation in full, and so I once again encourage you to move away from your belief that A&M would have somehow rubber stamped or left anything in the Scintilla claim unexplored.

3. *For the invoices supporting the $3,328,126 cost component, the July 2025 payoff statement, the $41,633,405 Closing Date Loan Balance computation, and the $45,542,119 Israeli itemization, Scintilla "will investigate whether these are available." It has not committed to produce them.*

   This is correct, however, after reviewing your requests and our documents yesterday, I do not know what you mean by the "July 2025 payoff statement" nor do I know what you mean by the "$41,633,405 Closing Date Loan Balance computation". Please explain what those terms are referring to?

4. *The payoff tracker "was created in response to" my document request. It is not a record kept in the ordinary course of Scintilla's business.*

That is not what I said. The payoff tracker was provided in response to your Request No. 2, which seeks "documents sufficient to show" the claim calculation, payments, etc.

5. *Scintilla "did not employ A&M and is not in a position to comment on its work."*

This is true.

6. *Scintilla has not withheld any document on privilege grounds so far and will serve a log if it does.*

This is true.

7. *Scintilla "has received no value from any real estate conveyance"; any future real estate proceeds would be addressed by the Plan's Scintilla Claim Mitigation Amount.*

This is true, and I note can be confirmed by examining the language of the Plan.

Eric S. Silvestri | Partner
Chapman and Cutler LLP

*[The quoted text of Mr. Donovan's October 23, 2026, 10:20 a.m. email below this message is omitted; that email is Exhibit A.]*

# EXHIBIT H

October 23, 2026 email of Debtors' counsel (2:41 p.m.) on the Norwood review and D.I. 342, and my reply

### H-1. Email of Debtors' counsel, October 23, 2026, 2:41 p.m. (ET)

**From:** Mark Desgrosseilliers <desgross@chipmanbrown.com>
**Sent:** Friday, October 23, 2026 2:41 PM (ET)
**To:** christopherdonovan1@gmail.com
**Cc:** bach@chipmanbrown.com; maser@chipmanbrown.com; Fusco@chipmanbrown.com; dhayes@mcguirewoods.com; amccollough@mcguirewoods.com; mmumford@mcguirewoods.com; jberg@mcguirewoods.com; brett.fallon@faegredrinker.com; ryan.messina@faegredrinker.com; silvest@chapman.com; friedman@chapman.com; yzahoroda@chapman.com; jbrenner@grsm.com; hannah.mccollum@usdoj.gov; joseph.mcmahon@usdoj.gov
**Subject:** RE: MII – Document Review in Norwood, October 26–27, 2026: Access, Procedures and Scope – In re MII Aviation Services LLC, No. 26-10123 (LSS)
**Attachment:** 342 MII Donovan Order.pdf (D.I. 342, on the docket)

Mr. Donovan:

Thank you for the email below. We will endeavor to arrive around 9 am – the first day may be tricky because of flights, but will advise if there any issues or delays. Aly and Aaron – can you let Mr. Donovan know when you expect to arrive on Monday (assuming flight lands on time)?

With whom should we correspond if you will not be present? Also, we will tag documents that we will want copied. If anyone has an issue with anything we tag, we can address that. I cannot guarantee we will be able to have documents that are copied returned as quickly as you request, but will do so as promptly as possible. With respect to a log, that is not necessary. Whomever is on site can review what is tagged (after we tag the document and before we copy it) and create any log they want to create. We are not paying for any escort or time for any BEH personnel present.

Below you state "Court permitted review of the hundred boxes. BEH's other files, including confidential operating, customer, personnel and regulatory records that are not relevant to my claim or the requests, are not part of the review." You are obligated to provide access to all files that may have documents responsive to the requests we served. If those additional boxes you now identify below have responsive documents, you must produce those documents or allow us access to such boxes.

With respect to the 2004 order, please advise when you produced the following –

- Copies of all licenses and certifications for BEH or used in the course of BEH's business (par. 4(a)); and
- Updated monthly bank statements – we should be receiving these every month and have not received updated bank statements to my knowledge This is an ongoing monthly obligation - "Mr. Donovan shall also provide to Mr. Toshav copies of monthly bank account statements for BEH, with a reconciliation if he is able, as soon as possible after his receipt of such statements." (par. 6).

The 2004 order is attached for reference. If the above were not produced, please advise when they will be produced and if easier for us to copy during review of the documents in the boxes.

Thank you.

Regards,
Mark L. Desgrosseilliers | Partner
Chipman Brown Cicero & Cole, LLP

*[The quoted text of Mr. Donovan's October 23, 2026, 11:21 a.m. email below this message is omitted; that email is Exhibit E.]*

### H-2. Reply of Christopher R. Donovan, Sr., October 23, 2026, 5:02 p.m. (ET)

**From:** Christopher Donovan <christopherdonovan1@gmail.com>
**Sent:** Friday, October 23, 2026 5:02 PM (ET)
**To:** desgross@chipmanbrown.com
**Cc:** bach@chipmanbrown.com; maser@chipmanbrown.com; Fusco@chipmanbrown.com; dhayes@mcguirewoods.com; amccollough@mcguirewoods.com; mmumford@mcguirewoods.com; jberg@mcguirewoods.com; brett.fallon@faegredrinker.com; ryan.messina@faegredrinker.com; silvest@chapman.com; friedman@chapman.com; yzahoroda@chapman.com; jbrenner@grsm.com; hannah.mccollum@usdoj.gov; joseph.mcmahon@usdoj.gov
**Subject:** RE: MII – Document Review in Norwood, October 26–27, 2026: Access, Procedures and Scope – In re MII Aviation Services LLC, No. 26-10123 (LSS)

Mr. Desgrosseilliers:

Thank you. Mr. Bach's arrival estimate of about 9:00 a.m. Monday is fine. If the flight is delayed, please call me or the person on duty. I respond to each point in your email so that the record is clear.

**1. Escort and contact if I am not on site.** Anyone inside the perimeter of Norwood Memorial Airport must be escorted at all times. This is an airport access requirement, not a BEH preference. The BEH person on duty will provide the escort and will be your contact on site. The boxes are kept in a remote storage location, as you know. BEH will therefore have to bring in an additional person to staff the review while the person on duty covers operations. You may call me at any time at 781-603-6186.

**2. Cost of the review.** On October 13 the Court ruled: "I'm going to permit the debtors to go look in those hundred boxes of documents at their expense. It needs to be during business hours so that you're there or somebody's there.... They can flag pages that they want copied. It's at their expense." Before that ruling you told the Court that the Debtors were "willing to go up there, obviously at the estate's expense — so my firm's expense at this point." The review is at the Debtors' expense, as the Court ordered and as you offered. That includes any cost BEH incurs because of it, among them the additional staff described above. BEH reserves its right to recover those costs from the estates.

**3. List of flagged pages.** The Court ruled: "You're entitled to know what pages they flagged, so they need to tell you that." Whatever you call it, before anything leaves the premises the Debtors must give me a written list identifying each page or document flagged for copying. That list is what I mean by a log. I ask again that originals removed for copying be returned the same day. If that is not possible, please tell me before removal when each item will be returned, so we can agree on it then. BEH's originals are its operating records.

**4. Scope.** The Court permitted the Debtors to review the hundred boxes. That is the process the Court ordered and the process we have arranged. Nothing outside the boxes will be inspected or copied, because it falls outside that process. That includes BEH's other files, offices, systems and facilities. If I identify any other document in my or BEH's possession, custody or control that responds to a pending request and is not privileged or otherwise objectionable, I will produce it to you in the ordinary way. D.I. 342 ¶¶ 10–11 and 15–16 remain in effect, and all objections are preserved.

BEH is going out of its way to accommodate a review of records the Debtors were offered and turned down.

- **2025.** I spent two full days in Norwood with Mr. Toshav. Mr. Zack Keinan of Scintilla attended one of them, on October 15, 2025. On site they told me they were working together.
- **December 22, 2025 and January 3, 2026.** For that reason, my two pre-petition written wage demands were addressed jointly to Mr. Toshav and to Mr. Keinan, and emailed to both of them (boaz@umbrella-advisors.com; zk@scintillafund.com). On January 13, 2026 I wrote to both again that I had received no response. Both demands are already in the record. (DONO100822–DONO100832, DONO100859–DONO100862.)
- **January–February 2026.** Scintilla paid the Debtors' pre-petition professionals, including your firm. In MII's Statement of Financial Affairs, signed by Mr. Toshav under penalty of perjury, Question 11 discloses that Scintilla Fund, L.P. made these payments "on behalf of the Debtor":
  - $50,000 to Chipman Brown Cicero & Cole, LLP on January 9, 2026;
  - a further $50,000 to Chipman Brown on January 29, 2026;
  - $10,000 to Silver Birch Group, Inc. on January 9, 2026; and
  - $6,000 to Arbel Capital Advisors, Attn: Daniel Sasson, on February 1, 2026, the petition date.

That is $116,000 in total, $100,000 of it to your firm. (Case No. 26-10124, D.I. 4, SOFA Q. 11.) The Debtors' counsel and CRO, who are now directing discovery at me and at BEH, were paid before the petition by Scintilla. Scintilla is the secured creditor whose $46,491,605 claim my objection and discovery challenge, and it stands to gain from a $0 valuation of my claim.

This is not a new concern, and I am not the only one who has raised it. I have raised Mr. Toshav's relationship with Scintilla, and the conflict it creates, in my motions at D.I. 315, 321 and 341. On June 1, 2026 the Official Committee itself sued Scintilla on behalf of the estates (D.I. 266, Adv. No. 26-50412). In its own words, the Committee alleged:

- Scintilla is "an insider of the Debtors." (D.I. 266 ¶ 1.)
- Mr. Toshav, "a long-time contact of Scintilla's principal, Mr. Zack Keinan," after his appointment "abandoned his duties to MII and instead coordinated closely with and took direction from Scintilla to pursue various wrongful transactions designed to benefit Scintilla at the expense of MII's other stakeholders." (¶ 3.)
- "Mr. Keinan and Mr. Toshav have maintained a professional relationship dating back to at least July 2021." By the time Mr. Toshav was installed as MII's manager, "he and Mr. Keinan shared a well-established business relationship." (¶ 45.)
- Mr. Toshav's bonus is "expressly conditioned on a single event: whether MII pays all of its debt in full to Scintilla," so that "Mr. Toshav's personal financial upside is tied entirely to Scintilla being made whole, creating an inherent conflict of interest for the manager of an insolvent entity." (¶ 60.)
- "Scintilla exercised total control over MII's disbursements and decided which MII expenses were to be paid and when and how much would be paid. Scintilla hand-selected the Debtors' sole manager, whose compensation was paid by Scintilla with a bonus tied explicitly to payment of Scintilla's debt without regard to any other stakeholder of MII." (¶ 62.)
- "MII and its conflicted management have pursued a strategy, both prepetition and post-petition, to maximize Scintilla's recovery at the expense of MII's other stakeholders." (¶ 63.)

  - Scintilla "installed its hand-picked replacement, Mr. Toshav, and thereafter used Mr. Toshav to direct MII's governance, financing, litigation, and asset-sale strategy." (¶ 72.)

  The Committee later settled with Scintilla and the Debtors, and that settlement is now embodied in the Plan (D.I. 515). The Committee's allegations remain on the docket in its own words. I raise them because they bear directly on the purpose of this discovery. The Court and the creditors are entitled to weigh them.

- **February 2026.** Mr. Toshav told me that Mr. Keinan of Scintilla would attend the next on-site meeting, which was set for February 18–19, 2026. I said so in writing on February 19, 2026. Mr. Toshav replied the same day: "Scintilla will not be coming."
- **April 14–15, 2026.** I spent two days with Mr. Sasson and Mr. Toshav in Norwood. They had full access to all of BEH's facilities, and the records were presented to them and available. Mr. Sasson confirmed that meeting under oath on September 17. They did not take the records.
- **July 8, 2026.** You told the Court: "Just get us the documents, the more limited ones that we requested. We don't need 100 boxes of documents in a room. We just need specific information." (Tr. 71:4–6.) Mr. Sasson testified: "[I]t would be enough for us at this stage. We don't need the full 100 boxes." (Tr. 97:1–2.) The Court found that "a hundred boxes were offered," that the Debtors "decided not to take them," and that there was no "lack of cooperation." (Tr. 79:12–13, 80:6–9.)

This review is not a fishing expedition, and it is not a second Rule 2004 examination. The Debtors' Rule 2004 motion sought "all books and records for BEH," including "email login credentials," because the Debtors "require access to the BEH Records in order to facilitate such sale." D.I. 121 at 1–2, ¶ 12. The Court vacated that order and found no non-compliance or bad faith. D.I. 342 ¶¶ 1, 13.

The record now shows what the Debtors and the Committee already had while that motion was pending. A&M's time records show that the Debtors' own files, Bates-prefixed "MII," already contained:

- a "'BEH Valuation Analysis Highly Confidential' report dated May 2025" (MII014378);
- a "Fair Market Value Opinion Letter for Boston Executive Helicopters … as of 5/1/2024," with aircraft Bluebook values; and
- BEH financial statements through July 31, 2025.

D.I. 364-2 at 5, 7. Between May 26 and June 11, 2026, A&M performed its own "valuation analysis for Boston Executive Helicopter" for its expert report. D.I. 364-2 at 7–13. That was before you told the Court on July 8 that the Debtors did not need the boxes. None of these documents or analyses was disclosed to the Court when the Debtors described their need for BEH's records. None has been produced to me.

Every one of these valuations and analyses is within the discovery I have requested from the Debtors, the Committee and Scintilla. It is the subject of my motions to compel at D.I. 520 and D.I. 521. As of today:

- the Debtors have declined to produce, calling my requests "untimely";
- the Committee wrote at 4:58 p.m. that its "analyses and communications involving its counsel, A&M, and Committee members are privileged and work product and will not be produced." In the same email it asserted that the value of BEH "plainly" does not exceed the amount of the Scintilla claim; and

- Scintilla has produced nothing new. It states that it did not employ A&M and does not have A&M's work, and it anticipates a supplemental production on October 26 on its claim.

So the Committee states a conclusion about what BEH is worth while withholding the analysis behind it, and the Debtors seek to search BEH's records while they and the Committee withhold their own analyses of BEH's value. A review of BEH's records cannot now be justified as a search for that value. The Debtors and the Committee had that analysis months ago.

**5. Licenses and certifications, and the D.I. 342 production generally.** Every category in D.I. 342 ¶¶ 4–7 was produced on time on August 6, 2026 (DONO100000–DONO100795). My transmittal letter of that date addressed each paragraph of the Order in turn. Under ¶ 4(a) it identified the licenses and certifications by Bates number:

- FAA Air Carrier Certificate No. 6BEA779M (DONO100641)
- Town of Norwood Certificate of Registration under M.G.L. c. 148, § 13 (DONO100668)
- Massachusetts DOR Jet Fuel User-Seller License for 2026 (DONO100669)
- Norwood Airport Commission Commercial Permit, effective through June 30, 2027 (DONO100670)

These are all the licenses and certifications in my possession.

The production has been raised with you three times:

- **August 6.** In Section VI of my letter I asked you to confirm receipt. You did so that evening and wrote: "We will review what you have provided and advise of any issues with such production as soon as we can."
- **September 17, before the Court.** At the afternoon session I told the Court that I had provided you all the documents and invited you to address it. You answered: "Your Honor, I'm not going to opine on anything today about that. We're reviewing those documents and there is an ongoing obligation to supplement those documents. I don't think it's material for today. If we need to raise an issue with your honor, we will." (Hr'g Tr., D.I. 436, at 00:01:27–00:02:12 (unofficial).) No issue was raised. At the morning session I also told the Court that I had sent you everything I was required to send (D.I. 437 at 02:27:54 (unofficial)).
- **October 13.** The Court heard the parties' discovery disputes. No deficiency in the D.I. 342 production was raised.

Your email today is the first notice I have received, eleven weeks after the production, of any claimed issue with it. If the Debtors contend that anything required by D.I. 342 is missing, please identify the paragraph and the document, and I will respond.

**6. Monthly bank statements (D.I. 342 ¶ 6).** On August 6 I produced the statements for both BEH accounts, with reconciliations, through June 30, 2026. The reconciliations for the later months have not yet been completed. As I have told you, I will provide the later statements with their reconciliations as soon as they are completed. This is not a refusal or a delay. Paragraph 6 calls for the statements "with a reconciliation if he is able," and I am producing them reconciled so that what you receive is complete and accurate, as I did on August 6.

To my knowledge, BEH's bank statements are not in the boxes. Paragraph 10 provides that nothing in the Order permits access to any BEH bank account or accounting system. The statements will therefore be produced to you by me. They will not be copied from BEH's files during the review.

We remain ready to assist on Monday and Tuesday.

Christopher R. Donovan, Sr.
Creditor and Party in Interest, pro se
Manager, Boston Executive Helicopters LLC
781-603-6186